**COLE SCHOTZ P.C.**
Court Plaza North
25 Main Street
P.O. Box 800
Hackensack, New Jersey 07602-0800
Ilana Volkov
ivolkov@coleschotz.com
Edward S. Kiel
edward.kiel@coleschotz.com
(201) 489-3000
(201) 489-1536 Facsimile
*Attorneys for Tai-Soo Suk, Foreign*
*Representative of Hanjin Shipping Co., Ltd.*

|  |  |
|---|---|
| In re:<br><br>HANJIN SHIPPING CO., LTD.,[1]<br><br>       Debtor in a Foreign<br>       Proceeding. | UNITED STATES BANKRUPTCY COURT<br>FOR THE DISTRICT OF NEW JERSEY<br>HONORABLE JOHN K. SHERWOOD<br>CASE NO. 16-27041 (JKS)<br>       Chapter 15<br><br>**DECLARATION OF WAN SHIK LEE NAM IN SUPPORT OF VERIFIED CHAPTER 15 PETITION FOR RECOGNITION OF FOREIGN MAIN PROCEEDING** |

I, Wan Shik Lee, pursuant to 28 U.S.C. § 1746, hereby submit this declaration (the "Declaration") under penalty of perjury under the laws of the United States as follows:

1.     I am an attorney licensed, and in good standing, to practice in the Republic of Korea. I am a member of the law firm of Lee & Ko, which is located in the Republic of Korea.

2.     Lee & Ko has been retained by Hanjin Shipping Co., Ltd. ("Hanjin," the "Company" or the "Debtor") with the authorization of the Korean Bankruptcy Court (as defined below), to represent the Company as its primary counsel in its Korean rehabilitation proceeding

---

[1] The last four digits of Hanjin Shipping Co., Ltd.'s Business Registration Number are 1835. The Debtor's main corporate and mailing address is Hanjin Shipping Bldg., 25 Gukjegeumyung-Ro 2-Gil, Yeongdeungpo-Gu, Seoul 07327, Korea.

and as Korean counsel in connection with this Chapter 15 case.

3.     I have been practicing law in Korea for 6 years.  The focus of my practice is litigation, bankruptcy, and corporate restructuring.  I was educated in Korean law at Seoul National University.  I graduated in 1988 with a bachelor's degree in law.  I have extensive experience with bankruptcy and corporate restructuring cases in Korea.

4.     This declaration is comprised of matters that are statements of legal opinion and/or statements of fact.  Where the matters stated in this declaration are statements of legal opinion, such statements reflect Korean law based on my education and years of experience practicing Korean law in Korea.  Where the matters stated in this declaration are statements of fact, they are either: (i) based on my personal knowledge, and are known to me to be true and accurate, or (ii) if not within my personal knowledge, are derived from documents and/or information supplied to me by or on behalf of the Petitioner Tai-Soo Suk ("Petitioner" or the "Foreign Representative"), an inside director and duly authorized foreign representative of the Company, and are true to the best of my knowledge, information, and belief.

5.     I submit this declaration in support of the petition for recognition of a foreign main proceeding and related relief made pursuant to chapter 15 of title 11 of the United States Code (the "Bankruptcy Code").

6.     The Company is a Korean Composite Stock Price Index (KOSPI)-listed company established in Korea.  It is involved in shipping, port operating system development, harbor loading, unloading services, and other related services.

7.     It is currently the largest shipping company in Korea, operating approximately 60 regular lines worldwide, with 140 container or bulk vessels.  It is ranked as the world's ninth largest container shipping company, transporting over 100 million tons of

2

cargo per year.  It also operates 13 terminals specialized for containers, two distribution centers

and six Off Dock Container Yards (ODCY) in major ports and inland areas around the world.

The Company is a member of "CKYHE," a global shipping conference and also a partner of

"The Alliance," another global shipping conference to be launched in April 2017.  The

company's website is http://www.hanjin.com.

**The Korean Bankruptcy Proceeding**

        8.      On August 31, 2016, the Company filed an application (the

"Application") under Korea's Debtor Rehabilitation and Bankruptcy Act (as amended, the

"HDRBA").  A copy of the Application is attached as **Exhibit A.**

        9.      The 6th Bankruptcy Division of the Seoul Central District Court (the

"Korean Bankruptcy Court") received the Application and on the same day entered provisional

orders granting a general injunction and the preservation of disposition of the Company's assets

(the "Stay Order").  A copy of the Stay Order and English translation are attached as **Exhibit B.**

        10.     The Stay Order was effective pending the Korean Bankruptcy Court's

entry of the order commencing the rehabilitation proceeding with respect to the Company

("Commencement Order"), which was issued on September 1, 2016.  The Commencement

Order appointed the Authorized Representative to act as the Company's custodian.  A certified

copy of the Commencement Order and English translation are attached as **Exhibit C.**

        11.     Upon entry of the Commencement Order, and in accordance with Article

74(3), 74(4) and 640 of the DRBA, Petitioner, as custodian, has the power to conduct all of the

Company's business, manage all of its property, and carry out relevant activities overseas for

Korean bankruptcy purposes and procedures - all under the conditions prescribed by the relevant

foreign legislation, subject to the Korean Bankruptcy Court's supervision.  Accordingly, the

Petitioner is authorized to act as "foreign representative" of the Company in this chapter 15 case.

**Reasons for Korean Bankruptcy Filing**

12.    After the global recession and financial crisis following the subprime crisis in the United States in 2008, the global shipping business experienced a drastic decrease of transported goods.  The subsequent recession in Europe and the economic slowdown in China prolonged the decrease in global shipping business.

13.    Since 2012, the financial issues facing the global shipping industry were exaggerated by the excess supply in vessels that greatly exceeded the need for transported goods.  These factors contributed to the Company's poor financial performance.

14.    Facing a liquidity crisis, the Debtor pursued negotiations with the council of creditor banks, including Korea Industrial Bank, the main creditor.  The Debtor proposed a memorandum of understanding whereby the creditors would agree to suspend the exercise of their rights for three months, during which time the Debtor would propose a management recovery plan.

15.    The Debtor, in negotiations with the creditors, agreed to form "The Alliance" and submitted a self-rescue plan providing for 400 billion KRW ($1=1,1515 KRW) by liquidating terminals and company buildings and selling its trademarks, while continuing to negotiate reduction in freight charges.

16.    Nevertheless, on August 30, 2016, the banks advised the Debtor of their decision to reject future financing.  This ended the negotiations.

17.    Accordingly, on August 31, 2016, the Debtor applied to the Korean Bankruptcy Court for the commencement of rehabilitation.  On the same day, it requested and

4

was granted a general injunction and the preservation of disposition of the Company's assets. The Court's decision to commence the rehabilitation was made on September 1, 2016.

**Overview of Rehabilitation Proceedings under Korean Law**

18.    This section sets forth the parts of the DRBA that govern the Company's Korean rehabilitation filing and related rehabilitation proceeding.  Under Article 34 of the DRBA,[2] the debtor company may file an application for commencement of a rehabilitation proceeding under the following circumstances: (i) such debtor cannot repay its debts as they come due without significantly burdening its business operations, or (ii) there is a likelihood that an event which may cause the debtor to become insolvent may occur.  For circumstance (ii) above, a creditor or creditors holding claims amounting to ten percent (10%) or more of the company's paid-in capital or shareholders holding ten percent (10%) or more of the debtor company's total issued and outstanding shares also may file the application for commencement of a rehabilitation proceeding.

19.    Upon commencement of the rehabilitation proceeding, new attachments by creditors of a debtor company's property are prohibited.  DRBA Art. 58(1).  Additionally, all current attachments by creditors on the debtor company's property are suspended.  DRBA Art. 58(2).  Also, upon commencement of the rehabilitation proceeding, litigation procedures against the debtor's assets shall be suspended.  DRB Art. 59(1).

20.    Upon commencement of the rehabilitation proceeding, in principle, the court will appoint a custodian.  DRBA Art. 50.  The court-appointed trustee is required to occupy, obtain, and manage the property belonging to the debtor company.  DRBA Art. 89.

---

[2] The references cited herein are reference to the DRBA, an English translation of which is attached hereto as Exhibit D.

5

Generally, the rehabilitation trustee exercises discretion in managing and administering the debtor company's property.  DRBA Arts. 56, 61, 89.

21.     The creditors of a debtor subject to a rehabilitation proceeding are required to assert their claims in that proceeding.  DRBA Arts. 147, 148.  More specifically, upon the commencement of the rehabilitation proceeding, the trustee will prepare a list of the creditors' claims.  If the claims are correctly specified in such list, the filing of proofs of claims will not be required.  However, if the claims are not specified or specified incorrectly, the creditors must file their claims and proofs of claims within a period of time designated by the court.  Thereafter, the trustee, the debtor and/or the rehabilitation creditors are entitled to inspect the existence, context and cause of filed and specified claims within a timeframe set by the court (the "Inspection Period").  If the trustee, the debtor, or a rehabilitation creditor does not accept the filing of a claim, the subject creditor must file an application for confirmatory action within one month from the last day of the Inspection Period.  DRBA Art. 170(2).

22.     Once a confirmatory action is filed, the court reviews the filing and gives its decision.  Any party that objects to the court's decision may file an objection within one month from receipt of the decision, following which the case is moved to the ordinary court and is reviewed in accordance with ordinary civil procedure.

23.     After a draft of rehabilitation plan is prepared and submitted by the trustee and/or rehabilitation creditors to the court, the interested parties meet to review the plan. Finally, the interested parties meet again to vote on the rehabilitation plan.

24.     A rehabilitation plan may call for rescheduling of the debtor's debt over a period not to exceed, in principle, ten years, except when corporate debentures are issued pursuant to the rehabilitation plan.  Any secured rehabilitation claims and unsecured

irrevocably extinguished even if the rehabilitation proceeding is subsequently terminated by the court.

25.    In practice, if a debtor company completes the performance of its obligations under the rehabilitation proceeding or the court deems that the debtor company will perform its obligations without any problems, the court may terminate the rehabilitation proceeding with respect to the company at which point the company will no longer be subject to the proceeding.  However, if the rehabilitation proceeding is discontinued due to the company's failure to comply with the rehabilitation plan and the grounds for bankruptcy exist, the court will terminate the rehabilitation plan and the grounds for bankruptcy exist, the court will terminate the rehabilitation  proceeding and declare the company bankrupt.

26.    Generally, companies in rehabilitation under the DRBA have an opportunity to achieve a collective outcome that is generally beneficial to company stakeholders such as creditors, customers and employees.

27.    I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed at Seoul, Republic of Korea on September 2, 2016

Wan Shik Lee
Attorney at Law, Partner at Lee & Ko

7

EXHIBIT A

# 회생절차 개시신청서

2016. 8. 31.

신청인 겸 채무자    주식회사 한진해운

대리인 법무법인 넥서스

서울 영등포구 의사당대로 97, 4층 (여의도동, 교보증권빌딩) (우) 07327

담당 변호사 최영익, 김명식, 남지선, 이승현

서울중앙지방법원    귀중

 **Nexus** 법무법인 넥서스

서울 영등포구 의사당대로 97, 4층 (여의도동, 교보증권빌딩)
대표전화 02.6335.3911    팩스 02.6932.2201
www.nexuslaw.kr

# 목    차

I. 채무자 회사의 개요 ........................................................................4

1. 회사명 ............................................................................4

2. 사업목적 ..........................................................................4

3. 본점 소재지: 서울특별시 영등포구 국제금융로 2 길 25(여의도동) ...............5

4. 설립연월일: 2009 년 12 월 1 일 (분할로 인한 설립일) .........................6

5. 대표이사: 조양호, 석태수 ..........................................................6

6. 업종의 내용 및 그 현황 ............................................................6

7. 임원의 현황 및 기구조직 ..........................................................9

8. 종업원에 관한 현황 ...............................................................10

9. 본사 사무실 및 지점 현황 ........................................................11

10. 채무자 회사의 타법인 출자현황(연결대상회사) ...............................11

11. 자본금 및 주식에 관한 현황 .....................................................13

12. 거래 금융기관 ....................................................................16

13. 부도 발생 여부 ...................................................................16

14. 진행 중인 소송 현황 .............................................................16

15. 외부감사 해당 여부 및 담당회계법인 ..........................................16


II. 채무자 회사의 주요연혁 ...............................................................17


III. 채무자 회사의 재무 상황 .............................................................18

1. 자산 현황 .........................................................................18

2. 부채 현황 .........................................................................21

3. 손익 현황 .........................................................................24


IV. 채무자 회사의 회생절차 개시의 원인 및 경위 ......................................24

1. 지속적인 해운업계 불황 및 운임 수준의 급격한 붕괴에 따른 유동성 위기
.................................................................................................24

2. 회사 자구안에 대한 채권 금융기관 협의회의 신규자금 지원 부결 및
주채권은행을 통한 자율협약 절차의 중단 ...............................................28


V. 회생의 가치................................................................................30

1. 회사의 청산가치: 금 2 조 5,317 억원.....................................................30

2. 회사의 계속기업가치: 금 6 조 2,194 억원 또는 금 4 조 8,386 억원 ...............32

3. 청산가치와 계속기업가치의 비교 .........................................................34

4. 채무자 회사의 회생의 필요성 .............................................................35


VI. 관리인 선임 및 절차 진행에 관한 의견.........................................41

**Nexus** 법무법인 넥서스   서울 영등포구 의사당대로 97, 4층 (여의도동, 교보증권빌딩)
대표전화 02.6335.3911    팩스 02.6932.2201
www.nexuslaw.kr

# 회생절차 개시신청서

신청인 겸 채무자　　　주식회사 한진해운

　　　　　　　　　　　서울 영등포구 국제금융로2길 25(여의도동) (우)07327

　　　　　　　　　　　대표이사 조양호, 석태수


　　　　　　　　　　　위 신청인의 대리인　법무법인 넥서스

　　　　　　　　　　　서울　　영등포구　　의사당대로　　97,　　4층(여의도동,
　　　　　　　　　　　교보증권빌딩) (우) 07327

　　　　　　　　　　　담당변호사 최영익, 김명식, 남지선, 이승현

　　　　　　　　　　　(전화: 02-6932-2200, 팩스: 02-6932-2201)


## 신 청 취 지

신청인(채무자)에 대하여 회생절차를 개시한다.

라는 결정을 구합니다.



# 신 청 이 유

## I. 채무자 회사의 개요

### 1. 회사명

주식회사 한진해운(HANJIN SHIPPING CO., LTD.)

### 2. 사업목적

- 해운업

- 항만용역업

- 창고업

- 부동산 임대업

- 조선 및 수리업

- 선박 매매업 및 용대선 사업

- 항만운영개발 및 항만하역업

- 종합물류업

- 소프트웨어사업, 정보통신사업, 정보통신서비스업 및 부가통신사업 관련 발, 판매 ·용역, 임대, 설치, 유지보수업무 및 대리점업

- 장비(컨테이너, 샷시) 제조업

4



- 신재생에너지, 환경에너지 사업

- 자원 개발 사업

- 영농사업

- 인력파견업

- 선박관리, 선원관리 및 교육훈련 사업

- 터미널하역장비임대업

- 컨테이너 수리업

- 운송대리점업

- 화물터미널사업

- 수출입업

- 해상화물운송주선업

- 복합화물운송주선업

- 계량증명업

전 각호의 사업을 수행하는 데 필요한 일체의 부대사업


**3. 본점 소재지: 서울특별시 영등포구 국제금융로2길 25(여의도동)**



Nexus 법무법인 넥서스 | 서울 영등포구 의사당대로 97, 4층 (여의도동, 교보증권빌딩)
대표전화 02.6335.3911   팩스 02.6932.2201
www.nexuslaw.kr

5

4. 설립연월일: 2009년 12월 1일 (분할로 인한 설립일)

5. 대표이사: 조양호, 석태수

6. 업종의 내용 및 그 현황

채무자 회사는 (1) 컨테이너선을 통한 운송 사업, (2) 벌크선을 통한 운송 사업,
(3) 터미널 운영사업을 주로 영위하고 있습니다. 이에 관하여 컨테이너선을
통한 운송 및 벌크선을 통한 운송을 위한 선대 현황은 아래 표와 같으며,
이하에서는 채무자 회사의 현황에 대하여 설명드리겠습니다.

| 순번 | 구분 | 사선 | 용선 | 합계 |
|------|------|------|------|------|
| 1 | 컨테이너선 | 37대 | 63대 | 100대 |
| 2 | 벌크선 | 22대 | 22대 | 44대 |
|  | 합계 | 59대 | 85대 | 144대 |

가. 컨테이너선을 통한 운송 사업

채무자 회사는 현재 사선(社船)과 용선(傭船)을 포함하여 총 100대의 지배
선단으로 컨테이너선대를 운영하고 있으며, 연간 약 460만 TEU(2015년
기준)의 컨테이너 화물을 운송하면서, 미주, 유럽, 아시아 등의 항로를
운영하고 있습니다.

 **Nexus** 법무법인 넥서스 | 서울 영등포구 의사당대로 97, 4층 (여의도동, 교보증권빌딩)
대표전화 02.6335.3911    팩스 02.6932.2201
www.nexuslaw.kr

6

주력 선대는 8,000 TEU급 선박을 포함한 대형 선박들로서, 2010년에는 국적 선사 최초로 10,000 TEU급 초대형 선박을 유럽 노선에 투입하여 운영 중입니다.

수급 불균형 시장 하에 지속적인 운임 하락으로 선사들의 수익성이 위협받고 있는 상황에서, 채무자 회사는 최적의 Trade portfolio 구성, 안정적 계약 물량 확보, 수급 불균형 해소를 위한 공급 조절, 노선 합리화 등을 통한 수익성 개선 노력에 지속 매진하고 있습니다. 특히 성수기 기간 중 수익 극대화를 위해 선복 활용을 극대화하고 고수익 화물을 적극 발굴하는 등의 영업 전략을 적극 추진하고 있습니다.

