**FOX ROTHSCHILD LLP**
75 Eisenhower Parkway, Suite 200
Roseland, New Jersey 07068
973-992-4800
Richard M. Meth, Esq.
RMeth@foxrothschild.com

- and -

**CLIFFORD CHANCE US LLP**
31 West 52 Street
New York, New York 10019
212-878-8000
Douglas E. Deutsch, Esq.
douglas.deutsch@cliffordchance.com
Sarah N. Campbell, Esq.
sarah.campbell@cliffordchance.com

*Counsel for Total Terminals International, LLC*

---

| | |
|---|---|
| In re: | Case No. 16-27041 (JKS) |
| HANJIN SHIPPING CO., LTD., | Chapter 15 |
| Debtor in a Foreign Proceeding. | Hearing Date: September 6, 2016 at 2:00 p.m. |

---

**TOTAL TERMINALS INTERNATIONAL, LLC 'S LIMITED OBJECTION TO
MOTION OF FOREIGN REPRESENTATIVE FOR
ENTRY OF PROVISIONAL AND FINAL ORDERS GRANTING
RECOGNITION OF FOREIGN MAIN PROCEEDING AND
CERTAIN RELATED RELIEF PURSUANT TO
SECTIONS 362, 365, 1517, 1519, 1520, 1521, AND 105(A) OF BANKRUPTCY CODE**

Total Terminals International, LLC ("TTI"), by its undersigned counsel, files this limited

objection (the "Objection") to the *Foreign Representative's Motion for Entry of Provisional and*

*Final Orders Granting Recognition of Foreign Main Proceeding and Certain Related Relief*

ACTIVE 42112124v1 09/06/2016

*Pursuant to Sections 362, 365, 1517, 1519, 1520, 1521, and 105(a) of the Bankruptcy Code* [Docket No. 5] (the "Motion"), and respectfully states as follows:

## PRELIMINARY STATEMENT

1. TTI is a joint venture owned by Hanjin Shipping Co., Ltd. ("Hanjin" or the "Debtor") and Terminal Investment Limited, S.A. TTI operates two marine terminals in the United States - one in Long Beach, California and another in Seattle, Washington - and provides services to Hanjin and other ocean common carriers at these locations. There are currently Hanjin vessels off shore near Long Beach which have not docked due to fears of arrest and seizure upon doing so. Upon entry of the requested provisional relief by this Court, it is expected that these vessels will seek to berth and unload their cargo at TTI's ports utilizing the services of TTI.

2. The process associated with berthing and unloading cargo involves a complex orchestration of multiple steps involving numerous counterparties (including TTI), all of whom must agree to act. The Motion will not ensure these parties act. In fact, TTI is not aware of any provision having been made to date for how the process will be implemented or how the Debtor proposes to pay for these services. This lack of a short term plan for these vessels will lead to mayhem. The vessels will have no means to berth (as the tugs and tug operators will not service them) and no ability to unload (as the unions and port operators will not serve them). And even if these tasks are somehow accomplished, Hanjin must provide fuel and supplies for its ships, but they do not appear to be able to pay these bills. The result could be that the vessels remain at TTI's berths indefinitely without the ability to depart, leaving TTI with no ability to free up these berths. This would be disastrous for Hanjin and TTI.

3. TTI is supportive of the Debtor's desire to continue to operate and to protect its assets. Indeed, TTI's largest customer (and majority owner) is Hanjin and, as such, TTI has an

interest in Hanjin's success in its efforts to reorganize. But the Korean proceeding has the attributes of a *de facto* liquidation. There is no plan and there is no financing.[1] The Court, therefore, should approach the requested relief sought here with caution and take into account the needs of creditors, as well as the debtor, as is required under the statute.

4. Before the Court acts, and within the next several days, Hanjin should meet with its US creditors and reach a short term plan to address the berthing and departure of its vessels and satisfaction of its post-petition obligations associated with these activities. Entering the proposed order "as is" will not likely result in a successful outcome and, in fact, seems likely to create much more harm than good for the reasons noted.

## BACKGROUND

5. Hanjin and TTI are parties to Terminal Services Agreements for Long Beach and Seattle, dated December 23, 2011 and January 2, 2012, respectively (collectively, the "Terminal Services Agreements").

6. Pursuant to the Terminal Services Agreements, Hanjin utilizes the Seattle and Long Beach terminals for the berthing, loading, discharging and handling of Hanjin vessels. These services include Basic Stevedoring Services. Among other things, TTI (a) is responsible for the planning and stowage of Hanjin cargo to be loaded and unloaded, (b) provides receiving and delivery services to Hanjin (including provision of labor and equipment and clerical personnel for proper receipt, delivery and tracing of containers), and (c) is responsible for providing security for Hanjin cargo while at the terminal.

