UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

WASSERMAN, JURISTA & STOLZ, P.C.
110 Allen Road, Suite 304
Basking Ridge, New Jersey 07920
Phone: (973) 467-2700
Fax: (973) 467-8126
dstolz@wjslaw.com

SIMMS SHOWERS LLP
201 International Circle
Baltimore, Maryland 21030
Phone: (410) 783-5795
Fax: (410) 510-1789
jssimms@simmsshowers.com

Attorneys for OceanConnect Marine, Inc., Glencore, McAllister Towing & Transportion, Inc., and Moran Towing Corporation

| | |
|---|---|
| In Re:<br>Hanjin Shipping Co., Ltd. | Case No.: 16-27041 (JKS)<br>Chapter: 15<br>Hearing Date: September 9, 2016<br>Judge: John K. Sherwood |

**LIMITED OBJECTION OF MARITIME LIEN HOLDERS
OCEANCONNECT MARINE, GLENCORE, MCALLISTER AND MORAN
TO RECOGNITION OF FOREIGN PROCEEDING AND RELATED RELIEF,
FURHTER SUPPORTING MARITIME LIEN RIGHTS
AND FOR SECURITY OR STAY LIFT TO PROCEED WITH
<u>VESSELS ARREST</u>**

Maritime Lien Creditors OceanConnect Marine, Inc., Glencore, McAllister Towing & Transportation, Inc., and Moran Towing Corporation (herein the "Maritime Lien Creditors") hold maritime liens against the following Hanjin-owned or chartered vessels which are presently or soon will be in the U.S.:

**M/V SEASPAN EFFICIENCY - to Arrive Savannah GA / Wilmington NC**

| Maritime Lien Claimant | Necessary Provided to Vessel | Date(s) | Location of Provision | Amount Total |
|---|---|---|---|---|
| OceanConnect | Marine Fuel | 8/27/2016 | NY, NY | $837,338.76 |
| Moran | Tug Services | 8/30/2016 | NY, NY | $12,351.08 |
| | | | Total: | $849,689.84 |

**M/V HANJIN MONTEVIDEO - to arrive Long Beach, CA**

| Maritime Lien Claimant | Necessary Provided to Vessel | Date(s) | Location of Provision | Amount Total |
|---|---|---|---|---|
| OceanConnect | Marine Fuel | 8/18, 30 / 2016 | Shanghai, Long Beach | $288,169.15 |
| McAllister | Tug Services | 4/26/2016 | Wilmington NC | $5,100.00 |
| | | | **Total:** | **$ 293,269.15** |

**M/V HANJIN YANTIAN - to arrive Oakland**

| Maritime Lien Claimant | Necessary Provided to Vessel | Date(s) | Location of Provision | Amount Total |
|---|---|---|---|---|
| OceanConnect | Marine Fuel | 8/25, 30 / 2016 | Oakland, Long Beach | $357,139.40 |
| | | | **Total:** | **$ 357,139.40** |

**M/V HANJIN GREECE - to arrive Long Beach**

| Maritime Lien Claimant | Necessary Provided to Vessel | Date(s) | Location of Provision | Amount Total |
|---|---|---|---|---|

| Maritime Lien Claimant | Necessary Provided to Vessel | Date(s) | Location of Provision | Amount Total |
|---|---|---|---|---|
| Glencore (OceanConnect affiliate) | Marine Fuel | 8/7/2016 | Long Beach | $117,048.00 |
| | | | Total: | **$  117,048.00** |

**M/V HANJIN GDYNA - to arrive Long Beach**

| Maritime Lien Claimant | Necessary Provided to Vessel | Date(s) | Location of Provision | Amount Total |
|---|---|---|---|---|
| McAllister | Tug Services | 4/28/2016 | Wilmington, NC | $6,800.00 |
| | | | Total: | **$  6,800.00** |

The United States Bankruptcy Court for the District of Delaware addressed maritime liens as follows:

