KLESTADT WINTERS JURELLER
SOUTHARD & STEVENS, LLP
Tracy L. Klestadt
200 West 41st Street
17th floor
New York, NY 10036-7203
Tel: (212) 972-3000
Fax: (212) 972-2245
E-mail: tklestadt@klestadt.com

CLYDE & CO US LLP
John Keough
Joseph A. Walsh II
George Cornell
(*pro hac vice* motions to be filed)
405 Lexington Avenue
16th Floor
New York, NY 10174
Tel: (212) 710-3900
E-mail: john.keough@clydeco.us
         joe.walsh@clydeco.us
         george.cornell@clydeco.us

*Counsel to Lanyard LLC*

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Case No. 16-27041 (JKS) |
| HANJIN SHIPPING CO., LTD.,[1] | Chapter 15 |
| Debtor in a Foreign Proceeding. | **Hearing Date: September 9, 2016 at 10:00 a.m.** |

**LANYARD LLC'S (i) LIMITED OBJECTION TO THE INTERIM
PROVISIONAL ORDER GRANTING RECOGNITION OF FOREIGN MAIN
PROCEEDING AND CERTAIN RELATED RELIEF AND (ii) REQUEST FOR
EMERGENCY RELIEF TO VESSEL CHARTERED BY DEBTOR
REQUIRING FUEL TO OPERATE AND GRANTING PAYMENT OF
ADMINISTRATIVE EXPENSE PURSUANT TO
11 U.S.C. § 503(b)(1)(A)**

TO: THE HONORABLE JOHN K.
    SHERWOOD, UNITED STATES
    BANKRUPTCY JUDGE:

Lanyard LLC, by and through its undersigned counsel, as and for its (i) Limited Objection to

the Interim Provisional Order Granting Recognition of Foreign Main Proceeding and Certain

Related Relief and (ii) Request for Emergency Relief to Vessel Chartered By Debtor Requiring Fuel

1

to Operate and Granting Payment of Administrative Expense Pursuant to 11 U.S.C. § 503(b)(1)(A), respectfully represents as follows:

### Emergency circumstances exist which require the immediate refueling of the M/V HANJIN BOSTON with low sulfur bunker fuel.

1. The Master of the M/V HANJIN BOSTON estimates that the vessel will run out of the required fuel within 24 hours of this filing. Hanjin Shipping Co., Ltd. (the "Debtor" or "Hanjin") has ignored requests to have the vessel refueled and just today refused owners request to move the vessel so that it can be refueled. When the vessel runs out of the required fuel, the vessel will be forced to either burn non-compliant fuel in violation of international treaty, and federal and state laws; or go "dark," shutting down all power including power needed for crew lodging and sanitation; required minimal navigation, life-saving and fire-fighting equipment; and of course, required care and operation of refrigerated cargo containers. Hanjin's refusal is unreasonable and puts the officers and crew, the vessel, cargo and the environment at great risk. *The proposed Interim Provisional Order Granting Recognition of Foreign Main Proceeding and Certain Related Relief makes no reference and contains no mechanism whatsoever for addressing this emergency situation.* As such, Lanyard LLC, the owner of the vessel, files this limited objection to the proposed relief, and contemporaneous motion for immediate payment of administrative claim.

2. Lanyard LLC ("Lanyard"), by and through its undersigned attorneys, hereby moves this Court for the entry of an expedited Order pursuant to 11 U.S.C. § 503(b)(1)(A) authorizing and directing immediate payment of certain administrative expenses including: (a) post-petition low sulfur fuel bunkers to be supplied to the HANJIN BOSTON and necessary pilotage and related port fees in the amount of approximately $131,784.41 and (b) costs incurred

in offloading cargo in the preservation of the bankruptcy estate. In support of its Motion, Lanyard respectfully states as follows:

## JURISDICTION AND VENUE

3. On September 2, 2016, Hanjin Shipping Co., Ltd. (the "Debtor") filed a Petition for Recognition of a Foreign Proceeding under Chapter 15 of Title 11 of the U.S. Bankruptcy Code. (Docket No. 1).

4. On September 6, 2016, this Court issued its Interim Provisional Order Granting Recognition of Foreign Main Proceeding and Certain related Relief Pursuant to Sections 362, 365, 1517, 1519, 1520, 1521 and 105(A) of the Bankruptcy Code. (Docket No. 22).

5. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(A), (O), and (P).

6. Venue in this court is proper pursuant to 28 U.S.C. §§ 1410.

7. To movant's knowledge, as of this date, no trustee, examiner, or creditors (or other) committee has been appointed in this case.

