UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**RIKER DANZIG SCHERER HYLAND & PERRETTI LLP**
Joseph L. Schwartz, Esq. (JS-5525)
Tara J. Schellhorn, Esq. (TS-8155)
Headquarters Plaza, One Speedwell Avenue
Morristown, NJ 07962-1981
(973) 538-0800

**GKG LAW, P.C.**
Edward D. Greenberg, Esq.
David P. Street, Esq.
Brendan Collins, Esq.
1055 Thomas Jefferson Street, NW
Suite 500
Washington, DC 20007
(202) 342-5200

*Co-Counsel for Carolina Ocean Lines, Kuehne + Nagel, Inc. d/b/a Blue Anchor America, Inc., Domek Logistics, LLC, Apex Maritime Co, Inc., MIQ Global, LLC, Mitsubishi Logistics America Corporation, Dynamic Worldwide Logistics, Inc., and WorldBridge Logistics Inc.*

In re:

**HANJIN SHIPPING CO., LTD.,**

        Debtor in a Foreign Proceeding.

Chapter 15
Case No. 16-27041-JKS
Hon. John K. Sherwood

**Motion of Certain Non-Vessel Operating Common Carriers for Clarification Regarding Relief Provided in Court's September 9, 2016 Order Granting Recognition of Petition as <u>Foreign Main Proceeding</u>**

The undersigned Non-Vessel Operating Common Carriers (the "NVOCCs" and collectively, the "Movants"),[1] by and through their undersigned counsel, hereby submit this

---

[1] This filing is being submitted on behalf of Carolina Ocean Lines, Kuehne + Nagel, Inc. d/b/a Blue Anchor America, Inc., Domek Logistics, LLC, Apex Maritime Co, Inc., MIQ Global, LLC, Mitsubishi Logistics America Corporation, Dynamic Worldwide Logistics, Inc., and WorldBridge Logistics Inc.

motion (the "Motion") for clarification as to certain provisional relief set forth in the Order Granting Provisional Relief Pursuant to Sections 362, 365(e), 1519, 1520, and 105(a) of the Bankruptcy Code Pending Hearing on Petition for Recognition as a Foreign Main Proceeding (ECF No. 102) ("September 9, 2016 Order"). In support of the Motion, the Movants respectfully state as follows:

## Summary of Relief Sought

The Movants seek the following clarification: 1) that they may use the same procedures as Beneficial Cargo Owners[2] to get their containers without fear of violating the automatic stay order the Court has entered; and 2) with respect to transportation services for which Hanjin has contracted with third parties -- but not yet paid the third party -- an NVOCC may obtain the release of cargo by paying the rate set forth in Hanjin's contract with the third party. Consistent with this relief, the Movants seek to have the Court require Hanjin to publish its contract rates with third parties so that Beneficial Cargo Owners and the NVOCCs can obtain the same rates for service that were contractually agreed to with Hanjin.

The Movants also seek to have the Court amend its September 9, 2016 Order to: 1) provide that the crediting mechanism set forth in Exhibit A to the September 9, 2016 Order regarding payments made to third party transportation providers, instead of to Hanjin directly, shall apply not only to cargo not yet berthed but also to cargo on land in the United States, whether import or export, on the date the September 9, 2016 Order was entered; 2) provide that Hanjin and terminals cannot assess detention or demurrage charges on empty containers whose return they refuse to accept; 3) compel Hanjin and terminals to either accept the return of empty

---

[2] Capitalized terms not otherwise defined in the Motion shall have the meanings ascribed to them in the September 9, 2016 Order.

containers or permit Beneficial Cargo Owners and NVOCCs to dispose of such empty containers; and 4) address Hanjin's need not only to expedite the importation of cargo into the United States but also to expedite the exportation of its cargo located in the United States by adopting the same procedures regarding outbound cargo that exists for inbound cargo.

### Relevant Facts

1.     Movants are Non-Vessel Operating Common Carriers ("NVOCCs") that provide ocean transportation services. All of the NVOCCs are licensed by or registered with the Federal Maritime Commission pursuant to provisions of the United States Shipping Act of 1984, 46 U.S.C. § 40101 *et seq*. As the name suggests, an NVOCC is a carrier that does not operate the vessels by which the ocean transportation is provided, and is a shipper in its relationship with an ocean common carrier (such as Hanjin). *See* Shipping Act of 1984, 46 U.S.C. § 40102(16). Despite not operating the vessel on which transportation services are provided, an NVOCC, like any common carrier, "assumes responsibility for the transportation from the port or point of receipt to the port or point of destination . . . ." 46 U.S.C. § 40102(6).

