**COLE SCHOTZ P.C.**
Court Plaza North
25 Main Street
P.O. Box 800
Hackensack, New Jersey 07602-0800
Ilana Volkov
ivolkov@coleschotz.com
Edward S. Kiel
edward.kiel@coleschotz.com
(201) 489-3000
(201) 489-1536 Facsimile
*Attorneys for Tai-Soo Suk, Foreign Representative of Hanjin Shipping Co., Ltd.*

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY
HONORABLE JOHN K. SHERWOOD
CASE NO. 16-27041 (JKS)
Chapter 15

In re:

HANJIN SHIPPING CO., LTD.,[1]

Debtor in a Foreign Proceeding.

**HEARING DATE AND TIME:**
October 7, 2016, 11:00 a.m.

**ORAL ARGUMENT REQUESTED**

**FOREIGN REPRESENTATIVE'S OMNIBUS OBJECTION TO MOTIONS OF: (A) ASHLEY FURNITURE INDUSTRIES, INC. SEEKING AN ORDER (I) AUTHORIZING ASHLEY'S ADMINISTRATIVE FREEZE ON AMOUNTS DUE TO HANJIN ON PRIOR SHIPMENTS AND (II) MODIFYING THE PROTOCOL TO PERMIT IT TO CREATE AN ESCROW RESERVE ACCOUNT TO PROTECT ITS RIGHTS OF SETOFF ON FUTURE DELIVERIES; AND (B) SCHENKEROCEAN LIMITED TO ENFORCE THE COURT'S SEPTEMBER 9, 2016 ORDER**

TO: HONORABLE JOHN K. SHERWOOD
United States Bankruptcy Judge

Tai-Soo Suk, the duly appointed foreign representative (the "Foreign Representative") of Hanjin Shipping Co. Ltd. ("Hanjin" or the "Debtor") in connection with the pending proceeding (the "Korean Proceeding") filed by Hanjin under the Debtor Rehabilitation and

[1] The last four digits of Hanjin Shipping Co., Ltd.'s Business Registration Number are 1835. The Debtor's main corporate and mailing address is Hanjin Shipping Bldg., 25 Gukjegeumyung-Ro 2-Gil, Yeongdeungpo-Gu, Seoul 07327, Korea.

Bankruptcy Act in the Seoul Central District Court (the "Korean Court") in Seoul, Republic of Korea, by and through his counsel, Cole Schotz P.C., hereby files this Omnibus Objection to Motions (the "Motions") of: (A) Ashley Furniture, Inc. ("Ashley") Seeking an Order (I) Authorizing Ashley's Administrative Freeze on Amounts Due to Hanjin on Prior Shipments and (II) Modifying the Protocol to Permit it to Create and Escrow Reserve Account to Protect its Rights of Setoff on Future Deliveries; and (B) Schenkerocean Limited ("Schenkerocean") to Enforce the Court's September 9, 2016 Order, and respectfully represents as follows:

**THE MOTIONS SHOULD BE DENIED**

1. Attached hereto as **Exhibit A** is the front of a Hanjin Shipping Bill of Lading.

2. Attached hereto as **Exhibit B** are the Terms & Conditions of Bill of Lading for Hanjin Shipping Co., Ltd. (which also can be downloaded from Hanjin's website at http://hanjin.com/hanjin/CUP_HOM_1625.do?sessLocale=en). The provisions in support of the Foreign Administrator's objection to the Motions have been highlighted for the Court's convenience.

3. Counsel for the Foreign Administrative will have available, for *in camera* review, copies of the contracts, credit terms and accounts receivable information for each of Ashley Furniture and Schenkerocean, to the extent the Court deems such information probative to its adjudication of the Motions.

WHEREFORE, for the reasons set forth herein and any other arguments to be raised at the hearing on the Motions, the Foreign Administrator respectfully requests that the Motions be denied.

DATED: October 6, 2016

Respectfully submitted,

COLE SCHOTZ P.C.

*/s/ Ilana Volkov*
Ilana Volkov
Edward S. Kiel

*Attorneys for Tai-Soo Suk, Foreign Representative of Hanjin Shipping Co., Ltd.*

# EXHIBIT A

HANJIN SHIPPING

# BILL OF LADING

Hanjin Internet Service
www.hanjin.com

SHIPPER / EXPORTER (COMPLETE NAME AND ADDRESS)

BOOKING NO. (DOCUMENT NO.) EXPORT DEC.

