**COLE SCHOTZ P.C.**
Court Plaza North
25 Main Street
P.O. Box 800
Hackensack, New Jersey 07602-0800
Ilana Volkov
ivolkov@coleschotz.com
Edward S. Kiel
edward.kiel@coleschotz.com
(201) 489-3000
(201) 489-1536 Facsimile
*Attorneys for Tai-Soo Suk, Foreign*
*Representative of Hanjin Shipping Co., Ltd.*

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY
HONORABLE JOHN K. SHERWOOD
CASE NO. 16-27041 (JKS)
Chapter 15

In re:

HANJIN SHIPPING CO., LTD.,[1]

    Debtor in a Foreign
    Proceeding.

HEARING DATE AND TIME:
OCTOBER 7, 2016, AT 11:00 A.M.

**ORAL ARGUMENT REQUESTED**

**FOREIGN REPRESENTATIVE'S (I) OBJECTION TO MOTION TO SHORTEN
TIME FOR HANJIN TO APPEAR FOR BANKR. R. 2004 DEPOSITION
WITH DOCUMENT PRODUCTION; AND (II) CROSS-MOTION FOR
ENTRY OF AN ORDER (A) QUASHING SUBPOENA ISSUED BY MCALLISTER
TOWING & TRANSPORTATION, INC., GLENCORE, CHEMOIL, SEACUBE,
TEXTAINER, OCEANCONNECT MARINE, INC. AND TRAC INTERMODAL
PURSUANT TO FED. R. BANKR. P. 2004 AND 9016, FED. R. CIV. P. 45 AND
D.N.J. LBR 2004-1(d); (B) FINDING OCEANCONNECT MARINE, INC. AND
ITS COUNSEL TO BE IN CONTEMPT FOR WILLFULLY VIOLATING THE
AUTOMATIC STAY PROVISIONS OF 11 U.S.C. § 362 AND THE SEPTEMBER 9, 2016
PROVISIONAL ORDER; AND (C) AWARDING THE FOREIGN ADMINISTRATOR
<u>COMPENSATORY AND PUNITIVE DAMAGES PURSUANT TO 11 U.S.C. § 362(k)</u>**

TO:    HONORABLE JOHN K. SHERWOOD
           United States Bankruptcy Judge

---

[1] The last four digits of Hanjin Shipping Co., Ltd.'s Business Registration Number are 1835. The Debtor's main corporate and mailing address is Hanjin Shipping Bldg., 25 Gukjegeumyung-Ro 2-Gil, Yeongdeungpo-Gu, Seoul 07327, Korea.

Tai-Soo Suk, the duly appointed foreign representative (the "Foreign Representative") of Hanjin Shipping Co., Ltd. ("Hanjin" or the "Debtor") in connection with the pending proceeding (the "Korean Proceeding") filed by Hanjin under the Debtor Rehabilitation and Bankruptcy Act in the Seoul Central District Court (the "Korean Court") in Seoul, Republic of Korea ("Korea"), by and through his counsel, Cole Schotz P.C., hereby files this (I) objection (the "Objection") to the Motion to Shorten Time For Hanjin to Appear For Bankr. R. 2004 Deposition with Document Production [Docket Nos. 307-1; 309] (the "Motion to Shorten")[2] filed by McAllister Towing & Transportation, Inc., Glencore, Chemoil, Seacube, Textainer, Oceanconnect Marine, Inc. ("OCM") and Trac Intermodal (collectively, the "Movants") and (II) cross-motion (the "Cross-Motion")[3] for entry of an order (A) quashing the Bankruptcy Rule 2004 subpoena dated September 29, 2016 (the "Subpoena")[4] issued by Movants, pursuant to Rules 2004 and 9016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Rule 45(d)(3) of the Federal Rules of Civil Procedure (the "Civil Rules"), and Rule 2004-1(d) of the Local Rules of the United States Bankruptcy Court for the District of New Jersey (the "Local Rules"); (B) finding OCM and its counsel to be in contempt for willfully violating the automatic stay provisions of section 362 of title 11 of the United States Code (the "Bankruptcy Code") and the September 9, 2016 provisional order (the "Provisional Order"); and (C) awarding the Foreign Administrator compensatory and punitive damages pursuant to section 362(k) of the Bankruptcy

---

[2] As described below, Movants (as defined herein) filed identical versions of the Motion to Shorten on September 30, 2016 [Docket No. 307-1] and October 3, 2016 [Docket No. 309].

