UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
_____

**Caption in Compliance with D.N.J. LBR
9004-1(b)**

WASSERMAN, JURISTA & STOLZ, P.C.
110 Allen Road, Suite 304
Basking Ridge, New Jersey 07920
Phone: (973) 467-2700
Fax: (973) 467-8126
dclarke@wjslaw.com

SIMMS SHOWERS LLP
201 International Circle
Baltimore, Maryland 21030
Phone: (410) 783-5795
Fax: (410) 510-1789
jssimms@simmsshowers.com

Attorneys for Container Leasing International
LLC (d/b/a/ SeaCube Containers, LLC);
Interpool, Inc. (d/b/a TRAC Intermodal); and
OceanConnect Marine, Inc.

| | |
|---|---|
| In Re:<br>Hanjin Shipping Co., Ltd. | Case No.: 16-27041 (JKS)<br>Chapter: 15<br>Hearing Date: November 22, 2016<br>Judge: John K. Sherwood |

**LIMITED OBJECTION TO
PROPOSED FINAL ORDER GRANTING
RECOGNITION OF FOREIGN MAIN PROCEEDING**

    Container Leasing International LLC (d/b/a/ SeaCube Containers, LLC) ("SeaCube") and

Interpool, Inc. (d/b/a TRAC Intermodal) ("Trac") (collectively, the "Common Benefit

Claimants") and OceanConnect Marine, Inc. ("OCM") hereby object to certain provisions

contained in the proposed *Final Order Granting Recognition of Foreign Main Proceeding and*

*Certain Related Relief Pursuant to Sections 362, 365(e), 1517, 1520, 1521, and 105(a) of the*

*Bankruptcy Code* [Docket No. 392-1] (the "Proposed Final Order").  As set forth more fully

below, the Proposed Final Order does not sufficiently protect the Common Benefit Claimants

and OCM in accordance with 11 U.S.C. § 1522.  Instead, the Proposed Final Order effectively

eliminates the rights of the Common Benefit Claimants and OCM, downgrades their otherwise

superior-in-right claims, and grants relief to Hanjin that it is not otherwise entitled to receive in

the Korean rehabilitation proceeding (the "Korean Proceeding").

### Common Benefit Claimants

Each of the Common Benefit Claimants was party to a separate lease agreement with

Hanjin pursuant to which Hanjin agreed to lease certain equipment (chassis in the case of Trac;

containers in the case of SeaCube).

Following the commencement of Hanjin's rehabilitation proceedings in Korea, Hanjin

terminated its respective lease with each of the Common Benefit Claimants.  Notwithstanding

this termination, Hanjin refused to return and continued to use and/or possess the Common

Benefit Claimants' equipment for its own benefit, including to conclude voyages and deliver

cargo to the benefit of other Hanjin creditors.

As a matter of Korean insolvency law, Trac and SeaCube each have common benefit

claims against Hanjin arising out of Hanjin's continued use and/or possession of their respective

equipment.

The affidavit of Dr. Hyun Kim (the "Sechang Affidavit"), attached hereto as Exhibit A,

sets forth in greater detail the mechanics of common benefit claims under Korean law.  A

common benefit claim is similar to an administrative expense – it is created by a debtor's post-

petition liabilities that provide a benefit to the debtor's estate.  Sechang Aff. ¶ 9.  But unlike an

administrative expense under U.S. bankruptcy law, a common benefit claim under Korean law is

to be paid on a current basis as the liability accrues; payment of a common benefit claim is outside of the rehabilitation proceedings and not part of the rehabilitation plan. *Id.* ¶¶ 10–11.

When a debtor who previously used equipment under a lease agreement rejects that lease after initiating rehabilitation proceedings but nevertheless continues to use that equipment, a common benefit claim arises in favor of the equipment lessor. *Id.* ¶ 13. That common benefit claim may be asserted and recovered upon outside of the Korean rehabilitation proceedings or the Korean judicial system. *Id.* ¶ 14. In fact, suit may be brought to recover on a common benefit claim anywhere in the world. *Id.* ¶ 15.

