**COLE SCHOTZ P.C.**
Court Plaza North
25 Main Street
P.O. Box 800
Hackensack, New Jersey 07602-0800
Ilana Volkov
ivolkov@coleschotz.com
Edward S. Kiel
edward.kiel@coleschotz.com
(201) 489-3000
(201) 489-1536 Facsimile
*Attorneys for Tai-Soo Suk, Foreign*
*Representative of Hanjin Shipping Co., Ltd.*

|  |  |
|---|---|
| In re:<br><br>HANJIN SHIPPING CO., LTD.,[1]<br><br>      Debtor in a Foreign<br>      Proceeding. | UNITED STATES BANKRUPTCY COURT<br>FOR THE DISTRICT OF NEW JERSEY<br>HONORABLE JOHN K. SHERWOOD<br>CASE NO. 16-27041 (JKS)<br>                 Chapter 15<br><br>HEARING DATE AND TIME:<br>NOVEMBER ___, 2016, AT _____ __. M.<br><br>**ORAL ARGUMENT REQUESTED** |

**MOTION OF FOREIGN REPRESENTATIVE TO ENFORCE PROVISIONAL RELIEF
ORDERS AND SECTIONS 362 AND 365(E) OF THE BANKRUPTCY CODE**

TO THE HONORABLE JOHN K. SHERWOOD,
UNITED STATES BANKRUPTCY JUDGE FOR THE DISTRICT OF NEW JERSEY:

        Tai-Soo Suk, in his capacity as the duly appointed foreign representative (the "**Foreign**

**Representative**") of Hanjin Shipping Co., Ltd. ("**Hanjin**," or the "**Debtor**") in connection with the

pending proceeding (the "**Korean Proceeding**") filed by Hanjin under the Debtor Rehabilitation and

Bankruptcy Act (the "**DRBA**") in the Seoul Central District Court (the "**Korean Court**"), in Seoul,

Republic of Korea, hereby moves this Court (the "**Motion**") for entry of an order enforcing the *Interim*

*Provisional Order Granting Recognition of Foreign Main Proceeding and Certain Related Relief*

---

[1] The last four digits of Hanjin Shipping Co., Ltd.'s Business Registration Number are 1835. The Debtor's main corporate
and mailing address is Hanjin Shipping Bldg., 25 Gukjegeumyung-Ro 2-Gil, Yeongdeungpo-Gu, Seoul 07327, Korea.

*Pursuant to Sections 362, 365, 1517, 1519, 1520, 1521, and 105(a) of Bankruptcy Code* [Dkt. No. 22] ("**First Provisional Relief Order**") and *Order Granting Provisional Relief Pursuant to Sections 362, 365(e), 1519, 1520, and 105(a) of the Bankruptcy Code Pending Hearing on Petition for Recognition as a Foreign Main Proceeding* [Dkt. No. 102] ("**Second Provisional Relief Order**) (together, the "**Provisional Relief Orders**") and sections 362 and 365(e) of title 11 of the United States Code (the "**Bankruptcy Code**") against Terminal Investment Limited S.A. ("**TIL**").  In support of this Motion, the Foreign Representative submits the *Declaration of K. W. Jeong in Support of Motion of Foreign Representative to Enforce Provisional Relief Orders and Sections 362 and 365(e) of the Bankruptcy Code*, dated November 17, 2016 (the "**Jeong Declaration**"), filed contemporaneously herewith.  In further support of this Motion, the Foreign Representative respectfully states as follows:

## PRELIMINARY STATEMENT

This Court entered the Provisional Relief Orders and applied sections 362 and 365(e) of the Bankruptcy Code in this chapter 15 case based in part on the finding that "there is a material risk that counterparties to certain of Hanjin's contracts may take the position that the commencement of the Korean Proceeding or this chapter 15 case allows them to terminate such contracts," and that "[s]uch positions would severely impair Hanjin's restructuring efforts and result in irreparable damage to Hanjin's business, the value of Hanjin's assets and substantial harm to Hanjin's creditors and other parties in interest."  The Court had good reason to grant such relief precisely to prevent the type of conduct TIL has exhibited since Hanjin commenced the Korean Proceeding and the potential loss of value Hanjin would suffer to the detriment of its stakeholders worldwide if certain *ipso facto* provisions are given effect.

## JURISDICTION AND VENUE

This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(O) and (P).  Venue for this proceeding is proper in this Court and in this District pursuant to 28 U.S.C. § 1410.

## FACTUAL BACKGROUND

1.     In addition to Hanjin's shipping business, with which this Court is already familiar, Hanjin also operates, alone and through joint ventures, 13 terminals specialized for containers, two distribution centers and six off-dock container yards in major ports and inland areas around the world. Two such terminals are operated through a joint venture with TIL called Total Terminals International, LLC ("**TTI**").  TTI is governed by the *Second Amended and Restated Limited Liability Company Agreement of Total Terminals International, LLC*, dated as of December 14, 2011 (the "**Agreement**").[2] TTI supports Hanjin's U.S.–Asia transpacific operations (the "**Transpacific Business**").  Hanjin's Membership Interests in TTI are valuable assets that represent a potentially significant source for creditor recoveries.

### A.     Bankruptcy Proceedings

2.     Hanjin filed an application for commencement of the Korean Proceeding under the DRBA on August 31, 2016.  On the same day, the Korean Court entered a provisional order granting a general injunction and the preservation of disposition of the Debtor's assets (the "**Stay Order**").  The Stay Order was effective pending the Korean Court's entry of the order commencing the Korean Proceeding (the "**Commencement Order**") which was issued on September 1, 2016.   The Commencement Order appointed the Foreign Representative to act as the Debtor's custodian.[3]

---

[2] Capitalized terms used but not defined herein shall have the meanings assigned to them in the Agreement.  A copy of the Agreement is attached hereto as Exhibit A.

[3] Copies of the Stay Order and Commencement Order, translated into English, are attached hereto collectively as Exhibit B.

