**COLE SCHOTZ P.C.**
Court Plaza North
25 Main Street
P.O. Box 800
Hackensack, New Jersey 07602-0800
Ilana Volkov
ivolkov@coleschotz.com
Edward S. Kiel
edward.kiel@coleschotz.com
(201) 489-3000
(201) 489-1536 Facsimile
*Attorneys for Tai-Soo Suk, Foreign*
*Representative of Hanjin Shipping Co., Ltd.*

|  |  |
|---|---|
| In re:<br><br>HANJIN SHIPPING CO., LTD.,[1]<br><br>      Debtor in a Foreign<br>      Proceeding. | UNITED STATES BANKRUPTCY COURT<br>FOR THE DISTRICT OF NEW JERSEY<br>HONORABLE JOHN K. SHERWOOD<br>CASE NO. 16-27041 (JKS)<br>                Chapter 15<br><br>HEARING DATE AND TIME:<br>JANUARY 12, 2017 AT 2:00 P.M.<br><br>**ORAL ARGUMENT REQUESTED** |

**MOTION OF FOREIGN REPRESENTATIVE, PURSUANT TO SECTIONS 105(a), 363, 365, 1501, 1514, 1520 AND 1521 OF THE BANKRUPTCY CODE, AND BANKRUPTCY RULES 2002, 6004, 6006 AND 9014, FOR ENTRY OF AN ORDER (I) RECOGNIZING AND ENFORCING THE KOREAN SALE ORDER, (II) APPROVING THE SALE OF THE DEBTOR'S INTERESTS IN TTI AND HTEC, (III) ENTRUSTING DISTRIBUTION OF THE SALE PROCEEDS TO THE FOREIGN REPRESENTATIVE AND (IV) GRANTING RELATED RELIEF**

TO THE HONORABLE JOHN K. SHERWOOD:

      Tai-Soo Suk, in his capacity as the duly appointed foreign representative (the "**Foreign Representative**") of Hanjin Shipping Co., Ltd. ("**Hanjin**," or the "**Debtor**") in connection with the pending proceeding (the "**Korean Proceeding**") filed by Hanjin under the Debtor Rehabilitation and Bankruptcy Act (the "**DRBA**") in the Seoul Central District Court (the "**Korean Court**"), in Seoul,

---

[1] The last four digits of Hanjin Shipping Co., Ltd.'s Business Registration Number are 1835. The Debtor's main corporate and mailing address is Hanjin Shipping Bldg., 25 Gukjegeumyung-Ro 2-Gil, Yeongdeungpo-Gu, Seoul 07327, Korea.

Republic of Korea, hereby moves this Court for the entry of an order, substantially in the form annexed hereto as Exhibit A (the "**Proposed Order**"), pursuant to sections 105(a); 363(b), (f), (m) and (n); 365, 1501, 1514, 1520 and 1521 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2002, 6004, 6006 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 6004-1 of the Local Rules of the United States Bankruptcy Court for the District of New Jersey (the "**Local Rules**"): (i) recognizing and enforcing in the United States the order of the Korean Court (the "**Korean Sale Order**"), a copy of which is annexed hereto as Exhibit C, pursuant to which the Korean Court authorized the sale (the "**Sale**") of the Debtor's right, title and interest in and to certain of the Debtor's assets (collectively, the "**Purchased Assets**") to Terminal Investment Limited S.à. r.l. ("**TIL**") (including any successors and assigns of TIL, including Hyundai Merchant Marine Co., Ltd ("**HMM**"), with respect to a portion of the Purchased Assets, the "**Purchasers**"), pursuant to that certain *Purchase and Sale Agreement* (the "**PSA**"), dated December 20, 2016; a copy of which is annexed hereto as Exhibit B; (ii) approving, pursuant to section 363 of the Bankruptcy Code, the Sale of the Debtor's right, title, and interest in and to the Purchased Assets to the Purchasers, free and clear of all liens, claims, encumbrances and other interests, except as otherwise provided in the PSA and the Proposed Order; (iii) entrusting distribution of the proceeds of the Sale (the "**Sale Proceeds**") to the Foreign Representative; and (iv) granting related relief. In support of this Motion, the Foreign Representative submits the declaration of Richard Morgner (the "**Morgner Declaration**"), dated December 20, 2016, and the declaration of Wan Shik Lee (the "**Lee Declaration**"), dated December 22, 2016, filed contemporaneously herewith. In further support of this Motion, the Foreign Representative respectfully states as follows:

## JURISDICTION AND VENUE

This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(N) and (P). Venue for this proceeding is proper in this Court and in this District pursuant to 28 U.S.C. § 1410. The statutory predicates for the relief requested herein are sections 105(a), 363, 365, 1501, 1514, 1520 and 1521 of the Bankruptcy Code.

## BACKGROUND

1.     Hanjin filed an application for commencement of the Korean Proceeding under the DRBA on August 31, 2016. On the same day, the Korean Court entered a provisional order granting a general injunction and preservation of the disposition of the Debtor's assets. On September 1, 2016 the Korean Court entered an order commencing the Korean Proceeding and appointing the Foreign Representative to act as the Debtor's custodian in the Korean Proceeding.