채무자 회사의 주된 운항로인 미주노선에 관하여, 채무자회사는 전세계 미주노선 점유율의 7%, 세계 6위에 이르는 등 대한민국의 대표적인 해운사로서 위상을 이어가고 있습니다.

  ○ 미주노선 점유율 (아주 → 미주)

| 순위 | 선사명 | 수송량 | 시장점유율 |
|------|--------|--------|-----------|
| 1 | COSCO | 737,696 | 10.0% |
| 2 | EVERGREEN | 714,739 | 9.7% |
| 3 | MAERSK | 708,663 | 9.6% |
| 4 | MSC | 602,643 | 8.2% |
| 5 | CMA | 542,963 | 7.4% |
| **6** | **HANJIN** | **518,265** | **7.0%** |
| 7 | APL | 430,312 | 5.8% |
| 8 | K-LINE | 414,834 | 5.6% |
| 9 | OOCL | 366,850 | 5.0% |
| 10 | YANGMING | 355,401 | 4.8% |
| | Others | 1,991,185 | 73% |
| | **TOTAL** | **7,383,553** | **100%** |

(Source : Datamyne, 2016년 1월~6월 누계)



법무법인 넥서스 | 서울 영등포구 의사당대로 97, 4층 (여의도동, 교보증권빌딩)
대표전화 02.6335.3911    팩스 02.6932.2201
www.nexuslaw.kr

7

## 나. 벌크선을 통한 운송 사업

채무자 회사는 각국의 산업 생산에 필요한 다양한 원자재를 운송하고 있고, 국내외 철강회사, 전력사 등과 장기해상운송계약을 체결하였습니다. 이를 위해 드라이 벌크선뿐만 아니라, LNG선, 원유 운송선, 제품 및 화학 운반선 등 최신의 다양한 선대를 구성하여 운영하고 있습니다.

2015년 유가를 중심으로 한 원자재 가격 하락과 중국 석탄 수요 감소로 인한 시장 악화로 인하여 어려운 시기를 보냈던 드라이 벌크선 사업은 2016년 초반 역사적 최저 운임 시장이 형성되며 매우 힘겨운 한 해의 시작을 맞이하였습니다. 그러나 선주들의 공급 조절 노력이 성공하며 2분기 들어서는 대형선을 중심으로 운임이 회복되기 시작하였고 태평양 수역의 석탄 화물 운송 수요가 늘어나면서 중소형 선형 역시 상승세를 보이며 상반기를 마무리하였습니다. 하반기에도 계절적인 물동량 증가 추세가 이어질 것으로 예상되고 있어 전반적인 원자재 가격 회복이 뒷받침된다면 의미 있는 운임 상승을 기대할 수 있을 것으로 예상됩니다.

## 다. 터미널 운영 사업

채무자 회사는 안정적인 하역 서비스 제공과 고객 서비스의 질적 향상을 위하여, 세계 주요 항만 및 내륙지역에 12개의 컨테이너 전용 터미널과 2개 물류센터, 6개 ODCY(Off Dock Container Yard)를 운영하고 있습니다. 채무자 회사의 터미널은 국내 4개 지역을 비롯해 미국 서안 2개 지역, 일본 2개 지역, 그리고 벨기에 1개 지역, 스페인 1개 지역, 대만 1개 지역, 베트남 1개 지역에 있습니다.

8


법무법인 넥서스 | 서울 영등포구 의사당대로 97, 4층 (여의도동, 교보증권빌딩)
대표전화 02.6335.3911   팩스 02.6932.2201
www.nexuslaw.kr

2016년 2분기 채무자 회사의 터미널 사업은 미주, 구주, 아시아 및 국내 총 7개 터미널 법인과 2개의 물류센터를 직접 또는 지분 참여를 통해, 상반기에 총 396만 TEU를 처리, 4억 2천303만 달러의 매출을 달성하였습니다. 특히 터미널의 경우 전년 대비 처리물량 8% 및 매출 3% 이상 성장을 보여주고 있습니다. 채무자 회사는 지속적으로 생산성 향상을 위해 노력하고 운영 효율화 및 터미널 자동화를 통한 원가 경쟁력 확보에 주력하고 있으며, 신규 선사 및 서비스 유치 노력은 물론 터미널 시설을 이용한 다양한 부대사업의 개발을 통해 수익구조 개선에 힘써오고 있습니다.

채무자 회사는 세계 주요 항로 투입 선박의 대형화, 지속적인 터미널 하역료 조정 압박, 환적 화물 유치를 위한 인근 항만 간의 치열한 경쟁, 파나마 운하 확장 개통에 따른 중장기 미주 시장 변화 등의 해운, 항만, 물류 시장의 빠른 변화 속에서도 원가절감 및 마케팅 강화, 생산성 향상을 통해 흑자 전환, 조직 체질 개선 및 지속 가능한 성장동력 확보 노력을 계속해 나가고 있습니다.

## 7. 임원의 현황 및 기구조직

가. 2016년 6월 30일을 기준으로 등기임원 7명, 미등기임원 31명이 존재하며, 등기임원의 구체적 현황은 다음과 같습니다.

| 순번 | 성명 | 직위 | 비고 |
|------|------|------|------|
| 1 | 조양호 | 대표이사 | (회장) |
| 2 | 석태수 | 대표이사 | (사장) |
| 3 | 공용표 | 사외이사 | 감사위원 |
| 4 | 이경호 | 사외이사 | |
| 5 | 정우영 | 사외이사 | 감사위원 |



법무법인 넥서스
Nexus
서울 영등포구 의사당대로 97, 4층 (여의도동, 교보증권빌딩)
대표전화 02.6335.3911    팩스 02.6932.2201
www.nexuslaw.kr

9

| 6 | 강영식 | 기타비상무이사 | |
| 7 | 노형종 | 사외이사 | 감사위원 |

나. 2016년 6월 30일을 기준으로 채무자 회사는 7본부, 1실, 39팀, 35파트로 구성되어 있고, 컨테이너선 영업본부 이하 각 지역별 업무에 관하여는 4지역본부, 43지점, 2서비스센터, 54영업소 4운영사무로 구성되어 있습니다. 본부 단위의 업무 조직의 개요는 다음과 같습니다.



## 8. 종업원에 관한 현황

## 가. 임직원의 수 및 현황

2016년 6월 30일 기준의 임직원 현황입니다.

| 순번 | 사업부문 | 기간의 정함이 없는 근로자 | 기간제 근로자 | 합계 |
|---|---|---|---|---|
| 1 | 육상 | 699명 | 1명 | 700명 |
| 2 | 해상 | 666명 | 62명 | 728명 |
| | 합계 | 1,365명 | 63명 | **1,428명** |

**Nexus** 법무법인 넥서스 | 서울 영등포구 의사당대로 97, 4층 (여의도동, 교보증권빌딩)
대표전화 02.6335.3911    팩스 02.6932.2201
www.nexuslaw.kr

나. 노동조합 설립 여부

해상직원에  대해서는  해상노동조합이  설립되어  있습니다.  육상직원에
대해서는  노동조합은  설립되어  있지  않고,  근로자  참여  및  협력  증진에  관한
법률에  따라  설치된  노사협의회인  직원경영협의회가  육상직원을  대표하고
있습니다.


**9. 본사 사무실 및 지점 현황**

채무자  회사의  등기부상  본점은  서울특별시  영등포구  국제금융로2길
25(여의도동)에  소재하고  있습니다.  그  밖에  서울특별시  중구  소공로
88(소공동)  및  부산광역시  중구  충장대로9번길  46(중앙동4가)에  지점을  두고
있습니다.


**10. 채무자 회사의 타법인 출자현황(연결대상회사)**

채무자 회사가 출자한 국내·외 연결대상 회사의 현황은 다음과 같습니다.


(기준일: 2016년 06월 30일)                    (단위:%,  백만원)

| 법인명 | 출자 목적 | 지분율 | 대상회사 최근사업연도 총자산 |
|---|---|---|---|
| 한진해운광양터미널㈜ | 경영참여 | 100 | 11,470 |
| 한진해운신항물류센터㈜ | 경영참여 | 60 | 8,759 |
| 한진해운경인터미널㈜ | 경영참여 | 85.5 | 3,538 |
| HANJIN SHIPPING SINGAPORE PTE.,LTD. | 경영참여 | 100.0 | 3,940 |

11


법무법인 넥서스  서울 영등포구 의사당대로 97, 4층 (여의도동, 교보증권빌딩)
대표전화 02.6335.3911    팩스 02.6932.2201
www.nexuslaw.kr

| | | | |
|---|---|---|---|
| HANJIN SHIPPING (CHINA) CO., LTD. | 경영참여 | 100.0 | 39,941 |
| HANJIN OVERSEAS BULK LTD. | 경영참여 | 100.0 | 2,482 |
| HANJIN SPAIN S.A. | 경영참여 | 51.0 | 23,455 |
| HANJIN OVERSEAS TANKER PTE.,LTD. | 경영참여 | 100.0 | 2,716 |
| HANJIN ROMANIA S.R.L. | 경영참여 | 100.0 | 7,703 |
| HANJIN SHIPPING POLAND Sp.z o.o | 경영참여 | 100.0 | 1,696 |
| HANJIN SHIPPING HUNGARY TRANSPORTATION CO., LTD. | 경영참여 | 100.0 | 245 |
| HANJIN SHIPPING DO BRASIL LTDA. | 경영참여 | 100.0 | 974 |
| THAI HANJIN LOGISTICS CO., LTD. | 경영참여 | 49.0 | 5,605 |
| HANJIN SHIPPING LINE MALAYSIA SDN. BHD. | 경영참여 | 100.0 | 2,878 |
| HANJIN SHIPPING (VIETNAM) CO.,LTD. | 경영참여 | 100.0 | 4,089 |
| HANJIN SHIPPING AUSTRALIA PTY.,LTD. | 경영참여 | 100.0 | 2,523 |
| HANJIN SHIPPING INDIA PVT., LTD. | 경영참여 | 100.0 | 2,299 |
| HANJIN SHIPPING (TAIWAN) CO.,LTD. | 경영참여 | 100.0 | 4,426 |
| HANJIN SHIPPING MEXICO S.A. de C.V. | 경영참여 | 100.0 | 2,421 |
| ATLANTA SHIPPING AGENCY (HOLDING) LTD. | 경영참여 | 100.0 | 8,794 |

 Nexus | 법무법인 넥서스 | 서울 영등포구 의사당대로 97, 4층 (여의도동, 교보증권빌딩)
대표전화 02.6335.3911    팩스 02.6932.2201
www.nexuslaw.kr

| | | | |
|---|---|---|---|
| HANJIN SHIPPING EUROPE MANAGEMENT GmbH | 경영참여 | 100.0 | 35 |
| HANJIN SHIPPING EUROPE GmbH & CO.KG | 경영참여 | 100.0 | 5,224 |
| HANJIN SHIPPING AMERICA, LLC. | 경영참여 | 100.0 | 7,032 |
| HANJIN SHIPPING CANADA, INC. | 경영참여 | 100.0 | 554 |
| HANJIN AGRICULTURE, INC. | 경영참여 | 100.0 | 4,622 |
| HANJIN SHIPPING TEC. INC | 경영참여 | 100.0 | 35,923 |

## 11. 자본금 및 주식에 관한 현황

### 가. 자본금 및 발행주식 현황

채무자 회사의 발행주식 총수는 기명식 보통주 245,269,947주이며, 1주의 금액은 5,000원이고, 자본금은 1,226,349,735,000원입니다. 구체적 현황은 아래와 같습니다.

| 구 분 | 주식의 종류 | | |
|---|---|---|---|
| | 보통주 | 우선주 | 합계 |
| I. 발행할 주식의 총수 | 600,000,000 | 30,000,000 | 630,000,000 |
| II. 현재까지 발행한 주식의 총수 | 245,269,947 | - | 245,269,947 |
| III. 현재까지 감소한 주식의 총수 | | - | - |
| 1. 감자 | | - | - |
| 2. 이익소각 | | - | - |
| 3. 상환주식의 상환 | | - | - |
| 4. 기타 | | - | - |
| IV. 발행주식의 총수 (II – III) | 245,269,947 | - | 245,269,947 |
| V. 자기주식수 | 7,559,891 | - | 7,559,891 |
| VI. 유통주식수 (IV –V) | 237,710,056 | - | 237,710,056 |


법무법인 넥서스 | 서울 영등포구 의사당대로 97, 4층 (여의도동, 교보증권빌딩)
대표전화 02.6335.3911    팩스 02.6932.2201
www.nexuslaw.kr

13

## 나. 상장 및 등록 여부

채무자 회사는 유가증권시장에 상장되어 있는 상장회사입니다.

## 다. 자본금 변동 내역

채무자회사의 자본금 변동내역은 아래와 같습니다.

| 주식발행(감소)일자 | 발행(감소)형태 | 발행(감소)한 주식의 내용 | | | | |
|---|---|---|---|---|---|---|
| | | 주식의 종류 | 수량 | 주당액면가액 | 주당발행(감소)가액 | 비고 |
| 2011.11.12 | 유상증자 (주주우선공모) | 보통주 | 40,000,000 | 5,000 | 7,500 | 주주배정후 실권주일반공모방식의 증자(증자비율 47.06%) |
| 2013.08.26 | 신주인수권행사 | 보통주 | 296,265 | 5,000 | 8,300 | 제78회무보증신주인수권부사채 |
| 2013.09.10 | 신주인수권행사 | 보통주 | 216 | 5,000 | 8,300 | 제78회무보증신주인수권부사채 |
| 2013.09.11 | 신주인수권행사 | 보통주 | 5,060 | 5,000 | 8,300 | 제78회무보증신주인수권부사채 |
| 2013.09.13 | 신주인수권행사 | 보통주 | 6 | 5,000 | 8,300 | 제78회무보증신주인수권부사채 |
| 2013.10.07 | 신주인수권행사 | 보통주 | 396 | 5,000 | 8,300 | 제78회무보증신주인수권부사채 |
| 2013.11.27 | 신주인수권행사 | 보통주 | 90,000 | 5,000 | 6,640 | 제78회무보증신주인수권부사채 |
| 2013.12.30 | 신주인수권행사 | 보통주 | 102,650 | 5,000 | 6,640 | 제78회무보증신주인수권부사채 |
| 2013.12.31 | 신주인수권행사 | 보통주 | 818,750 | 5,000 | 6,640 | 제78회무보증신주인수권부사채 |
| 2014.01.02 | 신주인수권행사 | 보통주 | 403,372 | 5,000 | 6,640 | 제78회무보증신주인수권부사채 |
| 2014.01.03 | 신주인수권행사 | 보통주 | 34,097 | 5,000 | 6,640 | 제78회무보증신주인수권부사채 |
| 2014.01.07 | 신주인수권행사 | 보통주 | 10,000 | 5,000 | 6,640 | 제78회무보증신주인수권부사채 |
| 2014.01.15 | 신주인수권행사 | 보통주 | 25 | 5,000 | 6,640 | 제78회무보증신주인수권부사채 |

14

법무법인 넥서스 Nexus | 서울 영등포구 의사당대로 97, 4층 (여의도동, 교보증권빌딩)
대표전화 02.6335.3911    팩스 02.6932.2201
www.nexuslaw.kr

| 2014.01.16 | 신주인수권행사 | 보통주 | 45 | 5,000 | 6,640 | 제78회무보증신주인수권부사채 |
| 2014.02.18 | 신주인수권행사 | 보통주 | 45 | 5,000 | 6,640 | 제78회무보증신주인수권부사채 |
| 2014.06.01 | - | 보통주 | 44,429,093 | 5,000 | - | ㈜한진해운과 ㈜유수홀딩스(구, ㈜한진해운홀딩스) 분할 신설법인 합병에 따른 합병신주 발행 |
| 2014.06.16 | 유상증자 (제3자배정) | 보통주 | 74,074,074 | 5,000 | 5,400 | 최대주주인 ㈜대한항공에 전량 배정(증자 비율 43.27%) |
| 2015.02.05 | 신주인수권행사 | 보통주 | 5,719 | 5,000 | 6,450 | 제78회무보증신주인수권부사채 |
| 2015.03.06 | 신주인수권행사 | 보통주 | 128 | 5,000 | 6,450 | 제78회무보증신주인수권부사채 |
| 2015.09.15 | 신주인수권행사 | 보통주 | 6 | 5,000 | 6,450 | 제78회무보증신주인수권부사채 |

## 라. 주식 소유에 관한 사항

이 사건 신청일 현재 채무자 회사의 최대 주주는 주식회사 대한항공이며, 그 외 채무자 회사가 자기 주식 등을 보유하고 있습니다.

| 순번 | 주주명 | 주식수 (주) | 지분율(%) |
| --- | --- | --- | --- |
| 1 | 주식회사 대한항공 | 81,496,169 | 33.23 |
| 2 | 채무자 회사 | 7,559,891 | 3.08 |
| 3 | 우리사주조합 | 833,484 | 0.34 |
| 4 | 기타 | 155,380,403 | 63.35 |
| | 총계 | 245,269,947 | 100 |

## 마. 최근 3년간 주주배당금 총액 및 배당률

채무자 회사는 2013회계연도(제5기)부터 2015회계연도(제7기)까지의 최근 3년간 배당을 실시한 사실이 없습니다.



법무법인 넥서스
Nexus | 서울 영등포구 의사당대로 97, 4층 (여의도동, 교보증권빌딩)
대표전화 02.6335.3911   팩스 02.6932.2201
www.nexuslaw.kr

**12. 거래 금융기관**

채무자 회사의 거래 금융기관으로는 한국산업은행, KEB하나은행, 우리은행, 국민은행 등이 있으며 채무자 회사의 주거래은행은 한국산업은행입니다.