---

[1] Prior to the filing of the proceeding in Korea, it was reported that Hanjin was likely to liquidate. At this time, it does not appear that Hanjin has any bankruptcy financing. Accordingly, it seems very possible that Hanjin is or will be administratively insolvent and that the legal equivalent of U.S. "administrative claims" will not be paid in the Korean proceeding. Hanjin is already indebted to TTI in respect of pre-petition services in excess of US $50 million (over four months past due).

- 3 -

7.     Hanjin's corporate rehabilitation in the South Central District Court of Korea (the "Korean Proceeding") was commenced on September 1, 2016 (the "Commencement Date") and the court appointed as the receiver Mr. Tai-Soo Suk, who is currently one of the representative directors of Hanjin.  As of the Commencement Date, Hanjin owed TTI over $50 million.  This obligation is substantial in comparison to TTI's total annual revenues (US $567 million in 2015).

8.     On September 2, 2016, Hanjin filed a petition for recognition of the Korean Proceeding under chapter 15 of the Bankruptcy Code (the "Chapter 15 Case") in the United States Bankruptcy Court for the District of New Jersey.  On that same day, Hanjin also filed its Motion.

## LIMITED OBJECTION

9.     The Motion seeks, among other things, an order applying sections 362 and 365 of the Bankruptcy Code pursuant to sections 1519 and 1521.  Although section 365 is not specifically enumerated in section 1521, Hanjin is seeking the relief under the "catch-all" provision that exists in section 1521(a)(7).  *See* Motion at 17.  Hanjin explains in the Motion that it "must have certainty that U.S. contract counterparties will not terminate or exercise remedies under the prepetition agreements and will continue performing thereunder."  Motion at ¶ 20; *see also* Motion at ¶ 21 (regarding provisional relief).

10.    At this point in time, TTI does not object to Hanjin's protection of its assets. However, whether intentional or not, the effect of Hanjin's request may also be to require TTI to continue to provide costly direct post-petition services for which it will never be paid and, if Hanjin has not fulfilled its obligations to local unions, tugs, fuel companies and others, leave TTI with Hanjin's stranded vessels at its berths, putting TTI's business itself at tremendous risk.

11.    Hanjin would create these risks by, among other things, eliminating TTI's ability to reject the Terminal Services Agreements under section 365 of the Bankruptcy Code and

- 4 -

prohibiting TTI from enforcing any maritime liens that have been or will be created (in addition to any liens created under California law). Hanjin is seeking this relief without, among other things, providing TTI with adequate protection for the loss of its property rights.

12. Under section 1522(a), the court may grant, modify or terminate any relief sought under sections 1519 and 1521 to ensure that the interests of creditors and other interested entities, including the debtor, are sufficiently protected. Additionally, the court may refuse to take any action on the basis of public policy. *See* 11 U.S.C. §1506.

13. TTI asserts that (a) Hanjin and its service providers should promptly meet and confer on a process to ensure that (i) the vessels will be able to berth and depart in an orderly and timely manner, (ii) all post-petition obligations associated with these activities are satisfied or guaranteed in some manner, and (iii) another hearing on this matter is scheduled in the next several days, (b) if any relief is to be entered, that such relief be limited to pre-petition obligations so that service providers and creditors are not obligated to provide post-petition services to Hanjin without payment of those services or some form of guarantee of payment or that Hanjin otherwise provide adequate protection for the related liens that exist or will be created, and (c) Hanjin should be required to demonstrate that the crew, tug, fuel and other costs that would normally be borne by Hanjin during a call at TTI's terminals will be satisfied and that TTI will not be left with stranded vessels in its berths.

14. Finally, as the requested provisional relief is preliminary in nature, TTI requests that the Order include the following additional language, which is typically included in preliminary Chapter 15 orders of this nature:

> The findings of fact and conclusions of law herein are preliminary and solely for the purposes of this Order and are without prejudice to any party's rights to relitigate such findings of fact and

conclusions of law in connection with any further proceedings in this chapter 15 case or any other case or proceeding.

## CONCLUSION

15. For all of the foregoing reasons, TTI respectfully request that this Court deny the Motion in part to the extent set forth herein, and that it grant such further relief as is appropriate and necessary.

Dated: September 6, 2016
       Roseland, New Jersey

**FOX ROTHSCHILD LLP**
Counsel for Total Terminals International, LLC

By: /s/ Richard M. Meth
    RICHARD M. METH

- and -

**CLIFFORD CHANCE US LLP**
Douglas E. Deutsch, Esq.
Sarah N. Campbell, Esq.
31 West 52 Street
New York, New York 10019
douglas.deutsch@cliffordchance.com
sarah.campbell@cliffordchance.com

ACTIVE 42112124v1 09/06/2016