> The federal maritime lien is a unique security device, serving the dual purpose of keeping ships moving in commerce while not allowing them to escape their debts by sailing away. The lien is a special property right in the vessel, arising in favor of the creditor by operation of law as security for a debt or claim." *Equilease Corp. v. M/V Sampson*, 793 F.2d 598, 602 (5th Cir. 1986) [**5] (citations omitted). A maritime lien is grounded in "the legal fiction that the ship itself caused the loss and may be called into court to make good." *Ventura Packers, Inc. v. F/V Jeanine Kathleen*, 305 F.3d 913, 919 (9th Cir. 2002). This "personifies a vessel as an entity with potential liabilities independent and apart from the personal liability of its owner," giving the maritime lien claimant the right to seize the vessel and have it sold to satisfy the debt owed. *Equilease*, 793 F.2d at 602 (citations omitted). *See generally*, Robert Force & Martin Norris, 1 The Law of Seamen § 20:3 (5th ed. 2004).
>
> When a maritime lien attaches to a vessel, it accompanies the ship everywhere and through all transfers of ownership, even into the hands of a bona fide purchaser without notice, unless the transferee has acquired title through an *in rem* judicial proceeding that extinguishes the lien. *See* Michael J. Ende, *Adrift on a Sea of Red Ink: the Status of Maritime Liens in Bankruptcy*, 11 Fordham Int'l L.J. 573, 588 (1988) (arguing that bankruptcy courts, as courts with *in rem* jurisdiction over the debtor's assets, should have [**6] the power to sell vessels free and clear of maritime liens).

> The perfection of a maritime lien does not require that a creditor record his lien, obtain possession of the vessel, or file a claim against the ship. *See, e.g., Bermuda Express, N.V. v. M/V Litsa (Ex. Laurie U)*, 872 F.2d 554, 557-58 (3d Cir. 1989). Rather, the lien attaches and is perfected when the underlying debt or claim arises. *See, e.g., Equilease*, 793 F.2d at 603. For these reasons, maritime liens are often characterized as "secret liens" because third parties may have no notice that they exist. *Id. See also, Bermuda Express*, 872 F.2d at 558. Although maritime liens were created by common law, they have largely been codified in the Commercial Instruments and Maritime Lien Act ("the Maritime Lien Act"). *See* 46 U.S.C. §§ 30101-31343 (1989).

*In re Muma Servs.*, 322 B.R. 541, 546 (Bankr. D. Del. 2005).

> The Maritime Lien Act provides that when a vessel is sold in an in rem action by order of a court of competent jurisdiction the maritime lien claims attach to the proceeds of the sale in accordance with their priorities. 46 U.S.C. § 31326(a) & (b). This is similar to the sale of property free of liens under section 363 of the Bankruptcy Code [**8] . 11 U.S.C. § 363(f). *See also, EEOC v. Knox-Schillinger (In re TWA)*, 322 F.3d 283, 290-92 (3d Cir. 2003) (holding that section 363(f) permits sale free and clear of interests as well as traditional liens on property, with such claims relegated to the proceeds of sale).
>
> Generally, maritime liens must be satisfied before non-maritime liens. *See, e.g., McAllister Towing v. Ambassador Factors (In re Topgallant Lines)*, 154 B.R. 368, 376 (S.D. Ga. 1993). Maritime liens are ranked first by class and then by priority within each class. All maritime liens of the same class must be satisfied in full before payment can be made on any lien of a lower class. *See, e.g.,United States v. One (1) 254 Ft. Freighter, the M/V Andoria*, 570 F. Supp. 413, 415 (E.D. La. 1983) ("If the funds are insufficient to pay the next lower ranked class in full, the available funds will be distributed among claimants in that class according to the rules operating within that class.") Within a class, a maritime lien that arises later in time primes earlier liens. *See, e.g., Gowen, Inc. v. F/V Quality One*, 244 F.3d 64, 69 (1st Cir. 2001) [**9]  ("among liens of equal rank,' later liens have priority")

*Id.* at 547.  The United States Bankruptcy Court, Middle District of Tennessee comments further

as follows:

> While courts have recognized that a maritime lien pursuant to [the immediately previous version of the Comercial Instruments and Maritime Lien  Act, same operative language] may be enforced by a judicial proceeding, they have held that the lien itself "arises automatically upon the furnishing of necessaries." *Riffe Petroleum Co. v. Cibro Sales Corp.*, 601 F.2d 1385 [5 BCD 687] (10th Cir. 1979). *Accord Merchants National Bank of Mobile v. Dredge General G. L. Gillespie*, 663 F.2d 1338, 1345 (5th Cir. 1981); *Payne v. SS Tropic Breeze*, 423

> F.2d 236, 240 (1st [**8] Cir. 1970); *Mercereau v. M/V Woodbine*, 551 F. Supp. 811 (N.D. Ohio 1982); European-American Banking Corporation v. M/S Rosaria, 486 F. Supp. 245, 255 (S.D. Miss. 1978). *See generally*, G. GILMORE & C. BLACK, LAW OF ADMIRALTY § 9-1 et seq. (2nd Ed. 1975). Thus, a maritime lien created pursuant to [the Federal maritime lien act] is not obtained by any legal or equitable process or proceeding as required under 11 U.S.C. § 101(27), but is created automatically. **Once a prepetition maritime lien for necessaries has been created, this court can find no authority that would entitle the trustee, as a judicial lien claimant, to avoid such a maritime lien**. *Payne v. SS Tropic Breeze*, 423 F.2d 236 (1st Cir. 1970); *Rayon Y. Celanese Peruana*, S.A. v. M/V Phgh, 471 F. Supp. 1363, 1369 (S.D. Ala. 1979); G. GILMORE & C. BLACK, LAW OF ADMIRALTY, § 9-1 et seq. (2nd Ed. 1975). n7

*In re H & S Transp. Co.*, 42 B.R. 164, 167 (Bankr. M.D. Tenn. 1984)(emphasis added).

Tug Services and marine fuel provided to the Vessels here, gave rise simultaneously to classic United States maritime liens in favor of the Maritime Lien Creditors against the Vessels *in rem*. T. Schoenbaum, *Admiralty and Maritime Law*, Section 9-3 at 702-09 (5th Ed. 2011 & Supp. 2016) ("Maritime Liens for Necessaries"). Each was ordered by Hanjin and/or Hanjin's agents, clearly with authority to bind the Vessels with liens.

11 U.S.C. Section 1522 requires the Court in this proceeding to "sufficiently protect" creditors' interests including "the giving of security or filing of a bond." This Court consequently must under Section 1522 require Hanjin to provide suitable bond(s) or other security to the Maritime Lien Creditors – or – permit the Maritime Lien Creditors to proceed to arrest the Vessels in the United States, now, on the Maritime Lien Creditors' maritime liens.

This is because first, if the Vessels are permitted to depart the United State, they may be arrested outside of the U.S., including by a foreign mortgage holder against the vessel with priority ( which it would not have in the U.S.), sold and the Maritime Lien Creditor's liens extinguished:

> a maritime lien acquired under the American Maritime Lien Act, 46 U.S.C. § 971, is an ownership interest in the vessel itself. However, it has long been recognized by American courts that a judicial sale of a vessel by a court of a sovereign nation

      will extinguish a maritime lien where that court [*1112] has either personal jurisdiction over the lien holder or has acted in a valid in rem proceeding. See *Atlantic Ship Supply, Inc. v. M/V Lucy*, 392 F. Supp. 179 (M.D.Fla. 1975), *aff'd*, 553 F.2d 1009 (5th Cir. 1977).

*Gulf & Southern Terminal Corp. v. S.S. President Roxas*, 701 F.2d 1110, 1111-1112 (4th Cir. N.C. 1983). Likewise, if this court now does not require security or allow arrest, prior claims may accrue both in category (unpaid crew wages, for example, prime the contract liens here) and time (maritime liens are last in time, first in right) and further diminish the value of the Maritime Lien Creditors' maritime liens. *See* T. Schoenbaum, *Admiralty and Maritime Law*, Sections 9-6 and 9-7 at 721-32 (5th Ed. 2011 & Supp. 2016) ("Foreclosure and priority of claims" and "Discharge and extinction of liens").