8. Lanyard consents to the Court's entry of a final order or judgment resolving this Motion. However, Lanyard reserves the right to challenge the jurisdiction of this Court with respect to the HANJIN BOSTON and Lanyard with respect to any subsequent issues as may arise outside of the scope of this Motion.

9. The statutory basis for the relief requested in this Motion is 11 U.S.C. § 503(b)(1)(A).

## FACTS

10. Applicant, Lanyard, is the registered owner of the M/V HANJIN BOSTON (IMO # 9290464), a container vessel flagged under the Marshall Islands.

11. Prior to September 2, 2016, the Debtor and Lanyard were parties to a Time Charter in which the Debtor was granted use of the HANJIN BOSTON for carriage of goods in exchange for hire payments made to Lanyard. See Exhibit A.

12. Pursuant to this Time Charter, the Debtor agreed to provide bunkers to the vessel as necessary for its operation and carriage.

13. More specifically, the Debtor agreed to "supply fuels of such quantifications and grades to permit the vessel, at all times, to comply with the requirements of any emission control zone when the vessel is ordered to trade within that zone."

14. The Debtor also agreed to "ensure that there is always sufficient fuel available to meet the sulfur limits of any emission control zone that the vessel trades within….".

15. The Debtor further warranted that it would supply such fuels that comply with Regulation 14 and 18 of MARPOL Annex VI. See Exhibit A.

16. The HANJIN BOSTON is presently located 5.5 nautical miles off the coast of Huntington Beach, California and has a total of approximately 3500 containers onboard, of which approximately 1050 (or 30%) are believed to be containers carried for or by Hanjin or under Hanjin issued bills of lading.

17. The HANJIN BOSTON was originally due to call at the Yusen terminal in Los Angeles on September 1, 2016.

18. However, on or about August 31, 2016 during its approach to Los Angeles, the Master of the HANJIN BOSTON received instructions from the Debtor to reduce speed in order to delay entering port as scheduled until further notice. At that time, the vessel was already well within 200nm of the coast, which is within the Exclusive Economic Zone claimed by the United States. Accordingly, the vessel was already inside an established Emission Control Area (ECA)

4

which requires that the vessel only use low sulfur fuel. 33 U.S.C. §§ 1901-1912; 40 CFR §1043.2 et seq.

19. Separately, California law requires that vessels calling in California ports also use only approved low sulfur fuel when within approximately 26 nm of the state's coast. The HANJIN BOSTON was already subject to California law at approximately 2148 hours local time on August 30, 2016. Cal. Health & Safety Code §§ 39600, 39601, 39650, 39658, 39659, 39666, 43013, 43018, and 41511; 13 CCR § 2299.1; 17 CCR § 93118.

20. The HANJIN BOSTON is therefore presently obligated and permitted to burn only low sulfur compliant fuel.

21. The HANJIN BOSTON does not have sufficient compliant fuel onboard to sustain its current condition (idle at anchor) while within the territorial jurisdiction of the United States without violating international treaty, U.S. federal and California laws. In fact, the vessel does not presently have sufficient compliant fuel onboard to even leave the territorial jurisdiction of United States.

22. The vessel's officers estimate that the HANJIN BOSTON only has enough low sulfur bunker fuel on board to last approximately 24 hours (within this filing).

23. Since on or about September 6, 2016, Lanyard has repeatedly informed the Debtor of the emergency circumstances seeking to have additional compliant fuel loaded onboard and has requested instructions from the Debtor. These requests were made every 6 hours. The Debtor has ignored these requests.

24. Today, September 8, 2016, Lanyard advised the Debtor of intent to seek relief from the Court to have the vessel moved to the inner anchorage so that it may be refueled as

outlined above.  Hanjin immediately responded and expressed its refusal to allow the vessel to be moved thereby preventing it from being refueled.

25.　　Hanjin's refusal is unreasonable and puts the officers and crew, the vessel, cargo and the environment at great risk.

26.　　If the vessel runs out of the required fuel, the vessel will be forced to either burn non-compliant fuel in violation of international treaty, and federal and state laws; go or go "dark" thereby shutting down all power including power needed for crew lodging and sanitation; required minimal navigation, life-saving and fire-fighting equipment; and of course, to properly maintain refrigerated cargo containers.

27.　　Without the required compliant fuel, the vessel presents a significant environmental and safety risk including the risk of damage or spoilage to the cargo carried by Hanjin or under Hanjin's bills of lading.

28.　　Moreover, the longer that the cargo sits idle onboard the HANJIN BOSTON at anchor, the greater the risk of damage or spoilage becomes and the higher the costs will be for beneficial cargo owners to pay before they can gain access to their cargo.