2.     NVOCCs issue bills of lading for the shipments and book transportation with the underlying carrier on behalf of their shipper customers. *Prima U.S. Inc. v. Panalpina, Inc.,* 223 F.3d 126, 129 (2d Cir. 2000). In issuing a bill of lading, the NVOCC assumes liability for the shipment on behalf of its shipper customer. *Id.* However, an NVOCC is a shipper in its relationship to the vessel operator, to the same extent as a Beneficial Cargo Owner is a shipper in its relationship to the vessel operator.

3.     Demurrage is a daily charge assessed by a steamship line and/or maritime terminal operator for the storage of containers when cargo is not claimed and picked up within a fixed period of time.

4. Detention is a daily charge assessed by a steamship line when a container used to transport goods is not returned empty after a specified period of time.

**Clarification of the Court's September 9, 2016 Order**

5. Exhibit A to the Court's September 9, 2016 Order provides, in relevant part, that for cargo not yet berthed and worked by the terminal and not already inland, nothing in the Order or any applicable law shall prohibit or impair the ability of any "Beneficial Cargo Owner, agent or third party logistics provider" to enter into a Release Agreement with any third party in order to obtain the release of cargo. *See* September 9, 2016 Order at Exhibit A, Lines 3 and 4. The foregoing language reflects that not only Beneficial Cargo Owners, but also third party transportation providers (which the Movants believe should be read to include NVOCCs), may enter into such Release Agreements. However, it is unclear as to whether inclusion of the NVOCCs is the Court's intent. Further, the remainder of the first paragraph of Exhibit A is even more ambiguous, regarding whether the protections set forth therein regarding a Beneficial Cargo Owner's right to obtain custody or control of goods, and a Beneficial Cargo Owner's right to a credit for payments made to a third party instead of to Hanjin for the release of cargo, applies equally to NVOCCs. Because there is no logical reason why the protections set forth in Exhibit A should not equally apply to third party transportation providers, the Movants seek clarification that NVOCCs are entitled to the full range of protections set forth in Exhibit A.

6. Exhibit A to the Court's September 9, 2016 Order provides that Beneficial Cargo Owners are entitled to a credit for amounts paid or required to be paid to a party other than Hanjin for obtaining custody or control of its goods "at the regular rates that Hanjin contracted with a Terminal Operator, Cargo Transportation Carrier, or any other logistics provider . . . ." The apparent intent of the September 9, 2016 Order is that a Beneficial Cargo Owner should be

entitled to make payments directly to a third party, *e.g.*, Terminal Operator, Cargo Transportation Carrier, third party logistics provider, to obtain the release of its cargo at the same rate that the third party had contracted with Hanjin. This mechanism not only enhances the rapid transportation of Hanjin's stalled cargo, it limits Hanjin's exposure to damages resulting from third parties making extortionate demands for their services based upon the fact that Beneficial Cargo Owners are in desperate straits as a result of Hanjin's insolvency proceeding.[3]

7. The problems that NVOCCs are experiencing regarding obtaining the release of cargo and obtaining service at reasonable rates from third party service providers is evident from Carolina Ocean Lines' interactions with a rail carrier. Carolina Ocean Lines had a contract with Hanjin, whereby it was to receive "all in" transportation of containers from Memphis, Tennessee to Dalian, China for $1,000 per container. Although the exact amount that the rail carrier was being paid by Hanjin for its portion of the transportation of the containers from Memphis to Long Beach is confidential, upon information and belief, it was approximately $1,130 per container.[4] When Carolina Ocean Lines contacted the rail carrier directly about providing such transportation after Hanjin's insolvency filing, Carolina Ocean Lines was informed by the rail carrier that it was now charging Carolina Ocean Lines $1781 per container for the same rail service.

8. There is no valid reason that a terminal, stevedore, rail carrier, or any other third party service provider is entitled to charge more for providing services to a Beneficial Cargo Owner, or other third party service provider, than it contractually agreed to charge Hanjin. The Movants, therefore, seek clarification that such third party transportation providers are prevented

---

[3] Hanjin's exposure is circumscribed by limiting the amount that Beneficial Cargo Owners can assert a credit to the amount that a Beneficial Cargo Owner paid to a party other than Hanjin for obtaining cargo at the regular rates that Hanjin contracted with a Terminal Operator, Cargo Transportation Center, and or any third party logistics provider.
[4] Apparently Hanjin was absorbing a loss on this particular transportation, as these are return moves necessitated by Hanjin's need to reposition empty containers.

from conditioning release of cargo or provision of service upon payment of rates in excess of the rate at which they contractually agreed to provide such service on behalf of Hanjin and that their possessory liens do not extend to these extra-contractual charges.

9. Consistent with this relief, the Movants seek to have the Court require Hanjin to publish its contract rates with third parties so that Beneficial Cargo Owners and NVOCCs can obtain the same rates for service that were contractually agreed to with Hanjin.