EXPORT REFERENCES

CONSIGNEE (COMPLETE NAME AND ADDRESS / NON-NEGOTIABLE UNLESS CONSIGNED TO ORDER)

FORWARDING AGENT REFERENCES (COMPLETE NAME AND ADDRESS)

NOTIFY PARTY (COMPLETE MAILING ADDRESS)

POINT AND COUNTRY OF ORIGIN

ALSO NOTIFY (NAME AND FULL ADDRESS) / DOMESTIC ROUTING

PIER OR PLACE OF RECEIPT *

PRE-CARRIAGE BY *

VESSEL / VOY (FLAG)

PORT OF LOADING

TYPE OF MOVE

CONTAINERIZED (*Vessel only*) Yes No

PORT OF DISCHARGE

PLACE OF DELIVERY (BY ON CARRIER) *

FINAL DESTINATION (FOR THE MERCHANT'S REFERENCE ONLY)

PARTICULARS FURNISHED BY SHIPPER

| CONTAINER NO. MARKS & NOS. SEAL NO.: | NO. OF PKGS. OR CONTAINERS | H M * * | KIND OF PACKAGES : DESCRIPTION OF GOODS | TOTAL GROSS WEIGHT KGS (POUNDS) | TOTAL MEASUREMENT CBM(CFT) |
|---|---|---|---|---|---|
| Optional Declared Value for Increased freight charges to avoid Package Limitation : US $________________ | | | | | |

C O P Y
NON-NEGOTIABLE

These commodities, technology or software were exported from the United States in accordance with the Export Administration Regulations. Final destination ________________________ Diversion contrary to U.S. law is prohibited.

TOTAL NO. OF PACKAGES OR CONTAINERS (IN WORDS)

| FREIGHT AND CHARGES | RATED AS | RATE | PER | PREPAID | COLLECT |
|---|---|---|---|---|---|
| | | | | | |
| TOTAL | | | | | |
| AT | | | | | |

Date

By______________________________

PLACE OF B(s)/L ISSUE

NO. OF ORIGINAL B(s)/L SIGNED

DATE OF B(s)/L ISSUE

BILL OF LADING NO.

**RECEIVED** by the Carrier from the Shipper in apparent good order and condition unless otherwise indicated herein, the Goods, or the container(s) or package(s) said to contain the cargo herein mentioned, to be carried subject to all the terms and conditions provided for on the face and back of this Bill of Lading by the Vessel named herein or any substitute at the Carrier's option and/or other means of transport, from the place of receipt or the port of loading to the port of discharge or the place of delivery shown herein and there to be delivered to Consignee or on-carrier on payment of all charges due thereon.

**IF REQUIRED** by the Carrier, this Bill of Lading duly endorsed must be surrendered in exchange for the Goods or delivery order. None of the terms of this Bill of Lading can be waived by or for the Carrier except by written waiver signed by a duly authorized agent of the Carrier.

**IN ACCEPTING THIS BILL OF LADING**, the Merchant agrees to be bound by all the stipulations, exceptions, terms and conditions on the face and back hereof, whether written, typed, stamped or printed, as fully as if signed by the Merchant, any local custom or privilege to the contrary notwithstanding.

**IN WITNESS WHEREOF**, the undersigned, on behalf of **Hanjin Shipping Co., Ltd.**, the master and the owner of the Vessel has signed the number of Bill(s) of Lading stated above all of the same tenor and date, one of which being accomplished, the others to stand void.(Terms of Bill of Lading Continued on Back Hereof).

* Applicable only when used for **multimodal** or through transportation. ** Check "**HM**" column if hazardous material.

**HANJIN SHIPPING AMERICA, LLC**

By______________________________________________
As Agent for Hanjin Shipping Co., Ltd., Carrier

# EXHIBIT B

# TERMS & CONDITIONS
# OF
# BILL OF LADING
# Hanjin Shipping, Co., Ltd.

## CONTENTS

1. DEFINITION

2. CLAUSE PARAMOUNT

3. LITIGATION AND CLAIM

4. RESPONSIBILITY

5. TARIFF

6. SUB-CONTRACTING AND ADDITIONAL INSTRUCTIONS

7. LIBERTIES

8. CONTAINERS

9. FREIGHT; NO SET-OFF

10. MERCHANT'S RESPONSIBILITY

11. LIEN

12. DANGEROUS GOODS, CONTRABAND

13. DELIVERY

14. NOTICE OF CLAIM AND TIME FOR SUIT

15. DAMAGES

16. LIMITATION OF DAMAGES

17. GENERAL AVERAGE AND SPECIAL CHARGES

18. DEVIATION

19. SEVERABILITY OF TERMS

<Front Side Terms and Conditions>

RECEIVED by the Carrier from the Shipper in apparent good order and condition unless otherwise indicated herein, the Goods, or the container(s) or package(s) said to contain the cargo herein mentioned, to be carried subject to all the terms and conditions provided for on the face and back of this Bill of Lading by the Vessel named herein or any substitute at the Carrier's option and/or other means of transport, from the place of receipt or the port of loading to the port of discharge or the place of delivery shown herein and there to be delivered to Consignee or on-carrier on payment of all charges due thereon.