[3] Given the emergent nature with which the Motion to Shorten was presented to the Court, the Foreign Administrator respectfully requests a waiver of strict compliance with Local Rule 9013-1 with respect to the Cross-Motion. To the extent the Court deems it necessary to schedule a separate hearing on the Cross-Motion, however, the Foreign Administrator consents to the scheduling of such a hearing at the Court's and counsels' convenience.

[4] As referred to herein, the "Subpoena" includes both the Notice of Deposition of Debtor Pursuant to LBR 2004-1, Bankr. R. 2004, 9010 and 7030(b)(6) [Docket No. 307-2] and the Subpoena for Rule 2004 Examination [Docket No. 307-2].

2

Code. In support of the Objection and the Cross-Motion, the Foreign Representative relies upon and incorporates by reference the Certification of Ilana Volkov filed contemporaneously herewith (the "Volkov Certification"). In further support of the Objection and the Cross-Motion, the Foreign Representative respectfully represents as follows:

## PRELIMINARY STATEMENT

1. In utter disregard of the explicit statutory framework of a chapter 15 proceeding, Movants addressed and issued a Subpoena to Hanjin and emailed it to U.S. counsel for the Foreign Representative. One day later, and without any legal support for the relief requested (because none exists), Movants filed the Motion to Shorten with an application to shorten time for notice of the hearing thereon. The Subpoena and the Motion to Shorten are replete with infirmities and, as set forth below, the Motion to Shorten should be denied summarily.

2. Moreover, even assuming, arguendo, Movants were permitted to conduct a Bankruptcy Rule 2004 examination in this case (which they are not), the Subpoena is defective for myriad reasons and should be quashed. First, neither Hanjin nor the Foreign Representative was properly served with the Subpoena. Second, the Movant did not provide witness fees or mileage, or set the location of the deposition within 100 miles of Hanjin (a Korean entity), as required by the Civil Rules and the Bankruptcy Rules. Third, the certification by counsel to Movants states the incorrect date of alleged service. Last, but not least, the information requested should be pursued in Korea, where Hanjin's foreign main proceeding is pending. For these reasons and as set forth in greater detail below, the Motion to Shorten should be denied and the Cross-Motion should be granted.

3. Finally, OCM and its counsel have willfully and brazenly violated the Court's Provisional Order by commencing a proceeding in the United States District Court for the

District of New Jersey (the "District Court") on October 2, 2016, to arrest one of Hanjin's chartered vessels, the M/V Seaspan Efficiency (the "Seaspan"), which proceeding is styled as Oceanconnect Marine, Inc. v. M/V Seaspan Efficiency, Her Engines, Tackle, Apparel & Her Appurtenances *In Rem*, No. 16-6283 (D.N.J.) (the "District Court Case"). OCM and its counsel surreptitiously obtained authority from the District Court to serve a Subpoena on Hanjin (the "District Court Subpoena"). OCM and its counsel have been active participants in the chapter 15 case since it was filed. Not only are they well aware of the Provisional Order, but as described below, they have aggressively appealed the order's scope up to the United States Court of Appeals for the Third Circuit (the "Third Circuit"). Notwithstanding their knowledge of the Provisional Order and its scope, and having been repeatedly told that the Seaspan is and remains a Hanjin-chartered vessel, OCM and its counsel filed the District Court Action in direct violation of the automatic stay and the Provisional Order. Moreover, despite being asked to dismiss the District Court Case and to withdraw the District Court Subpoena, OCM and its counsel have failed to do so. For these reasons, the Cross-Motion for contempt should be granted.

## FACTUAL BACKGROUND

**I.    The Chapter 15 Case and the Appeal**

4.    On September 2, 2016, the Foreign Representative initiated this case by filing a chapter 15 petition with the Court. On that same date, the Foreign Representative filed a Motion of Foreign Representative For Entry of Provisional and Final Orders Granting Recognition of Foreign Main Proceeding and Certain Related Relief Pursuant to Sections 362, 365, 1517, 1519, 1520, 1521, and 105(a) of the Bankruptcy Code [Docket. No. 5] (the "Recognition Motion").