In the case of the Common Benefit Claimants, Hanjin has continued to use and/or possess their equipment after initiating rehabilitation proceedings and after terminating the underlying leases, but without paying for such use. *Id.* ¶¶ 16–18. Accordingly, Korean insolvency law provides that the Common Benefit Claimants have common benefit claims against Hanjin which they may assert anywhere in the world, including in the United States, outside of the Korean Proceeding and irrespective of the stay issued thereunder. *Id.* ¶¶ 14–15, 20.

Because enforcement of common benefit claims falls outside of the Korean Proceeding and is not stayed or otherwise constrained by the Korean Proceeding, Hanjin should not be permitted to obtain relief here in the United States, through the Proposed Final Order, that it would not otherwise have in Korea.

The fundamental purpose of an ancillary Chapter 15 proceeding is to provide assistance to the foreign main proceeding. A Chapter 15 proceeding should defer to a foreign main proceeding under the principle of comity, subject to any limitations imposed by the Bankruptcy Code. Comity and deference do not require that the Chapter 15 proceeding provide greater protection to a debtor than that debtor is entitled to receive in the foreign main proceeding, and in

fact argue against such action.  Where a Chapter 15 proceeding attempts to do so, it is no longer providing deferential assistance to a foreign main proceeding – it is instead throwing comity out the window and making unilateral determinations.

The Common Benefit Claimants therefore object to the Proposed Final Order to the extent that it purports to provide relief to Hanjin that is not available in the Korean Proceeding. Specifically, the Common Benefit Claimants object to Paragraph 5 of the Proposed Final Order which seeks to apply §§ 362 and 365(e) of the Bankruptcy Code and *inter alia* enjoin any entity (including the Common Benefit Claimants) from taking legal action to enforce their common benefit claims.

The Common Benefit Claimants seek a carve-out to the Proposed Final Order which would allow them, and any other common benefit claimant, to prosecute their claims against Hanjin – and execute against any Hanjin assets – in the United States **only** upon confirmation that they have enforceable common benefit claims.  The Common Benefit Claimants already have this right under Korean law and comity requires that this right be upheld in this proceeding.

The Proposed Final Order seeks relief under *inter alia* 11 U.S.C. § 1521.  Section 1522(a), however, provides that *inter alia* relief under § 1521 may be granted "only if the interests of the creditors and other interested entities, including the debtor, are **sufficiently protected**."  11 U.S.C. § 1522(a) (emphasis added).  As the Fourth Circuit explained,

> Section 1522(a) requires the bankruptcy court to ensure the protection of both the creditors and the debtor. 11 U.S.C. § 1522(a). The provision thus requires the court to ensure that the relief a foreign representative requests under § 1521 does not impinge excessively on any one entity's interests, implying that each entity must receive at least some protection. And because the interests of the creditors and the interests of the debtor are often antagonistic, as they are here, providing protection to one side might well come at some expense to the other. The analysis required by § 1522(a) is therefore logically best done by balancing

> the respective interests based on the relative harms and benefits in light of the circumstances presented, thus inherently calling for application of a balancing test.
>
> *       *       *
>
> Chapter 15 does not require a U.S. bankruptcy court, in considering a foreign representative's request for discretionary relief under § 1521, to blind itself to the costs that awarding such relief would impose on others under the rule provided by the substantive law of the State where the foreign insolvency proceeding is pending. Instead, Chapter 15, like the Model Law, anticipates the provision of particularized protection, as stated in § 1522(a).

*Jaffé v. Samsung Elecs. Co.*, 737 F.3d 14, 27–28, 29 (4th Cir. 2013) (emphasis in original).