3.       On September 2, 2016, the Foreign Representative commenced this chapter 15 case by filing, among other things, the (i) *Chapter 15 Petition for Recognition of Foreign Proceeding* [Dkt. No. 1] and (ii) the *Motion of Foreign Representative for Entry of Provisional and Final Orders Granting Recognition of Foreign Main Proceeding and Certain Related Relief Pursuant to Sections 362, 365, 1517, 1519, 1520, 1521, and 105(a) of the Bankruptcy Code* (the "**Recognition Motion**") [Dkt. No. 5]. This court granted the Recognition Motion in part by issuing the First Provisional Relief Order on September 6, 2016 and the Second Provisional Relief Order on September 9, 2016.

4.       The Provisional Relief Orders gave the Commencement Order full force and effect on a provisional basis, including, without limitation, staying the commencement or continuation of any actions against Hanjin or its assets located within the territorial jurisdiction of the United States.  In addition, the Provisional Relief Orders provide, as relevant here, that sections 362 and 365(e) of the Bankruptcy Code are applicable in this chapter 15 case.  A hearing is scheduled for November 22, 2016 to consider, among other things, whether to recognize the Korean Proceeding as a "foreign main proceeding" and to apply section 365(e) of the Bankruptcy Code in this chapter 15 case on final basis.[4]

**B.       Hanjin's Ownership Interest in TTI**

5.       Hanjin is a 54% owner of TTI, a full service marine terminal and stevedore operator along the west coast of the United States.  The remaining 46% of TTI is owned by TIL, a subsidiary of Mediterranean Shipping Company S.A.

6.       TTI operates facilities in Long Beach, California and Seattle, Washington comprising a total of 460 acres of terminal acreage.[5]  In particular, TTI operates the Pier T terminal at the Port of Long Beach ("**Pier T**"), a gateway for transpacific trade into the United States.  Pier T is the largest

---

[4] See proposed form of *Final Order Grating Recognition of Foreign Main Proceeding and Certain related Relief Pursuant to Sections 362, 365(e), 1517. 1520, 1521, and 105(a) of the Bankruptcy Code* (the "**Proposed Recognition Order**") [Dkt. No. 392].
[5] *See* Company Profile, TOTAL TERMINALS INTERNATIONAL, LLC, http://www.totalterminals.com/?act=articles&catid=1 (last visited Nov. 16, 2016).

4

terminal in the Port of Long Beach, with over 380 acres of space and the capacity to process more than three million shipping containers on and off vessels per year.  The mile-long wharf at Pier T is capable of accommodating large ships and it is outfitted with the largest up-to-date gantry cranes at any port in the United States.[6]  On information and belief, Pier T handles roughly one-third of all cargo at the Port of Long Beach.  While Hanjin has historically been the primary carrier at Pier T, several other shipping companies also pay for access to Pier T.

### C.    The Agreement

7.    TTI is a limited liability company organized in Delaware and subject to the Delaware Limited Liability Company Act.  TTI is governed by the Agreement.  As described in further detail below, in addition to providing structure for the management of TTI, the Agreement also imposes extensive mutual obligations on Hanjin and TIL to support and promote the business of TTI.

### D.    *Ipso Facto* Clauses in the Agreement

8.    Article 10.2(b) of the Agreement provides that TTI "shall be dissolved and its affairs wound up upon the . . . Bankruptcy or dissolution of a Member, unless the other Member . . . votes to continue the business of the Company within 90 days of receiving notice of such Bankruptcy."[7]  In the event of dissolution, TIL and Hanjin would be required to jointly appoint a liquidator with "sole authority and control" over the liquidation of TTI's assets.[8]  TTI would be required to immediately "cease to engage in any further business" and "wind up its affairs and liquidate its assets".[9]  The liquidator would be tasked with reducing to cash all of TTI's assets within a reasonable period of time upon dissolution and the commencement of liquidation.

---

[6]    *See* Total Terminals International (TTI) – Long Beach, HANJIN SHIPPING,, http://www.hanjin.com/hanjin/cup_hom_1380.do (last visited Nov. 16, 2016).
[7] The term "Bankruptcy" is defined broadly to include, among other things, "the commencement . . . of a voluntary case or other proceeding seeking liquidation, reorganization or other relief with respect to itself or its debts under any bankruptcy, insolvency or other similar law."
[8] Agreement, Art. 10.3(a).
[9] Agreement, Art. 10.3(a).

9.      In addition, Article 11.2 of the Agreement provides that upon an Event of Default, which includes the Bankruptcy of a Member under Article 11.1(c), the Non-Defaulting Member shall have an option to purchase the Defaulting Member's Membership Interests in TTI at Fair Market Value within 60 days from the date of determination of Fair Market Value.  The Agreement requires Fair Market Value be determined by a jointly selected independent appraiser.   To date, TIL has not requested the appointment of such an independent appraiser.

**E.      Conduct of TIL**

10.     On September 2, 2016, counsel for TIL wrote to Hanjin (the "**September 2 Letter**"), advising of TIL's position that Hanjin's application to the Korean Court constituted "a 'Bankruptcy' within the definitions set forth in the Agreement" and that TTI would be "dissolved and its affair[s] wound up" pursuant to Article 10.2(b) unless TIL voted to continue the business within 90 days, which was calculated to be November 30, 2016.[10]   The September 2 Letter noted that TIL was "monitoring the situation and will decide whether to continue the business" at the time set forth in the Agreement. In addition, the September 2 Letter made clear that "Article 11 of the Agreement will control and govern the disposition of Hanjin's membership interests in [TTI]" if TIL votes to continue the business.

11.     On October 4, 2016, Alistair Baillie, President of TIL, sent a letter to Hanjin (the "**October 4 Letter**")[11] (i) reiterating TIL's position that TTI faces potential dissolution on November 30, 2016 under Article 10.2(b) unless TIL votes to continue the business, and (ii) making serious threats to TTI's continued operations and about the prospect of substantial direct economic and reputational consequences for Hanjin and the Transpacific Business.