2.     On September 2, 2016, the Foreign Representative commenced this chapter 15 case by filing the (i) *Chapter 15 Petition for Recognition of Foreign Proceeding* [Dkt. No. 1] and (ii) *Motion of Foreign Representative for Entry of Provisional and Final Orders Granting Recognition of Foreign Main Proceeding and Certain Related Relief Pursuant to Sections 362, 365, 1517, 1519, 1520, 1521, and 105(a) of the Bankruptcy Code* [Dkt. No. 5]. On December 14, 2016, this Court entered its *Final Order Granting Recognition of Foreign Main Proceeding and Certain Related Relief Pursuant to Sections 362, 365(e), 1517, 1520, 1521, and 105(a) of the Bankruptcy Code* (the "**Recognition Order**") [Dkt. No. 486]. The Recognition Order, among other things, recognized the Korean Proceeding as a foreign main proceeding pursuant to section 1517 of the Bankruptcy Code and entrusted the administration and realization of the Debtor's assets located within the territorial jurisdiction of the United States to the Foreign Representative. Recognition Order at ¶¶ 2, 8.

A. **Hanjin's Membership Interests in TTI and HTEC**

3. Hanjin and TIL own 54% and 46%, respectively, of the membership interests in Total Terminals International, LLC, a Delaware limited liability company ("**TTI**"). TTI operates waterfront container terminals in Long Beach, California and Seattle, Washington. Hanjin Shipping TEC, Inc. ("**HTEC**") provides equipment used in the terminals operated by TTI. Hanjin owns 100% of the outstanding equity interests in HTEC.

B. **TTI Bank Debt and Hanjin Loans**

4. TTI's financial debt includes amounts owing under a $320 million[2] credit agreement dated as of December 29, 2014, among TTI, Wells Fargo Bank, N.A. ("**Wells Fargo**"), as administrative agent and collateral agent, and the lenders party thereto (the "**Bank Debt**"). The Bank Debt is secured by substantially all of the assets of TTI and by a pledge of both Hanjin's and TIL's membership interests in TTI and the TTI Shareholder Loans (as defined below) pursuant to a pledge agreement dated as of December 29, 2014.

5. Hanjin has also extended subordinated loans to TTI consisting of (i) one or more senior subordinated loans with an aggregate outstanding balance (including accrued and unpaid interest) as of November 30, 2016 of $82,699,641.50 and (ii) one or more junior subordinated loans with an aggregate outstanding balance (including accrued and unpaid interest) as of November 30, 2016 of $114,725,314.13 (together, the "**TTI Shareholder Loans**"). The Bank Debt is senior in right of payment to the TTI Shareholder Loans pursuant to a subordination agreement dated as of December 29, 2014 among Hanjin, TTI, and Wells Fargo. Pursuant to one or more shareholder loan agreements, Hanjin has also made shareholder loans to HTEC having an outstanding principal amount as of October 31, 2016 of $5,500,000 excluding unpaid interest (the "**HTEC Shareholder Loans**" and together with the TTI Shareholder Loans, the "**Shareholder Loans**"). Separately, there is an outstanding receivable

---

[2] All amounts are in USD unless expressly noted otherwise.

balance owed by Hanjin to TTI in the aggregate amount of $54,611,879.89 (the "**Accounts Receivable Balance**").

### C. The Sale Process in the Korean Proceeding

6.      The Korean Court approved an auction-style sale process (the "**Korean Sale Process**") on October 11, 2016 for Hanjin's U.S.–Asia transpacific operations (the "**Transpacific Business**").[3] On October 12, 2016, Samil PricewaterhouseCoopers ("**PwC**") was appointed as financial advisor to oversee the auction.[4]   Jefferies Group LLC ("**Jefferies**") was appointed by the Korean Court specifically to manage the sale of the Purchased Assets, which are comprised of Hanjin's ownership interests in TTI and HTEC and the Shareholder Loans.[5]   The Korean Sale Process was designed to maximize value for Hanjin's assets and ultimately recoveries for its creditors.[6]   The Korean Sale Process was officially commenced by publishing a notice in various Korean newspapers on October 14, 2016.[7]   The form of the public notice was approved by the Korean Court.[8]   To create a competitive bidding process and maximize value of Hanjin's estate, bidders on the Transpacific Business were permitted to bid on additional assets (the "**Additional Assets**") related to the Transpacific Business.[9] The Additional Assets included the Purchased Assets, chartered vessels and-related lease agreements and loans secured by the Debtor's stakes in other overseas terminals and bulk carriers.[10]

7.      Five potential purchasers including HMM and Korea Line Corp. ("**KLC**") submitted letters of intent on October 28, 2016 and conducted due diligence from October 31, 2016 through

---

[3] *Declaration of K. W. Jeong in Support of Motion of Foreign Representative to Enforce Provisional Relief Orders and Sections 362 and 365(e) of the Bankruptcy Code* (the "**Jeong Declaration**"), dated November 17, 2016 at ¶ 8.  The Jeong Declaration was filed under seal contemporaneously with the *Motion of Foreign Representative to Enforce Provisional Relief Orders and Sections 362 and 365(e) of the Bankruptcy Code* [Dkt. No. 440] and has been filed publicly contemporaneously with this Motion.
[4] *Id.*
[5] *Id.*  The Purchased Assets transferred in the PSA consist of all of the Debtor's right title and interest in to and under (i) a 54% interest in TTI, (ii) 100% of the outstanding equity interests of HTEC, (iii) all shareholder loans by the Debtor to TTI and (iv) all shareholder loans by the Debtor to HTEC.
[6] *Id.* at ¶ 6.
[7] *Id.* at ¶ 10.
[8] *Id.*
[9] *Id.* at ¶ 11.
[10] *Id.*