**13. 부도 발생 여부**

채무자 회사는 부도가 발생하지 않았습니다.

**14. 진행 중인 소송 현황**

2016년 6월 30일 기준으로, 선체사고 등과 관련하여 채무자 회사가 피소되어 계류 또는 중재중인 소송사건은 123건으로, 총 소송물가액은 약 USD 71,051,439입니다(2016년도 반기보고서 재무제표에 관한 사항 중 재무제표에 대한 주석 20. 참조).

**15. 외부감사 해당 여부 및 담당회계법인**

채무자 회사는 2016 사업연도의 직전 사업연도인 2015년 자산 규모가 960,256,708,133원으로 120억원 이상이어서 '주식회사의 외부감사에 관한 법률'에 따른 외부감사의 대상에 해당되며, 전기와 당기에 한영회계법인이 외부감사를 담당하고 있습니다.


**Nexus** 법무법인 넥서스 | 서울 영등포구 의사당대로 97, 4층 (여의도동, 교보증권빌딩)
대표전화 02.6335.3911    팩스 02.6932.2201
www.nexuslaw.kr

## II. 채무자 회사의 주요연혁

채무자 회사는 우리나라 최초의 현대적 선사인 대한해운공사(1949년 설립, 1968년 민영화)와 국내 최초의 컨테이너 전용선사인 ㈜한진해운(영문명 Hanjin Container Lines Co., Ltd)(1977년 설립)가 그 모태입니다. 현재는 국내 최대의 해운기업으로 컨테이너선, 벌크선 등 144척의 선박으로 전 세계 60여개 정기항로를 운영하며, 연간 1억 톤 이상의 화물을 수송하는 세계 9위(총 623,558TEU)의 컨테이너선사로 성장하였습니다.

채무자 회사의 주요 연혁은 다음과 같습니다.

| | |
|---|---|
| 1949. 12. | 대한해운공사 설립 |
| 1968. 11. | 대한해운공사: 정부 보유 주식 전량 매각하여 완전 민영화 전환 |
| 1977. 5. | ㈜한진해운(영문명 Hanjin Container Lines Co., Ltd) 출범 |
| 1977~1988 | 중동항로, 북미서안항로, 북미동안항로 등 개설 |
| 1988. | 대한해운공사(당시 상호 ㈜대한상선)가 ㈜한진해운을 흡수합병 후 ㈜한진해운으로 상호 변경 |
| 1992. 12. | 국적 선사 최초 매출 1조원 돌파 |
| 1995. 4. | 유럽-중국 서비스 개설 |
| 1996. 6. | 국적 선사 최초의 5,000 TEU 급 컨테이선 취항 |
| 1997. 2. | 독일 선사 DSR-Senator사 인수 계약 체결 |
| 2001. 6. | 미주 내륙 컨테이너 운송 자회사 Hanjin Logistics Inc. 설립 |
| 2002. 6. | 국적 선사 최초 안전보건경영시스템(OHSAS 18001) 인증 취득 |


법무법인 넥서스
Nexus

서울 영등포구 의사당대로 97, 4층 (여의도동, 교보증권빌딩)
대표전화 02.6335.3911    팩스 02.6932.2201
www.nexuslaw.kr

17

| 2003. 9. | 포브스 '아시아 50대 우량기업'에 선정 |
| 2007. 5. | 세계 최대 규모 중국 취산도 수리조선소 건설 |
| 2008. 7. | 자회사 거양해운 흡수합병, 세계10위권 벌크 선사 부상 |
| 2002.~2008. | 미국 오웬스 코닝사 선정 7년 연속 '올해의 선사상' 수상 |
| 2009. 12. | 지주회사(한진해운 홀딩스)로 전환 후, 해운사업부문 인적 분할하여 현재의 채무자 회사 설립 |
| 2010. 6. | 국적 선사 최초 10,000TEU급 컨테이너선 취항 |
| 2012. 3. | 국내 최초 13,100TEU급 컨테이너선 취항 |
| 2012. 9. | 다우존스 지속가능경영지수(DJSI Korea) 운수업 부문 최우수 기업 인증 |
| 2012. 12. | 국적 선사 최초 매출액 10조원 달성 |
| 2012. | 영국 CI(Containerisation International) 선정, '2012 Winner of Shipper's Choice' 수상 |
| 2013. | 미국 로우스(Lowe's) 선정 '2013년 최우수 선사상(Ocean Carrier of the Year, 2013)' 수상 |
| 2014. 10. | 2014 DJSI Korea 국내 운송 부문 최우수 기업 인증 |

# III. 채무자 회사의 재무 상황

## 1. 자산 현황

### 가. 자산의 개요(2016년 6월 30일 기준)

| 유동자산 | 792,642,459,521원 |
|---|---|
| 비유동자산 | 5,831,683,223,589원 |
| 자산 총계 | 6,624,325,683,110원 |



**Nexus** 법무법인 넥서스 | 서울 영등포구 의사당대로 97, 4층 (여의도동, 교보증권빌딩)
대표전화 02.6335.3911     팩스 02.6932.2201
www.nexuslaw.kr

## 나. 항목별 자산내역 및 최근 5년간 변동상황

(단위 백만원)

| 구분 | 2011 | 2012 | 2013 | 2014 | 2015 | 2016.6 |
|---|---|---|---|---|---|---|
| I. 유동자산 | 1,960,963 | 2,015,730 | 1,805,616 | 1,477,417 | 960,256 | 792,642 |
| 1. 현금및현금성자산 | 561,049 | 422,001 | 387,378 | 386,488 | 184,563 | 133,782 |
| 2. 단기금융상품 | 156,912 | 199,148 | 144,869 | 133,021 | 72,742 | 33,534 |
| 3. 매출채권및기타채권 | 729,487 | 882,626 | 820,190 | 695,019 | 518,359 | 481,329 |
| 4. 만기보유금융자산 | - | 33 | 30,785 | - | - | - |
| 5. 금융리스채권 | - | 47,078 | 48,061 | - | - | - |
| 6. 파생금융자산 | 3,184 | 2,472 | 3,066 | - | - | - |
| 7. 재고자산 | 364,000 | 353,670 | 318,929 | 191,380 | 117,152 | 84,716 |
| 8. 기타유동자산 | 146,328 | 108,698 | 83,088 | 71,508 | 47,813 | 48,760 |
| 9. 매각예정자산 | - | - | - | - | 19,625 | 10,521 |
| II. 비유동자산 | 8,447,746 | 8,458,391 | 8,286,244 | 6,606,077 | 6,424,960 | 5,831,684 |
| 1. 장기매출채권및기타채권 | 279,323 | 263,582 | 264,726 | 320,461 | 322,339 | 340,373 |
| 2. 매도가능금융자산 | 25,095 | 21,651 | 40,384 | 42,780 | 8,548 | 8,408 |
| 3. 금융리스채권 | 746,460 | 601,814 | 545,091 | - | - | - |
| 4. 파생금융자산 | 303 | 2,665 | 22 | - | - | - |
| 5. 종속기업및관계기업투자 | 297,645 | 282,265 | 288,860 | 364,078 | 197,844 | 153,919 |
| 6. 유형자산 | 7,027,907 | 7,221,814 | 7,086,077 | 5,712,484 | 5,718,082 | 5,163,583 |
| 7. 투자부동산 | 53,999 | 50,940 | 48,069 | 58,339 | 63,699 | 60,576 |
| 8. 무형자산 | 16,948 | 13,626 | 13,012 | 107,933 | 114,444 | 104,825 |
| 자산총계 | 10,408,710 | 10,474,121 | 10,091,861 | 8,083,495 | 7,385,216 | 6,624,326 |

19

Nexus    법무법인 넥서스    │ 서울 영등포구 의사당대로 97, 4층 (여의도동, 교보증권빌딩)
대표전화 02.6335.3911    팩스 02.6932.2201
www.nexuslaw.kr

**다. 유동자산(2016년 6월 30일 기준): 금 792,642,459,521원**

(단위: 원)

| 구분 | 금액 |
|---|---|
| 현금및현금성자산 | 133,782,338,704 |
| 단기금융상품 | 33,533,446,026 |
| 매출채권및기타채권 | 481,329,003,094 |
| 재고자산 | 84,716,218,905 |
| 기타유동자산 | 48,760,288,791 |
| 매각예정자산 | 10,521,164,001 |

**라. 비유동자산(2016년 6월 30일 기준): 금 5,831,683,223,589원**

(단위: 원)

| 구분 | 금액 |
|---|---|
| 장기매출채권및기타채권 | 340,372,832,177 |
| 매도가능금융자산 | 8,408,298,701 |
| 종속기업및관계기업투자 | 153,918,852,165 |
| 유형자산 | 5,163,582,808,740 |
| 투자부동산 | 60,575,787,145 |
| 무형자산 | 104,824,644,661 |

**마. 선박보유현황**

2016년 6월 30일을 기준으로 채무자 회사의 주요 자산은 유형자산 중 선박으로 장부가액 기준 전체 자산총계의 68.9%를 차지하고 있습니다. 선박의 세부내역은 별첨 2. 선대현황 자료를 참고하시기 바랍니다.



**2.  부채 현황**

**가. 부채의 개요(2016년 6월 30일 기준)**

| 유동부채 | 4,216,806,404,124원 |
|---|---|
| 비유동부채 | 1,811,736,738,113원 |
| 부채 총계 | 6,028,543,142,237원 |

**나. 항목별 부채내역 및 최근 5년간 변동상황**

(단위: 백만원)

| 구분 | 2011 | 2012 | 2013 | 2014 | 2015 | 2016.6 |
|---|---|---|---|---|---|---|
| **I. 유동부채** | 2,152,852 | 4,158,773 | 5,930,751 | 4,963,089 | 4,036,843 | 4,216,806 |
| 1. 매입채무및기타채무 | 705,669 | 796,661 | 1,046,179 | 925,934 | 816,828 | 1,053,910 |
| 2. 차입금 | 1,399,342 | 3,318,326 | 4,836,315 | 3,967,172 | 3,171,795 | 3,140,478 |
| 3. 파생금융부채 | 13,559 | 1,027 | 2,277 | 1,500 | 26,489 | 6,713 |
| 4. 당기법인세부채 | 5,775 | 11,662 | 6,987 | 37,828 | - | - |
| 5. 기타유동부채 | 28,505 | 31,095 | 38,991 | 30,653 | 21,728 | 15,705 |
| **II. 비유동부채** | 6,130,118 | 5,001,447 | 3,507,769 | 2,363,829 | 2,542,685 | 1,811,737 |
| 1. 차입금 | 5,907,454 | 4,806,787 | 3,290,216 | 2,176,718 | 2,424,898 | 1,705,537 |
| 2. 파생금융부채 | 162,066 | 142,120 | 172,215 | 115,118 | 67,968 | 57,449 |
| 3. 충당부채 | 34,345 | 24,827 | 14,364 | 35,949 | 30,609 | 27,157 |
| 4. 확정급여부채 | 22,020 | 20,313 | 18,381 | 9,357 | 19,209 | 21,594 |
| 5. 이연법인세부채 | 4,231 | 7,396 | 12,591 | 26,684 | - | - |
| **부채총계** | 8,282,971 | 9,160,220 | 9,438,521 | 7,326,918 | 6,579,529 | 6,028,543 |

법무법인 넥서스
**Nexus**   서울 영등포구 의사당대로 97, 4층 (여의도동, 교보증권빌딩)
대표전화 02.6335.3911   팩스 02.6932.2201
www.nexuslaw.kr

다. 유동부채(2016년 6월 30일 기준): **금 4,216,806,404,124원**

(단위: 원)

| 구분 | 금액 |
|---|---|
| 매입채무및기타채무 | 1,053,909,715,369 |
| 차입금 | 3,140,478,408,464 |
| 파생금융부채 | 6,713,353,504 |
| 기타유동부채 | 15,704,926,787 |

라. 비유동부채(2016년 6월 30일 기준): **금 1,811,736,738,113원**

(단위: 원)

| 구분 | 금액 |
|---|---|
| 차입금 | 1,705,536,952,408 |
| 파생금융부채 | 57,449,107,525 |
| 충당부채 | 27,157,113,078 |
| 확정급여부채 | 21,593,565,102 |

마. 채무자 회사의 회생채무의 내역(2016년 6월 30일 기준)

　(1) 채무자 회사의 2016년 6월 30일자 회생담보권 중 주요항목은 아래와 같습니다.

(단위: 백만원)

22



| 채권자 | 채권금액 | 채권최고액 | 회생담보권 |
|---|---|---|---|
| NH투자증권 | 35,000 | 45,500 | 35,000 |
| KDB산업은행/대우증권 | 173,023 | 88,461 | 88,461 |
| 하나은행 뉴욕지점 | 23,294 | 12,763 | 12,763 |
| Aero S.A R.L | 32,957 | 60,000 | 32,957 |

기준일 현재, 금융기관이 보유하고 있는 정리담보권 채권액은 약 1.75조원 상당으로 파악됩니다.

(2) 채무자 회사의 2016년 6월 30일자 회생채권 중 중요항목은 아래와 같습니다.

(단위: 백만원)

| 채무 구분 | 채권금액 | 비고 |
|---|---|---|
| 금융기관 차입금 | 624,245 | KDB산업은행, 대우증권, 하나은행, KB국민은행, 우리은행, 수협중앙회, 유안타증권, NH투자증권, HSBC 등 |
| 사채 | 1,188,295 | KDB산업은행, 대우증권, 신용보증기금, 한국투자증권 등 |
| 전환사채 | 72,301 | 회사채안정화펀드 등 |
| 신주인수권부사채 | 5,120 | KDB산업은행/대우증권 |
| 장기미지급금 및 금융리스 | 2,794,760 | 선박금융(국적취득조건부나용선계약) 후순위 채무, 장비금융리스 미지급금 |
| 유동화채무 | 161,294 | HSBC 은행에 대한 컨테이너선 매출채권 ABCP 유동화 |
| 파생상품부채 | 64,162 | 차입금 관련 이자율 변동 위험 헷지 등 |
| 미확정채무 | 5,455,614 | 장기용선계약 해지에 따른 손해배상금 및 소송충당금 |
| 기타 상거래채권 | 1,069,615 | 용선료, 유류비, 항만사용료 등 미지급액 등 |
| 기타채권 | 48,751 | 충당부채 및 확정급여부채 |

기준일 현재 금융기관이 보유하고 있는 무담보 회생채권액은 약 3.57조원 상당으로 파악됩니다.



법무법인 넥서스 | 서울 영등포구 의사당대로 97, 4층 (여의도동, 교보증권빌딩)
대표전화 02.6335.3911    팩스 02.6932.2201
www.nexuslaw.kr

23

### 3. 손익 현황

채무자  회사의   2011년도부터   2016년도   6월까지의   손익현황은   아래와
같습니다.

(단위: 백만원)

|  | 2011 | 2012 | 2013 | 2014 | 2015 | 2016.6 |
|---|---|---|---|---|---|---|
| 매출액 | 9,169,474 | 10,174,596 | 9,883,349 | 8,438,459 | 7,669,598 | 2,989,385 |
| 영업비용 | 337,822 | 232,908 | 221,793 | 214,496 | 7,648,165 | 3,347,875 |
| 영업이익 | -514,550 | -143,584 | -307,563 | -21,179 | 21,433 | -358,490 |
| 영업외손익 | -217,847 | -526,198 | -393,924 | -594,839 | -70,460 | -104,949 |
| 세전손익 | -732,397 | -669,782 | -701,487 | -616,018 | -49,027 | -463,440 |
| 법인세비용 | 8,711 | 31,024 | 10,761 | -10,800 | -27,010 | - |
| 중단영업이익 | - | - | - | 141,741 | - | - |
| 당기순이익 | -741,109 | -700,807 | -712,248 | -463,475 | -22,017 | -463,440 |

## IV. 채무자 회사의 회생절차 개시의 원인 및 경위

### 1. 지속적인 해운업계 불황 및 운임 수준의 급격한 붕괴에 따른 유동성 위기

채무자 회사가 영위하는 해운업은 전세계 경기 사이클에 따른 물동량 변화가
업황을 좌우하는 경기민감업종으로서 세계 경제의 전반적인 상황과 높은
상관관계를 갖고 있습니다. 때문에 경기변동, 환율, 유가 등의 다양한
외생변수에 의한 민감도가 매우 높은 편에 속합니다. 또한, 해운산업은
실물경제가 창출하는 운송수요를 토대로 운송서비스를 공급하는 산업이므로
실물경제의 경기순환이 해운산업의 경기순환에 지대한 파급효과를 유발할
수밖에 없는 구조적 특징을 가지고 있어, 이에 따라 경기 확장국면에서는
수출입 물량의 증가로 해운업 경기가 호전되고 화물 수요의 증가로 운임이


법무법인 넥서스  서울 영등포구 의사당대로 97, 4층 (여의도동, 교보증권빌딩)
**Nexus**  대표전화 02.6335.3911    팩스 02.6932.2201
www.nexuslaw.kr

상승하지만, 경기 수축국면에서는 수출입 물량의 감소로 해운업 경기가 침체되고 공급과잉에 따른 운임경쟁으로 수익률 감소가 발생하게 됩니다.

해운업계는 2008년 9월 이후 급격한 가격상승에 대한 수요의 저항이 고조된 상황에서 미국의 서브프라임발 금융위기의 현실화 및 글로벌 경기침체에 따라 글로벌 GDP는 2009년 -0.38%의 역성장을 기록하며 전체적인 물동량의 급격한 위축을 겪었습니다. 그리고 2008년 글로벌 금융위기 이후 지속된 글로벌 경제의 위축에 따른 수요부진 등과 같은 외부요인으로 장기간 동안 물동량 감소 및 운임하락 등에 기인한 실적 악화를 경험하였습니다.