    Further, most world jurisdictions do not recognize United States law-based maritime liens in rem, held here by the Maritime Lien Claimants. Were the Vessels arrested in one of those jurisdictions, for example, Korea, Singapore, Germany, and most Commonwealth jurisdictions, the Maritime Lien Claimants could not assert their liens. *See* T. Schoenbaum, *id.*

    Fundamentally, Vessels sink, collide, can catch fire – and – in the case of the SEASPAN EFFICIENCY (one of the Vessels against which Maritime Lien Claimants OceanConnect and Moran hold significant claims) may be beached for scrapping (typically, in India or Bangladesh). The res (Vessels) in those cases all are destroyed or diminished in value, significantly diminishing or destroying the value of Maritime Lien Claimants' maritime *liens in rem*.

    Allowing the Vessels to proceed outside of the U.S. without a bond or suitable security, or otherwise providing for their arrest, does not preserve the status quo as Section 15 requires in this proceeding. Consequently this Court must require that security of the same quality and value of Maritime Lien Claimants' maritime liens in rem (which would be 100% of their value

and, maritime prejudgment interest estimated to the point of payment; that interest generally is the 3 month T-bill rate and always is awarded in all but the most exceptional circumstances ( not present here).  See International Ore & Fertilizer Corp. v. SGS Control Servs., 828 F. Supp. 1098, 1103 (S.D.N.Y. 1993).

**The Present Situation of the Vessels**:

Oceanconnect has intervened in the arrest of the HANJIN MONTEVIDEO, before the U.S. District Court for the Central District of California, Los Angeles.  That intervention occurred before this Court's stay order.  The Court's arrest order provides for the Vessel to unload and load under arrest.

Oceanconnect filed suit against the SEASPAN EFFICIENCY at Savannah and the United States District Court, Southern District of Georgia has issued an arrest warrant, all occurring before this Court's stay order.  The United States Marshal is prepared to arrest this vessel on its arrival at Savannah.  The Court's arrest order provides for the Vessel to unload and load under arrest.  Significantly, this vessel also has been sold to be scrapped, after its discharge of cargo which also will end Hanjin's charter of the vessel.  It consequently is especially critical that this Court require security for the liens against the Vessel or permit it to be arrested now.  Because the Vessel is going off charter, it will no longer be within this Court's stay order.

The other Vessels soon will arrive in the United States, or now are close offshore awaiting berthing.

**Conclusion**

The Maritime Lien Creditors therefore respectfully requests this Court to order Hanjin to provide bonds or suitable security to secure the maritime lien creditors, or failing that, permit the Maritime Lien Creditors to proceed with the Vessels' arrest.

If the former is ordered, the security must be provided before the Vessels' departure from the U.S., and be issued by first class United States bonding companies ( or bank if an irrevocable Letter of Credit, for example) and not otherwise part of the Hanjin estate.  The Maritime Lien Creditors also would consider Letters of Undertaking issued by a first class marine protection and indemnity ("P&I") insurer.

If this Court permits arrest, this Court also should require that Hanjin hold the Vessels in the United States for a reasonable time (at least 3 working days) so that the Maritime Lien Creditors can have filed in the U.S. District Courts involved, the requisite arrest papers and for service of maritime arrest warrants on the Vessels by the United States Marshal.

    Respectfully submitted,

    WASSERMAN, JURISTA & STOLZ, P.C.
    Counsel to OceanConnect Marine, Inc.,
    Glencore, McAllister Towing & Transportion,
    Inc., and Moran Towing Corporation


    By:  */s/ Donald W. Clarke*

     DANIEL M. STOLZ, ESQ
     DONALD W. CLARKE, ESQ.

OF COUNSEL, PRO HAC MOTION
PENDING

J. Stephen Simms
Simms Showers LLP
201 International Circle
Baltimore, Maryland 21030
Phone: (410) 783-5795
Fax: (410) 510-1789
jssimms@simmsshowers.com


Dated:  September  8, 2016