29.　　As such, emergency circumstances exist which require the owners to seek an Order from this Court to direct the immediate refueling of the vessel with low sulfur fuel and permitting the offloading cargo in the preservation of the bankruptcy estate.

## RELIEF REQUESTED

30.　　By this Motion, Lanyard respectfully requests that the Court enter an immediate Order (a) authorizing Lanyard's administrative expense in the amount of $131,784.41 for post-petition pilotage, port fees and low sulfur bunker fuel provided in furtherance of preservation of the Debtor's assets aboard the HANJIN BOSTON and (b) authorizing Lanyard's administrative

6

expenses for all associated customary port fees, pilotage fees, as well as fees and costs for tugs, line handlers, and stevedoring services incurred as a result of discharging cargo, and (c) ordering the Debtor to pay Lanyard's allowed administrative expense claim immediately.

## BASIS FOR RELIEF

31.     Section 503 of the Bankruptcy Code Provides that, after notice and a hearing, there shall be allowed administrative expenses, including "the actual, necessary costs and expenses of preserving the estate." 11 U.S.C. § 503(b)(1)(A).

32.     The application of 11 U.S.C. § 503 has been held to extend to cases arising pursuant to Chapter 15. In re Qimonda AG, No. 09-14766-RGM, 2009 Bankr. LEXIS 4410 (July 22, 2009 E.D. Va.).

33.     The Third Circuit has held that there are two required elements in order for a payment to rise to the level of an administrative expense that is given priority payment status: (1) the claim must arise from a post-petition transaction between the creditor and debtor, and (2) the transaction must be for the benefit of the estate. See In re O'Brien Envtl. Energy Inc., 181 F.3d 527, 533 (3d Cir.1999).

34.     To constitute an administrative expense, the claim must be for costs that were "actually and necessarily incurred in preserving the estate for the benefit of its creditors." In re Molnar Bros., 200 B.R. 555, 558 (Bankr.D.N.J.1996). This is not limited to costs without which rehabilitation would be impossible, but may include "costs ordinarily incident to operation of a business." Pennsylvania Dep't of Envtl. Res. v. Tri-State Clinical Labs., Inc., 178 F.3d 685, 689 (3d Cir. 1999) (quoting Reading Co. v. Brown, 391 U.S. 471, 483, 88 S.Ct. 1759 (1968)).

35. By allowing for the priority payment of administrative expenses courts "advance the estate's interest in survival above all other financial goals." Zagata Fabricators, Inc. v. Superior Air Products, 893 F.2d 624, 627 (3d Cir.1990).

36. Low sulfur bunker fuel is a necessary good that is required for the continued operation and safety of the HANJIN BOSTON in furtherance of the creditors, namely the beneficial cargo interests whose cargo is currently on the vessel, and the bankruptcy estate.

37. It is in the best interest of the bankruptcy estate and existing creditors for immediate action to be taken to refuel the HANJIN BOSTON with compliant (low sulfur) fuel, to arrange as necessary for the vessel to be brought alongside a suitable and willing berth(s) for purposes of discharging the cargo onboard.

WHEREFORE, for the reasons stated herein, Lanyard LLC respectfully requests that the Court enter an expedited order: (a) authorizing Lanyard's administrative expense in the amount of $131,784.41 for post-petition pilotage and ports fees and for low sulfur bunker fuel provided in furtherance of preservation of the Debtor's assets aboard the HANJIN BOSTON; (b) authorizing Lanyard's administrative expenses for all associated customary port fees, pilotage fees, as well as fees and costs for tugs, line handlers, for stevedoring services incurred as a result of discharging the vessel; (c) ordering the Debtor to pay Lanyard LLC's allowed administrative

expense claim immediately; and (d) granting any other such relief as the Court may deem proper.

Dated: New York, New York
September 8, 2016

    KLESTADT WINTERS JURELLER
    SOUTHARD & STEVENS, LLP

    By: */s/ Tracy L. Klestadt*
        Tracy L. Klestadt
    200 West 41st Street
    17th floor
    New York, NY 10036-7203
    Tel: (212) 972-3000
    Fax: (212) 972-2245
    E-mail: tklestadt@klestadt.com

    CLYDE & CO US LLP
    John Keough
    Joseph A. Walsh II
    George Cornell
    (pro hac vice motions to be filed)
    405 Lexington Avenue
    16th Floor
    New York, NY 10174
    Tel: (212) 710-3900
    E-mail: john.keough@clydeco.us
          joe.walsh@clydeco.us
          george.cornell@clydeco.us

    *Counsel to Lanyard LLC*