### The Relief Set Forth in the Court's September 9, 2016 Order Should Be Expanded

10. The Court's September 9, 2016 Order provides that Exhibit A likewise applies only to cargo not yet berthed and worked by the terminal and not already inland. While that limitation makes sense for some of the provisions in Exhibit A, there is no logical reason why Beneficial Cargo Owners and NVOCCs who have reached a Release Agreement with a Terminal Operator, Cargo Transportation Carrier or other third party logistics provider should not be entitled to the benefit of the credit mechanism set forth therein for already landed goods. The Movants therefore seek to modify the Court's September 9, 2016 Order to so provide.

11. Since the time of Hanjin's filing of its insolvency proceeding, Hanjin and terminal operators have refused to accept the return of empty Hanjin containers and chassis. This is causing a logjam of empty containers and chassis, creating unnecessary storage charges and further hindering transportation in the United States and elsewhere.

12. Containers in which cargo is moved must be kept with chassis, as that is how such containers are moved. Chassis are owned by chassis leasing companies.

13. Hanjin assesses a daily detention charge if empty containers are not returned by a shipper within a specified period of time. Chassis leasing companies also assess daily detention charges if the chassis accompanying the containers are not returned within a specified period of

6

time. Because Hanjin does not currently need such containers, and because terminal operators do not want to allow their space to be used to store such empty containers, Hanjin and terminal operators are refusing to accept the return of empty containers. As a result of this refusal, detention charges associated with containers and chassis continue to grow against Beneficial Cargo Owners, as well as NVOCCs. Moreover, the retention of so many chassis is creating a chassis shortage. Because such charges are accruing due to no fault of Beneficial Cargo Owners and NVOCCs, Hanjin and/or terminals should be prevented from assessing detention charges on containers whose return they refuse to accept.

14. Further, should Hanjin and terminals refuse to accept the return of empty containers, Hanjin should either pay Beneficial Cargo Owners and NVOCCs for storing their empty containers on Hanjin's behalf, or be permitted to dispose of such empty containers without further liability to Hanjin. The Movants request that the Order be so modified.

15. Separately, as the Court is aware, Hanjin cargo intended for import into the United States has been delayed and stranded as a result of Hanjin's insolvency. The Court's September 9, 2016 Order addresses some of the problems in moving such inbound cargo arising as result of Hanjin's insolvency. Hanjin, however, has failed to address the equally significant problem of Hanjin cargo in the United States which is scheduled for export, but which remains deadlocked.

16. The September 9, 2016 Order, therefore, should be modified to provide that Hanjin shall reasonably cooperate with Beneficial Cargo Owners, Transportation Operators, Cargo Transportation Carriers, and other third party logistics providers to effectuate the movement of Hanjin cargo located in the United States destined for export. Exhibit A should also be modified to reflect that procedures set forth therein should be, as appropriate, applicable

to export cargo. Thus, for example, a third party service provider who has contracted with Hanjin regarding the export of cargo should charge the same rate to a Beneficial Cargo Owner or NVOCC for the release of cargo or services provided, as they contractually agreed with Hanjin. Similarly, to the extent that payment is made by a Beneficial Cargo Owner or NVOCC to a third party service provider regarding export cargo, such payments will be credited in the same manner as is reflected in Exhibit A. Movants also request that the September 9, 2016 Order be modified to this effect.

[Remainder of this page intentionally left blank.]

## CONCLUSION

WHEREFORE, for all of the foregoing reasons, the Movants respectfully request that the Court (i) grant the Motion, (ii) enter an order substantially in the form filed herewith and (ii) provide the Movants with any further relief the Court deems just and equitable.

Dated:  September 15, 2016                Respectfully submitted,

**RIKER DANZIG SCHERER HYLAND & PERRETTI LLP**

By:    /s/ Joseph L. Schwartz
Joseph L. Schwartz, Esq. (JS-5525)
Tara J. Schellhorn, Esq. (TS-8155)
Headquarters Plaza, One Speedwell Avenue
Morristown, NJ 07962-1981
(973) 538-0800

**GKG LAW, P.C.**
Edward D. Greenberg, Esq.
David P. Street, Esq.
Brendan Collins, Esq.
1055 Thomas Jefferson Street, NW
Suite 500
Washington, DC 20007
(202) 342-5200

*Co-Counsel for Carolina Ocean Lines, Kuehne + Nagel, Inc. d/b/a Blue Anchor America, Inc., Domek Logistics, LLC, Apex Maritime Co, Inc., MIQ Global, LLC, Mitsubishi Logistics America Corporation, Dynamic Worldwide Logistics, Inc., and WorldBridge Logistics Inc.*

4768781v3