If this is a negotiable Bill of Lading, one original Bill of Lading duly endorsed must be surrendered by the Merchant to the Carrier in exchange for the Goods or a Delivery Order. If this is a non-negotiable (straight) Bill of Lading and the Carrier so requires, one original Bill of Lading must be surrendered in exchange for the Goods or a Delivery Order. None of the terms of this Bill of Lading can be waived by or for the Carrier except by written waiver signed by a duly authorized agent of the Carrier.

IN ACCEPTING THIS BILL OF LADING the Merchant agrees to be bound by all the stipulations, exceptions, terms and conditions on the face and back hereof, whether written, typed, stamped or printed, as fully as if signed by the Merchant any local custom or privilege to the contrary notwithstanding.

IN WITNESS WHEREOF, the undersigned, on behalf of Hanjin Shipping Co., Ltd. the master and the owner of the Vessel has signed the number of Bill(s) of Lading stated above, all of this tenor and date, and wherever one original Bill of Lading has been accomplished or surrendered all other Bills of Lading shall be void.

<Reverse Side Terms and Conditions>

1. DEFINITIONS

When used in this Bill of Lading:

(a) "Bill of Lading" means this contract of carriage for the Goods made between Carrier and Merchant, effective for all modes of transport from place of receipt to place of delivery.

(b) "Carrier" means Hanjin Shipping Co., Ltd., its vessel, agents and subcontractors at all stages of carriage; in context of Multimodal Transportation, "Ocean Carrier" means Hanjin

Shipping Co., Ltd., the Vessel, her owner, operator and charterers and the agents and subcontractors of each; "Inland Carrier" means any barge line vessel, trucker or railroad with custody of the Goods under this Bill of Lading, and agents and subcontractors of each.

(c) "Goods" means the whole or any part of the cargo and any packaging received from the Merchant and includes any equipment or Container not supplied by or on behalf of the Carrier.

(d) "Multimodal Transportation" means carriage of the Goods under this Bill of Lading by the Ocean Carrier and one or more Inland Carriers for a single freight charge to the Merchant.

(e) "Laden on board" means physically laden on board the first means of transport operated in the service of the Carrier.

(f) "Merchant" means any actual or previous holder of this Bill of Lading, and shall include shipper, consignor, consignee, owner and receiver of the Goods, and any persons having a present or future interest in the Goods or any persons acting on their behalf.

(g) "Package" means the single largest unit of Goods (e.g., container, pallet, vans, trailer, box, bale as described on the face of the bill of lading) delivered by Merchant to Carrier for carriage pursuant to the terms of this Bill of Lading. However, Goods shipped in (containerized) bulk shall be deemed to consist of one Package only.

(h) "Particulars" is the description of the Goods provided by the Merchant to the Carrier, and shall include all manner of description, marks, numbers, weight, measure, nature and value of the items constituting the Goods.

(i) "Subcontractor" identifies all interests engaged in owning, operating or chartering the vessel, lighterers, feeder line, stevedores, terminal operators, warehousemen, truckers, railroads, and the agents of each of them, and all other persons or legal entities performing services pursuant to contract with Ocean or Inland Carriers with respect to the Goods.

(j) "Vessel" means the vessel named in this Bill of Lading, and includes all assisting or substitute vessels, lighters or other conveyances.

(k) "Freight" includes all charges payable to the Carrier in accordance with the applicable Tariff and this Bill of Lading.

N.B. The plural shall include the singular, and the singular shall include the plural throughout this Bill of Lading : the headings are for information purposes only. Any mention in this Bill of Lading of parties to be notified of the arrival of the Goods is solely for information, and failure to give such notification shall not involve the Carrier in any liability nor relieve the Merchant of any obligation.

2. CLAUSE PARAMOUNT

(a) This Bill of Lading shall have effect subject to the International Convention for the Unification of Certain Rules relating to Bills of Lading, dated at Brussels 25 August 1924 (The

Hague Rules) as enacted in the country of shipment, unless the protocol, dated Brussels 23 February 1968 (The Hague-Visby Rules) or the United States Carriage of Goods by Sea Act,1936 (U.S. COGSA, 46 U.S.C. Appendix 1300-1315) apply compulsorily.