5.    On September 6, 2016, the Court conducted an interim hearing on the Recognition Motion (the "Interim Hearing"), after which it entered the Interim Provisional Order Granting Recognition of Foreign Main Proceeding and Certain Related Relief Pursuant to

4

Sections 362, 365, 1517, 1519, 1520, 1521, and 105(a) of Bankruptcy Code [Docket. No. 22] (the "Interim Provisional Order"). The Interim Provisional Order continued the Interim Hearing on the Recognition Motion to September 9, 2016 at 10:00 a.m. (EST) (the "Continued Hearing").

6. The Court overruled the Movants' objection to entry of the Provisional Order. As a result, during the Continued Hearing, certain of the Movants filed an Emergency Motion of Maritime Lien Holders OceanConnect Marine, Inc., Glencore and Moran For This Court to Reconsider its Order Denying Maritime Lien Rights of Arrest or Security [Docket No. 85-1] (the "Reconsideration Motion").

7. On September 9, 2016, the Court entered its Order Granting Provisional Relief Pursuant to Sections 362, 365(e), 1519, 1520, and 105(a) of the Bankruptcy Code Pending Hearing on Petition For Recognition as a Foreign Main Proceeding [Docket No. 102] (i.e., the Provisional Order). Paragraph 4(a) of the Provisional Order expressly states that "all entities . . . are hereby enjoined from . . . the commencement . . . of a judicial . . . action . . . against . . . the Hanjin Assets." See Provisional Order, ¶ 4(a). "Hanjin Assets" are defined in the Provisional Order to mean "property of Hanjin within the territorial jurisdiction of the U.S. including . . . chartered (leased) vessels or property thereon . . . and any other transportation equipment . . . ." Id., ¶ 4 (emphasis added). Paragraph 4(e) of the Provisional Order expressly states that "all entities . . . are hereby enjoined from . . . commencing or continuing an individual action or proceeding within the territorial jurisdiction of the United States concerning Hanjin, Hanjin Assets, Hanjin's rights, obligations, or liabilities." See id., ¶ 4(e). Paragraph 4(h) of the Provisional Order states that "all entities . . . are hereby enjoined from . . . arresting or attaching any vessel or other transportation equipment that is owned by, operated by or chartered to Hanjin." See id., ¶ 4(h). The Provisional Order states that section

5

362 of the Bankruptcy Code is applicable to the chapter 15 case and to the "Hanjin Assets." See id., ¶ 4.

8. On September 15, 2016, the Court conducted a hearing and a status conference, during which, among other things, it (i) orally denied the Reconsideration Motion and (ii) stated that it would issue a written opinion denying the Reconsideration Motion on or before September 19, 2016.

9. On September 15, 2016, certain of the Movants filed a notice of appeal to the District Court of the Provisional Order and the Court's oral denial of the Reconsideration Motion [Dkt. No. 134], notwithstanding that the September 20 Order (as defined below) had yet to be issued.

10. On September 16, 2016, certain of the Movants filed an Ex-Parte Application for Emergency Relief to Stay with the District Court [D.N.J. Case No. 16-05641, Docket No. 3] (the "District Court Stay Motion"), seeking a stay pending appeal of the Provisional Order and the denial of the Reconsideration Motion.

11. On September 16, 2016, the District Court entered an order denying the District Court Stay Motion [D.N.J. Case No. 16-05641, Docket No. 7] (the "District Court Stay Denial Order"), finding that the emergent relief requested by the appellants was not warranted. The District Court stated that "the Maritime Lien Holders' arguments largely ignore the existence of the Korean bankruptcy proceeding, and speak as if this were a simple matter of their rights as lienors. It is not." Id. at pg. 3.

12. On September 20, 2016, this Court issued its opinion denying the Reconsideration Motion [Docket No. 191] (the "September 20 Order").

46807/0007-13649261v5

13. On September 19, 2016, certain of the Movants filed a notice of appeal to the Third Circuit of the District Court Stay Denial Order [D.N.J. Case No. 16-05641, Docket No. 8].

14. On October 3, 2016, the Third Circuit entered an order dismissing the appeal for lack of jurisdiction [3d Cir. Case No. 16-3652; Document Number 003112424474].

**II.    The Motion to Shorten and the Subpoena**

15. On September 29, 2016, Movants e-mailed a copy of the Subpoena to counsel for the Foreign Representative, among others, seeking the production by Hanjin of nine (9) categories of documents by October 13, 2016 (the "Requests") and seeking to schedule a deposition for October 13, 2016 "or a sooner date/time as order by the Court or agreed by the parties."[5] The deposition notice attaching the Subpoena, however, is dated September 26, 2016 and contains a "Certificate of Service" that the Subpoena was "served on Debtor's counsel" on September 26, 2016. See Volkov Certification, Ex. A. By their own admission, however, Movants concede the Subpoena was not emailed until September 29, 2016 (which, as discussed below, does not constitute proper service).