Other courts have likewise concluded that a foreign debtor seeking recognition of a foreign proceeding is not automatically entitled to blanket relief without an appropriate consideration and balancing of creditors' interests under § 1522. *See, e.g.*, *Ad Hoc Grp. of Vitro Noteholders v. Vitro SAB De CV (In re Vitro SAB De CV)*, 701 F.3d 1031, 1060 (5th Cir. 2012) (requiring balancing of creditors' and debtor's interests before granting relief under § 1521); *In re Sivec SRL*, 476 B.R. 310, 320 (Bankr. E.D. Okla. 2012) ("Comity is only to be extended so long as the interests of U.S. creditors are sufficiently protected, and so long as any actions taken are not manifestly contrary to the public policy of the United States."); *In re Int'l Banking Corp. B.S.C.*, 439 B.R. 614, 627 (Bankr. S.D.N.Y. 2010) (prohibiting relief under § 1521 absent sufficient protection of creditors' and debtor's interests under § 1522); *In re Tri-Cont'l Exch.*, 349 B.R. 627, 637 (Bankr. E.D. Cal. 2006) (same).

The relief sought by the Common Benefit Claimants here is narrowly tailored to sufficiently protect their interests in accordance with § 1522. Because the relief sought is consistent with Korean law as it provides for enforcement and prosecution of common benefit claims, there is no actual harm to Hanjin by granting the Common Benefit Claimants' objection.

Hanjin is already subject to litigation involving common benefit claims as a matter of Korean law; the Common Benefit Claimants simply seek to ensure that this relief is also available to them here.

As the Sechang Affidavit confirms in greater detail, *supra*, holders of common benefit claims are not bound by the Korean Proceeding or any stay issued thereunder and may prosecute their claims in any court anywhere in the world.  Hanjin therefore has no protection under the Korean Proceeding against the assertion of common benefit claims.

Because the Common Benefit Claimants may otherwise proceed against Hanjin and its assets notwithstanding the Korean Proceeding, a balancing analysis under § 1522 is not necessary.  Hanjin presently has no protection from common benefit claims in the Korean Proceeding; any claimant asserting a common benefit claim can today sue Hanjin anywhere in the world in accordance with Korean law and without violating the stay issued in the Korean Proceeding.  As a result, there is no protectable interest of Hanjin's which this Court must consider under a § 1522 balancing analysis.

Even if § 1522  is implicated and a balancing analysis is required, granting Hanjin the relief sought in the Proposed Final Order, notwithstanding the clear limitations on the protections afforded to Hanjin in the Korean Proceeding, provides complete protection to Hanjin and no protection to the Common Benefit Claimants.  The Proposed Final Order seeks relief that exceeds what is available to Hanjin in Korea while simultaneously eliminating the rights of the Common Benefit Claimants to pursue their claims against Hanjin, and its assets, outside of the Korean Proceeding.

In light of the above, the only proper result – with or without a § 1522 balancing analysis – is to provide the carve-out sought by the Common Benefit Claimants so that they (and any

other entities which are found to hold a valid, enforceable common benefit claim in accordance with Korean insolvency law) may prosecute their claims and execute their judgments against Hanjin and any of its assets located within the United States.

For the same reasons set forth above, the Common Benefit Claimants also seek relief from the § 362 automatic stay to the extent it is applied under § 1520.  Section 1520(a)(1) provides that "Upon recognition of a foreign proceeding that is a foreign main proceeding—(1) sections 361 and 362 apply with respect to the debtor and the property of the debtor that is within the territorial jurisdiction of the United States."  11 U.S.C. § 1520(a)(1).  The automatic stay, however, can be modified or lifted "for cause" under § 362(d) – a decision left to the sound discretion of the bankruptcy court upon consideration of "the totality of the circumstances in each particular case."  *In re Wilson*, 116 F.3d 87, 90 (3d Cir. 1997).

> Pursuant to Section 362(d), the bankruptcy court may lift the automatic stay "for cause." 11 U.S.C. § 362(d). The Bankruptcy Code does not define "cause." *See In re Wilson*, 116 F.3d 87, 90 (3d Cir. 1997). Therefore, the determination to grant a party relief from the stay is made on a case-by-case basis. *Id.* However, factors to consider in deciding whether "cause" has been shown include: (i) prejudice to the debtor's estate, (ii) hardship to the moving party, and (iii) probability of success on the merits. *In re Nortel Networks Corp.*, 445 B.R. 370 (Bankr.D.Del 2011).