12.     Despite the assertion in the September 2 Letter that Article 11 of the Agreement would govern the disposition of Hanjin's Membership Interests in TTI, the October 4 Letter did not request appointment of an independent appraiser to determine Fair Market Value in accordance with Article

---

[10] A copy of the September 2 Letter is attached hereto as <u>Exhibit C</u>.
[11] A copy of the October 4 Letter is attached hereto as <u>Exhibit D</u>.

11.2, but rather contained an offer to acquire all of Hanjin's Membership Interests in TTI at a fire sale price.

13.     In blatant violation of the injunction imposed by the Provisional Relief Orders, TIL has continued to act on the basis that TTI may be dissolved as a result of Hanjin's commencement of the Korean Proceeding and that TIL has a right to acquire Hanjin's Membership Interests in TTI to the detriment of TTI, Hanjin, and their respective stakeholders.

**F.     Sale Process in Korean Proceeding**

14.     The Korean Court approved an auction sale process (the "**Korean Sale Process**") on October 11, 2016.[12]  On October 12, 2016, Samil PricewaterhouseCoopers ("**PwC**") was appointed as financial advisor to oversee the auction.[13]  Jefferies Group LLC ("**Jefferies**") was appointed by the Korean Court specifically to manage the sale of Hanjin's Membership Interests in and shareholder loans to TTI (the "**TTI Interests**").[14]  Allen & Overy LLP ("**A&O**") has been appointed as special counsel to Hanjin in this regard.[15]  The Korean Sale Process is intended to raise significant funds for Hanjin's creditors.[16]

15.     The Korean Sale Process was officially commenced by publishing a notice in various Korean newspapers on October 14, 2016.[17]  The form of the public notice was approved by the Korean Court.[18]  To create a competitive bidding process and maximize value for Hanjin's assets, bidders on the Transpacific Business were permitted to bid on additional assets (the "**Additional Assets**") related to the Transpacific Business.[19]  The Additional Assets include, among other things, (i) chartered vessels and-related lease agreements and (ii) loans secured by the Debtor's stakes in overseas terminals

---

[12] Jeong Declaration at ¶ 8.  A certified translation of the court approved bidding procedures for the auction is attached hereto as Exhibit E.
[13] Jeong Declaration at ¶ 8.
[14] *Id.*
[15] *Id.*
[16] *Id.* at ¶ 6.
[17] *Id.* at ¶ 10.
[18] *Id.*
[19] *Id.* at ¶ 11.

and bulk carriers.[20]  As relevant here, the TTI Interests were included as Additional Assets that could be purchased in connection with the Transpacific Business.[21]

16.     Five potential investors, including Hyundai Merchant Marine and Korea Line Corp. ("**KLC**"), submitted letters of intent on October 28, 2016 and conducted due diligence from October 31, 2016 through November 9, 2016.[22]  On November 10, 2016, out of the five potential investors, Hyundai Merchant Marine and KLC submitted final bids for the Transpacific Business.[23]  After all bids were submitted and reviewed, KLC was selected by the Korean Court on November 14, 2016 as the preferred bidder (the "**Preferred Bidder**").[24]

17.     Pursuant to the Korean Sale Process, the Debtor is expected to sign a definitive share purchase agreement for the Transpacific Business with KLC by November 21, 2016 and to receive full payment by November 28, 2016.[25]

18.     As the Preferred Bidder, KLC has a right of first refusal to purchase Additional Assets.[26] Hanjin, advised by PwC, Jefferies, and A&O, will be negotiating with KLC and other potential bidders on a purchase price and separate form of sale agreement for the TTI Interests.[27]

## BASES FOR RELIEF REQUESTED

19.     By this Motion, the Foreign Representative requests that the Court enter an order enforcing the Provisional Relief Orders and applying sections 362 and 365(e) of the Bankruptcy Code

---

[20] *Id*.
[21] *Id*.
[22] *Id*. at ¶ 12.
[23] *Id*.
[24] *Id*.
[25] *Id*. at ¶ 13.
[26] *Id*. at ¶ 14.
[27] *Id*. at ¶ 15.  A letter from Jefferies dated November 17, 2016 describing the sale process for the TTI Interests is attached hereto as <u>Exhibit F</u>.

to invalidate (i) potential dissolution of TTI under Article 10.2(b) of the Agreement and (ii) exercise of the buyout provision under Article 11.2 of the Agreement.[28]

### A. Enforcement of Section 365(e) to Prevent Dissolution and Nullify the Buyout Option

20.    Section 365(e) of Bankruptcy Code, which was made applicable in this chapter 15 case pursuant to the Provisional Relief Orders, is a fundamental protection afforded to debtors automatically in plenary cases under the Bankruptcy Code to mitigate losses through contract termination or modification based on their financial condition or the appointment of a custodian.   It is intended precisely to prevent the destruction of value Hanjin would suffer if Articles 10.2(b) and 11.2 of the Agreement were given effect.

### 1. The Agreement is an Executory Contract to Which Section 365(e)(1) of the Bankruptcy Code Applies

21.    Although section 365 of the Bankruptcy Code does not define the term "executory contract," the Third Circuit has adopted the "Countryman definition," which has been described as follows: "A contract under which the obligation of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing performance of the other."[29]   Limited liability company operating agreements that impose duties and responsibilities upon the members are generally characterized as executory contracts.[30]

---

[28] Additionally, this Court has authority to order the relief requested under section 105(a) of the Bankruptcy Code.  *See* 11 U.S.C. 105(a) ("The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.").

[29] *See In re Exide Techs.*, 607 F.3d 957, 962 (3d Cir. 2010) (*citing Sharon Steel Corp. v. National Fuel Gas Distribution Corp.*, 872 F.2d 36, 39 (3d Cir. 1989)).