November 9, 2016.[11]  On November 10, 2016, out of the five potential purchasers, HMM and KLC submitted final bids for the Transpacific Business.[12]  After all bids were submitted and reviewed, KLC was selected by the Korean Court on November 14, 2016 as the preferred bidder (the "**Preferred Bidder**").[13]

8.  As the Preferred Bidder, KLC was given a preferential right to match the best and final binding offer for the Purchased Assets.[14]  In parallel to the sale of the Transpacific Business, and with approval of the Korean Court, Hanjin and its advisors began marketing Hanjin's ownership interests in the Purchased Assets.[15]  Due to TTI's rapidly declining liquidity position, Hanjin had a very limited time period to consummate a transaction.[16]

9.  Jefferies met with a number of strategic and financial investors including parties contacted for the sale of the Transpacific Business.[17]  Following those meetings, several parties were prequalified based on pre-existing knowledge of the assets, minimal need for due-diligence and ability to close a transaction with committed financing on an expedited basis.[18]

10.  On November 16, 2016, Jefferies provided a letter to the prequalified parties outlining the process and timeline established to pursue a transaction and maximize value.[19]  The Jefferies team on this assignment traveled to Seoul on multiple occasions to negotiate with potential purchasers and evaluated several alternative transactions to best maximize value for Hanjin and its creditors.[20]

---

[11] *Id*. at ¶ 12.
[12] *Id*.
[13] *Id*.
[14] Morgner Decl. at ¶ 6.
[15] *Id*. at ¶ 7.
[16] *Id*.
[17] *Id*. at ¶ 8.
[18] *Id*.
[19] *Id*. at ¶ 9.
[20] *Id*. at ¶ 10.

11.    As a result of Hanjin and its advisors' efforts, two parties submitted proposals to the Korean Court on November 28, 2016.[21]  Both proposals evidenced committed financing to support the payment of the bid price and provide capital commitments to fund short term liquidity needs.[22]  One of the proposals was submitted by a consortium of TIL and HMM (the "**TIL/HMM Bid**").[23]

12.    The Korean Court authorized Hanjin to proceed to negotiate definitive documents with both bidders.  Through the course of negotiations, the TIL and HMM consortium was selected as the preferred bidding party.[24]  This selection was based on the determination that the TIL/HMM Bid was the highest or otherwise best offer because, among other things, it had the highest certainty of closing in the circumstances.[25]  On December 7, 2016, KLC announced it would not exercise its right of first refusal to match the TIL/HMM Bid.[26]

13.    Beginning on December 7, 2016, Jefferies negotiated a form of the PSA with the TIL and HMM consortium to memorialize the TIL/HMM Bid and the terms pursuant to which it would be acceptable to Hanjin and approved by the Korean Court.[27]  The negotiations were conducted fairly, at arm's length, in good faith, and without collusion and the Purchasers acted cooperatively and in good faith.[28]  On December 20, 2016, a final form of the PSA was agreed and the Korean Sale Order was entered that same day.[29]  The Korean Sale Order authorizing the sale of the Purchased Assets is expressly conditioned on the Sale Proceeds being deposited in escrow and then, with this Court's cooperation, transmitted to the Korean Proceeding.[30]  Accordingly, it is imperative to the Sale being

---

[21] *Id.* at ¶ 11.
[22] *Id.*
[23] *Id.*
[24] *Id.* at ¶ 12.
[25] *Id.*
[26] *Id.* at ¶ 13.
[27] *Id.* at ¶ 14.
[28] *Id.*
[29] *Id.* at ¶ 15.
[30] Korean Sale Order §1(b) ("In order to conclude the approval of said sales agreement, the following procedure shall be in place as the condition: the proceeds from the sale to be paid by the buyer are deposit into the escrow account first and then, through the cooperation with the US Chapter 15 Bankruptcy Court handling the case, transmitted to Korea").

able to close that the Korean Sale Order be recognized and enforced in the United States in all aspects, as the Foreign Representative requests herein.

**SUMMARY OF THE PSA AND
LOCAL RULE 6004-1 REQUIREMENTS**

14.     Pursuant to Local Rule 6004-1(a)(1)-(2), and as noted herein, the PSA is attached hereto as Exhibit B and the Proposed Order is attached hereto as Exhibit A.    Further, the Foreign Representative does not believe that the appointment of a consumer privacy ombudsman is necessary in this instance because the Sale does not implicate consumer privacy issues. *See* Local Rule 6004-1(a)(4).  In accordance with Local Rule 6004-1(a)(3), the material terms of the Sale are as follows:[31]

- Purchased Assets.  The Purchased Assets include (i) Hanjin's ownership interests in TTI and HTEC and (ii) the Shareholder Loans.

-  Purchase price. $78,000,000.   In addition, the parties will treat as paid the $54,611,879.89 Accounts Receivable Balance payable by Hanjin to TTI.

- Conditions to the Sale. Conditions to closing include, among other things, (i) orders approving the Sale from the Korean Court and this Court, (ii) approval from the relevant port agencies where TTI conducts operations, and (iii) the requisite consent and waivers from the lenders in connection with the Bank Debt.