2009년 최초로 물동량 감소(-9.0%)를 경험한 컨테이너선 시장[1]은 2010년과 2011년 비교적 양호한 물동량 회복세를 보여왔으나 2012년에 유럽의 재정위기와 중국의 경기 둔화 등으로 금융위기 이전의 장기평균(1996-2008년 연평균 증가율 8.7%)을 크게 하회하는 물동량 증가속도를 보였고, 특히 유럽의 소비위축으로 유럽노선은 전년 대비 물동량이 소폭 감소하였습니다. 한편 폐선 증가, 인도지연 등으로 선박 공급속도를 더디게 하였음에도 불구하고 기 발주 선박의 인도가 지속되면서 2012년부터 물동량 증가율을 크게 상회하는 선박공급이 이어졌습니다. 금융위기 이후 누적된 선박공급 과잉기조가 개선되지 않아 대형선박 중심의 선박공급이 지속되고 있어 수급불균형 현상은 더욱 심화되었습니다.

한편 벌크선(건화물선) 시장의 경우에는 2009년 기저효과에 힘입어 12.5%의 물동량 증가를 기록했던 2010년 이후, 글로벌 경제성장률 저하와 중국의

---

[1] 해운업은 사업부문별로 크게 컨테이너선 부문과 벌크선 부문으로 분류될 수 있는데, 컨테이너선은 컨테이너를 사용하여 배에 화물을 싣는 선으로서 정기선으로 운항되며, 벌크선은 컨테이너를 사용하지 않고 배에 바로 화물을 실으며 부정기선으로 운항되는 특징이 있습니다.


법무법인 넥서스
Nexus    서울 영등포구 의사당대로 97, 4층 (여의도동, 교보증권빌딩)
대표전화 02.6335.3911    팩스 02.6932.2201
www.nexuslaw.kr

25

철광석 수요둔화 등으로 건화물 물동량 증가속도가 둔화되었습니다. 이에 반해 벌크선(건화물선) 선복량은 글로벌 금융위기 이전 호황기에 축적된 발주부담으로 인해 매년 10-17%의 높은 증가추세가 유지되었고, 이로 인해 금융위기 이후 매년 선박공급이 물동량 증가를 상회하여 공급과잉현상이 가중되었습니다.

통상적으로 선박 발주에서 신조선의 인수까지는 2~3년 정도의 시간이 소요되며 해운기업은 노후선 폐선, 발주 취소, 인도 지연, 계선 등을 통해 선복량을 조절할 수 있으나, 선박 발주량 대비 자체적인 공급조절 여력이 크지 않아 해운산업의 공급(선복량)은 단기적으로 비탄력적인 특성을 지니고 있습니다. 이와 같은 해운산업의 비탄력적인 공급(선복량)의 조절은 수요(해상물동량) 변동에 따른 운임의 변동폭을 키우게 되었고, 물동량 증가율을 상회하는 선복량 증가는 결국 해운업계 전체의 운임경쟁으로 이어졌습니다.

채무자 회사 또한 위와 같은 시장 상황에서 자유로울 수 없었으며, 해운 수요 위축 및 선박 공급 과잉에 따른 영업실적 악화로 인하여 유동성 부족이 점차 심화되었습니다.

이에 최대주주인 주식회사 대한항공은 2013년 주주대출 2,500억원, 2014년 유상증자 4,000억원 등을 통해 채무자 회사를 지원하고, 채무자 회사 스스로도 자체적으로 뼈를 깎는 구조조정을 위해 노력하였는바, 구체적으로 (1) 용선 기간이 만료되는 고용선료 선박을 반선함으로써 비용을 절감하였고, (2) 고비용 저효율 선박을 처분하여 노선을 합리화하고, 수익성이 낮은 노선을 철수하여 공급량을 축소하였습니다. 이에 따라 2014년 2분기부터 2015년 2분기 까지는 영업실적이 개선되기도 하였습니다.

26


Nexus 법무법인 넥서스 | 서울 영등포구 의사당대로 97, 4층 (여의도동, 교보증권빌딩)
대표전화 02.6335.3911    팩스 02.6932.2201
www.nexuslaw.kr

그러나 위와 같은 노력에도 불구하고, 컨테이너 선사 간 치열한 경쟁 속에서 세계 컨테이너선 선복 공급은 지속적으로 증가하고, 경쟁이 극심해졌습니다. 또한, 유럽의 경기 침체 및 중국발 경기 둔화로 물동량 증가 추세가 둔화되었습니다. 요컨대 공급과 수요 사이에 심각한 불균형이 야기된 것입니다.

이에 2015년 4분기 이후 컨테이너 운임 수준이 대폭 하락하게 되었고, 채무자 회사뿐만 아니라 세계 주요 컨테이너선사들이 일제히 실적 저하 추세를 기록하였습니다. 특히 시장 지위 1위인 Maersk마저도 2015년 4분기에는 영업적자를 기록하였습니다.

이러한 상황에서 채무자 회사 역시 2015년 4분기 이후 심각하게 영업수지가 훼손되었고, 자산 매각 등 지속적인 자구 노력에도 불구하고 자체적인 노력만으로는 유동성 문제를 해결하는 것이 불가능한 상황에 직면하였습니다.

2016년 6월 30일 현재 기간별 만기도래 차입금액 내역을 살펴보면 1년 이내에 3조 1,405억원의 차입금이 만기가 도래하나 현재의 재무상황으로는 이를 상환하기가 불가능합니다. 실제 2016년 5월과 6월에 만기도래하는 사채에 대해서는 지급이 불가능하여 사채권자집회를 통하여 만기를 연장하기에 이르렀으나, 그럼에도 불구하고 나머지 채무들에 대해서도 상환 능력이 없는 상황입니다.

<만기 도래 예정 차입금액>

(단위: 억원)

| 기간 | 만기 도래 차입금액 |
|---|---|
| 1년 이내 | 31,405 |
| 1년 ~ 2년 | 5,306 |



법무법인 넥서스
Nexus
서울 영등포구 의사당대로 97, 4층 (여의도동, 교보증권빌딩)
대표전화 02.6335.3911   팩스 02.6932.2201
www.nexuslaw.kr

| | |
|---|---:|
| 2년 ~ 3년 | 2,007 |
| 3년 ~ 4년 | 1,742 |
| 4년 초과 | 8,000 |
| 합 계 | **48,460** |

**2. 회사 자구안에 대한 채권 금융기관 협의회의 신규자금 지원 부결 및 주채 권은행을 통한 자율협약 절차의 중단**

이에 채무자 회사는 유동성 문제를 해결하기 위하여 2016년 상반기부터 주채권은행인 한국산업은행과 협의를 진행하였고, 자율협약을 통한 경영정상화 추진작업을 진행하기로 결정하여, 2016년 4월 22일 이사회 의결을 거쳐, 2016년 4월 25일 정식으로 주채권은행에 자율협약 절차를 신청하였습니다.

한국산업은행은 KEB하나은행, 농협은행, 우리은행, 국민은행, 부산은행과 함께 채권금융기관 협의회를 구성하였고, 위 협의회는 2016년 5월 4일 채무자 회사에 대한 자율협약절차를 진행하기로 결의하였습니다. 이에 따라 3개월 동안 채권 행사를 유예하기로 하고, 그 기간 중에 실사를 통해 경영정상화 방안을 확정하면, 그에 따라 MOU를 체결할 계획으로 자율협약절차를 진행하기로 하였으며, 자율협약절차의 과정에서 채무자 회사에 대한 자율협약 절차의 기간을 1개월 연장하기도 하였습니다.

채무자 회사의 재무적 위기는 전세계적인 운임 하락에도 불구하고 기존에 체결한 용선 계약에 따른 고가의 용선료가 계속 지급될 수밖에 없었던 원가 구조상의 근본적 문제점에서 비롯된 것이었으므로, 위 자율협약절차는 선주들과의 용선료 협상을 통해 용선료가 조정되는 것을 선결 조건으로 하였습니다. 즉 자율협약 절차는 채무자 회사의 용선료 인하, 공모회사채 만기 연장, 해운동맹 유지를 전제로 하여 채권단 지원 조건들이 성공적으로



법무법인 넥서스 | 서울 영등포구 의사당대로 97, 4층 (여의도동, 교보증권빌딩)
대표전화 02.6335.3911    팩스 02.6932.2201
www.nexuslaw.kr

이행되어야만 유지할 수 있는 조건부 협약이었습니다.

이에 따라 채무자 회사는 유동성 부족상황 등을 고려하여 국내 및 해외 선박금융의 채권자들과 사이에 일정 기간 원금상환을 유예받을 수 있도록 최선을 다하여 협상을 진행하였습니다. 2016년 5월 19일 실시된 채무자 회사의 제78회 무보증 신주인수권부사채 사채권자집회를 통해 위 사채의 조기상환 기일이었던 2016년 5월 23일이 2016년 9월 23일로 변경되어 해당 조기상환일이 4개월 연장되는 등, 채무자 회사는 유동성 부족을 타개하기 위하여 노력하였으며 독일 하팍로이드 등 6개사와 제3의 글로벌 해운동맹인 'THE Alliance'를 신규 결성하기로 합의함에 따라, 해운동맹의 유지요건을 충족하고 비용절감과 리스크 분담을 위해 노력하기도 하였습니다.

그뿐만 아니라 채무자 회사는 9개국 22개 선주사(컨테이너선 12개, 벌크선 10개)들이 보유한 60척의 선박(컨테이너선 47척, 벌크선 13척)을 대상으로 향후 3년 6개월(잔여 용선기간이 3년 6개월 이상인 선박은 3년 6개월간, 잔여 용선기간이 3년 6개월 미만인 선박은 잔여 기간 전체)의 기간 동안 기존 계약 용선료의 30%를 인하하고자 선주 및 선박금융 채권자들과 성실하게 용선료 협상을 진행하였으나, 상당수 진전이 있었음에도 불구하고 시간적인 제약으로 인하여 최종적인 합의에 이르지 못하였습니다.

채무자 회사는 채권금융기관 협의회에 추가 자구안을 제출하여 터미널 유동화, 사옥 유동화 및 기타 지분 매각 등의 의사를 밝혔고, 그 중 터미널 유동화로 1,750억원을 확보하고, 부산사옥 등 사옥 유동화를 통해 1,022억원, 상표권, 벌크선, H-Line 지분 등 자산매각 등을 통해 1,330억원을 확보하는 등 총 4,102억원을 추가로 마련할 계획임을 밝히기도 하였으며, 2016년 8월 26일에는 향후 발생 가능한 부족자금의 조달 방안에 대한 자구계획안을

29

 법무법인 넥서스 | 서울 영등포구 의사당대로 97, 4층 (여의도동, 교보증권빌딩)
대표전화 02.6335.3911    팩스 02.6932.2201
www.nexuslaw.kr

한국산업은행에 제출하였습니다. 추가 자구계획안에는 (1)한진그룹의 경영권 포기 및 합병동의, (2)부족자금 조달방안(채무자 회사의 최대주주인 주식회사 대한항공의 기존 지분에 대한 차등감자, 5,000억원 규모의 신규자금 지원 등), (3) 터미널 주주대출 유동화 등 기타 추가적인 자금조달 방안과 관련된 내용을 포함하고 있었습니다.

위와 같은 노력에도 불구하고 채권금융기관 협의회에서는 2016년 8월 30일 채무자 회사에 대한 지원이 불가능하다는 결정을 통보하였고, 자율협약 절차도 중단되었습니다.

이처럼 채무자 회사의 경영정상화를 위한 노력에도 불구하고 유동성 부족을 해결하기 어려운 상황에 처하여, 채무자 회사는 채무자 회생 및 파산에 관한 법률(이하 "채무자회생법")에서 정한 회생절차 이외에는 채무자 회사의 지속적인 운영을 담보할 다른 방법이 없다고 판단하여, 부득이 회생절차개시신청을 하기에 이른 것입니다.


## V. 회생의 가치

### 1. 회사의 청산가치: 금 2조 5,317억원

2016. 3. 31. 기준 채무자 회사의 장부상 자산총계는 6조 8,320억원입니다. 채무자 회사는 장부상 자산에 대하여 자율협약 절차에서 실사를 실시하였고, 그 결과에 따라 실사조정을 하였습니다. 이에 청산비용, 청산 전제 시 회수가능금액 등을 고려하여 청산조정을 하는 경우 채무자 회사의 자산가액은 6조 8,320억원에서 4조 3,003억원이 감소하여 2조 5,317억원이 됩니다.


법무법인 넥서스 | 서울 영등포구 의사당대로 97, 4층 (여의도동, 교보증권빌딩)
대표전화 02.6335.3911    팩스 02.6932.2201
www.nexuslaw.kr

30

<실사 및 청산가치 산정결과 표>

● 실사 및 청산가치 총괄표 (2016년 3월말 기준)

| 억원 | 장부금액 | 실사조정 | 실사가치 | 청산조정 | 청산가치 |
|---|---|---|---|---|---|
| 유동자산 | 8,266 | (144) | 8,122 | (2,369) | 5,753 |
| 현금및현금성자산 | 1,732 | - | 1,732 | - | 1,732 |
| 매출채권및기타채권 | 5,056 | (21) | 5,035 | (1,106) | 3,929 |
| 재고자산 | 945 | (26) | 919 | (827) | 92 |
| 기타유동자산 | 533 | (97) | 436 | (436) | - |
| 비유동자산 | 60,054 | (29,415) | 30,639 | (11,075) | 19,564 |
| 장기매출채권및기타채권 | 471 | (233) | 238 | (112) | 126 |
| 장기대여금 | 2,817 | (2,257) | 560 | - | 560 |
| 투자주식 | 2,029 | 58 | 2,087 | (1,062) | 1,025 |
| 유무형자산/투자부동산 | 54,737 | (26,983) | 27,754 | (9,901) | 17,853 |
| 자산총계 | 68,320 | (29,559) | 38,761 | (13,444) | 25,317 |

이 중 실사조정을 통해 변동된 부분은, 예를 들면 (1) 장기대여금에 관하여, 관계사 대여금으로 개별 법인의 현금흐름 및 재무상태를 검토하여 회수가능가액을 산정하여 평가한 부분과, (2) 유무형자산과 투자부동산에 대하여 국내부동산은 공시지가 및 시가표준액으로, 해외부동산은 장부가액으로, 매각예정자산은 매각예정액으로 적용하여 조정한 부분, 선박 및 컨테이너 중고가에 처분수수료를 고려하여 조정한 부분 등입니다.

그리고 청산조정을 통해 변동된 부분은, 예를 들면 (1) 매출채권 및 기타채권이 국내거래처의 경우 20%, 해외거래처의 경우 30%의 청산비용을 고려하여 조정되었고, (2) 유무형자산과 투자부동산에 대하여 국내부동산의 경우에는 최근 1년의 동일지역 법원 경매낙찰가율 및 경매비용을 고려하여 조정되고 해외부동산의 경우 30%의 청산비용을 고려하여 조정된 점 등이 있습니다.

실사조정 내역과 청산조정의 주요 내역에 대하여는 별첨 6 주요실사 조정사항 내역과 별첨 7 청산가치 주요 조정사항을 참조하시기 바랍니다.



법무법인 넥서스 | 서울 영등포구 의사당대로 97, 4층 (여의도동, 교보증권빌딩)
대표전화 02.6335.3911   팩스 02.6932.2201
www.nexuslaw.kr

31

2. 회사의 계속기업가치: 금 **6조 2,194억원** 또는 금 **4조 8,386억원**

한편, 채무자 회사가 계속 존속하여 영업을 하는 경우 그 계속기업의 가치는 채무자 회사의 영업수지를 가정하여 추정된 현금흐름을 기초로 산정할 수 있습니다. 이하에서 설명 드리는 회사의 계속기업가치는 채무자 회사가 워크아웃 절차를 진행하는 것을 전제로 회사의 계속기업가치를 산정한 것입니다.

채무자 회사가 영위하는 컨테이너선 영업에 관한 추정, 벌크선 영업에 관한 추정과 판매관리비 및 공동비용의 추정(추정 근거에 관하여는 별첨 '컨테이너 영업의 추정근거', '벌크 영업의 추정근거', '판매관리비 및 공동비용의 추정 근거'를 참조하시기 바랍니다)을 토대로, 아래 표와 같은 가정이 들어있는 Case 1과 Case 2로 나누어 각 시나리오별로 영업손익을 추정하여 볼 수 있습니다.

<시나리오 별 가정 요약>

| 가정 | | Case 1 | Case 2 |
|---|---|---|---|
| **컨테이너** | | | |
| | 운임 | '16년 2분기 운임이 '17년 4월까지 지속 | '16년 6월 운임이 '17년 12월까지 지속 |
| | 운임회복시점 | 2017년 5월 | 2018년 1월 |
| | 물량 | 기존 가정 유지(MSI 추정치) | '16년 6월 물량 수준이 '16년말 까지 지속 |
| | 유가 | '16년 상반기 유가하락 실적을 향후 추정에 반영('16년 하락률 32% → 36%) | 기존 IMF 가정 유지 |
| **벌크** | | | |
| | 운임 | '16년 2분기 운임이 '16년 말까지 지속 | '16년 6월 운임수준이 '16년말 까지 지속 |
| | 운임회복시점 | 2017년 1월 | 2018년 1월 |

운임회복시점이 2017년 5월 또는 2018년 1월이 된다는 부분을 주요

32



법무법인 넥서스 | 서울 영등포구 의사당대로 97, 4층 (여의도동, 교보증권빌딩)
대표전화 02.6335.3911    팩스 02.6932.2201
www.nexuslaw.kr

차이점으로 하고 있는 위와 같은 가정을 전제로 하여, 각 시나리오별로
계산된 영업손익은 아래 표와 같습니다.