(b) When no such enactments are in force in the country of shipment, the corresponding Hague Rules, Hague-Visby Rules or U.S. COGSA legislation (Hague/Visby/COGSA legislation) of the country of destination shall apply, but in respect of shipments to which no such enactments are compulsorily applicable, the terms of the Hague Rules shall apply.

(c) The applicable Hague/Visby/COGSA legislation shall govern throughout the time when the Goods are in the actual or constructive custody of the Carrier. The Carrier takes all reservation possible under the Hague/Visby/COGSA legislation relating to the period before loading and after discharging and while the Goods are in the charge of another Carrier, and to deck cargo and live animals.

3. LITIGATION AND CLAIM

(a) Where the Merchant's principal place of business is

(i) in the United States, this Bill of Lading shall be governed by and construed in accordance with the laws of the state of New York; and

(ii) not in the United States, this Bill of Lading shall be governed by and construed in accordance with English law, save in either case for any provision of such law which would or might cause the law or laws of another jurisdiction to apply.

(b) Disputes arising under this Bill of Lading shall be determined at the option of the Merchant by the courts at

(i) the Carrier's principal place of business, (being Seoul, Korea, except for actions under U.S. COGSA, where the Carrier's principal place of business Shall be New York, New York); or

(ii) the place of receipt of the Goods by the Carrier, or the port of discharge.

(c) No proceedings may be brought before other tribunals by the Merchant unless Merchant and Carrier shall have agreed in advance in writing in both the choice of another tribunal and the law to be applied.

(d) Notwithstanding paragraphs 3(b) and (c) above, Carrier may sue Merchant wherever Merchant or Goods are found.

(e) Suit shall not be deemed brought against the Carrier until jurisdiction shall have been obtained of the Carrier by service of summons.

(f) Claims for loss of or damage to the Goods may be filed at the offices of the Carrier or their agent at the port of discharge; claims must be filed and suits commenced within the applicable Hague/Visby/COGSA periods, unless the Merchant claims these rules are inapplicable and loss or damage occurred in the custody of the Inland Carrier, when claims must be filed, and

suits commenced, within the time limits provided by law or tariff applicable to the Inland Carrier.

(g) Nothing in this Bill of Lading, expressed or implied, shall operate to limit or deprive the Carrier of any statutory protection or exemption or limitation of liability authorized by any applicable laws, statutes or regulations whether the action is founded in contract, in tort, or otherwise.

4. RESPONSIBILITY

(a) The Carrier shall be responsible for and shall enjoy the immunities and limitation against loss or damage pursuant to the applicable Hague/Visby/COGSA legislation for all periods when the Goods are in the actual or constructive custody of the Carrier.

(b) Where it is forbidden by law to extend Hague/Visby/COGSA legislation to the inland part of the Multimodal Transportation contract, the Carrier shall not be responsible for loss of or damage to the Goods while the Goods are in the custody of the Inland Carrier in excess of the scope for which the Inland Carrier would have assumed the responsibility subject to its tariff.

(c) If, despite the terms herein, no legal regime clearly applies to the period of inland carriage, the Carrier and Inland Carrier shall not, in any circumstances, be liable for that part of any claim for damages caused by acts of God, acts or restraint of authority, inherent vice of the Goods, wrongful act or neglect of the Merchant, strike or stoppage of labor of any kind or extent, insufficient or defective packaging or marking or numbering of the Goods or Packages, or any cause, event or consequence which the Carrier could not avoid or prevent by reasonable diligence; nor for any other cause excluded by tariff.

(d) In context of Multimodal Transportation, where the Merchant or Carrier cannot establish in whose custody loss or damage occurred to Goods delivered to the Carrier in actual good condition, it shall be deemed, as between the Merchant and any Carrier, that the loss or damage occurred onboard the Vessel while in the custody of the Ocean Carrier.

(e) The Carrier shall not be responsible for loss of or damage to the Goods occurring before receipt of the Goods by the Carrier at the place of receipt or after delivery by the Carrier at the place of delivery.

(f) Where damage is alleged to the contents of any Package delivered by the Carrier without notation for external damage, it shall in all circumstances be a prerequisite to Carrier's liability that the Merchant shall first demonstrate its delivery of the contents of the Package in actual good condition at the Carrier's place of receipt.

(g) The Carrier shall not be responsible for any loss of or damage to live animals arising or resulting from any cause whatsoever.