16. On September 29, 2016, counsel for Movants twice requested that U.S. counsel for the Foreign Representative agree to expedite the response time for Movants' document requests. See Volkov Certification, Ex. B.

17. On September 30, 2016, Movants filed the Motion to Shorten and a corresponding application for order shortening time [Docket No. 307] (the "Application").

18. On October 3, 2016, Movants again filed the Motion to Shorten [Docket No. 309], this time without a corresponding application for order shortening time.

---

[5] Incredibly, the Subpoena also purports to be one under Bankruptcy Rule 30(b)(6).

7

19. On October 3, 2016, the Court entered an order granting the Application and scheduling a hearing on the Motion to Shorten for October 7, 2016 at 11:00 a.m. [Docket No. 311].

20. On October 5, 2016, counsel for the Movants sent an e-mail with a different proposed deposition date. See Volkov Certification, Ex. C.

### III. The Second District Court Case

21. Prior to the commencement of the District Court Case, OCM and its counsel were (i) actively involved in the chapter 15 case, see, e.g., Docket Nos. 66, 126, 134; (ii) served with the Provisional Order (in fact, moved for its reconsideration), see Docket No. 142; and (iii) made aware on numerous occasions that the Seaspan was, and continues to be, a Hanjin-chartered vessel, see Volkov Certification, Exs. D-E.

22. On October 2, 2016, OCM, through counsel for Movants, commenced the District Court Case in the District Court by filing a complaint. See District Court Case, Docket No. 1 (the "District Court Complaint"), a true and correct copy of which is attached to the Volkov Certification as Exhibit F.

23. On October 3, 2016, OCM, through counsel for Movants, filed with the District Court an *ex parte* Motion for Order Authorizing Immediate Discovery and Memorandum in Support, seeking discovery from, among other parties, Hanjin. See District Court Case, Docket No. 7 (the "Discovery Motion").

24. On October 4, 2016, the District Court entered an Order Authorizing Immediate Discovery, permitting the District Court Subpoena to be served on Hanjin. See id., Docket No. 8. A true and correct copy of the District Court Subpoena is attached to the Volkov Certification as Exhibit G.

25. On October 4, 2016, U.S. Counsel for the Foreign Administrator received a hand delivery of the District Court Subpoena. On the same day, U.S. counsel for the Foreign Administrator wrote to OCM's counsel advising that the District Court Complaint and the District Court Subpoena are in violation of the Provisional Order and should be dismissed, absent which sanctions would be sought. See Volkov Certification, Ex. H.

## OBJECTION AND BASIS FOR CROSS-MOTION

### I. Chapter 15 of the Bankruptcy Code Does Not Permit Parties Other Than a Foreign Representative to Conduct a Bankruptcy Rule 2004 Examination

26. Where a bankruptcy court has yet to enter an order recognizing a foreign proceeding as a foreign main proceeding, it is permitted to grant provisional relief under section 1519 of the Bankruptcy Code only "at the request of the foreign representative, where relief is urgently needed to protect the assets of the debtor or the interests of the creditors." See 11 U.S.C. § 1519(a) (emphasis added). Upon such a showing, the court "may" permit the foreign representative to examine witnesses, take evidence or request information concerning the debtor's assets, affairs, rights, obligations or liabilities. See id. §§ 1519(a)(3); 1521(a)(4). There is no language in chapter 15 of the Bankruptcy Code permitting any party other than a foreign representative to take discovery, let alone commence a Bankruptcy Rule 2004 examination. Indeed, the limited case law discussing Bankruptcy Rule 2004 examinations in the context of chapter 15 cases recognizes only a foreign representative's right to conduct a Bankruptcy Rule 2004 examination after an order recognizing the foreign insolvency proceeding as a foreign main proceeding has been entered. See, e.g., In re Millennium Global Emerging Credit Master Fund Ltd., 471 B.R. 342 (Bankr. S.D.N.Y. 2012) (permitting the foreign representative to conduct discovery under Bankruptcy Rule 2004, but remaining silent as to the applicability of Bankruptcy Rule 2004 to chapter 15 case); In re Petroforte Brasileiro de Petroleo Ltda., 542 B.R.