*In re McGowan*, 2011 Bankr. LEXIS 2292, at *5 (U.S. Bankr. D.N.J. June 15, 2011).

Here, the "for cause" factors weigh in favor of the Common Benefit Claimants.  The prejudice to Hanjin's estate, if any, is minimal.   In fact, Hanjin's estate has benefited significantly from Hanjin's continued use of the Common Benefit Claimants' equipment, which use has allowed Hanjin to continue operations from which it is realizing revenue.  Without the Common Benefit Claimants' equipment, Hanjin would not have the containers or chassis needed to deliver the cargo it was hired to transport.  The hardship to the Common Benefit Claimants

from the automatic stay is significant – for each day that Hanjin continues to use and/or possess their equipment, the Common Benefit Claimants are not realizing the rental revenue they are otherwise entitled to receive and are unable to lease their equipment to other, paying customers.

The probably of success on the merits factor also weighs in favor of the Common Benefit Claimants.  The Sechang Affidavit confirms that (1) Hanjin has continued to use and/or possess the Common Benefit Claimant's equipment without payment even after rejecting the underlying leases; (2) under Korean insolvency, such use creates a common benefit claim against Hanjin; and (3) the Common Benefit Claimants can sue and recover from Hanjin anywhere in the world.  Hanjin has no defense to these claims and the Common Benefit Claimants have an excellent probability of succeeding on the merits.

In light of the above, the Common Benefit Claimants seek a modification or lifting of any § 362 automatic stay imposed pursuant to § 1520 such that their ability to enforce their respective common benefit claims against Hanjin and its assets in the United States is not otherwise impaired by the Proposed Final Order.

### Maritime Lien Holders

OCM is a marine fuel (bunkers) supplier that provided bunkers, on the order of Hanjin and/or its agents, valued at more than USD 1,000,000 to a number of Hanjin vessels just days before Hanjin's insolvency filing in Korea.  Pursuant to black letter maritime law, OCM has a maritime lien *in rem* against each of the vessels to which it provided bunkers.  *See* 46 U.S.C. § 31401 *et seq.*; T Shoenbaum, *Admiralty and Maritime Law*, § 9-3 at 702–09 (5th Ed. 2011 & Supp. 2016).

> "The federal maritime lien is a unique security device, serving the dual purpose of keeping ships moving in commerce while not allowing them to escape their debts by sailing away. The lien is a

> special property right in the vessel, arising in favor of the creditor
> by operation of law as security for a debt or claim."

*In re Muma Servs.*, 322 B.R. 541, 546 (Bankr. D. Del. 2005) (quoting *Equilease Corp. v. M/V*

*Sampson*, 793 F.2d 598, 602 (5th Cir. 1986)).

> Maritime liens are a statutory creations [sic] intended to protect
> those who do, in fact, provide necessaries to vessels. The
> legislative history surrounding CIMLA and its predecessor statutes
> confirms that its purpose is to facilitate maritime commerce by
> "protect[ing] terminal operators, ship chandlers, ship repairers,
> stevedores and other suppliers who in good faith furnish
> necessaries to a vessel." H.R. Rep. No. 92-340, 92nd Cong. 1st
> Sess. (1971); *see also Tramp Oil & Marine, Ltd. v. M/V Mermaid
> I*, 805 F.2d 42, 46 (1st Cir. 1986) ("The primary concern of the
> Federal Maritime Lien Act is the protection of American suppliers
> of goods and services."); *Atl. & Gulf Stevedores, Inc. v. M/V
> Grand Loyalty*, 608 F.2d 197, 201 (5th Cir. 1979) ("Our review [of
> the legislative history] leads us inexorably to the conclusion that it
> was the intent of Congress to make it easier and more certain for
> stevedores and others to protect their interests by making maritime
> liens available where traditional services are routinely rendered.");
> *L&L Elecs., Inc. v. M/V OSPREY*, 764 F. Supp. 2d 270, 273 (D.
> Mass. 2011) ("The purpose of a maritime lien, therefore, is to
> encourage the provision of goods and services, especially in distant
> ports, by providing an in rem claim against the vessel itself should
> the party controlling the vessel's affairs abscond.").