[30] *See Milford Power Co. v. PDC Milford Power, LLC*, 866 A.2d 738, 750 (Del. Ch. 2004) (*"[T]he substantial weight of federal authority . . . treats agreements for the operation of entities like limited partnerships and LLCs as executory contracts when those agreements contemplate an important, on-going role for the debtor in management.") (emphasis added); In re Strata Title, LLC*, No. 12-24242, 2013 WL 1773619 at *2 (Bankr. D. Ariz. April 25, 2013) (holding an operating agreement to be executory where debtor member was required to approve certain actions including sales, refinancing and removal of the manager and the failure to "timely and in good faith" make such decisions would be a breach); *Broyhill v. DeLuca (In re DeLuca),* 194 B.R. 65 (Bankr. E.D. Va. 1996) (holding that limited liability company

22.      Here, the Agreement imposes significant obligations on Hanjin and TIL to support TTI's business and participate in certain management decisions, qualifying the Agreement as an executory contract subject to section 365 of the Bankruptcy Code.  For example, Article 6 requires that:

     a.     Members cooperate in good faith with each other in pursuit of the business to the extent it is commercially reasonably possible;[31]

     b.     Members support TTI's success in the pursuit of business opportunities in the Port Regions;[32]

     c.     TIL not operate or invest in existing or prospective waterfront container terminals in the Port Regions without prior written consent of TTI and Hanjin;[33] and

     d.     Members must keep TTI apprised of any development or acquisition opportunities in the Port Regions and give TTI a right of first refusal to such opportunities in writing.[34]

23.      These significant outstanding mutual obligations clearly bring the Agreement within the definition of executory contract adopted by courts in the Third Circuit.

**2.      Section 365(e)(1) Prohibits Enforcement of *Ipso Facto* Clauses in the Agreement**

24.      Section 365(e) of the Bankruptcy Code expressly invalidates *ipso facto* clauses that prevent a debtor from receiving the benefit of an executory contract.[35]  Article 10.2(b) and Article 11.2

---

agreements are executory contracts where parties have on-going duties and responsibilities); *In re Daugherty Constr., Inc.*, 188 B.R. 607 (Bankr. D. Neb. 1995).

[31] *See* Agreement, Art. 6.1.

[32] *See* Agreement, Art. 6.5(a)

[33] *See* Agreement, Art. 6.6.

[34] *See* Agreement, Art. 6.7.

[35] *See* 11 U.S.C. § 365(e)(1) (B) ("Notwithstanding a provision in an executory contract or unexpired lease, or in applicable law, an executory contract or unexpired lease of the debtor may not be terminated or modified, and any right or obligation under such contract or lease may not be terminated or modified, at any time after the commencement of the case solely because of a provision in such contract or lease that is conditioned on-- (A) the insolvency or financial condition of the debtor; (B) the commencement of a case under this title; or (C) the appointment of or taking possession by a trustee in a case under this title or a custodian before such commencement."); *Collier on Bankruptcy* ¶ 365.08 ("The broad language of

of the Agreement are the very type of *ipso facto* clauses whose enforcement the Bankruptcy Code proscribes – they authorize modification to the value and rights relating to Hanjin's interests in TTI on the basis of changes to financial condition or the appointment of a custodian.[36]  Allowing TIL to effectuate post-petition modification of the Agreement by way of Article 10.2(b) or Article 11.2 would offend section 365(e) of the Bankruptcy Code.

25.    TIL contends that the commencement of the Korean Proceeding gives it the option under Article 10.2(b) of the Agreement to decide between dissolution or continued operation of TTI on or before November 30, 2016.  Giving effect to this provision would modify Hanjin's rights under the Agreement on a date after it commenced the chapter 15 case and based on its financial condition or the appointment of a custodian and therefore it should be invalidated by application of section 365(e)(1).[37]  So long as modification remains reversible or in the discretion of the counterparty, as opposed to being automatic upon the occurrence of a specific event, the prohibited modification has not occurred.[38]

26.    If the Bankruptcy Court were to permit enforcement of Article 10.2(b), Hanjin would no longer have Membership Interests in a going concern with certain rights to management and obligations to support TTI's business, but would be required to appoint a liquidator with "sole authority and control" over the liquidation of TTI's assets.[39]  Hanjin would lose the rights to appoint Directors to manage the business and affairs of TTI under Article 4.1(b) and receive quarterly distributions of TTI's Net Cash Flow in accordance with Article 8.2(b) because TTI would no longer operate as a going-

---

section 365(e) is intended to address provisions in contracts or leases that lead to the same effect as a clause triggered by bankruptcy, without mentioning bankruptcy.  Thus, a provision conditioned on the debtor's insolvency or financial condition, or on the appointment of a trustee or receiver, is invalid because it is most likely to operate in the vicinity of a bankruptcy case.").

[36] The limitations contained in 11 U.S.C. § 365(e)(2) do not alter this conclusion.  *See Milford Power Co. v. PDC Milford Power, LLC*, 866 A.2d 738, 750 (Del. Ch. 2004); *In re IT Grp.*, 302 B.R. 483, 487 (D. Del. 2003).

[37] *Woskob v. Woskob (in Re Woskob)*, 305 F.3d 177, 185 (3d Cir. 2002) (equating dissolution to modification for purposes of section 365(e)); *In re Corky Foods Corp.*, 85 B.R. 903, 906 (Bankr. S.D. Fla.1988) (holding provision of Florida law providing for dissolution of partnership upon the bankruptcy filing of a partner is inconsistent with section 365(e)(1) of the Bankruptcy Code and therefore not applicable).

[38] *See e.g. In re St. Casimir Dev. Corp.*, 358 B.R. 24 (S.D.N.Y. 2007); *Velo Holdings Inc. v. Paymentech, LLC (In re Velo Holdings Inc.)*, 475 B.R. 367, 382 (Bankr. S.D.N.Y. 2012).