- Deadline for the approval or closing of the sale.  The Sale must close within 180 days of the Effective Date (as defined in the PSA).

- Broker or sales agent's anticipated fee or commission. Hanjin is required to pay (i) the commission or other fees due to the Jefferies; and (ii) the fees and expenses of its attorneys, accountants and consultants in connection with the Sale.

In accordance with Local Rule 6004-1(b), certain special provisions of the PSA are described below:

- Releases.  As set forth herein, Hanjin seeks to sell the Purchased Assets free and clear of liens, claims, encumbrances and other interests except as set forth in the PSA and the Proposed Order.  Proposed Order ¶ 7-8.

---

[31] These summaries are provided for informational purposes only, and to the extent there is a discrepancy between any summary and the terms of the PSA, the PSA shall control.  Capitalized terms used but not otherwise defined herein shall have the meanings assigned to them in the PSA.

- Relief from Bankruptcy Rules 6004(h) and 6006(d). Hanjin is seeking relief from the fourteen (14) day stay imposed by Bankruptcy Rules 6004(h) and 6006(d). Proposed Order ¶¶ 6.

## RELIEF REQUESTED

15.     By this Motion, the Foreign Representative seeks the entry of an order, substantially in the form of the Proposed Order, pursuant to sections 105(a), 363(b), (f), (m) and (n), 365, 1501, 1514, 1520 and 1521 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006 and 9014, and Local Rule 6004-1: (i) recognizing and enforcing the Korean Sale Order in the United States, (ii) approving the Sale of the Purchased Assets to the Purchasers free and clear of all liens, claims, encumbrances and other interests, except as otherwise set forth in the PSA and the Proposed Order, (iii) entrusting the Foreign Representative with distribution of the Sale Proceeds in the Korean Proceeding, and (iv) granting related relief.

## BASES FOR RELIEF REQUESTED

**A.      The Court Should Recognize and Enforce the Korean Sale Order and Approve the Sale Pursuant to Section 363 of the Bankruptcy Code.**

16.     Based on the results of the Korean Sale Process and the favorable terms of the PSA, the Foreign Representative believes that the Sale of the Purchased Assets in accordance with the terms and conditions of the PSA represents the best realization of value for the Debtor's creditors and other stakeholders under the circumstances. Pursuant to Section 6.1(a)(v) of the PSA, entry of the Proposed Order, substantially in the form attached hereto, is a condition precedent to consummation of the Sale. This Court's recognition and enforcement of the Korean Sale Order, and approval of the Sale under section 363 of the Bankruptcy Code, will permit the Foreign Representative to sell the Purchased Assets without disruption and in a timely and efficient manner. Absent the relief requested herein, the Debtor and its creditors will potentially suffer significant, if not irreparable, harm due to an inability to close the Sale.

1. **Section 363 of the Bankruptcy Code is Applicable upon Recognition Pursuant to Section 1520(a) of the Bankruptcy Code.**

17.     Section 1520(a)(2) of the Bankruptcy Code provides, in relevant part, that "[u]pon recognition of a foreign proceeding that is a foreign main proceeding . . . section[] 363 appl[ies] to a transfer of an interest of the debtor in property that is within the territorial jurisdiction of the United States to the same extent that the section[] would apply to property of an estate."  11 U.S.C. § 1520(a)(2).  Moreover, section 1520(a)(3) provides that upon recognition of a foreign main proceeding "unless the court orders otherwise, the foreign representative may operate the debtor's business and may exercise the rights and powers of a trustee under and to the extent provided by section[] 363."  11 U.S.C. § 1520(a)(3); s*ee also In re Elpida Memory, Inc.*, No. 12-10947 (CSS), 2012 Bankr. LEXIS 5367, at *18 (Bankr. D. Del. Nov. 16, 2012) (holding that section 363 of the Bankruptcy Code applies to transfers of assets located within the United States outside of the ordinary course of business in connection with cases commenced under chapter 15 of the Bankruptcy Code); *In re Fairfield Sentry Ltd.*, 768 F.3d 239, 244 (2d Cir. 2014) (same).  Section 363(b) provides, in pertinent part, that "the trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).

2. **Entry into the PSA is Warranted under Section 363(b) of the Bankruptcy Code.**

18.     Although section 363 of the Bankruptcy Code does not specify a standard for determining when it is appropriate for a court to authorize the use, sale or lease of property of the estate outside the ordinary course of business, courts in this Circuit and elsewhere have found that a debtor's sale or use of assets outside the ordinary course of business should be approved if the debtor can demonstrate a sound business justification for the proposed transaction.  *See e.g. In re Martin*, 91 F.3d 389, 395 (3d Cir. 1996); *In re Abbotts Dairies of Penn., Inc.*, 788 F.2d 143 (3d Cir. 1986); *In re Grand Prix Assocs.*, 2009 Bankr. LEXIS 1779 (Bankr. D.N.J. June 26, 2009); *In re Summit Global Logistics,*

*Inc.*, 2008 Bankr. LEXIS 896 (Bankr. D.N.J. Mar. 26, 2008). Once the Foreign Representative, on behalf of the Debtor, articulates a valid business justification, "[t]he business judgment rule is a presumption that in making the business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action was in the best interests of the company." *In re S.N.A. Nut Co.*, 186 B.R. 98, 102 (Bankr. N.D. Ill. 1995) (internal quotations omitted); *In re Johns-Manville Corp.*, 60 B.R. 612, 615-16 (Bankr. S.D.N.Y. 1986) ("a presumption of reasonableness attaches to a debtor's management decisions").