<시나리오 별 영업손익 계산>

| 구분 | 상세 | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Case1 | 억원 | 2016 | 2017 | 2018 | 2019 | 2020 | 2021 | 2022 | 2023 | 2024 | 2025 |
| | 매출액 | 57,750 | 62,066 | 69,490 | 75,808 | 79,599 | 81,277 | 82,640 | 84,302 | 85,413 | 85,579 |
| | 매출총이익 | (5,619) | (2,984) | 523 | 3,173 | 5,531 | 6,420 | 6,716 | 7,924 | 8,318 | 7,914 |
| | 영업손익 | (7,167) | (4,495) | (1,041) | 1,556 | 3,865 | 4,708 | 4,959 | 6,118 | 6,464 | 6,012 |
| | 영업이익률 | (12.4%) | (7.2%) | (1.5%) | 2.1% | 4.9% | 5.8% | 6.0% | 7.3% | 7.6% | 7.0% |
| | 영업현금흐름(*) | (4,043) | (1,850) | 1,731 | 4,401 | 6,767 | 7,735 | 7,985 | 8,985 | 8,063 | 7,748 |

(*) '16년 영업현금흐름은 2016 2Q~4Q기준

| 구분 | 상세 | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Case2 | 억원 | 2016 | 2017 | 2018 | 2019 | 2020 | 2021 | 2022 | 2023 | 2024 | 2025 |
| | 매출액 | 56,749 | 58,215 | 68,782 | 75,153 | 79,029 | 80,717 | 82,069 | 83,718 | 84,836 | 85,012 |
| | 매출총이익 | (6,652) | (5,999) | (545) | 2,084 | 4,467 | 5,340 | 5,614 | 6,797 | 7,179 | 6,764 |
| | 영업손익 | (8,197) | (7,495) | (2,100) | 474 | 2,808 | 3,637 | 3,865 | 5,000 | 5,334 | 4,872 |
| | 영업이익률 | (14.4%) | (12.9%) | (3.1%) | 0.6% | 3.6% | 4.5% | 4.7% | 6.0% | 6.3% | 5.7% |
| | 영업현금흐름(*) | (4,941) | (4,723) | 479 | 3,321 | 5,708 | 6,664 | 6,892 | 7,869 | 8,188 | 6,859 |

(*) '16년 영업현금흐름은 2016 2Q~4Q기준

위와 같은 영업손익추정을 바탕으로 현금흐름의 현재가치를 환산하면, 다음
표에서 보는 바와 같이 채무자 회사의 계속기업가치는 **Case 1**의 경우 금 **6조
2,194억원** 이며 **Case 2**의 경우 금 **4조 8,386억원입니다.**

위에서 설명 드린 계속기업가치는 현재의 선대 및 사업규모를 유지한다는
가정으로 산정한 것입니다. 현재 채무자 회사는 선박 가압류, 용선 선박 철수
위험 등에 직면하고 있어 단기적인 영업 및 운영활동에 차질이 발생할
것으로 예상되며, 사업규모가 줄어들 개연성도 높습니다. 한편으로는
회생절차 개시 후에 용선료가 높은 선박들에 대한 계약이 해지되는 등으로
반선되면 이로 인한 비용 절감 등의 긍정적인 효과도 발생할 것으로
예상됩니다. 다만 현재 시점에서는 위와 같은 요인들을 모두 반영한
계속기업가치 산정은 현실적으로 어려우므로, 위와 같은 가정을 전제로 한

법무법인 넥서스
Nexus | 서울 영등포구 의사당대로 97, 4층 (여의도동, 교보증권빌딩)
대표전화 02.6335.3911    팩스 02.6932.2201
www.nexuslaw.kr

계속기업가치를 산정하였습니다.

<center>&lt;계속기업가치 산정결과 - Case 1&gt;</center>

| 억원 | 2016 2~4Q | 2017 | 2018 | 2019 | 2020 | 2021 | 2022 | 2023 | 2024 | 2025 | Terminal |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 매출액 | 42,004 | 62,066 | 69,490 | 75,808 | 79,599 | 81,277 | 82,640 | 84,302 | 85,413 | 85,579 | 85,579 |
| 매출원가 | 46,796 | 65,050 | 68,967 | 72,636 | 74,068 | 74,857 | 75,924 | 76,378 | 77,095 | 77,665 | 77,665 |
| 매출총이익 | (4,791) | (2,984) | 523 | 3,173 | 5,531 | 6,420 | 6,716 | 7,924 | 8,318 | 7,914 | 7,914 |
| 판매비와관리비 | 1,137 | 1,511 | 1,564 | 1,617 | 1,667 | 1,712 | 1,758 | 1,805 | 1,854 | 1,901 | 1,901 |
| 영업이익 | (5,928) | (4,495) | (1,041) | 1,556 | 3,865 | 4,708 | 4,959 | 6,118 | 6,464 | 6,012 | 6,012 |
| 영업이익 % | -14.1% | -7.2% | -1.5% | 2.1% | 4.9% | 5.8% | 6.0% | 7.3% | 7.6% | 7.0% | 7.0% |
| 용선료조정 | 986 | 1,939 | 1,909 | 1,785 | - | - | - | - | - | - | - |
| 용선료반영영업CF | (4,942) | (2,555) | 868 | 3,341 | 3,865 | 4,708 | 4,959 | 6,118 | 6,464 | 6,012 | 6,012 |
| Tax | | | | | | | | | 1,255 | 1,174 | 1,455 |
| 세후영업CF | (4,942) | (2,555) | 868 | 3,341 | 3,865 | 4,708 | 4,959 | 6,118 | 5,209 | 4,838 | 4,557 |
| 감가상각비 | 2,156 | 2,962 | 3,031 | 3,059 | 3,072 | 3,096 | 3,058 | 2,951 | 2,887 | 2,890 | |
| 순운전자본변동 | (2,613) | (317) | (259) | (214) | (170) | (69) | (31) | (84) | (34) | 20 | |
| CAPEX | (191) | (335) | (544) | (233) | (520) | (560) | (339) | (478) | (328) | (445) | |
| Free cash flow | (5,590) | (246) | 3,096 | 5,953 | 6,246 | 7,174 | 7,646 | 8,508 | 7,734 | 7,303 | 57,456 |
| 할인기간 | 0.38 | 1.38 | 2.38 | 3.38 | 4.38 | 5.38 | 6.38 | 7.38 | 8.38 | 9.38 | 9.38 |
| 할인율 | 0.97 | 0.90 | 0.83 | 0.77 | 0.72 | 0.66 | 0.61 | 0.57 | 0.53 | 0.49 | 0.49 |
| PV of CF | (5,433) | (221) | 2,583 | 4,601 | 4,473 | 4,760 | 4,700 | 4,845 | 4,081 | 3,570 | 28,090 |
| 영업가치(*1) | | | | | | | | | | | 56,050 |
| 비영업용자산 | | | | | | | | | | | 6,144 |
| 계속기업가치 | | | | | | | | | | | 62,194 |

<center>&lt;계속기업가치 산정결과 – Case 2&gt;</center>

| 억원 | 2016 2~4Q | 2017 | 2018 | 2019 | 2020 | 2021 | 2022 | 2023 | 2024 | 2025 | Terminal |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 매출액 | 41,003 | 58,215 | 68,782 | 75,153 | 79,029 | 80,717 | 82,069 | 83,718 | 84,836 | 85,012 | 85,012 |
| 매출원가 | 46,828 | 64,215 | 69,327 | 73,069 | 74,563 | 75,377 | 76,455 | 76,921 | 77,657 | 78,248 | 78,248 |
| 매출총이익 | (5,824) | (5,999) | (545) | 2,084 | 4,467 | 5,340 | 5,614 | 6,797 | 7,179 | 6,764 | 6,764 |
| 판매비와관리비 | 1,133 | 1,496 | 1,555 | 1,608 | 1,658 | 1,703 | 1,749 | 1,797 | 1,845 | 1,892 | 1,892 |
| 영업이익 | (6,957) | (7,495) | (2,100) | 476 | 2,808 | 3,637 | 3,865 | 5,000 | 5,334 | 4,872 | 4,872 |
| 영업이익 % | -17.0% | -12.9% | -3.1% | 0.6% | 3.6% | 4.5% | 4.7% | 6.0% | 6.3% | 5.7% | 5.7% |
| 용선료조정 | 986 | 1,939 | 1,909 | 1,785 | - | - | - | - | - | - | - |
| 용선료반영영업CF | (5,971) | (5,556) | (192) | 2,261 | 2,808 | 3,637 | 3,865 | 5,000 | 5,334 | 4,872 | 4,872 |
| Tax | | | | | | | | | | 911 | 1,179 |
| 세후영업CF | (5,971) | (5,556) | (192) | 2,261 | 2,808 | 3,637 | 3,865 | 5,000 | 5,334 | 3,960 | 3,693 |
| 감가상각비 | 2,156 | 2,962 | 3,031 | 3,059 | 3,072 | 3,096 | 3,058 | 2,951 | 2,887 | 2,890 | |
| 순운전자본변동 | (2,483) | (189) | (452) | (214) | (172) | (69) | (30) | (83) | (33) | 20 | |
| CAPEX | (191) | (335) | (544) | (233) | (520) | (560) | (339) | (478) | (328) | (445) | |
| Free cash flow | (6,489) | (3,118) | 1,844 | 4,873 | 5,188 | 6,104 | 6,553 | 7,391 | 7,859 | 6,425 | 46,554 |
| 할인기간 | 0.38 | 1.38 | 2.38 | 3.38 | 4.38 | 5.38 | 6.38 | 7.38 | 8.38 | 9.38 | 9.38 |
| 할인율 | 0.97 | 0.90 | 0.83 | 0.77 | 0.72 | 0.66 | 0.61 | 0.57 | 0.53 | 0.49 | 0.49 |
| PV of CF | (6,306) | (2,808) | 1,538 | 3,766 | 3,715 | 4,050 | 4,028 | 4,210 | 4,147 | 3,141 | 22,760 |
| 영업가치(*1) | | | | | | | | | | | 42,242 |
| 비영업용자산 | | | | | | | | | | | 6,144 |
| 계속기업가치 | | | | | | | | | | | 48,386 |

## 3. 청산가치와 계속기업가치의 비교

위에서 본 바와 같이 채무자 회사의 청산가치는 약 **2조 5,317억원**으로 산정되는 반면, 채무자 회사가 영업을 계속하는 경우의 계속기업가치는 약 **6조**



법무법인 넥서스 | 서울 영등포구 의사당대로 97, 4층 (여의도동, 교보증권빌딩)
Nexus | 대표전화 02.6335.3911    팩스 02.6932.2201
www.nexuslaw.kr

34

2,194억원 또는 금 4조 8,386억원 산정되는바, 운임회복시점이 더 늦어지는 악조건으로 가정되는 경우에도 채무자 회사의 계속기업가치가 청산가치를 약 2조 2069억원 이상 상회하고 있어 채무자 회생 및 파산에 관한 법률이 요구하는 경제적인 회생의 가치를 충분히 가지고 있습니다.

또한 위에서 산정한 채무자 회사의 계속기업가치는 채무자 회사가 워크아웃 절차를 통하여 일부 금융채권자와 사채권자의 채권에 대한 출자전환, 상환유예, 분할상환 등을 진행하는 것을 전제로 한 것이지만, 회생절차를 통하여 전체 채권자들의 채권의 변경(출자전환, 상환유예, 분할상환 등)이 이루어지는 경우 회사의 경영상황은 더 나아질 것이므로 회사의 계속기업가치와 회생가치는 이보다 더 높아질 것으로 예상됩니다.

## 4. 채무자 회사의 회생의 필요성

### 가. 회생절차 적용의 요건 충족

채무자 회사는 지속적인 해운업계 불황 및 운임 수준의 급격한 붕괴에 따른 유동성 위기에 봉착하였고, 최근 용선료 협상에 실패함으로써, 현재의 원가 구조로는 정상적인 채무 변제가 불가능한 상황에 이르게 되었습니다.

따라서 채무자 회사는 특별한 사정이 없는 한 채무자회생법 제34조 제1항 소정의 "사업의 계속에 현저한 지장을 초래하지 아니하고는 변제기에 있는 채무를 변제할 수 없는 경우" 또는 "채무자에게 파산의 원인인 사실이 생길 염려가 있는 경우"에 해당한다고 할 것입니다.



법무법인 넥서스 | 서울 영등포구 의사당대로 97, 4층 (여의도동, 교보증권빌딩)
대표전화 02.6335.3911   팩스 02.6932.2201
www.nexuslaw.kr

## 나. 채무자 회사의 회생 가능성

비록 채무자 회사가 관련 사업에서의 막대한 손실로 인하여 채무를 정상적으로 변제할 수 없는 상황에 직면하기는 하였지만, 채무자 회사에게는 회생 가능성과 필요성이 충분히 있습니다.

### (1) 글로벌 해운 업체로서의 우수성

채무자 회사는 국내 최대의 국적 선사이자 세계 9위 수준의 컨테이너선사로서 북미, 유럽, 대서양 등 세계 3대 기간항로를 포함해 약 100여개 항로, 60여개 국가의 목적지에 화물을 운송하고 있으며, 국내 주요 항구와 카오슝, 오사카, 동경, 롱비치, 시애틀, 안트워프, 알제시라스, 탄캉카이멥 등 해외 8곳의 항구에 전용터미널을 확보하고 있습니다. 또한, 채무자 회사는 미국 오웬스 코닝사 선정 7년 연속 '올해의 선사상'을 수상하였고(2002~2008년), 영국 CI(Containerisation International) 선정, '2012 Winner of Shipper's Choice'을 수상하였으며, 2013년과 2014년 2년 연속으로 미국 로우스(Lowe's) 선정 '최우수 선사상(Ocean Carrier of the Year)'을 수상하는 등 전세계적으로 물류서비스의 우수성을 인정받아 왔습니다.

### (2) 운임 단가 상승 및 시장 안정화

전세계 해운 시장의 극심한 불황이 장기화되고 있는 것은 사실이나, 2016년 5월부터 운임 수준이 회복되는 조짐이 있는 등, 사업의 시황도 개선되고 있습니다.

 법무법인 넥서스   서울 영등포구 의사당대로 97, 4층 (여의도동, 교보증권빌딩)
대표전화 02.6335.3911    팩스 02.6932.2201
www.nexuslaw.kr

해운업계 현황상 여전히 공급 과잉이 지속되고 있기는 하나 임시결항에 의한 계선량 증가 및 노후선박 폐선 증가 등 선사들의 공급조절 노력이 이어지고 있습니다. 여기에 2016년 예상 신조 인도량은 약 130만TEU 수준으로, 신조 인도 지연 및 Scrapping 선박 증가 등의 영향으로 전년 대비 공급 증가율은 3.9% 수준으로 완화될 전망이며, 선진국의 경우 유럽의 추가 양적 완화 정책을 통한 경기 회복, 미국 경제의 지속적 성장이 기대되며, 신흥 개도국의 경우 인도, 베트남 중심의 견고한 성장세, 이란 제재 완화 등에 힘입어 2분기 이후 물동량 증가율이 상승할 것으로 전망되는 측면이 있습니다.

## 1) 컨테이너선 부문

세계 경제 성장의 둔화 지속으로 2016년 상반기 컨테이너 물동량 증가율은 전년 동기 대비 1.9% 수준으로 저조하였으나, 아시아-태평양 항로는 약 2.4%, 아시아-유럽 항로는 약1.4% 물동량이 각각 증가한 것으로 추정됩니다.

2016년 9월부터는 중국 G20 정상회담 개최, 국경절 연휴 전 물량 증가와 더불어 3분기부터 전통적인 성수기 진입 및 미/구주 과잉 재고 해소에 따른 주요 동서 항로 중심의 물량 회복 예상되어 실질적인 실적 개선이 기대되고, 저운임 기조 장기화에 따른 수익성 악화로 대형선사들의 공급 감축 움직임이 예상됨에 따라 수급이 점차 개선될 것으로 예상됩니다. 2016년 예상 신조선(新造船)의 인도량은 약 108만TEU 수준이나, 신조선 인도 지연 및 Scrapping 선박 증가 등의 영향으로 전년 대비 실질 공급 증가율은 3.2%로


법무법인 넥서스
Nexus   서울 영등포구 의사당대로 97, 4층 (여의도동, 교보증권빌딩)
대표전화 02.6335.3911   팩스 02.6932.2201
www.nexuslaw.kr

37

완화될 전망입니다.

**2) 벌크선 부문**

상반기 건화물선 운임 시장의 어려운 시황을 타개하기 위한 각국 선주들의 공급 조절 노력으로 노후화 선박의 해체 매각량이 급증하였고, 신조선 인도는 지연되었으며 신규 발주도 자제되면서 2분기에는 반등하는 모습을 보이기 시작하였습니다. 하반기에도 상반기의 공급 조절 노력이 이어지고 전반적인 원자재 가격 회복이 뒷받침된다면 계절적인 물동량 증가와 함께 운임 상승을 기대해 볼 수 있을 것으로 예상됩니다.

탱커 시장의 경우 점차 신규 선박이 꾸준히 인도되었고 선적 및 양하항에서의 체선이 완화되면서 2분기에는 선복 과잉으로 인한 운임 약세로 돌아섰으며 하반기에도 가용 선박이 늘어나면서 공급 과잉이 심화될 것으로 예상되고 있어 어려운 시황이 예상되지만, 저유가 추세는 유지되고 있어 계절적 수요가 증가하는 4분기에는 운임이 다소 회복될 것으로 예상됩니다.