(h) In respect of Goods carried on deck and identified on this Bill of Lading to be so carried, all risks of loss or damage from perils inherent in or incidental to the custody or carriage of such Goods on deck shall be borne exclusively by the Merchant without recourse to the Carrier.

5. TARIFF

The terms and conditions of the Carrier's applicable Tariff are incorporated herein. Where a tariff has been published or filed by Carrier, Ocean Carrier or Inland Carrier governing all or part of the period of carriage, the terms of this Bill of Lading may, to some extent, be modified by the terms of that tariff and by documents referenced therein, such as uniform inland Bills of Lading. To the extent of any actual inconsistency between tariff and this Bill of Lading, the terms of this Bill of Lading shall control to the fullest extent permitted by law.

6. SUB-CONTRACTING AND ADDITIONAL INSTRUCTIONS

(a) The Carrier shall be entitled to sub-contract on any terms the whole or any part of the handling, storage or carriage of the Goods and any and all duties whatsoever undertaken by the Carrier in relation to the Goods. Every servant, agent and sub-contractor (including all interests engaged in the owning or chartering of the Vessel, managers, terminal operators, stevedores, warehousemen, other independent contractors, any direct or indirect servant including their own subcontractors), any other party employed by or on behalf of the Carrier and the agents of each of them shall not in any circumstances whatsoever be liable to the Merchant and have the benefit of all provisions herein for the benefit of the Carrier as if the provisions were expressly for their benefit; and in entering into this contract of carriage, the Carrier does so not only on his own behalf but also as agent for all of them to the fullest extent permitted by the law applicable to Himalaya Clauses.

(b) Where the Carrier arranges alternative inland transportation as agent for the Merchant, the Merchant's rights and liabilities shall be governed by the law or contract applicable to the inland carriage, without further liability of the Carrier as a carrier.

7. LIBERTIES

(a) The Carrier may at any time and without notice to the Merchant;

(i) use any means of transport or storage whatsoever;

(ii) transfer the Goods from one conveyance to another in a single shipment or in several shipments, including trans-shipping or carrying the same on another vessel or means of transport other than the Vessel named herein;

(iii) proceed by any route in his discretion (whether or not the nearest or most direct or customary or advertised route) at any speed and proceed to or stay at any place or port whatsoever once or more often and in any order;

(iv) load and unload the Goods at any place or port (whether or not any such port is named herein as the port of loading or port of discharge) and store the Goods at any such place or port; and

(v) comply with directions, howsoever given, of any government national or local authority.

The liberties set out herein may be invoked by the Carrier for any purpose whatsoever, including but not limited to repairs or drydocking, shifting berths, shifting or restowing cargo, and taking in fuel or stores. Any act done or not done under this clause or any delay arising therefrom shall be deemed to be within the contracted carriage.

(b) If at any time the Carriage is or is likely to be affected by any hindrance, risk, delay, difficulty or disadvantage of any kind including, but not limited to existence or apprehension of war, declared or undeclared, hostilities, warlike or belligerent acts or operations, riots, civil commotions, boycotts or other disturbances; epidemics or diseases, quarantine, sanitary or similar regulations or restrictions; shortage, absence or obstacles of labor of facilities for loading, discharge, delivery or handling of the Goods; strikes, lockouts or other labor troubles, whether partial or general, and whether or not involving employees of the Carrier, his agents or sub-contractors; congestion of ports, berths, freight stations or terminals; closure of, obstacle in or danger to any canal, waterway, land route or railroad; ice, landslide, earthquake or other natural effects creating obstacles to carriage (which is merely descriptive and not exhaustive, even though the circumstances giving rise to such hindrance, risk, delay, difficulty or disadvantage existed at the time this contract was entered into or when the Goods were received for Carriage), the Carrier (whether or not the Carriage is commenced) may, without prior notice to the Merchant and at the sole discretion of the Carrier, either:

(i) carry the Goods to the contracted Port of Discharge or Place of Delivery, whichever is applicable, by an alternative route to that indicated in this Bill of Lading or that which is usual for Goods consigned to that Port of Discharge or Place of Delivery and the Carrier shall be entitled to any additional Freight and costs associated with such change(s); or

(ii) suspend the Carriage of the Goods and store them ashore or afloat and endeavour to forward them as soon as possible and the Carrier shall be entitled to any associated charges or additional Freight; or

(iii) abandon the Carriage of the Goods and/or place them at the Merchant's disposal at any place or port which the Carrier may deem safe and convenient, whereupon the responsibility of the Carrier in respect of such Goods shall cease. In such case, the Merchant shall be responsible for any additional costs incurred by reason of the abandonment of the Goods, including but not limited to the additional charges for delivery to and/or storage at, such place or port.