9

899, 910-11 (Bankr. S.D. Fla. 2015) (permitting the foreign representative to conduct discovery pursuant to Bankruptcy Rule 2004 after recognizing of the foreign proceeding as a foreign main proceeding).

27. Here, not only is there no statutory authority for Movants to conduct a Bankruptcy Rule 2004 examination of Hanjin (and, in fact, none is cited in the Motion to Shorten), but the case law permitting such an examination is limited to a foreign representative and the period of time after the bankruptcy court enters an order recognizing a foreign proceeding as a foreign main proceeding. Given the Motion to Shorten has no basis in fact or in law, it should be denied and the Subpoena should be quashed.

**II.     The Subpoena Was Not Served on Hanjin or Counsel to Hanjin and Has Numerous Other Defects**

28. Even assuming, arguendo, Movants were permitted to issue the Subpoena (which they were not), it was not served, has other defects and must be quashed. Specifically, service of a subpoena is governed by Bankruptcy Rule 9016(b) and Civil Rule 45(b), which are identical. See Fed. R. Bankr. P. 9016(b); Fed. R. Civ. P. 45(b). Bankruptcy Rule 9016(b)(1) states that "[s]erving a subpoena requires delivering a copy to the named person and, if the subpoena required that person's attendance, tendering the fees for 1 day's attendance and the mileage allowed by law." Fed. R. Bankr. P. 9016(b)(1); see also Robertson v. Dennis (In re Dennis), 330 F.3d 696, 704 (5th Cir. 2003) (quashing subpoena for failure to simultaneously tender mileage). Bankruptcy Rule 9016(b)(4) states that "[p]roving service, when necessary, requires filing with the issuing court a statement showing the date and manner of service and the names of the persons served. The statement must be certified by the server." Fed. R. Bankr. P. 9016(b)(4). Bankruptcy Rule 9016(c) requires the location of the proposed deposition to be within 100 miles of where the person resides. Id. 9016(c)(1)(A). "A subpoena under Rule 45 is not properly

10

served by email or fax, but must be served personally." SEC v. Art Intellect, Inc., No. 11-00357, 2012 WL 776244, at *3 (D. Utah Mar. 7, 2012); see also Bank of Oklahoma, N.A. v. Arnold, No. 06–543, 2008 WL 482860, at *3 (N.D. Okla. Feb.20, 2008) ("[T]he Court declines the government's invitation to interpret Rule 45(b)(1) so broadly as to allow service of a subpoena by email or facsimile in this case").

29. Here, the Subpoena was e-mailed to U.S. counsel for the Foreign Representative. Case law holds that is improper service. Additionally, U.S. counsel for the Foreign Representative does not represent Hanjin and is not authorized to accept service of process for Hanjin. Nor does the "Certificate of Service" reflect the correct date on which service was purportedly attempted.

30. In addition, Movants did not tender witness fees or mileage, which is a requirement under Bankruptcy Rule 9016(b)(1), nor does the Subpoena designate a deposition location within 100 miles of Hanjin, as required by Bankruptcy Rule 9016(c)(1)(A).[6]

31. For all these reasons, the Motion to Shorten should be denied and the Subpoena should be quashed.

### III. The Subpoena Seeks Documents and Information Outside the Scope of a Bankruptcy Rule 2004 Examination

32. Even assuming that chapter 15 permits the Movants to conduct a Bankruptcy Rule 2004 examination (which it does not), the Subpoena is overbroad and seeks information that is (i) either not relevant to the chapter 15 proceeding, or (ii) already ruled on by the Court in connection with the Court's entry of the Provisional Order or not yet ripe.

---

[6] Even if a Rule 2004 subpoena could be issued (which it cannot) and it was served properly (which it was not), Movants conveniently ignore the practicalities of trying to compel a Korean witness to travel to the United States for a deposition on shortened notice, which would require, among other things, obtaining a visa and being on a plane for at least fourteen (14) hours.

11

33.     Specifically, Movants request information about Hanjin, its assets and leasing relationships on a "worldwide" basis, completely ignoring the limited scope of this ancillary proceeding, as well as information about Hanjin's business plans which reside solely with the company and the Foreign Representative in Korea. See, Request Nos. 1 through 8.

34.     Moreover, Request No. 9 seeks discovery in connection with the Provisional Order. This makes no sense. Request No. 9 also seeks discovery in connection with the recognition hearing, which has not been scheduled and which is entirely premature. Most certainly such request, to the extent it is even obliged, does not need to be responded to on an expedited basis.