*ING Bank N.V. v. M/V Temara*, 2016 U.S. Dist. LEXIS 146251, at *19-20 (S.D.N.Y. Oct. 21,

2016).

OCM, and other bunker suppliers, therefore enjoys a unique statutory right arising out of

a strong public policy to protect necessaries suppliers and ensure the smooth flow of maritime

commerce, through which it obtains an automatic lien against any vessel to which it provides

bunkers in accordance with the requirements of the Commercial Instruments and Maritime Lien

Act (the "CIMLA").

But for this Court's interim provisional orders [Docket Nos. 22, 102], OCM (and other

bunker suppliers) would have been able to execute its maritime lien rights *in rem* by arresting the

vessels to which it had provided bunkers.  The interim provisional orders, however, did not only

stay creditors from executing against Hanjin's assets but extended the automatic stay to assets

that did not belong to Hanjin – namely, vessels which were merely chartered by Hanjin.  As a

result, several of the vessels against which OCM has a maritime lien were permitted to enter the

United States, discharge their cargo, and leave U.S. territorial waters free and clear.

The Proposed Final Order seeks to *inter alia* continue the injunction against execution of

maritime liens that was originally provided in the interim provisional orders.  The Proposed Final

Order, however, does not sufficiently protect the interests of OCM as it must under § 1522 and

the relief sought therein should therefore be denied.

In entering the interim provisional orders, denying OCM's motion for reconsideration,[1]

and foreclosing the possibility that OCM would be able to assert its statutory maritime lien rights

by arresting the vessels to which it had provided bunkers, this Court stated as follows:

> 31.    The language of §1522(a) makes clear that courts must
> weigh the interests of all parties, including other creditors and the
> debtor, in providing discretionary relief. The Court weighed these
> interests and considered the practicalities involved. If the Debtor's
> vessels were not allowed to dock, unload their cargo, and depart
> under the protection of a stay, they would potentially avoid ports in
> the United States, leaving delivery of their cargo in limbo and
> causing BCOs, port operators and others harm. The relief granted
> by the Court was designed to minimize this harm by giving the
> Debtor assurances that its vessels would not be seized in the
> United States.

Docket No. 191 at 14–15.  The Court, in essence, determined at the time that the interests of

Hanjin and other creditors outweighed the interests of OCM and other maritime lien holders and

granted relief that benefitted Hanjin and other creditors at the expense of OCM and other

maritime lien holders.

---

[1] OCM was joined in its motion by three other bunker suppliers and maritime lien claimants:
Glencore, McAllister Towing & Transportation, Inc. and Moran Towing Corporation.

Although the vessels that OCM would have arrested (absent the interim provisional orders) have departed the United States and can no longer be arrested here, OCM's maritime lien rights are not necessarily extinguished. Execution of a maritime lien *in rem* is not limited only to the vessel that benefitted from the provision of the necessaries giving rise to the lien. If the vessel was able to generate freights (sums paid for carriage or transportation of goods by air, land, or sea) on a voyage following a provision of necessaries, the maritime lien *in rem* extends beyond the vessel itself and also attaches to the freights.

> "if a maritime lien attaches to a vessel it also attaches to its freights, which are incident to the 'vessel'", *See Schirmer Stevedoring Co. v. Seaboard Stevedoring Corp.*, 306 F.2d 188, 192 (9th Cir. 1962) (interpreting "vessel" under Maritime Lien Act, 46 U.S.C. §§ 971-975), *Cf. Gray v. Freights of THE KATE*, 63 F. 707, 713 (S.D.N.Y.1894) (Brown, J.), unless they had already been paid over by the cargo, *See Galban Lobo Trading Co. S/A v. THE DIPONEGARO*, 103 F. Supp. 452, 454 (S.D.N.Y.1951); *THE PERLA*, 94 F. Supp. 111, 112-13 (E.D.Pa.1950).