[39] Agreement, Art. 10.3(a).

concern.[40]  Similarly, Hanjin's obligations under Article 6.1 to "cooperate . . . in [TTI's] pursuit of the Business and its objectives" and Article 6.5(a) to "use its . . . commercially reasonable efforts to support [TTI entering] into or renewal, transfer or assignment of lease agreements or preferential assignments with any port authority" would be rendered moot if this Court were to give effect to Article 10.2(b).[41]

27.    For the same reasons, should TIL seek to accept the deemed offer of Hanjin's Membership Interests under Article 11.2 at Fair Market Value upon a Bankruptcy Event, such action should be invalidated as an impermissible enforcement of an *ipso facto* clause.[42]  To date, TIL has only attempted in its correspondence of October 4, 2016 to use the baseless threat of dissolution as leverage to acquire the Debtor's TTI Interests at a fire sale price and in a manner that does not comport with the express terms of the Agreement.  Should TIL seek to enforce its rights under Article 11.2, Hanjin would no longer have Membership Interests in a going concern with certain rights to management and obligations to support TTI's business, but would be required to liquidate its Membership Interests and cede complete ownership to TIL.  Ousting Hanjin from TTI at a dictated price and without the ability to sell its Membership Interests to a third party as would otherwise be allowed under Article 9.1 would substantially and prejudicially modify Hanjin's rights in the TTI Membership Interests.

**B.    Enforcement of Section 362 to Stop TIL's Efforts to Acquire Hanjin's Membership Interests in and shareholder loans to TTI at a Below-Market Price**

28.    The automatic stay in section 362, which was made applicable in this chapter 15 case pursuant to the Provisional Relief Orders, is also one of the fundamental protections provided to debtors under the Bankruptcy Code.  It halts all contract termination, collection efforts, harassment, and

---

[40] Agreement, Arts. 4.1(b) and 8.2(b).
[41] Agreement, Arts. 6.1 and 6.5(a).
[42] *In re Rittenhouse Carpet, Inc.*, 56 B.R. 131, 132-33 (Bankr. E.D. Pa. 1985) (applying 365(e)(1) to enjoin removal of partner pursuant to state law upon bankruptcy filing); *In re Cardinal Indust. Inc.*, 105 B.R., 834, 849 (S.D. Ohio 1989) (finding that section 365(e)(1) applies to defeat state statutes and partnership clauses that would terminate general partner's interest in partnership upon bankruptcy filing).

foreclosure actions, and provides debtors with necessary breathing room from the financial pressures that caused the bankruptcy filing.[43]    Specifically, section 362(a)(3) prohibits "any act to obtain possession of property of the estate. . . ."

29.    In the September 2 Letter, counsel to TIL stated that "[i]f TIL votes to continue the business, Article 11 of the Agreement will control and govern the disposition of Hanjin's Membership Interests in [TTI]."  Of course, TIL's follow-up offer in the October 4 Letter was not in compliance with Article 11, but nonetheless constitutes an "act to obtain possession" of Hanjin's Membership Interests in and shareholder loans to TTI, in violation of section 362(a)(3) of the Bankruptcy Code.[44] Moreover, any further acts by TIL to force the "disposition of Hanjin's membership interests in [TTI]" would violate section 362(a)(3) of the Bankruptcy Code.

## C.    Violations of the Provisional Relief Orders

30.    The Provisional Relief Orders not only make sections 362 and 365(e) of the Bankruptcy Code applicable, they specifically enjoin all parties from the following conduct:

> f) terminating or modifying any contract or unexpired lease of Hanjin and any right or obligation under such contract or lease at any time after the commencement of this case solely because of a provision in such contract or lease that is conditioned on the (i) insolvency or financial condition of Ha[n]jin at any time before the closing of this case;
>
> g) taking or continuing any act to obtain possession of, or exercise control over . . . any of the Hanjin Assets . . . .[45]

31.    Such acts are enjoined specifically because "there is a material risk that counterparties to certain of Hanjin's contracts may take the position that the commencement of the Korean Proceeding or this chapter 15 case allows them to terminate such contracts[, and s]uch positions would severely

---

[43] *See Mar. Elec. Co. v. United Jersey Bank*, 959 F.2d 1194, 1204 (3d Cir. 1991).

[44] *See* 11 U.S.C. § 362(a)(3) (applying automatic stay to "*any* act to obtain possession of property of the estate") (emphasis added); s*ee also Midatlantic Nat'l Bank v. N.J. Dept of Envtl. Protection*, 474 U.S. 494 (1986) (noting that "the scope of the automatic stay is broad"); *see also In re Hutchins*, 216 B.R. 1, 7 (Bankr. E.D. Ark. 1997) ("The stay is a fundamental debtor protection granted by the Bankruptcy Code, is broadly stated and *liberally construed*.") (emphasis added).

[45] Second Provisional Relief Order at 6-7.  The Proposed Recognition Order would provide the same relief for the Debtor.

impair Hanjin's restructuring efforts and result in irreparable damage to Hanjin's business, the value of Hanjin's assets and substantial harm to Hanjin's creditors and other parties in interest."[46]  Moreover, the Court found that without the injunction provided in the Provisional Relief Orders, Hanjin could suffer loss by parties "(a) interfering with the jurisdictional mandate of this Court under chapter 15 of the Bankruptcy Code, and (b) interfering or undermining the success of the Korean Proceeding."[47]

32.    TIL's efforts to use the threat of dissolution in order to acquire Hanjin's Membership Interests in and shareholder loans to TTI at a below-market price outside the terms of the Agreement are blatant violations of the Provisional Relief Orders.  Such violations not only pose significant harm to Hanjin,[48] but also threaten to interfere with and undermine this chapter 15 case and the Korean Sale Process.  Conduct in violation of the Provisional Relief Orders is all the more egregious where such Orders invite parties to seek relief from their provisions,[49] yet TIL has failed to do so in the nearly ten weeks since they were entered.

---

[46] First Provisional Relief Order at 4, Second Provisional Relief Order at 4.
[47] First Provisional Relief Order at 5, Second Provisional Relief Order at 5.
[48] *See* October 4 Letter, n.1 (noting consequences of dissolution of TTI).
[49] First Provisional Relief Order at 8 ¶10; Second Provisional Relief Order at 10 ¶16.