19.     The "sound business judgment" test requires a proponent of a sale to establish four elements in order to justify the sale or lease of property outside the ordinary course of business. These factors are (a) that a "sound business purpose" justifies the sale of assets outside the ordinary course of business, (b) that adequate and reasonable notice has been provided to interested persons, (c) that the trustee or debtor in possession has obtained a fair and reasonable price, and (d) that the purchaser has acted in good faith. *In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143 (3d Cir. 1986); *In re Exaeris Inc.*, 380 B.R. 741, 744 (Bankr. D. Del. 2008); *Titusville Country Club v. Pennbank (In re Titusville Country Club)*, 128 B.R. 396, 399 (Bankr. W.D. Pa. 1991); *In re Sovereign Estates, Ltd.*, 104 B.R. 702, 704 (Bankr. E.D. Pa. 1989).[32]

20.     The Foreign Representative submits that ample business justification exists to sell the Purchased Assets to the Purchasers under the terms of the PSA. The Sale satisfies all four conditions set forth in *Abbotts Dairies*. First, sound business purposes justify the Sale. The Foreign Representative believes that the Sale presents the best opportunity for the Debtor to maximize the value of the Purchased Assets. Second, the Foreign Representative believes that the PSA establishes a fair

---

[32] Additionally, section 105(a) of the Bankruptcy Code provides a bankruptcy court with broad powers in the administration of a case. Section 105(a) states that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a). Provided that a bankruptcy court employs its equitable powers to achieve a result consistent with the Bankruptcy Code, the exercise of its section 105(a) power is proper. *In re Fesco Plastics Corp.*, 996 F.2d 152, 154 (7th Cir. 1993); *Pincus v. Graduate Loan Ctr. (In re Pincus)*, 280 B.R. 303, 312 (Bankr. S.D.N.Y. 2002).

and reasonable price for the Purchased Assets and that the purchase price is the best offer received in view of TTI's substantial liquidity challenges and the need for a prompt closing with minimal risk. Third, fair and reasonable notice has been provided to parties interested in the Sale. Pursuant to the terms of the Korean Sale Process, the Debtor and its advisors engaged in extensive negotiations to solicit higher and better offers for the Purchased Assets from interested parties. Moreover, all known creditors, stakeholders and parties in interest are being served with a copy of this Motion in accordance with the *Order (I) Approving Form and Manner of Service of Notice Pursuant to Sections 1514, 1515 and 105(a) of the Bankruptcy Code and Bankruptcy Rules 2002 and 9007, (II) Scheduling Recognition Hearing and (III) Granting Other Related Relief* [Dkt. No. 402] and section 1514 of the Bankruptcy Code. Fourth, as discussed more fully below, the negotiation process undertaken in the Korean Sale Process with respect to the PSA satisfies the good faith requirement. The PSA is the product of good faith and arm's-length negotiations among the parties.

21. Moreover, Courts in this Circuit have granted relief similar to the relief requested in this Motion and approved the sale of assets in ancillary proceedings pursuant to sale processes conducted in foreign proceedings . *See e.g. In re Elpida Memory, Inc.*, Case No. 12-10947 (CSS) (Bankr. D. Del. Jan. 16, 2013) (approving sale of debtor's U.S. assets under section 363 pursuant to sale process in Japan); *In re Xchange Technology Group LLC,* Case No. 13-12809 (KG) (Bankr. D. Del. November 25, 2013) (recognizing and enforcing sale order entered by Canadian court and separately authorizing and approving sale free and clear of any and all liens, claims, encumbrances and other interests under section 363)*;Arctic Glacier International Inc.*, Case No. 12-10605 (KG) (Bankr. D. Del. July 17, 2012) (same); *In re EarthRenew IP Holdings LLC*, Case No. 10-13363 (CSS) (Bankr. D. Del. February 18, 2011) (same); *In re Grant Forest Products,* Case No. 10-11132 (PJW) (Bankr. D. Del. April 26, 2010) (same); *In re Destinator Technologies Inc.*, Case No. 08-11003 (CSS) (Bankr. D. Del. July 8, 2008) (same).

22.     This Court's recognition and enforcement of the Korean Sale Order and approval of the PSA under section 363 is not only warranted but is critical to achieving the anticipated results of the Sale, as it will permit the Foreign Representative to sell the Purchased Assets without disruption and provide further certainty to the Sale and to the Purchasers. Pursuant to Section 6.1(a)(v) of the PSA, entry of the Proposed Order, substantially in the form attached hereto as Exhibit A, is a condition precedent to closing the Sale. Absent the relief requested herein, the Debtor will likely suffer substantial, if not irreparable, harm from the inability to sell the Purchased Assets without interference and in a manner that will allow the Debtor to maximize recoveries for all creditors and other stakeholders.

23.     For all of the foregoing reasons, the Foreign Representative respectfully submits that there is more than ample justification for this Court to enter the Proposed Order, thereby recognizing and enforcing the Korean Sale Order in the United States and authorizing the Sale pursuant to section 363 of the Bankruptcy Code.