실제로 한국해양수산개발원은 2017년부터 컨테이너선 운임 수준이 2016년 대비 약 27.5% 상승할 것으로 내다보았으며, 영국계 해운 관련 예측 기관인 국제해사전략(Maritime Strategies International · MSI)은 2018년 이후부터 컨테이너선 시장의 수급개선으로 운임 수준이 7.7% 상승할 것이라고 발표한 바 있습니다.

**Nexus** 법무법인 넥서스 │ 서울 영등포구 의사당대로 97, 4층 (여의도동, 교보증권빌딩)
대표전화 02.6335.3911    팩스 02.6932.2201
www.nexuslaw.kr

**(3) 선택과 집중을 통한 최적의 Trade Portfolio 구성**

또, 채무자 회사는 컨테이너 부문에서도 최적의 Trade portfolio 구성, 안정적 계약 물량 확보, 수급 불균형 해소를 위한 공급 조절, 노선 합리화 등을 통한 수익성 개선 노력에 지속 매진하고 있습니다. 이러한 노력으로 채무자 회사의 2016년 1월부터 6월까지의 미주노선 점유율은 세계 6위로서, 7.0%에 이르고, 2015년 1월부터 12월까지의 구주노선 점유율은 세계 7위로서, 4.1%에 이르는 등, 대한민국의 대표적인 해운업체이자 글로벌 해운업체로서 명맥을 유지하고 있습니다.

그뿐만 아니라, 채무자 회사는 향후에도 양적 성장을 지양하고 수익성 있는 선박 운용 계획을 최우선과제로 삼아 수익위주의 질적경영을 시현하고자 합니다. 이에 채무자 회사는 수익성이 뛰어난 북미서안 및 북미동안 항로에 화물영업 역량을 결집하여 운임경쟁력을 확보하고, 선복임대사업 등 수익성이 높은 사업분야에 회사의 장점을 강화하여 나갈 것입니다. 이러한 Trade Portfolio 최적화를 통하여 채무자 회사의 북미서안 항로의 영업손익은 2018년부터, 북미동안 항로의 경우 2019년부터 흑자전환이 가능할 것으로 전망하고 있습니다.

**(4) 기간산업으로서의 중요성과 회생의 필요성**

해운업은 국내 수출입 화물운송과 국가 전략물자 수입을 담당하는 국가 기간산업으로서의 중요성을 가지고 있으며 인프라와 네트워킹이 생명인 산업이기 때문에 진입장벽이 높습니다. 채무자 회사가 파산하는 경우 해운업계뿐 아니라 조선업, 항만업 및 연관업, 무역업, 금융업 등에



법무법인 넥서스
**Nexus**    서울 영등포구 의사당대로 97, 4층 (여의도동, 교보증권빌딩)
대표전화 02.6335.3911    팩스 02.6932.2201
www.nexuslaw.kr

이르기까지 국가경제에 미치는 영향은 지대할 것으로 예상됩니다.

한국선주협회는 해운업계와 무역업계, 조선업계 등 관련 업계가 환적화물 감소, 운임 급등 등으로 입게 될 피해금액을 최대 17조 5600억 원으로 추산했고, 이 중 부산항에서는 채무자 회사의 용선과 자사선 등 157척의 운항 중단으로 120만 개의 컨테이너가 묶이게 되면서 2300여 개의 일자리 감소가 예상되며 일자리 감소를 경제적 가치로 환산할 경우, 1인 월 평균 급여를 200만 원으로 책정 시 연간 약 552억 원의 손실이 발생하게 될 것으로 예상되고 있습니다 (별첨 10 부산일보 2016년 8월 30일자 기사 '[한진해운 법정관리 초읽기] 청산 땐 부산항 연매출 8조 줄고 일자리 수천 개 사라져' 참조).

비록 글로벌 경기침체와 다양한 시장상황의 변수로 인하여 채무자 회사가 총체적 어려움을 겪고 있는 것은 사실이나, 채무자 회사는 국적 1위 선사, 세계 7위권의 글로벌 선사로서 30년간 쌓아온 인프라와 네트워킹을 보유하고 있으며, 해운업에 관한 영업전략과 전문성을 충분하게 보유하고 있는 회사입니다.

따라서 법원의 강력한 감독하에서, 원가 구조상 취약한 영업 부문을 과감히 구조조정하고, 관련 계약이 미이행쌍무계약으로 구성되는 경우 이를 과감히 해지하고, 고수익의 영업 부문을 중심으로 사업을 재편한다면, 채무자 회사는 충분히 회생할 수 있을 것을 것으로 사료됩니다.

**Nexus** 법무법인 넥서스    서울 영등포구 의사당대로 97, 4층 (여의도동, 교보증권빌딩)
대표전화 02.6335.3911    팩스 02.6932.2201
www.nexuslaw.kr

40

## VI. 관리인 선임 및 절차 진행에 관한 의견

가. 채무자 회사가 영위하는 해운업의 특수성을 고려할 때 전문성을 갖춘 현 대표이사들을 비롯한 경영진들의 계속된 기여가 필요합니다. 따라서 기존 경영자 관리인 제도를 원칙적인 모습으로 채택하고 있는 채무자회생법의 취지를 고려하시어 채무자 회사에 대해 가장 정확하게 알고 있는 기존 경영진을 관리인으로 선임하거나 관리인 불선임 결정을 하여 주시기를 간곡히 요청드리는 바입니다.

나. 한편, 채무자 회사는 이미 올해 초에 경영정상화 방안 마련을 위해 삼일회계법인에 의뢰하여 자체적인 실사를 진행하였고, 최근 자율협약 절차와 관련하여 주채권은행인 한국산업은행의 요청에 따라 삼일회계법인이 추가로 정밀 실사를 함으로써, 구체적인 재정 상황 및 채무자 현황, 자구 계획 안 등에 관한 검토가 이루어졌습니다. 더욱이 채무자 회사의 갱생을 위해서는 무엇보다 신속한 정상화가 절실히 필요한 상황입니다. 따라서 재판부께서는 이러한 사정을 감안하시어, 법률이 허용하는 한도에서 최대한 신속하게 절차를 진행하여 주시기를 요청 드립니다.

다. 결론

위에서 본 바와 같이, 채무자 회사는 사업의 계속에 현저한 지장을 초래하지 아니하고는 변제기에 있는 채무를 변제할 수 없는 경우에 해당하나, 계속기업가치가 청산가치를 크게 초과하여 회생의 가능성 내지

41


법무법인 넥서스 | 서울 영등포구 의사당대로 97, 4층 (여의도동, 교보증권빌딩)
Nexus | 대표전화 02.6335.3911   팩스 02.6932.2201
www.nexuslaw.kr

필요성이 충분하다고 사료되므로, 채무자회생법 제34조에 의거하여 본건 회사회생절차 개시신청을 하기에 이르렀습니다. 부디 채무자 회사의 현재 상태와 회생 가능성 내지 필요성을 깊이 참작하시어 회생절차개시 결정을 내려 주시기 바랍니다.

## 소 명 자 료

별첨서류목록과 같습니다.

## 첨 부 서 류

1. 별첨서류 1. 내지 12.                                    각1통

1. 위임장                                                  1통

1. 담당변호사지정서                                        1통



법무법인 넥서스

# Nexus

서울 영등포구 의사당대로 97, 4층 (여의도동, 교보증권빌딩)
대표전화 02.6335.3911    팩스 02.6932.2201
www.nexuslaw.kr

2016.　8.　　.

위 신청인 겸 채무자 대리인

법무법인 넥서스

담당 변호사 최영익

담당 변호사 김명식

담당 변호사 남지선

담당 변호사 이승현

서울중앙지방법원　귀중



법무법인 넥서스
서울 영등포구 의사당대로 97, 4층 (여의도동, 교보증권빌딩)
대표전화 02.6335.3911    팩스 02.6932.2201
www.nexuslaw.kr

43

# 별첨서류목록

1.   별첨 1-1      등기사항전부증명서(현재 유효사항)

2.   별첨 1-2      등기사항일부증명서(말소사항포함)

3.   별첨 2       반기보고서(2016.06)

4.   별첨 3       사업보고서(2015.12)

5.   별첨 4       감사보고서

6.   별첨 5       선대현황

7.   별첨 6       주요 실사조정 사항

8.   별첨 7       청산가치 주요 조정사항

9.   별첨 8       컨테이너 영업의 추정 근거

10.  별첨 9       벌크 영업의 추정 근거

11.  별첨 10      부산일보 2016년 8월 30일자 기사

12.  별첨 11-1     현금 및 현금성 자산

13.  별첨 11-2     단기금융상품

14.  별첨 11-3     매출채권 및 기타채권

15.  별첨 11-4     매출채권

16.  별첨 11-5     외상매출금

17.  별첨 11-6     타사채권

18.  별첨 11-7     대리점채권

19.  별첨 11-8     미수금

20.  별첨 11-9     미수수익

21.  별첨 11-10    단기대여금명세서

44

법무법인 넥서스
**Nexus**    서울 영등포구 의사당대로 97, 4층 (여의도동, 교보증권빌딩)
대표전화 02.6335.3911    팩스 02.6932.2201
www.nexuslaw.kr

22.   별첨 11-11      선급제세

23.   별첨 11-12      파생금융자산(유동)

24.   별첨 11-13      재고자산(저장품)

25.   별첨 11-14      기타유동자산

26.   별첨 11-15      선급금 명세

27.   별첨 11-16      선급비용명세

28.   별첨 11-17      장기매출채권 및 기타채권

29.   별첨 11-18      장기금융상품

30.   별첨 11-19      장기매출채권

31.   별첨 11-20      장기대여금

32.   별첨 11-21      임차보증금

33.   별첨 11-22      예치보증금

34.   별첨 11-23      소송구상채권

35.   별첨 11-24      만기보유금융자산(비유동)

36.   별첨 11-25      지분법 매도가능증권 명세

37.   별첨 11-26      유형자산 내역

38.   별첨 11-27      투자부동산

39.   별첨 11-28      영업권 명세

40.   별첨 11-29      회원권

41.   별첨 11-30      매입채무 및 기타채무

42.   별첨 11-31      매입채무

43.   별첨 11-32      미지급비용(이자비용)

44.   별첨 11-33      미지급금

45.   별첨 11-34      예수부가세명세


Nexus  법무법인 넥서스   서울 영등포구 의사당대로 97, 4층 (여의도동, 교보증권빌딩)
대표전화 02.6335.3911    팩스 02.6932.2201
www.nexuslaw.kr

46.   별첨 11-35        예수제세

47.   별첨 11-36        파생금융부채(유동)

48.   별첨 11-37        기타유동부채

49.   별첨 11-38        선수금

50.   별첨 11-39        선수수익

51.   별첨 11-40        단기차입금

52.   별첨 11-41        사채명세서

53.   별첨 11-42        전환사채 명세

54.   별첨 11-43        신주인수권부사채 명세

55.   별첨 11-44        장기부채명세

56.   별첨 11-45        6개년상환계획

57.   별첨 11-46        파생금융부채(비유동)

58.   별첨 11-47        소송충당부채

59.   별첨 11-48        확정급여부채 명세서

60.   별첨 11-49        대손충당금명세서

61.   별첨 11-50        자본금명세서

62.   별첨 11-51        잉여금명세서

63.   별첨 11-52        자기주식 등 기타자본 명세서

64.   별첨 11-53        매출액

65.   별첨 11-54        매출원가

66.   별첨 11-55        판관비명세서

67.   별첨 11-56        감가상각비명세서

68.   별첨 11-57        금융수익비용명세

69.   별첨 11-58        기타영업외손익



법무법인 넥서스
**Nexus** | 서울 영등포구 의사당대로 97, 4층 (여의도동, 교보증권빌딩)
대표전화 02.6335.3911    팩스 02.6932.2201
www.nexuslaw.kr

70.  별첨 11-59        예수금

71.  별첨 11-60        2016년 반기 재무제표(제출)

72.  별첨 12          이사회의사록

법무법인 넥서스
**Nexus** | 서울 영등포구 의사당대로 97, 4층 (여의도동, 교보증권빌딩)
대표전화 02.6335.3911    팩스 02.6932.2201
www.nexuslaw.kr

EXHIBIT B

# 서 울 중 앙 지 방 법 원

## 제 6 파 산 부

## 결          정

사          건        2016회합100211   회생

신 청 인 겸        주식회사 한진해운

채  무  자        서울 영등포구 국제금융로2길 25 (여의도동)

　　　　　　　　대표이사 조양호, 석태수

　　　　　　　　신청대리인 법무법인 넥서스 담당변호사 최영익, 김명식

## 주          문

이 사건에 관하여 회생절차 개시신청에 대한 결정이 있을 때까지, 모든 회생채권자 및
회생담보권자에 대하여 회생채권 또는 회생담보권에 기한 강제집행, 가압류, 가처분 또
는 담보권실행을 위한 경매절차를 금지한다.

## 이          유

채무자 회생 및 파산에 관한 법률 제45조 제1항을 적용하여 주문과 같이 결정한다.

2016. 8. 31.

재판장        판사                김정만

- 1 -

판사              심태규


판사              차승환

[English Translation]

# SEOUL CENTRAL DISTRICT COURT
## 6th BENCH OF BANKRUPTCY DIVISION
### DECISION

| | |
|---|---|
| Case: | 2016 *HoeHap* 100211 Rehabilitation |
| Applicant and Debtor: | Hanjin Shipping Co., Ltd. |
| | 25, Gukjegeumyung-ro 2-gil, Yeongdeungpo-gu, Seoul (Yeouido-dong) |
| | Representative Directors: Cho, Yang-Ho and Suk, Tai-Soo |
| | Legal Counsel for Applicant |
| | Nexus Law Group |
| | Attorney Choi, Young-Ik |
| | Attorney Kim, Myoung-Shik |

## ORDER

Until the decision on the application for commencement of rehabilitation procedure is made regarding the case above, any auction procedure for compulsory execution, provisional seizure, provisional disposition, or the exercise of security right on the basis of a rehabilitation claim or rehabilitation security right is hereby prohibited with respect to all rehabilitation creditors and rehabilitation secured creditors.

## GROUNDS

It is hereby ordered and decided pursuant to Paragraph 1, Article 45 of the Debtor Rehabilitation and Bankruptcy Act.

August 31, 2016

| | | |
|---|---|---|
| Presiding Judge | Judge | Kim, Jeong-Man |
| | Judge | Shim, Tae-Gyu |
| | Judge | Cha, Seung-Hwan |

# EXHIBIT C





# 서 울 중 앙 지 방 법 원

## 제 6 파 산 부

정본입니다.
2016. 09. 01.
법원사무관 강효성

## 결          정

사          건        2016회합100211  회생

신 청 인 겸        주식회사 한진해운

채  무  자        서울 영등포구 국제금융로2길 25 (여의도동)

대표이사 조양호, 석태수

신청대리인 법무법인 넥서스 담당변호사 최영익, 김명식

## 주          문

1. 채무자에 대하여 회생절차를 개시한다.

2. 석태수[주민등록번호 : 551103-1068518, 주소 : 서울 강서구 강서로 348, 129동 101호 (내발산동, 우장산힐스테이트)]를 채무자의 관리인으로 선임한다.

3. 관리인의 임기를 이 사건 회생계획안의 인가결정일로부터 30일까지로 한다.

4. 회생채권자, 회생담보권자 및 주주의 목록 제출기간을 2016. 9. 1.부터 2016. 9. 19. 까지로 한다.

5. 회생채권, 회생담보권 및 주식의 신고기간을 2016. 9. 20.부터 2016. 10. 4.까지로 한다.

6. 회생채권, 회생담보권의 조사기간은 2016. 10. 5.부터 2016. 10. 18.까지로 한다.

7. 회생계획안의 제출기간을 2016. 11. 25.까지로 한다.

## 이          유

※ 각 법원 민원실에 설치된 사건검색 컴퓨터의 발급번호조회 메뉴를 이용하거나, 담당 재판부에 대한 문의를 통하여 이 문서 하단에 표시된 발급번호를 조회하시면, 문서의 위, 변조 여부를 확인하실 수 있습니다.

– 1 –




## 1. 인정사실

이 사건 기록과 채무자의 대표자 심문결과에 의하면 다음 사실을 인정할 수 있다.

가. 채무자는 종전의 주식회사 한진해운이 2009. 12. 1. 한진해운홀딩스라는 지주회사로 전환되면서 그 해운사업부문을 인적분할하여 해운업, 항만용역업 등을 목적으로 설립되었고, 컨테이너선을 통한 운송사업, 벌크선을 통한 운송사업 및 터미널 운영사업을 주로 영위하고 있다.

나. 채무자는 상장법인으로 발행주식 총수는 245,269,947주(기명식 보통주, 1주당 금액 5,000원)이고, 납입자본금은 1,226,349,735,000원이며, 주식회사 대한항공이 위 주식 중 33.23%, 채무자가 3.08%, 우리사주조합이 0.34% 등을 각 보유하고 있다.

다. 채무자의 2016. 6. 30.과 최근 3년간 자산·부채 현황 및 매출·손익 현황은 다음 표와 같다. 채무자 회사는 자산이 부채를 약간 상회하나, 최근 3년간 당기순손실이 발생하고 있다.