8. CONTAINERS

(a) On any Vessel or other mode of transportation designed to carry containers, the Carrier has the right to carry Goods in containers in any area designed for such carriage. Such carriage of

the Goods shall constitute "Under deck" stowage for all purposes, including Hague/Visby/COGSA regulations and General Average.

(b) Where the Goods are not already packed into containers at the time of receipt, the Carrier shall be at liberty to pack and carry them in any type of container.

(c) In no event shall Carrier be liable for any loss or damage to Goods, container, equipment, or any third party property that arises or is incurred while such container or equipment was in possession or control of the Merchant, his agents, employees, or contractors and its sub-contractors. In case of above each Merchant shall jointly and severally indemnify, defend, and hold harmless the Carrier, its agents, employees, or contractors and its sub-contractors from and against any and all loss or damage (including survey and legal fees) howsoever caused to any Goods, container, equipment, or other property owned or furnished by the Carrier or third party, and for any other related claims, demands, or suits for third party damage or personal injury.

(d) If any container or Goods is delivered sealed by the Merchant to the Carrier, this Bill of Lading is evidence of the receipt only of the number of containers shown on the Bill of Lading, and the condition and any particulars of the contents are unknown to the Carrier; and the Merchant warrants that the containers and contents thereof are suitable for handling and carriage, and that the weight of contents is equally distributed in the container. In the event of breach of this warranty, the Carrier shall not be responsible for any loss of or damage to or in connection with the Goods and the Merchant, his agents or sub-contractors shall be liable for loss of or damage to the Goods, any other property, or for personal injury or the consequences of any other accidents or events whatsoever. If such containers are delivered by the Carrier with seals intact, such delivery shall be full and complete performance of the Carrier's obligation hereunder and the Carrier shall not be liable for any loss of or damage to the contents of the containers.

(e) The Carrier does not undertake to carry the Goods in refrigerated, heated, insulated, ventilated or any other special containers, unless special arrangements for the carriage of such containers have been agreed to in writing between the Carrier and the Merchant and special freight has been paid. The Carrier does not accept any responsibility for the function of special containers which were not supplied by the Carrier. The Carrier does not guarantee the maintenance of any temperature inside any container. Once such container and/or equipment is/are received by Merchant, it shall be Merchant's sole obligation to ensure that container and/or equipment is/are at the required and necessary carrying temperature and conditions.

(f) The Merchant shall be deemed to have inspected the container for suitability for carriage of the Goods before packing it. The Merchant's use of the container shall be prima facie evidence of its being sound and suitable for use.

9. FREIGHT; NO SET-OFF

(a) Freight shall be payable at any lawful rate agreed with the Merchant, and will be

calculated on the basis of the Particulars furnished by the Merchant; but the Carrier may at any time open, examine, weigh, measure and value the Goods and Packages to determine the accuracy of the Merchant's Particulars. If it is determined by the Carrier that the freight or charges should be higher, the Carrier may collect the additional amount from the Merchant who shall also be liable for all expenses associated with recalculation of freight or charges.

(b) Full Freight and charges including but not limited to destination charges, whether prepaid or to be collected payable in accordance with the applicable Tariff and this Bill of Lading shall be considered completely earned on receipt of the Goods by the Carrier, whether the Vessel or the Goods be damaged, lost or not lost, or the journey frustrated or abandoned. All Freight and charges shall be paid in full without any set-off, counterclaim, withholding or deduction whatsoever and the Merchant shall not (and renounces any right it may have to) assert any credit, set-off or counterclaim against the Carrier to justify withholding payment of any such amounts in whole or in part. All Freight and charges shall be paid in the currency named in this Bill of Lading.

(c) Each Merchant shall be jointly and severally liable to the Carrier for the payment of all freight, charges and other amounts due to the Carrier.

10. MERCHANT'S RESPONSIBILITY

(a) Each Merchant shall be jointly and severally responsible for any failure to perform any Merchant's obligations under any of the terms of this Bill of Lading; and each shall indemnify, defend and hold harmless the Carrier against all liability, loss, damages and expense, including attorneys fees and other legal fees, which the Carrier may sustain or incur arising or resulting from any such failure of performance by the Merchant or any of them. The responsibility of each Merchant shall not be diminished by the existence of any lien claim on the Goods.

(b) No representation is made by the Carrier as to the weight, contents, measure, quantity, quality, description, condition, temperature, marks, numbers or value of the Goods and the Merchant shall be solely liable for such description or particulars, for which the Carrier shall not be liable.