35.     For all these reasons, the Motion to Shorten should be denied and the Subpoena should be quashed.

**IV.     The Unsupported Factual Assertions and Irrelevant Affidavit Do Not Support Granting the Motion to Shorten**

36.     Movants' assertion that the relief requested in the Motion to Shorten is "urgent" is based on unsupported speculations and "[p]ress reports" that their purported property may be scrapped, damaged, absconded, or stolen. See Motion to Shorten at pg. 3. News reports, however, are inadmissible hearsay when offered to prove the truth of the matters stated therein. See Fed. R. Evid. 803; May v. Cooperman, 780 F.2d 240, 262 n.10 (3d Cir. 1985).[7]

37.     Moreover, the Motion to Shorten attaches an affidavit that is irrelevant, makes legal conclusions and is inconsistent with statements made by Movants's counsel on the record during the chapter 15 case. See Affidavit of Choon-Won Lee, Partner, Jipyong Law Firm, Seoul,

---

[7] This is not the first time Movants' counsel advances legal positions based on hearsay. See September 9, 2016 Transcript (as defined below), a copy of which is attached to the Volkov Certification as Exhibit I, at 78:21-79:79 ("Mr. Simms: All right, so the Seaspan, Mr. Maloney is here in the courtroom. The sea span efficiency for example, one of the ships we have a maritime lien against for $800,000 was reported recently sold in actually in September for 5.4 million. And Brian can wave at me and tell me --; Mr. Ashby: Actually it's John Ashby with Steward and Casal (phonetic) on behalf of Seaspan Corp. As I told Mr. Simms earlier, actually the vessel has not been sold; Mr. Simms: Oh, okay.").

Korea, of Korean Law [Docket No. 307-3] (the "Lee Affidavit").  For example, the Lee Affidavit discusses Panamanian law, but does not state that the affiant is admitted to practice law in Panama or has any expertise in Panamanian law.  See Lee Affidavit, ¶¶ 2, 4.  Interestingly, the Motion to Shorten does not even discuss whether any of the underlying vessels are registered in Panama.  Moreover, the affiant makes legal conclusions about a subject matter for which he has not been qualified as an expert and for which the Court has not requested his assistance.  See id. at ¶ 6 ("The Bankruptcy Court's prohibition of the arrest of Hanjin-chartered vessels is not supported by the DRBA or other Korean law"); see also Toscano v. Case, No. 11-4121, 2013 WL 5333206, at *8 (D.N.J. Sept. 20, 2013) (explaining that an "expert's testimony must in fact assist the fact-finder, by providing it with relevant information necessary to a reasoned decision of the case" and that "an expert cannot testify as to ultimate legal conclusions, as to do so would improperly invade the province of the court and the jury"); U.S. v. Jefferson, 623 F. Supp. 2d 683, 688 (E.D. Va. 2009) (holding that opinion testimony is inadmissible where it states a legal standard or draws a legal conclusion).

38.     Finally, Movants' counsel previously stated that his clients have no maritime lien rights in Korea, but the Lee Affidavit states that the Korean Court will "apply the law of the flag state of the subject vessel" to determine maritime lien rights.  Compare Transcript of September 9, 2016 Hearing (the "September 9, 2016 Transcript"), at 95:18-19 ("Mr. Simms: We have no rights Your Honor, no rights whatsoever"), and 97:7-9 ("Mr. Simms: It makes us totally insecure and absolutely inadequately compensated because we have no rights.  There's no rights"), with Lee Affidavit at ¶ 4 ("When a Korean court considers a vessel arrest relying on a maritime lien, a mortgage and/or other secured rights, the court will apply the law of the flag state of the subject

vessel"). An excerpted copy of the September 9, 2016 Transcript is attached to the Volkov Certification as Exhibit I.