*Gulf Oil Trading Co. v. Creole Supply*, 596 F.2d 515, 521 (2d Cir. 1979).

> The Federal Maritime Lien Act, 46 U.S.C. Section 31342, provides "a person providing necessaries to a vessel on the order of the owner or a person authorized by the owner has a maritime lien on the vessel." This section recodified the former provision of 46 U.S.C. Section 971 which provided "any person furnishing repairs, supplies, use of drydock or marine railways, or other necessaries, to any vessel . . . upon the order of such vessel, or of a person authorized by the owner, shall have a maritime lien on the vessel." The Federal Maritime Lien Act has been construed by a number of courts in such a way that the term "vessel" includes freights since the general rule is that if a maritime lien attaches to a vessel it also attaches to its freights which are incident to the vessel. *Schirmer Stevedoring Co. v. Seaboard Stevedoring Corp.*, 306 F.2d 188 (9th Cir. 1962). *See also*, *In re Surico*, 42 F.2d 935 (D. Wash. 1930) *Atlantic Gulf and Pacific S.S. Co.*, 3 F.2d 311 (D. Md. 1923), *aff'd* 3 F.2d 438 (4th Cir. 1925).

*In re TOPGALLANT LINES, INC.*, 125 B.R. 682, 685 (Bankr. S.D. Ga. 1991).

The maritime lien *in rem* against freights is "limited to a lien on freight for services for the particular voyage to which the services relate." *In re Timber Line, Ltd.*, 59 B.R. 728, 732 (Bankr. S.D.N.Y. 1986). In order to claim a maritime lien *in rem* against freights, the claimant must first have a valid maritime lien against the vessel:

> Without a lien on the vessel, the claimants cannot have a lien on her freights. *United States v. Robins Dry Dock & Repair Co.*, 13 F.2d 808, 814 (1st Cir. 1926) (Court explicitly rejected argument that freights are distinct from the ship; review of applicable cases indicated that "freight is the hire of the ship and incident to the ship."). *See also Gulf Oil Trading Co. v. Creole Supply*, 596 F.2d 515 (2d Cir. 1979); *Morgan Guaranty Trust Co. v. Hellenic Lines, Ltd.*, 38 Bankr. 987, 992 (S.D.N.Y. 1984) (fact that prior order did not specifically cover freights was of no consequence; freights covered "by operation of law because a vessel and her freights are one"); *Ocean Cargo Lines, Ltd. v. North Atl. Marine Co.*, 227 F. Supp. 872 (S.D.N.Y. 1964) (prohibition of lien clause forbidding liens against vessel also forbids liens against freights).

*McAllister Towing v. Ambassador Factors (In re Topgallant Lines)*, 154 B.R. 368, 378 (S.D. Ga. 1993).

Many of the voyages which were made possible by OCM's provision of bunkers have only recently concluded. It is therefore conceivable that freights have not yet been paid to Hanjin – including because of the uncertainty arising out of the Korean Proceeding and the proceedings before this Court – and remain in the hands of the shippers. Some of those shippers are based in the United States; their presence in the United States means that the debt (the freights) is also located in the United States. *Af-Cap Inc. v. Republic of Congo*, 383 F.3d 361, 371-372 (5th Cir. 2004) (situs of debt is situs of debtor).

OCM seeks a carve-out to the Proposed Final Order which would allow it, and any other maritime lien claimant, to prosecute its statutory maritime lien rights against Hanjin by executing

those rights against any freights which have not yet been paid to Hanjin, **only** upon confirmation that OCM holds a valid maritime lien against the vessels to which it provided bunkers.

The balancing analysis required by § 1522 is different now than it was when this Court previously denied OCM's motion for reconsideration.  Then, the Court was required to weigh the interests of not one but several groups of creditors, including maritime lien claimants, beneficial cargo owners, and port operators.  After weighing the competing interests, the Court apparently determined that the balancing analysis tilted in favor of Hanjin and the other creditors, at the expense of OCM and other maritime lien holders.