## **CONCLUSION**

WHEREFORE, the Foreign Representative respectfully requests that this Court enter an

Order granting this Motion such other and further relief as it deems just and proper.

DATED: November 17, 2016

Respectfully submitted,

COLE SCHOTZ P.C.

/s/ Ilana Volkov
Ilana Volkov
Edward S. Kiel

*Attorneys for Tai-Soo Suk, Foreign Representative of Hanjin Shipping Co., Ltd.*

**EXHIBIT A**

*Agreement*

# Exhibit A

# FILED UNDER SEAL

# EXHIBIT B

*Stay and Commencement Orders*

# 서 울 중 앙 지 방 법 원

## 제 6 파 산 부

## 결          정

| | |
|---|---|
| 사        건 | 2016회합100211  회생 |
| 신 청 인 겸 | 주식회사 한진해운 |
| 채   무   자 | 서울 영등포구 국제금융로2길 25 (여의도동) |
| | 대표이사 조양호, 석태수 |
| | 신청대리인 법무법인 넥서스 담당변호사 최영익, 김명식 |

## 주          문

이 사건에 관하여 회생절차 개시신청에 대한 결정이 있을 때까지, 모든 회생채권자 및 회생담보권자에 대하여 회생채권 또는 회생담보권에 기한 강제집행, 가압류, 가처분 또는 담보권실행을 위한 경매절차를 금지한다.

## 이          유

채무자 회생 및 파산에 관한 법률 제45조 제1항을 적용하여 주문과 같이 결정한다.

2016. 8. 31.

재판장        판사              김정만

- 1 -

판사　　　　　심 태규


판사　　　　　차승환

**SEOUL CENTRAL DISTRICT COURT**

**6th BENCH OF BANKRUPTCY DIVISION**

**DECISION**

| | |
|---|---|
| Case: | 2016 *HoeHap* 100211 Rehabilitation |
| Applicant and Debtor: | Hanjin Shipping Co., Ltd. |
| | 25, Gukjegeumyung-ro 2-gil, Yeongdeungpo-gu, Seoul (Yeouido-dong) |
| | Representative Directors: Cho, Yang-Ho and Suk, Tai-Soo |
| | Legal Counsel for Applicant |
| | Nexus Law Group |
| | Attorney Choi, Young-Ik |
| | Attorney Kim, Myoung-Shik |

**ORDER**

Until the decision on the application for commencement of rehabilitation procedure is made regarding the case above, any auction procedure for compulsory execution, provisional seizure, provisional disposition, or the exercise of security right on the basis of a rehabilitation claim or rehabilitation security right is hereby prohibited with respect to all rehabilitation creditors and rehabilitation secured creditors.

**GROUNDS**

It is hereby ordered and decided pursuant to Paragraph 1, Article 45 of the Debtor Rehabilitation and Bankruptcy Act.

August 31, 2016

| | | |
|---|---|---|
| Presiding Judge | Judge | Kim, Jeong-Man |
| | Judge | Shim, Tae-Gyu |
| | Judge | Cha, Seung-Hwan |





# 서 울 중 앙 지 방 법 원

## 제 6 파 산 부

정본입니다.

2016. 09. 01.

법원사무관 강효성



## 결 정

사 건 2016회합100211 회생

신 청 인 겸 주식회사 한진해운

채 무 자 서울 영등포구 국제금융로2길 25 (여의도동)

대표이사 조양호, 석태수

신청대리인 법무법인 넥서스 담당변호사 최영익, 김명식

## 주 문

1. 채무자에 대하여 회생절차를 개시한다.

2. 석태수[주민등록번호 : 551103-1068518, 주소 : 서울 강서구 강서로 348, 129동 101호 (내발산동, 우장산힐스테이트)]를 채무자의 관리인으로 선임한다.

3. 관리인의 임기를 이 사건 회생계획안의 인가결정일로부터 30일까지로 한다.

4. 회생채권자, 회생담보권자 및 주주의 목록 제출기간을 2016. 9. 1.부터 2016. 9. 19. 까지로 한다.

5. 회생채권, 회생담보권 및 주식의 신고기간을 2016. 9. 20.부터 2016. 10. 4.까지로 한다.

6. 회생채권, 회생담보권의 조사기간은 2016. 10. 5.부터 2016. 10. 18.까지로 한다.

7. 회생계획안의 제출기간을 2016. 11. 25.까지로 한다.

## 이 유

※ 각 법원 민원실에 설치된 사건검색 컴퓨터의 발급번호조회 메뉴를 이용하거나, 담당 재판부에 대한 문의를 통하여 이 문서 하단에 표시된 발급번호를 조회하시면, 문서의 위, 변조 여부를 확인하실 수 있습니다.

— 1 —




1. 인정사실

　이 사건 기록과 채무자의 대표자 심문결과에 의하면 다음 사실을 인정할 수 있다.

　가. 채무자는 종전의 주식회사 한진해운이 2009. 12. 1. 한진해운홀딩스라는 지주회사로 전환되면서 그 해운사업부문을 인적분할하여 해운업, 항만용역업 등을 목적으로 설립되었고, 컨테이너선을 통한 운송사업, 벌크선을 통한 운송사업 및 터미널 운영사업을 주로 영위하고 있다.

　나. 채무자는 상장법인으로 발행주식 총수는 245,269,947주(기명식 보통주, 1주당 금액 5,000원)이고, 납입자본금은 1,226,349,735,000원이며, 주식회사 대한항공이 위 주식 중 33.23%, 채무자가 3.08%, 우리사주조합이 0.34% 등을 각 보유하고 있다.

　다. 채무자의 2016. 6. 30.과 최근 3년간 자산·부채 현황 및 매출·손익 현황은 다음 표와 같다. 채무자 회사는 자산이 부채를 약간 상회하나, 최근 3년간 당기순손실이 발생하고 있다.