**3.     The Court Should Approve the Sale Free and Clear of Liens, Claims, Encumbrances and Other Interests pursuant to Section 363(f) of the Bankruptcy Code.**

24.     The Foreign Representative also respectfully requests that this Court authorize the Sale free and clear of liens, claims, encumbrances and other interests except as set forth in the PSA. For the avoidance of doubt, the PSA provides for the transfer of the Purchased Assets subject to "Permitted Liens" as defined in the PSA, which include liens in connection with the Bank Debt such as the pledge of Hanjin's membership interests in TTI and the TTI Shareholder Loans. The Sale is conditioned on obtaining the requisite consents by the lenders that extended the Bank Debt. Under section 363(f) of the Bankruptcy Code, a trustee or a debtor in possession may sell all or any part of a debtor's property free and clear of any and all liens, claims, encumbrances and other interests in such property if (i) such a sale is permitted under applicable non-bankruptcy law, (ii) the party asserting such a lien, claim or

interest consents to such sale, (iii) the interest is a lien and the purchase price for the property is greater than the aggregate amount of all liens on the property, (iv) the interest is the subject of a bona fide dispute, or (v) the party asserting the lien, claim or interest could be compelled, in a legal or equitable proceeding, to accept a money satisfaction for such interest. 11 U.S.C. § 363(f); *Citicorp Homeowners Serv., Inc. v. Elliot (In re Elliot)*, 94 B.R. 343, 345 (E.D. Pa. 1988) (noting that section 363(f) of the Bankruptcy Code is written in the disjunctive; therefore, a court may approve a sale "free and clear" provided at least one of the subsections is met). In addition, a court may authorize the sale of a debtor's assets free and clear of any liens, claims, encumbrances and other interests under section 105 of the Bankruptcy Code. *See Volvo White Truck Corp. v. Chambersburg Beverage, Inc. (In re White Motor Credit Corp.)*, 75 B.R. 944, 948 (Bankr. N.D. Ohio 1987) ("Authority to conduct such sales [free and clear of liens] is within the court's equitable powers when necessary to carry out the provisions of Title 11.").

25.     The Foreign Representative respectfully submits that a sale of the Purchased Assets other than one free and clear of all liens, claims, encumbrances and other interests, except as otherwise provided in the PSA and the Proposed Order, would yield substantially less value for the Debtor and its creditors than the Sale will, and that the Sale free and clear of all liens, claims, encumbrances and other interests to the extent provided in the PSA and the Proposed Order is in the best interests of the Debtor, its creditors, and other parties in interest. Moreover, the Purchasers would not have entered into the PSA and would not consummate the Sale contemplated thereby, thus affecting the Debtor, its creditors, and other parties in interest, if the Sale of the Purchased Assets to the Purchasers was not free and clear of all liens, claims, encumbrances and other interests except as otherwise provided in the PSA. With respect to any and all creditors that may assert an interest in the Purchased Assets, the Foreign Representative submits that at least one of the subsections of 363(f) applies to such creditors and, in most cases, more than one of the subsections of 363(f) is satisfied. Accordingly, the Foreign

Representative submits that the sale of the Purchased Assets free and clear of all liens, claims, encumbrances and other interests, except as otherwise provided in the PSA and the Proposed Order, satisfies the statutory prerequisites of section 363(f) of the Bankruptcy Code.

### 4. The Court Should Afford the Purchasers All Protections under Sections 363(m) and (n) of the Bankruptcy Code as Good Faith Purchasers.

26. In addition to the relief requested above, the Foreign Representative requests that the Purchasers receive the protections set forth in sections 363(m) and (n) of the Bankruptcy Code. Specifically, section 363(m) of the Bankruptcy Code provides:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m). While the Bankruptcy Code does not define "good faith," courts have stated that "the phrase encompasses one who purchases in good faith and for value." *In re Abbots Dairies of Pa.*, 788 F.2d at 147 (internal quotations omitted). Courts have held that in order to demonstrate a lack of good faith, a party would have to show "fraud or collusion between the purchaser and [seller] or an attempt to take grossly unfair advantage [of other potential purchasers.]" *Id.*

27. The PSA was negotiated without fraud or collusion, in good faith and from an arm's-length bargaining position, and was not entered into for the purpose of hindering, delaying, or defrauding present or future creditors of the Debtor under the Bankruptcy Code or under the laws of the United States, any state, territory, possession thereof, the District of Columbia or Korea. To the Foreign Representative's knowledge, no party has engaged in any conduct that would cause or permit the Sale to be set aside under section 363(n) of the Bankruptcy Code. Accordingly, the Foreign

Representative seeks a finding that the Purchasers are good faith purchasers under section 363(m) of the Bankruptcy Code and has not violated section 363(n) of the Bankruptcy Code.

**B.** **The Court Should Entrust Distribution of the Sale Proceeds to the Foreign Representative**

28.     The Korean Sale Order authorizing the sale of the Purchased Assets is expressly conditioned on the Sale Proceeds being deposited in escrow and then, with this Court's cooperation, transmitted to the Korean Proceeding. Consistent with the purposes of chapter 15 set forth in section 1501(a)(1) of the Bankruptcy Code, this Court should lend assistance to the Korean Court to administer claims collectively in the Korean Proceeding pursuant to the DRBA.