<자산·부채 현황>　　　　　　　　　　　　　　　(단위 : 백만원)

| 구분 | 2016. 6. 30. | 2015. 12. 31. | 2014. 12. 31. | 2013. 12. 31 |
|---|---|---|---|---|
| 자산총액 | 6,624,326 | 7,385,216 | 8,083,495 | 10,091,861 |
| 부채총액 | 6,028,543 | 6,579,529 | 7,326,918 | 9,438,521 |

<매출·손익 현황>　　　　　　　　　　　　　　　(단위 : 백만원)

| 구분 | 2016. 6. 30. | 2015. 12. 31. | 2014. 12. 31. | 2013. 12. 31. |
|---|---|---|---|---|
| 매출총액 | 2,989,385 | 7,669,598 | 8,438,459 | 9,883,349 |
| 당기순손실 | 463,440 | 22,017 | 463,475 | 712,248 |

라. 채무자가 영위하는 해운업은 2008년 글로벌 금융위기 이후 지속된 글로벌 경제의 위축에 따른 수요부진으로 장기간 물동량이 감소하고 운임이 하락하여 실적이 악화되었다. 특히 2012년에 유럽의 재정위기와 중국의 경기 둔화 등으로 금융위기 이전의 장기평균을 크게 하회하는 물동량 증가속도를 보였고, 특히 유럽노선은 전년 대비 물

- 2 -




동량이 감소하였다. 기 발주 선박의 인도가 지속되면서 2012년부터 물동량 증가율을 크게 상회하는 선박공급이 이루어져서 수급불균형 현상이 심화되었다. 그리고 해운산업의 비탄력적인 공급(선복량)의 조절은 해상물동량 변동에 따른 운임의 변동폭을 키우게 되었고, 결국 해운업계 전체의 운임경쟁으로 이어졌다.

마. 채무자 회사는 이와 같은 시장상황에서 해운수요 위축과 선박 공급 과잉에 따른 영업실적 악화로 인하여 유동성 부족이 점차 심화되었다. 2015년 4분기 이후 컨테이너 운임 수준이 대폭 하락하게 됨에 따라 채무자의 영업수지가 악화되었다. 2016. 6. 30. 기준으로 1년 이내에 3조 1,405억 원의 차입금의 만기가 도래하나 현재 재무상황으로는 이를 상환하기 불가능한 상황이다.

바. 채무자는 2016년 상반기에 주채권은행인 한국산업은행과 협의를 진행하였고, 자율협약을 통한 경영정상화 추진작업을 진행하기로 결정하여 2016. 4. 25. 주채권은행에 자율협약절차를 신청하였다. 한국산업은행 등 채권금융기관은 채권금융기관협의회를 구성하여 2016. 5. 4. 채무자에 대한 자율협약절차를 진행하기로 의결하고, 3개월동안 채권행사를 유예하기로 하고 자율협약절차 기간을 1개월 연장하기도 하였는데, 2016. 8. 30. 채권금융기관 협의회가 채무자에 대한 지원이 불가능하다는 결정을 통보함에 따라 자율협약절차는 중단되었다. 이로써 채무자는 심각한 유동성 부족으로 재정적 파탄에 이르게 되었다.

2. 판    단

위 인정사실에 의하면, 채무자는 사업의 계속에 현저한 지장을 초래하지 아니하고는 변제기에 있는 채무를 갚을 수 없는 상황에 처해 있을 뿐만 아니라, 채무자에게 파산의 원인인 사실이 생길 염려가 있으므로, 채무자 회생 및 파산에 관한 법률(이하 '법'이라고 한다) 제34조 제1항에 정해진 회생절차 개시사유가 있고, 달리 법 제42조 각 호에 정해진 회생절차 개시신청의 기각사유가 있음을 단정할 만한 자료가 없다.

3. 결    론

그렇다면 이 사건 신청은 이유 있으므로 채무자에 대하여 회생절차를 개시하기로 하

2016-0076603559-E5606                        위변조 방지용 바코드 입니다.                        3 / 4



고, 법 제50조 제1항, 제74조 제2항에 따라 관리위원회의 의견을 참작하여 채무자의
대표이사인 석태수를 관리인으로 선임하기로 하며, 회생채권자·회생담보권자·주주
목록의 제출기간, 회생채권·회생담보권·주식의 신고기간, 회생채권·회생담보권의 조
사기간, 회생계획안 제출기간에 관하여는 법 제50조 제1항에 따라 주문과 같이 결정한
다.

2016. 9. 1. 19:00

재판장    판사    김정만

판사    심태규

판사    차승환

– 4 –

[English Translation]

## SEOUL CENTRAL DISTRICT COURT
## 6<sup>th</sup> BENCH OF BANKRUPTCY DIVISION
### ORDER

| | |
|---|---|
| Case: | 2016 *HoeHap* 100211 Rehabilitation |
| Applicant and Debtor: | Hanjin Shipping Co., Ltd. |
| | 25, Gukjegeumyung-ro 2-gil, Yeongdeungpo-gu, Seoul (Yeouido-dong) |
| | Representative Directors: Cho, Yang-Ho and Suk, Tai-Soo |
| | Legal Counsel for Applicant |
| | Nexus Law Group |
| | Attorney Choi, Young-Ik |
| | Attorney Kim, Myoung-Shik |

### ORDER

1. The rehabilitation procedure for the Debtor is hereby commenced.

2. Suk, Tai-Soo (Resident Registration Number: 551103-1068518, Address: 129dong 101ho, 348, Gangseo-ro, Gangseo-gu, Seoul (Naebalsan-dong, Ujangsan Hillstate)) is hereby appointed as the Debtor's Custodian.

3. The term of office for the Custodian shall be thirty (30) days from the date of the decision on the authorization of the rehabilitation plan of this case.

4. The submission period for the list of rehabilitation creditors, rehabilitation secured creditors and shareholders shall be from September 1, 2016 to September 19, 2016.

5. The reporting period for rehabilitation claims, rehabilitation security right and shares shall be from September 20, 2016 to October 4, 2016.

6. The inspection period for rehabilitation claims and rehabilitation security right shall be from October 5, 2016 to October 18, 2016.

7. The submission period for the rehabilitation plan shall be until November 25, 2016.

### GROUNDS

1. Recognized Facts

Based on the records of this case and the results of questioning the Debtor's representative, the following facts can be recognized.

A. Debtor was established for the purpose of engaging in maritime transportation business, harbor service business and other businesses in an equity spin-off of the maritime business division of the former Hanjin Shipping Co., Ltd. when it converted into a holding company called Hanjin Shipping

[English Translation]

Holdings Co., Ltd. on December 1, 2009.    Debtor is mainly engaged in the transportation business through containerships, transportation business through bulk carriers and terminal operation business.

B. Debtor is a stock-listed corporation with a total of 245,269,947 issued shares (common shares, KRW 5000 per share) and paid-in capital totaling KRW 1,226,349,735,000.    Of these shares 33.23% is owned by Korean Air Lines Co., Ltd., 3.08% by Debtor and 0.34% by employee shareholders' association.

C. The current status of Debtor's assets and liabilities, and Debtor's sales and income as of June 30, 2016 and the past three (3) years is summarized in the chart below.    Debtor Company's assets slightly exceed its liabilities but Debtor has been incurring a net-loss each term during the past three (3) years.

<Current Status of Assets and Liabilities>          (Units: KRW Million)

| Category | June 30, 2016 | December 31, 2015 | December 31, 2014 | December 31, 2013 |
|---|---|---|---|---|
| Total Assets | 6,624,326 | 7,385,216 | 8,083,495 | 10,091,861 |
| Total Liabilities | 6,028,543 | 6,579,529 | 7,326,918 | 9,438,521 |

<Current Status of Sales and Income>          (Units: KRW Million)

| Category | June 30, 2016 | December 31, 2015 | December 31, 2014 | December 31, 2013 |
|---|---|---|---|---|
| Total Sales | 2,989,385 | 7,669,598 | 8,438,459 | 9,883,349 |
| Net-loss for Term | 463,440 | 22,017 | 463,475 | 712,248 |

D. The performance of the maritime transportation business, which the Debtor is engaged in, deteriorated since the 2008 global financial crisis after a lack of demand resulting from the ongoing contraction of the global economy which led to a reduction in cargo volume and drop in freight charges over a long period of time. Due to the European financial crisis and downturn of the Chinese economy in 2012, cargo volumes had, with increasing speed, fallen short of the long-term average in the period before the financial crisis. In particular, cargo volume in the European lines had decreased compared to that of the previous year. As the delivery of previously ordered ships continued, the supply of ships greatly exceeded the rate of increase of cargo volume from 2012 and further aggravated the imbalance between supply and demand.    Adjustments to the inelastic supply (bottom) of the shipping industry led to the widening of the fluctuation range of freight charges in response to the fluctuation of maritime cargo volume, and ultimately led to an all-out freight rate war within the shipping industry.

E. In such market conditions, a decline in Debtor's business performance following a drop in shipping demand and excessive supply of ships further aggravated Debtor Company's lack of liquidity. As of June 30, 2016, Debtor's loans totaling KRW 3,140,500,000,000 will mature within one year but

[English Translation]

Debtor's current financial state renders it impossible to repay the loans.

F. In the first half of 2016, Debtor negotiated with its main creditor bank, the Korea Development Bank, and decided to proceed with the promotion of the normalization of its business by way of a voluntary agreement. Thereafter on April 25, 2016, Debtor filed an application for the procedures for a voluntary agreement to its main creditor bank. The Korea Development Bank and other creditor financial institutions formed a Creditor Financial Institution Committee and voted on May 4, 2015 to proceed with the voluntary agreement procedure for Debtor, and decided to postpone exercising claims for three months and to extend the voluntary agreement procedure period for one month. However, the voluntary agreement procedure was suspended on August 30, 2016 following a notification by the Creditor Financial Institution Committee of its decision that it was impossible to support the Debtor. With this, the Debtor was led to financial ruin due to a severe lack of liquidity.


2. Decision

According to the recognized facts above, Debtor is in a situation where it is unable to repay its payable debts without causing a substantial hindrance to the continuance of its business. Furthermore, there are some concerns about the occurrence of events that may lead to Debtor's bankruptcy. Therefore, there are grounds to commence the rehabilitation procedure provided under Paragraph 1, Article 34 of the Debtor Rehabilitation and Bankruptcy Act (herein referred to as "the Act") and otherwise there is no material to conclude the existence of grounds to dismiss the application for the commencement of the rehabilitation procedure provided under each item of Article 42 of the Act.


3. Conclusion

If that is the case, the application of this case is reasonable and therefore, the rehabilitation procedure for the Debtor shall be commenced, and taking into account the opinion of the management committee pursuant to Paragraph 1, Article 5 and Paragraph 2, Article 74 of the Act, Debtor's representative director Suk Tai-Soo shall be appointed as Custodian. With respect to the submission period for the list of rehabilitation creditors, rehabilitation secured creditors and shareholders; the reporting period for rehabilitation claims, rehabilitation security right and shares; the inspection period for rehabilitation claims and rehabilitation security rights; and the submission period for the rehabilitation plan, it is hereby ordered and decided pursuant to Paragraph 1, Article 50 of the Act.


19:00, September 1, 2016

[English Translation]

Presiding Judge          Judge    Kim, Jeong-Man

                         Judge    Shim, Tae-Gyu

                         Judge    Cha, Seung-Hwan

EXHIBIT D

# DEBTOR REHABILITATION AND BANKRUPTCY ACT

```
                        Act No. 7428, Mar. 31, 2005
        Amended by Act No. 7892, Mar. 24, 2006
                        Act No. 7894, Mar. 24, 2006
                        Act No. 7895, Mar. 24, 2006
                        Act No. 8138, Dec. 30, 2006
                  Act No. 8635, Aug.  3, 2007
                        Act No. 8814, Dec. 27, 2007
                        Act No. 8829, Dec. 31, 2007
                        Act No. 8863, Feb. 29, 2008
                        Act No. 9346, Jan. 30, 2009
                        Act No. 9804, Oct. 21, 2009
                  Act No. 10219, Mar. 31, 2010
                        Act No. 10281, May 14, 2010
                        Act No. 10303, May 17, 2010
                  Act No. 10366, jun. 10, 2010
                        Act No. 10682, May 19, 2011
                        Act No. 11828, May 28, 2013
            Act No. 12153, Jan.  1, 2014
                        Act No. 12591, May 20, 2014
                        Act No. 12595, May 20, 2014
```

**Article 1 (Purpose)**

The purpose of this Act is to efficiently rehabilitate debtors who are faced with livelihood collapse due to financial difficulties, and their businesses through coordination of legal relations among interested persons, including creditors, shareholders and equity holders, etc. and to fairly liquidate and divide assets of debtors who are deemed difficult to rehabilitate.

**Article 2 (Status of Foreigners and Foreign Corporation s)**

In the application of this Act, foreigners and foreign corporations shall have the same status as that of peoples of the Republic of Korea or corporations of the Republic of Korea.

**Article 3 (Jurisdiction)**

**Article 34 (Application Filed for Commencing Rehabilitation Procedures)**

(1) In a case falling under any of the following subparagraphs, the debtor may file an application with the court for commencing the rehabilitation procedures:

　　1. Where the debtor finds it impossible to repay his/her obligations in the repayment period without any serious hinderance to the continuation of his/her business;

　　2. Where it is feared that bankruptcy may accrue to the debtor.

(2) In cases falling under paragraph (1) 2, the person prescribed in each item of the relevant subparagraph may also file an application for commencement of rehabilitation procedures according to the classification of each of the following subparagraphs:

　　1. When the debtor is a stock company or a limited-liability company:

　　　(a) A creditor who holds a claim equivalent to not less than 1/10 of the capital;

　　　(b) A shareholder or the equity right holder who holds the share or the equity share equivalent to not less than 1/10 of the capital;

　　2. When the debtor is not a stock company or a limited-liability company:

　　　(a) A creditor who holds a claim equivalent to not less than 50 million won;

　　　(b) An equity right-holder who holds an equity share of not less than 1/10 of the total amount of investment of any general partnership, any joint venture, any corporation or anyone corresponding thereto.

(3) The court may, when any creditor, any shareholder or any equity right holder files an application for commencement of rehabilitation procedures pursuant to the provisions of paragraph (2), order the debtor to submit materials concerning the management of his/her business and the current state of his/her property.

**Article 35 (Obligation to File Bankrtcy Petition and Application for Commencement of Rehabilitation Procedures)**

(1) The liquidator of any debtor may file an application for commencement of rehabilitation procedures even when he/she files a petition of the bankruptcy of such debtor pursuant to another Act.

(2) When a corporate debtor, who is under liquidation or is declared bankrupt files an application for commencement of rehabilitation procedures, the provisions of Article 229 (1), 285 (2), 519 or 610 of the Commercial Act shall apply mutatis mutandis thereto.

**Article 36 (Written Application)**

An application for commencement of rehabilitation procedures shall be filed in the form of a written application in which the matters falling under each of the following subparagraphs are entered:

　　1. The names and domiciles of the applicant and the legal representative;

　　2. Where the debtor is an individual, the name, the resident registration number (referring to the foreigner registration number or the domestic residence number in cases of anyone who has no resident registration number; hereinafter the same shall apply) and the domicile of such debtor;

1. The act of reducing the amount of capital or investment;

2. The act of admitting equitable interest holders or issuing new shares or bonds;

3. The act of increasing the amount of capital or investment;

4. The act of performing an all-inclusive exchange of shares or all-inclusive transfer of shares;

5. The act of performing any merger, any split, any merger by split or any change in organization;

6. The act of dissolving any company or keeping any company in existence;

7. The act of distributing profits or interest.

(2) Permission therefor shall be obtained from the court, when it is intended to amend the articles of incorporation of a corporate debtor without resorting to rehabilitation procedures between the time the rehabilitation procedures commence until the time the rehabilitation procedures are completed.

**Article 56 (Management of Business and Assets after Commencement of Rehabilitation Procedures)**

(1) When it is decided to commence rehabilitation procedures, the authority to conduct the debtor's business, and manage and dispose of his/her assets shall be exclusively vested in a custodian.

(2) The directors of a debtor who is an individual or the debtor who is not an individual shall be prohibited from infringing on, or interfering with the exercise of the authority of any custodian referred to in the provisions of paragraph (1).

**Article 57 (Furnishing of Information, etc.)**

A custodian shall furnish information and materials pertaining to the debtor's business and enterprise to anyone who intends to perform an act falling under any of the following subparagraphs under the conditions as prescribed by the Supreme Court: Provided, That when any justifiable grounds exist, the custodian may refuse to furnish such information and materials:

1. The act of acquiring by transfer the whole or part of the debtor's business, enterprise and major assets;

2. The act of acquiring by transfer, the debtor's shares or equity shares with the aim of taking over the debtor's governance right;

3. The act of performing an all-inclusive exchange and an all-inclusive transfer of the debtor's shares, any merger or merger by split of the debtor's business.

**Article 58 (Suspension, etc. of Other Procedures)**

(1) Where a decision to commence rehabilitation procedures is made, any of the following acts shall be prohibited:

1. A petition for bankruptcy or an application for the commencement of rehabilitation procedures;

2. Compulsory execution, etc. based on any rehabilitation claim or rehabilitation security right;

3. Any disposition for arrears, based on any claims by which taxes are to be collected according to the example of collecting a national tax and which do not take priority over general rehabilitation claims in collection.

(2) Where the commencement of rehabilitation procedures has been decided, any of the following procedures shall be suspended:

1. The bankruptcy procedure;

2. Compulsory execution, etc. based on any rehabilitation claim or rehabilitation security right;

3. Disposition for arrears, based on any claims by which taxes are to be collected according to the example of collecting a national tax and which do not take priority over general rehabilitation claims in collection.

(3) Where the commencement of rehabilitation procedures has been decided, any disposition for arrears against the debtor's property based on any rehabilitation claim or rehabilitation security right pursuant to the National Tax Collection Act or the Framework Act on Local Taxes, any disposition for arrears based on any claims by which taxes are to be collected according to the example of collecting a national tax and which take priority over general rehabilitation claims in collection, and any disposal of the goods which are offered as a guarantee for tax liability shall not be taken, and dispositions which have already been taken shall be suspended. In such cases, if deemed necessary, the court may, upon request by a custodian or ex officio, extend the period by up to one year: *<Amended by Act No. 10219, Mar. 31, 2010>*

1. A period from the date on which the commencement of rehabilitation procedures has been decided until the date on which the rehabilitation plan is authorized;

2. A period from the date on the commencement of rehabilitation procedures has been decided until the date on which the rehabilitation procedures are completed;

3. A period from the date on which the commencement of rehabilitation procedures has been decided until the date on which two years lapse thereafter.