(c) If any particulars of any letter of credit and/or import license and/or sales contract and/or invoice or order number and/or details of any contract to which the Carrier is not a party are shown on the front hereof, such particulars are shown at the sole risk of the Merchant and for his convenience. The Merchant agrees that such particulars shall not be regarded as a declaration of value and shall in no circumstances whatsoever increase the Carrier's liability under this Bill of Lading to an amount greater than it would have been had such particulars not been shown on the front hereof, and the Merchant agrees to indemnify the Carrier for any increased legal liability imposed under any law in any jurisdiction as a result of such particulars having been shown on the front hereof, including legal expenses and costs.

(d) Any reference on the face of the Bill of Lading to any particulars of the Goods is furnished

by the Merchant, and the Carrier shall not be responsible for the accuracy thereof. The Merchant warrants to the Carrier that the particulars furnished by him are correct.

(e) Each Merchant warrants that equipment, whether owned or leased by the Carrier, would be returned to the Carrier within a reasonable time stipulated in the applicable tariff and further promises and agrees to pay equipment detention charges stipulated in the applicable tariff including the costs and expenses of recovering the same in case of failure to do so.

11. LIEN

(a) The Carrier shall have a lien on the Goods, or any cargo remaining within the Carrier's custody and/or control, for all freight, dead freight, demurrage and the costs and expenses of recovering the same and any other sums whatsoever payable by the Merchant under this Bill of Lading or any other Bill of Lading between Carrier and Merchant and may enforce this lien, by all available means, including public or private sale. The lien shall apply to Goods, and any other cargo or other property belonging to the Merchant while in the Carrier's possession. The net proceeds of any such sale, after first deducting all costs and expenses in executing the lien shall be applied towards the settlement of the amounts due the Carrier. If on sale of the Goods, the proceeds fail to cover the amount due and the cost and expenses incurred, the Carrier shall be entitled to recover the deficit from the Merchant. The Carrier shall be under no obligations with respect to the Goods, or the proceeds, but to account for the balance of such proceeds.

(b) The Carrier shall have a lien on the Goods for all expenses and charges incurred in protecting or caring for the Goods, whether the Goods be damaged or not, and for any payment or liability of whatsoever nature incurred by the Carrier in connection with the Goods, including legal fees incurred through attachments or interpleader or other proceedings in respect of the Goods.

12. DANGEROUS GOODS, CONTRABAND

(a) The Carrier undertakes to carry Goods of a hazardous, injurious or dangerous nature only upon the Carrier's written acceptance of a prior written application by the Merchant for the carriage of such Goods.

(b) The Merchant shall ensure that the nature of dangerous Goods is distinctly and permanently marked and manifested on the outside of the packages and containers, and shall submit all documents or certificates required by any applicable statutes or regulations.

(c) Whenever Goods are discovered to be contraband or prohibited by any applicable laws or regulations, the Carrier shall be entitled to have such Goods rendered innocuous, thrown overboard or discharged or otherwise disposed of at the Carrier's discretion without compensation.

13. DELIVERY

(a) The Carrier shall have the right to deliver the Goods at any time at any place designated by the Carrier within the geographic limits of the place of delivery.

(b) The Merchant shall take delivery of the Goods within the time provided for in the applicable Tariff. If the Merchant fails to do so the Carrier shall be entitled, without notice, to unpack the Goods if packed in Containers and/or sell, destroy, dispose of or to store the Goods ashore, afloat, in the open or under cover, at the sole risk of the Merchant. Such storage shall constitute due delivery hereunder, and thereupon the liability of the carrier in respect of the Goods stored as aforesaid shall cease, and the Merchant shall be fully responsible for the costs of such transloading or storing.

(c) Refusal or failure (directly or by omission or by delay) by the Merchant to take delivery of the Goods in accordance with the terms of this Bill of Lading and/or to mitigate any loss or damage thereto shall constitute a waiver by the Merchant to the Carrier of any claim whatsoever or howsoever relating to the Goods or the Carriage thereof.

(d) In the event the Carrier agrees, at the request of the Merchant to amend the Place of Delivery stated herein, the terms and conditions of this Bill of Lading shall continue to apply, only to the extent provided by the applicable Tariff, until the Goods are delivered by the Carrier to the Merchant at the amended Place of Delivery. Unless explicitly provided in tariff or contract, in case of such diversion, Carrier shall be under no liability whatsoever for loss, damage or delay to the Goods, howsoever arising.

(e) In any case the Carrier's responsibility shall cease when the Goods have been delivered to the Merchant, its agent or subcontractors or otherwise according to law at the place designated by the Carrier. Delivery of the Goods to the custody of Customs or any other authorities shall always constitute final discharge of the Carrier's responsibility hereunder.