39. Accordingly, the Movant has not set forth sufficient grounds to grant the Motion to Shorten and it should be denied.

**V.    The Foreign Representative Should Be Awarded Compensatory and Punitive Damages For the Willful Violations of the Automatic Stay by OCM and Its Counsel**

40. Where a party violates an order of the Court, the Court has authority under section 105(a) of the Bankruptcy Code to impose a variety of sanctions, including holding the party in contempt. See Chambers v. NASCO, Inc., 501 U.S. 32, 44-45 (1991) (courts have discretion to fashion appropriate sanctions for abuses of court processes); Solow v. Kalikow (In re Kalikow), 602 F.3d 82, 96 (2d Cir. 2010) ("The statutory contempt powers given to a bankruptcy court under § 105(a) complement the inherent powers of a federal court to enforce its own orders"). Moreover, pursuant to section 362(k) of the Bankruptcy Code, where a party is found to have willfully violated the automatic stay the Court can impose "costs and attorneys' fees, and, in appropriate circumstances, . . . punitive damages." 11 U.S.C. § 362(k). For example, in the case of Cuffee v. Atlantic Business & Community Development Corp. (In re Atlantic Business & Community Development. Corp.), 901 F.2d 325 (3d Cir. 1990), the Third Circuit affirmed a district court order finding appellant in contempt and assessing punitive and compensatory damages, including attorney's fees and costs, for willfully violating the automatic stay. Id. at 326.

41. In Atlantic Business & Community Development. Corp. the Third Circuit adopted the following description of what constitutes a "willful violation" of the automatic stay:

> A 'willful violation' does not require a specific intent to violate the automatic stay. Rather, the statute provides for damages upon a finding that the defendant knew of the automatic stay and that the defendant's actions which violated the stay were intentional. Whether the party believes in good faith that it had a right

14

> to the property is not relevant to whether the act was 'willful' or whether compensation must be awarded.

Id. at 329 (quoting Goichman v. Bloom (In re Bloom), 875 F.2d 224, 227 (9th Cir. 1989)). Indeed, when bankruptcy courts perceive that a party has intentionally, and without excuse, violated the terms of the automatic stay, they have not hesitated to impose stiff sanctions. See, e.g., B. Cohen & Sons Caterers, Inc. v. New Plan Realty Trust (In re B. Cohen & Sons Caterers, Inc.), 97 B.R. 808, 816-19 (Bankr. E.D. Pa. 1989) (awarding debtor $50,000 in actual damages, $10,000 in punitive damages, the striking of a proof of claim filed in the amount of approximately $270,000, plus attorneys' fees for landlord's destruction of the debtor's property in violation of the automatic stay).

42. Here, OCM and its counsel willfully violated the automatic stay imposed by the Provisional Order by filing the District Court Complaint and issuing the District Court Subpoena. OCM and its counsel misstate in the District Court Complaint that the Seaspan is no longer under charter, and have no factual basis upon which to allege that the Seaspan will soon cease to be off charter. In fact, counsel repeatedly has been advised that the Seaspan's charter has not been terminated; as late as October 4, the Foreign Administrator's counsel advised OCM's counsel that the Seaspan has export cargo. See Volkov Certification, Ex. H.

43. The Provisional Order defines a "Hanjin Asset" as, among other things, any vessel chartered by Hanjin. Therefore, the Seaspan is included in the definition of Hanjin Asset and indisputably covered by the protections of the Provisional Order. Additionally, Hanjin and the Foreign Administrator similarly are protected by the Provisional Order with respect to service of process of discovery.

15

44.     Finally, it is noteworthy and beyond credulity that OCM and its counsel filed the Discovery Motion on an *ex parte* basis without informing counsel to the Foreign Representative or counsel to the owner of the Seaspan, despite corresponding with them both almost daily.

45.     For these reasons, the Foreign Representative submits that OCM and its counsel should be held in contempt for willfully violating the automatic stay of section 362 of the Bankruptcy Code and the Provisional Order and that the Foreign Representative should be entitled to compensatory and punitive damages pursuant to section 362(k) of the Bankruptcy Code.

## CONCLUSION

WHEREFORE, based on the foregoing arguments and authorities, it is respectfully requested that the Court (i) deny the Motion to Shorten; (ii) enter the accompanying Order (a) quashing the Subpoena; (b) finding OCM and its counsel to be in contempt of court for willfully violating the automatic stay and the Provisional Order; and (c) awarding compensatory and punitive damages to the Foreign Administrator; and (iii) grant such other relief as the Court deems just and appropriate under the circumstances.

DATED:   October 6, 2016

               Respectfully submitted,

               COLE SCHOTZ P.C.

               */s/ Ilana Volkov*
               Ilana Volkov
               Edward S. Kiel

               *Attorneys for Tai-Soo Suk, Foreign Representative of Hanjin Shipping Co., Ltd.*

46807/0007-13649261v5