Now, however, the analysis is more limited in scope: the Court need only balance the interests of OCM and Hanjin because there are no other creditors in the Chapter 15 proceeding whose interests require protection now.  Having already once served as the sacrificial lamb, OCM submits that this § 1522 analysis requires a tilt in favor of OCM.

In simplest terms, the present analysis requires a balancing between OCM's statutory rights (and the public policy considerations behind the creation of those rights) and Hanjin's interests.  OCM's maritime lien claims under the CIMLA are considered secured claims in a U.S. bankruptcy proceeding.  The Proposed Final Order, if entered as written and without the carve-out sought here by OCM, would entirely eliminate the secured nature of OCM's claim and relegate OCM to the general pool of unsecured creditors.  Thus, granting the relief sought here by Hanjin would have the practical effect of undoing what the CIMLA was designed to do – give necessaries providers special protections to ensure the free flow of maritime commerce.  This would result in **no** protection of OCM's statutory rights (let alone sufficient protection), a result that does not comport with the plain language of § 1522.

Hanjin, of course, wants to recover all debts owed to it from around the world and have those monies paid into the Korean insolvency court. Section 1522 recognizes that it may be impossible to provide sufficient protection of all the parties' interests and accepts that "providing protection to one side might well come at some expense to the other." *Jaffé*, 737 F.3d at 27.

The interim provisional orders have already greatly benefited Hanjin, its estate, and the other creditors. By enjoining the enforcement of OCM's maritime lien rights, a number of Hanjin vessels (owned or chartered) were able to call U.S. ports without fear of arrest. The cargo aboard those vessels was unloaded and (presumably) delivered to the various intended recipients. Creditors who might otherwise have had claims against Hanjin for nonperformance or breach of contract have been made whole. Hanjin and its estate have similarly benefit in that the pool of creditors and/or the pool of claims have diminished, thereby preserving more of the estate's property – at the expense of OCM and other maritime lien holders.

The Court now has the opportunity to rebalance the scales, giving OCM (and other maritime lien holders) sufficient protection even if that comes at the (slight) expense of Hanjin. Given the size of Hanjin's global operations, the benefit it has already received from the interim provisional orders far outweighs the expense it would face if the Court grants OCM the requested carve-out.

Further, OCM seeks the same relief from any § 362 automatic stay arising under § 1520 as set forth *supra* by the Common Benefit Claimants. The "for cause" prejudice and hardship factors weigh in favor of OCM for the same reasons they weigh in favor of the Common Benefit Claimants. As for probably of success on the merits, there can be no disputing the fact that OCM holds a maritime lien against the vessels to which it provided bunkers. OCM has met all of the statutory requirements needed to create a maritime lien in its favor and Hanjin has no defense –

14

the bunkers were supplied to the respective vessels by OCM on the order of Hanjin. OCM therefore has an excellent probability of succeeding on the merits.

For the foregoing reasons, OCM requests that the Court permit a carve-out to the Proposed Final Order that will allow OCM to exercise its statutory rights against Hanjin and its assets in the United States.

<u>**Conclusion**</u>

For the reasons set forth more fully above, the Common Benefit Claimants and OCM request that the Court modify the Proposed Final Order, and specifically Paragraph 5, to provide for the ability of the Common Benefit Claimants, OCM, and any other similarly-situated entity, to (1) assert their rights in a judicial proceeding in the United States, and (2) upon entry of a final judgment in their respective favors, execute against any Hanjin assets in the United States.

Dated: November 15, 2016

Respectfully submitted,

WASSERMAN, JURISTA & STOLZ, P.C.

Counsel to Interpool, Inc. (d/b/a TRAC Intermodal); OceanConnect Marine, Inc.; and SeaCube Containers, LLC

By:       /s/ Donald W. Clarke
          DONALD W. CLARKE, ESQ.

*/s/ J. Stephen Simms*
J. Stephen Simms (*pro hac vice*)
Simms Showers LLP
201 International Circle
Baltimore, Maryland 21030
Phone: (410) 783-5795
Fax: (410) 510-1789
jssimms@simmsshowers.com