〈자산·부채 현황〉　　　　　　　　　（단위 : 백만원）

| 구분 | 2016. 6. 30. | 2015. 12. 31. | 2014. 12. 31. | 2013. 12. 31 |
|---|---|---|---|---|
| 자산총액 | 6,624,326 | 7,385,216 | 8,083,495 | 10,091,861 |
| 부채총액 | 6,028,543 | 6,579,529 | 7,326,918 | 9,438,521 |

〈매출·손익 현황〉　　　　　　　　　（단위 : 백만원）

| 구분 | 2016. 6. 30. | 2015. 12. 31. | 2014. 12. 31. | 2013. 12. 31. |
|---|---|---|---|---|
| 매출총액 | 2,989,385 | 7,669,598 | 8,438,459 | 9,883,349 |
| 당기순손실 | 463,440 | 22,017 | 463,475 | 712,248 |

　라. 채무자가 영위하는 해운업은 2008년 글로벌 금융위기 이후 지속된 글로벌 경제의 위축에 따른 수요부진으로 장기간 물동량이 감소하고 운임이 하락하여 실적이 악화되었다. 특히 2012년에 유럽의 재정위기와 중국의 경기 둔화 등으로 금융위기 이전의 장기평균을 크게 하회하는 물동량 증가속도를 보였고, 특히 유럽노선은 전년 대비 물





동량이 감소하였다. 기 발주 선박의 인도가 지속되면서 2012년부터 물동량 증가율을 크게 상회하는 선박공급이 이루어져서 수급불균형 현상이 심화되었다. 그리고 해운산업의 비탄력적인 공급(선복량)의 조절은 해상물동량 변동에 따른 운임의 변동폭을 키우게 되었고, 결국 해운업계 전체의 운임경쟁으로 이어졌다.

　마. 채무자 회사는 이와 같은 시장상황에서 해운수요 위축과 선박 공급 과잉에 따른 영업실적 악화로 인하여 유동성 부족이 점차 심화되었다. 2015년 4분기 이후 컨테이너 운임 수준이 대폭 하락하게 됨에 따라 채무자의 영업수지가 악화되었다. 2016. 6. 30. 기준으로 1년 이내에 3조 1,405억 원의 차입금의 만기가 도래하나 현재 재무상황으로는 이를 상환하기 불가능한 상황이다.

　바. 채무자는 2016년 상반기에 주채권은행인 한국산업은행과 협의를 진행하였고, 자율협약을 통한 경영정상화 추진작업을 진행하기로 결정하여 2016. 4. 25. 주채권은행에 자율협약절차를 신청하였다. 한국산업은행 등 채권금융기관은 채권금융기관협의회를 구성하여 2016. 5. 4. 채무자에 대한 자율협약절차를 진행하기로 의결하고, 3개월동안 채권행사를 유예하기로 하고 자율협약절차 기간을 1개월 연장하기도 하였는데, 2016. 8. 30. 채권금융기관 협의회가 채무자에 대한 지원이 불가능하다는 결정을 통보함에 따라 자율협약절차는 중단되었다. 이로써 채무자는 심각한 유동성 부족으로 재정적 파탄에 이르게 되었다.

2. 판   단

　위 인정사실에 의하면, 채무자는 사업의 계속에 현저한 지장을 초래하지 아니하고는 변제기에 있는 채무를 갚을 수 없는 상황에 처해 있을 뿐만 아니라, 채무자에게 파산의 원인인 사실이 생길 염려가 있으므로, 채무자 회생 및 파산에 관한 법률(이하 '법'이라고 한다) 제34조 제1항에 정해진 회생절차 개시사유가 있고, 달리 법 제42조 각 호에 정해진 회생절차 개시신청의 기각사유가 있음을 단정할 만한 자료가 없다.

3. 결   론

　그렇다면 이 사건 신청은 이유 있으므로 채무자에 대하여 회생절차를 개시하기로 하

- 3 -





고, 법 제50조 제1항, 제74조 제2항에 따라 관리위원회의 의견을 참작하여 채무자의
대표이사인 석태수를 관리인으로 선임하기로 하며, 회생채권자 · 회생담보권자 · 주주
목록의 제출기간, 회생채권 · 회생담보권 · 주식의 신고기간, 회생채권 · 회생담보권의 조
사기간, 회생계획안 제출기간에 관하여는 법 제50조 제1항에 따라 주문과 같이 결정한
다.

2016.  9.  1.  19:00

재판장        판사          김정만          

판사          심태규

판사          차승환

English translation

# SEOUL CENTRAL DISTRICT COURT
## 6th BENCH OF BANKRUPTCY DIVISION
### ORDER

Case:                     2016 *HoeHap* 100211 Rehabilitation

Applicant and Debtor:     Hanjin Shipping Co., Ltd.

                          25, Gukjegeumyung-ro 2-gil, Yeongdeungpo-gu, Seoul (Yeouido-dong)

                          Representative Directors: Cho, Yang-Ho and Suk, Tai-Soo

                          Legal Counsel for Applicant

                          Nexus Law Group

                          Attorney Choi, Young-Ik

                          Attorney Kim, Myoung-Shik

### ORDER

1. The rehabilitation procedure for the Debtor is hereby commenced.

2. Suk, Tai-Soo (Resident Registration Number: 551103-1068518, Address: 129dong 101ho, 348, Gangseo-ro, Gangseo-gu, Seoul (Naebalsan-dong, Ujangsan Hillstate)) is hereby appointed as the Debtor's Custodian.

3. The term of office for the Custodian shall be thirty (30) days from the date of the decision on the authorization of the rehabilitation plan of this case.

4. The submission period for the list of rehabilitation creditors, rehabilitation secured creditors and shareholders shall be from September 1, 2016 to September 19, 2016.

5. The reporting period for rehabilitation claims, rehabilitation security right and shares shall be from September 20, 2016 to October 4, 2016.

6. The inspection period for rehabilitation claims and rehabilitation security right shall be from October 5, 2016 to October 18, 2016.