**1.     The Relief Requested is Supported by the Bankruptcy Code and Applicable Law**

29.     The Recognition Order entrusts the administration and realization of the Debtor's assets located within the territorial jurisdiction of the United States to the Foreign Representative pursuant to section 1521(a)(5) of the Bankruptcy Code. *See* Recognition Order at ¶ 8. Distribution of funds to a debtor's creditors, however, is governed by section 1521(b) of the Bankruptcy Code. *See* 11 U.S.C. § 1521(b). That section provides that a court may "entrust the distribution of all or part of the debtor's assets located in the United States to the foreign representative or another person, including an examiner, authorized by the court, provided that the court is satisfied that the interests of creditors in the United States are sufficiently protected." 11 U.S.C. § 1521(b).

30.     Although relief under section 1521(b) is discretionary, "[o]nce a case is recognized as a foreign main proceeding, chapter 15 specifically contemplates that the court will exercise its discretion consistent with principles of comity." *In re Atlas Shipping A/S*, 404 B.R. 726, 738 (Bankr. S.D.N.Y. 2009); *see also In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*, 389 B.R. 325, 333 (S.D.N.Y. 2008) (stating same). A foreign representative bears the initial burden of establishing that he or she is entitled to relief under section 1521(b) of the Bankruptcy

Code, including that creditors are sufficiently protected. *In re Lee*, 472 B.R. 156, 182 (Bankr. D. Mass. 2012). However, "the ultimate burden of establishing the absence of sufficient protection rests on the objecting parties." *Id.* The Foreign Representative submits that entrusting him with the distribution of the Sale Proceeds is appropriate and that the Korean Proceeding is an appropriate forum for such distribution. *See Atlas*, 404 B.R. at 738 ("Deference to foreign insolvency proceedings will often facilitate the distribution of the debtor's assets in an equitable, orderly, efficient, and systematic manner, rather than in a haphazard, erratic, or piecemeal fashion") (quoting *In re Artimm, S.r.L.*, 335 B.R. 149, 161 (Bankr. C.D. Cal. 2005)); *see also In re Hwang*, 309 B.R. 842, 846 (Bankr. S.D.N.Y. 2004) ("The record confirms that Korean bankruptcy law . . . is substantially similar to United States law, does not discriminate against non-Korean creditors, and comports with American notions of fairness and due process. The Korean Proceeding provides many of the same procedural safeguards as would apply in a Chapter 11 case in the United States. The distribution of proceeds . . . is substantially in accordance with United States law. Therefore, affording comity to the Foreign Proceeding is warranted and appropriate").

### 2. The Interests of All Creditors are Protected

31. By its own terms, section 1521(b) of the Bankruptcy Code limits the relief thereunder to situations where the interests of creditors located in the United States are "sufficiently protected." The Bankruptcy Code does not define the term "sufficiently protected." Courts have found that United States creditors are sufficiently protected where the foreign proceeding assures: (i) the just treatment of all holders of claims against a bankruptcy estate; (ii) the protection of United States creditors against prejudice and inconvenience in the processing of claims in the foreign proceeding; and (iii) proceeds are distributed by the foreign estate in a manner that is substantially in accordance with the order prescribed by United States law. *Artimm*, 335 B.R. at 160 (stating that sufficient protection encompasses "the just treatment of all holders of claims against the bankruptcy estate, the protection of

U.S. claimants against prejudice and inconvenience in the processing of claims in the [foreign] proceeding, and the distribution of proceeds of the [foreign] estate substantially in accordance with the order prescribed by U.S. law"); *see also Atlas*, 404 B.R. at 740 (reciting same).

32.     Additionally, section 1522(a) of the Bankruptcy Code provides that relief under section 1521 may be granted "if the interests of the creditors and other interested entities, including the debtor, are sufficiently protected."   11 U.S.C. § 1522(a).   "Standards that inform the analysis of § 1522 protective measures in connection with discretionary relief emphasize the need to tailor relief and conditions so as to balance the relief granted to the foreign representative and the interests of those affected by such relief, without unduly favoring one group of creditors over another." *In re Tri-Cont'l Exch.*, 349 B.R. 627, 637 (Bankr. E.D. Cal. 2006).

33.     Here, as described below, all U.S. creditors are sufficiently protected within the meaning of Section 1521(b) and guidance provided by the court in *Artimm*.

i.     <u>All Parties Will Receive Just Treatment</u>

34.     The DRBA, which governs the Korean Proceeding, sets forth a comprehensive liquidation scheme that is fair and equitable to all creditors.   *See* Lee Declaration at ¶¶ 4-5. Specifically, no foreign party will be prejudiced due to the fact that such party is not a Korean entity. Indeed, U.S. courts have found that foreign creditors are afforded just and equal treatment in Korean insolvency proceedings.   *See, e.g., In re Daebo Int'l Shipping Co.*, 543 B.R. 47, 54 (Bankr. S.D.N.Y. 2015) (explaining that creditors were sufficiently protected where "[t]he United States creditors [could] file claims in the Korean proceeding and [were] entitled to equal treatment with other unsecured creditors"); *In re Hwang*, 309 B.R. at 846.

ii.     <u>United States Creditors Will Not Be Prejudiced or Inconvenienced</u>

35.     According to the statutory framework of the DRBA, U.S. creditors are protected against prejudice or inconvenience in the processing of their claims in the Korean Court.   *See* Lee Declaration

at ¶¶ 4-5; *see also Daebo*, 543 B.R. at 54 ("Article 2 of the DRBA states generally that in the application of the DRBA 'foreigners and foreign corporations shall have the same status as that of people of the Republic of Korea or corporations of the Republic of Korea'") (citing to the DRBA). Indeed, that is one of the reasons this Court dispensed with the claims process in this ancillary proceeding. *See* Docket Nos. 366, 402.