(4) The prescription shall not proceed during the period when the disposition may not be taken or is under suspension pursuant to the provisions of paragraph (3).

(5) Where it is deemed that the rehabilitation is not likely to be obstructed, the court may, upon request by a custodian or a person who is authorized to collect taxes with respect to any claim provided for in Article 140 (2), or ex officio, order the continuation of the procedure or disposition which is suspended pursuant to the provisions of paragraph (2), and where deemed necessary for rehabilitation, the court may, upon request by a custodian or ex officio, order the cancellation of the procedure or disposition which is suspended pursuant to the provisions of paragraph (2), with or without any security required to be offered: Provided, That the same shall not apply to bankruptcy procedures.

(6) Claims for expenses against the debtor with respect to the procedures or dispositions which continue pursuant to the provisions of paragraph (5) shall be made public-interest claims.

**Article 59 (Suspension, etc. of Litigation Procedures)**

(1) When it is decided to commence rehabilitation procedures, litigation procedures on the debtor's assets shall be suspended.

(2) Any custodian or any other party may subrogate any litigation procedures that are unrelated to the rehabilitation claim or the rehabilitation security right among those litigation procedures suspended pursuant to the provisions of paragraph (1). In this case, the claim for litigation expenses on the debtor shall be made public-interest claims.

(3) When the rehabilitation procedures are completed prior to the subrogation referred to in the provisions of paragraph (2), the debtor shall take subrogation of the litigation procedures as a matter of course.

(4) When the rehabilitation procedures are completed after the subrogation is made pursuant to the provisions of paragraph (2), the litigation procedures shall be suspended. In this case, the debtor shall subrogate the litigation procedures.

(5) In cases falling under paragraph (4), any other party may also subrogate the litigation procedures.

(6) The provisions of paragraphs (1) through (5) shall apply mutatis mutandis to cases involving the debtor's property that are pending in the administrative agencies at the time that rehabilitation procedures commence.

### Article 60 (Transfer)

(1) The rehabilitation court (referring to the district court in which a rehabilitation case is pending; hereinafter the same shall apply) may, when any lawsuit involving the debtor's assets is pending in another court at the time that the rehabilitation procedures commence, claim the transfer of such lawsuit to it by its decision. The same shall apply to cases where such lawsuit is pending in another court after the rehabilitation procedures commence.

(2) When the decision referred to in paragraph (1) is made, the court shall, upon receiving the claim for the transfer of the lawsuit, transfer it to the rehabilitation court.

(3) The transfer referred to in paragraph (2) may be peformed even during the interruption or the suspension of the litigation procedures.

(4) The provisions of paragraphs (1) through (3) shall not apply to any lawsuit that is pending in an appellate court.

### Article 61 (Act Needed to Obtain Permission from Court)

(1) When any custodian intends to perform an act falling under any of the following subparagraphs and it is deemed necessary, the court may require him/her to obtain its permission therefor:

    1. The act of disposing of any assets;

    2. The act of acquiring any assets by transfer;

    3. The act of leasing assets including the borrowing of any funds;

    4. The act of cancelling or terminating any contract pursuant to the provisions of Article 119;

    5. The act of filing a lawsuit;

    6. The act of making a compromise or concluding any arbitration agreement;

    7. The act of relinquishing any rights;

    8. The act of approving public-interest claims or rights of re-acquisition;

    9. Other acts designated by the court.

(2) Every custodian shall be prohibited from performing acts falling under any of the following subparagraphs without obtaining permission therefor:

    1. The act of acquiring the debtor's business or assets by transfer;

2. The act of transferring his/her business or assets to the debtor;

3. The act of effecting any transaction with the debtor in the interest of himself and any third person.

(3) The acts referred to in each subparagraph of paragraph (1) or (2) that is performed without obtaining the court's permission therefor shall be invalidated: Provided, That such act cannot set aside with any bona fide third person.

**Article 62 (Transfer of Business, etc.)**

(1) If it is deemed necessary to rehabilitate a debtor, any custodian may transfer the whole or the main part of the business or the enterprise of such debtor after obtaining the court's permission therefor after the rehabilitation procedures commence even before the rehabilitation plan is authorized.

(2) When the count grants the permission referred to in the provisions of paragraph (1), it shall hear the opinion of each person falling under the following subparagraphs:

1. The Custodial Committee;

2. The Creditors' Consultative Council;

3. The union that is organized by a majority of the debtor's workers;

4. When the union referred to in subparagraph 3 is not organized, the person who represents a majority of the debtor's workers.

(3) Where the permission referred to in the provisions of paragraph (1) is granted, the court shall determine ways to spend the transfer price.

(4) Where the permission referred to in paragraph (1) is granted, when the total amount of all obligations of the corporate debtor exceed his/her total amount of assets, the court may substitute such permission for a resolution passed at the general meeting of shareholders provided for in the provisions of Article 374 (1) of the Commercial Act by its inherent jurisdiction or upon receiving an application filed by the custodian. In this case, the provisions of Articles 374 (2) and 374-2 of the Commercial Act and the provisions of Article 165-5 (Special Cases concerning Appraisal Rights of Shareholders) of the Financial Investment Services and Capital Markets Act shall not apply thereto. *<Amended by Act No. 12595, May 20, 2014 >*

(5) The provisions of Article 61 (3) shall apply mutatis mutandis to any act that is performed without obtaining the permission referred to in the provisions of paragraph (1).

**Article 63 (Service, etc. of Decision on Permission to Transfer Business, etc. of Stock Company)**

(1) The court shall, when it makes the decision provided for in the provisions of Article 62 (4), serve a written decision on any custodian and also serve a written statement containing summary of such decision on each of shareholders.

(2) The effect of a decision made pursuant to the provisions of Article 62 (4) shall accrue when it is served on the custodian.

(3) Any shareholder may immediately file an appeal against a decision that is made pursuant to the provisions of Article 62 (4).

**Article 64 (Act of Debtor after Commencement of Rehabilitation Procedures)**

(2) The inspectors shall be selected and appointed from among persons of profound learning and experience in inspection, who have no interests in the rehabilitation procedures.

(3) When the court selects and appoints inspectors, it may require such inspectors to inspect the matters provided for in the provisions of Articles 90 through 92 for a fixed period and ask them to put forward their opinions as to whether it is appropriate to continue the rehabilitation procedures.

(4) When it is deemed necessary, the court may require the inspectors to inspect other matters than the matters referred to in the provisions of paragraph (3) and to report the result of such inspection.

(5) When reasonable grounds exist, the court may dismiss any inspector by its inherent jurisdiction or upon receiving an application filed by any interested person. In this case, the court shall question the relevant inspector.

### Article 88 (Mutatis Mutandis Application of Provisions Governing Inspectors)

The provisions of Articles 79, and 81 through 83 (1) shall apply mutatis mutandis to the inspectors.

### Article 89 (Management of Debtor's Business and Property)

Every custodian shall attend to the tasks of managing the debtor's business and assets immediately after he/she assumes his/her post.

### Article 90 (Appraisal of Asset Value)

Every custodian shall appraise without delay the value of all of the assets that belong to the debtor at the time that rehabilitation procedures commence after he/she takes up his/her post. In this case, the relevant custodian shall allow the debtor to participate in the appraisal thereof, save when his/her participation is feared to delay the appraisal of such value.

### Article 91 (Preparation of Assets Inventory and Balance Sheet)

Every custodian shall prepare an inventory of the debtor's assets and balance sheet at the time that the rehabilitation procedures commence and then submit them to the court immediately after assuming their posts.

### Article 92 (Inspection and Report by Custodians)

Every custodian shall promptly inspect the matters falling under each of the following subpargraphs and then report the result of the inspection to the court and the Custodial Committee on or before the date on which the first assembly of interested persons is held:

1. Circumstances in which the debtor has to face the commencement of rehabilitation procedures;

2. Matters concerning the debtor's business and assets;

3. Whether circumstances exist that require the preservation disposition provided for in the provisions of Article 114 (1) or the final inspection judgment provided for in the provisions of Article 115 (1);

4. Other matters that are necessary for the debtor's rehabilitation.

### Article 93 (Other Reports, etc.)

Every custodian shall report the current state of the management of the debtor's business and assets in addition to the matters provided for in the provisions of Articles 90 through 92 and other matters that are ordered by the court under the conditions as prescribed by the court and prepare the debtor's asset

(4) When the debtor's total obligations exceed his/her total assets at the time that a draft plan for amending the rehabilitation plan is submitted pursuant to the provisions of Article 282, shareholders and equity right holders shall not have any voting rights on such draft plan for amending the rehabilitation plan.

**Article 147 (List of Rehabilitation Creditors, Rehabilitation Secured Creditors, Shareholders and Equity Right Holders)**

(1) Every custodian shall prepare a list of rehabilitation creditors, the list of rehabilitation secured creditors, and the list of shareholders and equity right holders (hereinafter referred to as "lists" in this Part) and submit them within the period provided for in the provisions of Article 50 (1) 2.

(2) The matters falling under each of the following subparagraphs shall be noted in the lists:

    1. List of rehabilitation creditors:

        (a) The names and domiciles of rehabilitation creditors;

        (b) The details of and grounds for such rehabilitation claims;

        (c) The amount of voting rights;

        (d) When there are claims that have general priority rights, the gist thereof;

    2. List of rehabilitation secured creditors:

        (a) The names and domiciles of rehabilitation secured creditors;

        (b) The details of, and grounds for such rehabilitation security rights, the purposes for the security rights, their values and when anyone other than the debtor for whom the rehabilitation procedures commence is a debtor, his/her name and domicile;

        (c) The amount of voting rights;

    3. List of shareholders and equity right holders:

        (a) The names and domiciles of shareholders and equity right holders;

        (b) The kinds and the number of shares or equity shares.

(3) The court shall make it possible for interested persons to inspect the lists during the reporting period.

(4) Any custodian may alter or correct the matters noted on the lists after obtaining permission therefor from the court under the conditions prescribed by the rules of the Supreme Court by the last day of the reporting period.

**Article 148 (Report on Rehabilitation Claims)**

(1) Any rehabilitation creditor who intends to participate in the rehabilitation procedures shall report the matters falling under each of the following subparagraphs to the court and submit evidential documents thereof, or certified copies or abridged copies of such evidential documents to the court within the reporting period:

    1. His/her name and domicile;

    2. The details and grounds for his/her rehabilitation claim;

    3. The amount of his/her voting rights;

    4. When his/her claim holds a general priority right, the gist thereof.

(2) Any rehabilitation creditor shall report separately the portion of the general priority right among his/her rehabilitation claims.

(3) When any lawsuit is pending at the time that the rehabilitation procedures commence for rehabilitation claims, the relevant rehabilitation creditor shall report the court, parties, the case name and the case number, other than the matters that are prescribed in the provisions of paragraphs (1) and (2).

**Article 149 (Report on Rehabilitation Security Rights)**

(1) Any rehabilitation secured creditor who intends to participate in rehabilitation procedures shall report the matters falling under each of the following subparagraphs to the court and submit evidential documents thereof, or certified copies or abridged copies of such documents to the court within the report period:

1. His/her name and domicile;

2. The details of, and grounds for his/her rehabilitation security right;

3. The purpose for and value of his/her rehabilitation security right;

4. The amount of his/her voting rights;

5. When anyone is a debtor, other than the debtor for whom the rehabilitation procedures commence, the former's name and domicile.

(2) The provisions of Article 148 (3) shall apply mutatis mutandis to cases under paragraph (1).

**Article 150 (Report on Shares and Equity Shares)**

(1) Any shareholder or any equity right holder who intends to participate in rehabilitation procedures shall report the matters falling under each of the following subparagraphs to the court and submit his/her share certificate or his/her equity share certificate and evidential documents or certified copies or abridged copies thereof to the court:

1. His/her name and domicile;

2. The kinds, the number or the amount of his/her shares or his/her equity shares.

(2) The court may order the list of shareholders to be closed to the public for a fixed period. In this case, the fixed period shall not exceed two months.

(3) The provisions of Article 148 (3) shall apply mutatis mutandis to cases under paragraph (1).

**Article 151 (Legal Fiction of Reporting)**

Rehabilitation claims, rehabilitation security rights, shares or equity shares that are noted on the list shall be deemed to have been reported pursuant to the provisions of Articles 148 through 150.

**Article 152 (Post-Reporting Supplementations)**

(1) When any rehabilitation creditor or any rehabilitation secured creditor fails to make the report within the reporting period on grounds for which he/she has no responsibility, he/she may supplement such report within one month after such grounds cease to be relevant.

(2) The period referred to in the provisions of paragraph (1) shall be an invariable period.

(3) The report referred to in the provisions of paragraph (1) shall not be made in instances falling under either of the following subparagraphs:

(3) The agent referred to in the provisions of paragraphs (1) and (2) shall submit a written statement attesting to the authority for his/her agency.

**Article 165 (Presence of Custodians)**

The inspection of any rehabilitation claim and any rehabilitation security right shall not be conducted without the presence of the relevant custodian on the special inspection date.

**Article 166 (Confirmation of Rehabilitation Claims and Rehabilitation Security Rights, etc.)**

When no objection is raised by any custodian, any rehabilitation creditor, any rehabilitation secured creditor, any shareholder and any equity right holder during the inspection period or on the special inspection date, the features of the rights and the amount of the voting rights falling under both of the following subparagraphs shall be confirmed, and with respect to any claim with the priority rights, its priority right shall be confirmed:

   1. Rehabilitation claims and rehabilitation security rights that are reported;

   2. When any rehabilitation claim or any rehabilitation security right that is reported is nonexistent, the rehabilitation claim or the rehabilitation security right that is recorded on the list submitted by any custodian.

**Article 167 (Recording on Table of Rehabilitation Creditors and Table of Rehabilitation Secured Creditors)**

(1) The court official of Grade V, etc. shall record the results of the inspection of rehabilitation claims and rehabilitation security rights on the table of rehabilitation creditors and the table of rehabilitation secured creditors. The same shall apply to any objections raised by debtors.

(2) The court official of Grade V, etc. shall record the gist of confirmation in the evidential documents of the rehabilitation claims and the rehabilitation security rights that are confirmed and affix the court seal to each of them.

(3) The court official of Grade V, etc. shall, upon receiving a claim filed by any rehabilitation creditor or any rehabilitation secured creditor, deliver to him/her an abridged copy of the table of rehabilitation creditors or the table of rehabilitation secured creditors on their rights.

**Article 168 (Effect of Entries)**

When any rehabilitation claim and any rehabilitation security right that are confirmed are recorded in the table of rehabilitation creditors and the table of rehabilitation secured creditors, such entries shall have the same effect as the effect of a final judgment on all of them recorded on the tables.

**Article 169 (Notification of Objection)**

When an objection to any rehabilitation claim or any rehabilitation security right is raised, the court shall notify the rightful claimants of such objection.

**Article 170 (Final Judgement on Inspection of Rehabilitation Claims and Rehabilitation Security Rights)**

(1) When any custodian, any rehabilitation creditor, any rehabilitation secured creditor, any shareholder or any equity right holder raises an objection to any rehabilitation claim and any rehabilitation security right

that are recorded on the list or reported, the rightful claimant who holds the rehabilitation claim or the rehabilitation security right (hereinafter referred to as "objection to claims" in this Part) may file an application with the court for a final claim inspection judgment (hereinafter referred to in this Part as a "final claim inspection judgment") for the confirmation of his/her claim and rights with all of the objectors as the other parties: Provided, That the same shall not apply to cases under Articles 172 and 174.

(2) The application referred to in the main sentence of paragraph (1) shall be filed within one month from the last day of the inspection period or from the special inspection date.

(3) The final claim inspection judgment shall determine whether claims to which any objection is raised exist and the contents of such objection.

(4) When the court gives the final claim inspection judgment, it shall examine objectors.

(5) The court shall deliver a written decision on the final claim inspection judgment to each of the parties.

## Article 171 (Appeal against Final Claim Inspection Judgment)

(1) Anyone who is dissatisfied with a final claim inspection judgment may file an appeal against such final claim inspection judgment within one month from the date on which he/she receives service of the written judgment thereon.

(2) The appeal referred to in the provisions of paragraph (1) shall be placed under the exclusive jurisdiction of the rehabilitation court.

(3) When anyone who files the appeal referred to in the provisions of paragraph (1) is a rightful claimant who holds any claim to which the objection is raised, all of the objectors shall be adjoined as defendants and when he/she is an objector, the rehabilitation creditors or the rehabilitation secured creditors shall be adjoined as defendants.

(4) No arguments can be presented for the appeal referred to in the provisions of paragraph (1) until after the lapse of one month from the date on which the written decision is served.

(5) When multiple lawsuits are pending on the same claim to which an objection is raised, the court shall combine arguments therefor.

(6) With respect to the appeal referred to in the provisions of paragraph (1), unless the appeal is unlawful, the court shall grant the final claim inspection judgment or make a ruling to amend such final claim judgment inspection.

## Article 172 (Taking Assignment of Lawsuit on Objection to Claims)

(1) Where any lawsuit on claims to which an objection is raised is pending at the time that rehabilitation procedures commence, when any rehabilitation creditor or any rehabilitation secured creditor intends to have such claims confirmed, all of the objectors shall take over the litigation procedures as other parties of the lawsuit.

(2) The provisions of Articles 167 (3) and 170 (2) shall apply mutatis mutandis to any application that is filed for taking assignment of the litigation procedures.

## Article 173 (Restrictions on Assertions)