(f) For Goods received by the Carrier in containers the Carrier shall only be responsible for delivery of the total number of containers shown on the face of the Bill of Lading, and shall not be required to unpack the containers.

(g) Where the Goods have been packed into containers by the Carrier, the Carrier shall unpack the containers and deliver the contents thereof and shall not be required to deliver the Goods in containers.

(h) The Carrier shall not be liable for failure to deliver in accordance with marks unless the Goods or Packages shall have been clearly, legibly and permanently marked.

14. NOTICE OF CLAIM AND TIME FOR SUIT

(a) Unless notice of loss or damage and the general nature of such loss or damage be given in writing to the Carrier or his agent at the place of delivery at the time of delivery, such removal shall be evidence of the delivery by the Carrier of the Goods as described in the Bill of Lading. If

the loss or damage be not apparent, the notice must be given in writing to the Carrier within three days after delivery.

(b) In any event and however founded the Carrier shall be discharged from all liability unless suit is brought within one year after the delivery of the Goods or the date when the Goods should have been delivered.

(c) Where the Merchant contests the general application of Hague/Visby/COGSA legislation, proof that damage actually occurred in the care, custody or control of the Inland Carrier, and that claim or suit were not made within the time limits provided by law and tariff applicable to the Inland Carrier shall create an absolute defense to the liability of the Ocean Carrier.

15. DAMAGES

(a) In no event shall the Carrier be liable for more than the contract value to the Merchant of the damaged or lost items at the place and time they were or should have been delivered to the Merchant. Where permitted by law, the Carrier's liability hereunder shall not exceed the Merchant's net invoice cost, freight and insurance premiums, if paid.

(b) In no event shall the Carrier be responsible for consequential damages, for lost profits, for non-compensatory damages, for exemplary damages, or for damages of any kind arising from delay, loss of market, depreciation or damages payable by the Merchant to any third party.

16. LIMITATION OF DAMAGES

(a) Damages shall, in all events, be limited in accordance with the applicable Hague/Visby/COGSA legislation.

(b) Unless the nature and value of the Goods have been declared in writing by the Merchant before shipment and inserted in this Bill of Lading, and ad valorem freight regulated in the applicable tariff paid in advance;

(i) Where Hague Rules apply, the Carrier shall in no event be liable for loss or damage in an amount exceeding the minimum allowable limit per package or unit in the applicable version of the Hague Rules.

(ii) Where U.S. COGSA applies, the Carrier shall in no event be or become liable for any loss of or damage to or in connection with the Goods in an amount exceeding U.S. dollars 500 per package or, in case of Goods not shipped in packages, per customary freight unit.

17. GENERAL AVERAGE AND SPECIAL CHARGES

(a) General Average to be adjusted, stated and settled at any port or place at the Carrier's option, according to the York-Antwerp Rules 1974 as amended 1994 (or as amended 1990 at the discretion of the Carrier) and in the currency selected by the adjuster, who shall be appointed by the Carrier.

(b) Average agreement, non-separation agreement, deposit or bond shall be furnished by the Merchant to the Carrier before delivery of Goods subject to claims for contribution in General Average.

(c) The Amended Jason Clause as approved by the Baltic and International Maritime Conference (BIMCO) is incorporated here by this reference.

(d) The Both-to-Blame Collision Clause as adopted by BIMCO is incorporated here by this reference.

(e) In case of special charges or expenditures unforeseen by the terms of this Bill of Lading, and not compensable in General Average, the Merchant shall reimburse the Carrier for all such special charges and expenditures that might be applicable to the Goods.

18. DEVIATION

No reasonable or customary action taken by the Carrier during the carriage of the Goods shall constitute a deviation, and in particular, no action taken by the Carrier pursuant to the Liberties Clause above shall constitute a deviation. It shall be prerequisite to the Merchant's claim for damages on account of deviation that the Merchant's insurance shall first have been cancelled on account of the alleged deviation. No deviation shall oust the right to limit liability for damages, and the Carrier shall always be entitled to the full benefit of all privileges, rights and immunities contained in this Bill of Lading and any incorporated tariffs.

19. SEVERABILITY OF TERMS

(a) The terms of this Bill of Lading are severable, and if any part or term is declared invalid or unenforceable, the validity or enforceability of any other part or term shall not be affected.

(b) In particular, if any term of this Bill of Lading is held to be repugnant to the applicable Hague/Visby/COGSA legislation or to any tariff to any extent, such term shall be void to that extent but no further.