7. The submission period for the rehabilitation plan shall be until November 25, 2016.

### GROUNDS

1. Recognized Facts

Based on the records of this case and the results of questioning the Debtor's representative, the following facts can be recognized.

A. Debtor was established for the purpose of engaging in maritime transportation business, harbor service business and other businesses in an equity spin-off of the maritime business division of the former Hanjin Shipping Co., Ltd. when it converted into a holding company called Hanjin Shipping

Holdings Co., Ltd. on December 1, 2009.    Debtor is mainly engaged in the transportation business
through containerships, transportation business through bulk carriers and terminal operation business.

B. Debtor is a stock-listed corporation with a total of 245,269,947 issued shares (common shares,
KRW 5000 per share) and paid-in capital totaling KRW 1,226,349,735,000.    Of these shares 33.23%
is owned by Korean Air Lines Co., Ltd., 3.08% by Debtor and 0.34% by employee shareholders'
association.

C. The current status of Debtor's assets and liabilities, and Debtor's sales and income as of June 30,
2016 and the past three (3) years is summarized in the chart below.    Debtor Company's assets
slightly exceed its liabilities but Debtor has been incurring a net-loss each term during the past three
(3) years.

<Current Status of Assets and Liabilities>            (Units: KRW Million)

| Category | June 30, 2016 | December 31, 2015 | December 31, 2014 | December 31, 2013 |
|---|---|---|---|---|
| Total Assets | 6,624,326 | 7,385,216 | 8,083,495 | 10,091,861 |
| Total Liabilities | 6,028,543 | 6,579,529 | 7,326,918 | 9,438,521 |

<Current Status of Sales and Income>            (Units: KRW Million)

| Category | June 30, 2016 | December 31, 2015 | December 31, 2014 | December 31, 2013 |
|---|---|---|---|---|
| Total Sales | 2,989,385 | 7,669,598 | 8,438,459 | 9,883,349 |
| Net-loss for Term | 463,440 | 22,017 | 463,475 | 712,248 |

D. The performance of the maritime transportation business, which the Debtor is engaged in,
deteriorated since the 2008 global financial crisis after a lack of demand resulting from the ongoing
contraction of the global economy which led to a reduction in cargo volume and drop in freight
charges over a long period of time. Due to the European financial crisis and downturn of the Chinese
economy in 2012, cargo volumes had, with increasing speed, fallen short of the long-term average in
the period before the financial crisis. In particular, cargo volume in the European lines had decreased
compared to that of the previous year. As the delivery of previously ordered ships continued, the
supply of ships greatly exceeded the rate of increase of cargo volume from 2012 and further
aggravated the imbalance between supply and demand.    Adjustments to the inelastic supply (bottom)
of the shipping industry led to the widening of the fluctuation range of freight charges in response to
the fluctuation of maritime cargo volume, and ultimately led to an all-out freight rate war within the
shipping industry.

E. In such market conditions, a decline in Debtor's business performance following a drop in shipping
demand and excessive supply of ships further aggravated Debtor Company's lack of liquidity. As of
June 30, 2016, Debtor's loans totaling KRW 3,140,500,000,000 will mature within one year but

Debtor's current financial state renders it impossible to repay the loans.

F. In the first half of 2016, Debtor negotiated with its main creditor bank, the Korea Development Bank, and decided to proceed with the promotion of the normalization of its business by way of a voluntary agreement. Thereafter on April 25, 2016, Debtor filed an application for the procedures for a voluntary agreement to its main creditor bank. The Korea Development Bank and other creditor financial institutions formed a Creditor Financial Institution Committee and voted on May 4, 2015 to proceed with the voluntary agreement procedure for Debtor, and decided to postpone exercising claims for three months and to extend the voluntary agreement procedure period for one month. However, the voluntary agreement procedure was suspended on August 30, 2016 following a notification by the Creditor Financial Institution Committee of its decision that it was impossible to support the Debtor. With this, the Debtor was led to financial ruin due to a severe lack of liquidity.

2. Decision

According to the recognized facts above, Debtor is in a situation where it is unable to repay its payable debts without causing a substantial hindrance to the continuance of its business. Furthermore, there are some concerns about the occurrence of events that may lead to Debtor's bankruptcy. Therefore, there are grounds to commence the rehabilitation procedure provided under Paragraph 1, Article 34 of the Debtor Rehabilitation and Bankruptcy Act (herein referred to as "the Act") and otherwise there is no material to conclude the existence of grounds to dismiss the application for the commencement of the rehabilitation procedure provided under each item of Article 42 of the Act.

3. Conclusion

If that is the case, the application of this case is reasonable and therefore, the rehabilitation procedure for the Debtor shall be commenced, and taking into account the opinion of the management committee pursuant to Paragraph 1, Article 5 and Paragraph 2, Article 74 of the Act, Debtor's representative director Suk Tai-Soo shall be appointed as Custodian. With respect to the submission period for the list of rehabilitation creditors, rehabilitation secured creditors and shareholders; the reporting period for rehabilitation claims, rehabilitation security right and shares; the inspection period for rehabilitation claims and rehabilitation security rights; and the submission period for the rehabilitation plan, it is hereby ordered and decided pursuant to Paragraph 1, Article 50 of the Act.

19:00, September 1, 2016

|                 |       |                   |
|-----------------|-------|-------------------|
| Presiding Judge | Judge | Kim, Jeong-Man    |
|                 | Judge | Shim, Tae-Gyu     |
|                 | Judge | Cha, Seung-Hwan   |

**EXHIBT C**

*September 2 Letter*

# Exhibit C

# FILED UNDER SEAL

**EXHIBIT D**

*October 4 Letter*

# Exhibit D

# FILED UNDER SEAL

# EXHIBIT E

*Bidding Procedures*

# Exhibit E

# FILED UNDER SEAL

# EXHIBIT F

*Sale Process for TTI Interests*

# Exhibit F

# FILED UNDER SEAL