36. Furthermore, U.S. creditors have a full and fair opportunity to assert any interest they think they might have in the Sale Proceeds before the Korean Court. The Foreign Representative respectfully submits that U.S. creditors' ability to pursue such rights in Korea provides those creditors with sufficient protection. *See In re Atlas Shipping*, 404 B.R. at 742 (noting that 1521(b) relief was appropriate because the foreign representative had acknowledged on the record that such relief was "without prejudice to creditors' rights, if any, to assert in the Danish bankruptcy court their rights to the [assets]" and noting that the "funds [were] subject to administration by the bankruptcy court in Denmark"); *In re Milovanovic*, 357 B.R. 250, 257 (Bankr. S.D.N.Y. 2006) (ordering funds transmitted abroad over objection of an attaching creditor where creditor was "free to pursue all of its rights and claims in the Serbian court").

      iii.      <u>Distribution of the Sale Proceeds in the Korean Proceeding will be Substantially in Accordance with the Bankruptcy Code's Distribution Scheme</u>

37. Lastly, under the DRBA, similarly situated creditors are treated equally and in accordance with a distribution scheme substantially similar to that of the Bankruptcy Code. *See* Lee Declaration, ¶¶ 4-6; 11 U.S.C. §§ 507, 1129; *see also Hwang*, 309 B.R. at 846 (stating same with respect to an earlier version of the DRBA). Accordingly, this factor is satisfied by the DRBA and the Korean Proceeding.

### C. Waiver of Bankruptcy Rules 6004(h) and 6006(d)

38.     Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or lease of property . . . is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."  Similarly, Bankruptcy Rule 6006(d) provides that an "order authorizing the trustee to assign an executory contract or unexpired lease under § 365(f) is stayed until the expiration of 14 days after the entry of the order, unless the court orders otherwise."  The Foreign Representative requests that the Proposed Order, once entered, be effective immediately by providing that, to the extent applicable, the 14-day stay under Bankruptcy Rules 6004(h) and 6006(d) is waived.  Time is of the essence with respect to the Proposed Order.  The Purchasers have made clear to the Foreign Representative that closing the Sale on an expedited basis is a key consideration in entering into the PSA due to TTI's rapidly declining liquidity position.  The Foreign Representative understands that closing the transaction swiftly will alleviate TTI's financial distress as it will allow the Purchaser to direct more traffic to the ports where TTI operates, thereby generating more revenue for that enterprise.  In order for Hanjin to sell the Purchased Assets to the Purchasers in an expedient manner, the fourteen-day stay set forth in Bankruptcy Rules 6004(h) and 6006(d) should be waived.  Such a waiver will benefit Hanjin, its estate and creditors by assuring it of prompt realization of a significant asset and no party in interest will be prejudiced thereby.

### NOTICE

39.     Notice of this Motion has been provided to:  (i) all persons or bodies authorized to administer foreign proceedings of the Debtor; (ii) all known creditors of the Debtor and holders of interests; (iii) all parties to litigation pending in the United States in which the Debtor was a party as of the petition date; (iv) the Office of the United States Trustee for the District of New Jersey; (v) the Federal Maritime Commission; (vi) the United States Attorney's Office for the District of New Jersey; (vii) the Internal Revenue Service; (viii) counsel for the Purchasers; (ix) all persons or entities known

to have liens, claims, encumbrances or other interests in, to, against or on the Purchased Assets; and

(x) all other persons to whom notice is required pursuant to this Court's *Order (I) Approving Form and Manner of Service of Notice Pursuant to Sections 1514, 1515 and 105(a) of the Bankruptcy Code and Bankruptcy Rules 2002 and 9007, (II) Scheduling Recognition Hearing and (III) Granting Other Related Relief* [Docket No. 402] and section 1514 of the Bankruptcy Code. Moreover, the Foreign Representative has provided notice of the Motion through publication in various newspapers. In light of the nature of the relief requested, the Foreign Representative submits that no other or further notice is required. The Foreign Representative submits that Local Rule 6004-1(c) is satisfied by the form of notice attached hereto as Exhibit D.

## NO PRIOR REQUEST

40.     No prior request for the relief sought in this Motion has been made to this or any other court.

## CONCLUSION

**WHEREFORE**, the Foreign Representative respectfully requests that the Court enter the Proposed Order, substantially in the form attached hereto as Exhibit A, granting (i) the relief requested herein, and (ii) such other and further relief as the Court may deem proper.

DATED: December 22, 2016

<div style="margin-left:50%">

Respectfully submitted,

COLE SCHOTZ P.C.

*/s/ Ilana Volkov*
Ilana Volkov
Edward S. Kiel

*Attorneys for Tai-Soo Suk, Foreign Representative of Hanjin Shipping Co., Ltd.*

</div>