<table>
<tr><td>

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

Vedder Price P.C.
1633 Broadway, 31st Floor
New York, New York 10019
John E. Bradley
jbradley@vedderprice.com
Michael J. Edelman
mjedelman@vedderprice.com
Michael L. Schein
mschein@vedderprice.com
T:  +1 212 407 7700
F:  +1 212 407 7799
*Attorneys for TAL International*
*Container Corporation, Triton Container*
*International Incorporated of North America and*
*Gold Container Corporation*

</td></tr>
</table>

|  |  |
|---|---|
| In re: | HEARING DATE AND TIME: January 12, 2017 at 1:00 p.m. |
| HANJIN SHIPPING CO., LTD., | Chapter 15 |
| Debtor in a Foreign Proceeding | Case No. 16-27041 (JKS) |

**OBJECTIONS OF TAL INTERNATIONAL CONTAINER CORPORATION, TRITON CONTAINER INTERNATIONAL INCORPORATED OF NORTH AMERICA AND GOLD CONTAINER CORPORATION TO MOTION OF FOREIGN REPRESENTATIVE FOR ENTRY OF ORDER (I) RECOGNIZING AND ENFORCING THE KOREAN SALE ORDER, (II) APPROVING THE SALE OF THE DEBTOR'S INTERESTS IN TTI AND HTEC, (III) ENTRUSTING DISTRIBUTION OF THE SALE PROCEEDS TO THE FOREIGN REPRESENTATIVE AND (IV) GRANTING RELATED RELIEF**

TAL International Container Corporation ("**TAL**"), Triton Container International Incorporated of North America ("**Triton**"), and Gold Container Corporation ("**Gold**" and, together with TAL and Triton, the "**Container Lessors**"), by and through their undersigned counsel, hereby submit these objections (these "**Objections**") to the *Motion of Foreign Representative for Entry of an Order (I) Recognizing and Enforcing the Korean Sale Order, (II)*

*Approving the Sale of the Debtor's Interests in TTI and HTEC, (III) Entrusting Distribution of the Sale Proceeds to the Foreign Representative and (IV) Granting Related Relief* [Docket Nos. 492-496] (the "**Sale Motion**"),[1] and respectfully state as follows:

## BACKGROUND

1.      Each Container Party is a container leasing company in the business of owning, managing, operating and/or leasing intermodal shipping containers and other intermodal equipment (collectively, "**Containers**") to shipping lines and other customers.

2.      Prior to the commencement date of the Korean Proceeding ("**Commencement Date**"), Hanjin Shipping Co. Ltd. ("**Hanjin**" or the "**Debtor**") leased tens of thousands of Containers (the "**Leased Containers**") from the Container Lessors pursuant to various lease agreements (collectively, the "**Lease Agreements**") between Hanjin and each of the Container Lessors.  Hanjin used the Leased Containers to transport revenue-producing cargoes in its worldwide liner shipping services.

3.      On the Commencement Date, approximately 98,000 Leased Containers belonging to the Container Lessors and subject to various Lease Agreements were solely in Hanjin's possession, custody and control.[2]

4.      On or about September 9, Hanjin notified TAL and Triton in writing that it was terminating their respective Lease Agreements effective as of September 1, 2016, and instructed them to undertake "prompt measures" to secure the return of their Leased Containers.  A substantially similar termination notice was sent to Gold on September 13, 2016.

---

[1] All capitalized terms that are used but not defined herein shall have the meanings ascribed to them in the Sale Motion.
[2] Triton (53,601 Leased Containers), TAL (33,402 Leased Containers) and Gold (11,000 Leased Containers).

5.      Notwithstanding the termination notices, Hanjin continued to possess, use and operate tens of thousands of Leased Containers to transport and deliver revenue-producing cargoes in the weeks and months following the Commencement Date, and allowed such Leased Containers to be used by beneficial cargo owners and others for such purposes, all without any compensation to the Container Lessors.  Upon information and belief, based upon its internal tracking and equipment control systems, Hanjin is able to identify all Leased Containers that it used and operated post-petition in furtherance of its liner shipping business.[3]

6.      Despite regular invoicing and demands by each of the Container Lessors, Hanjin failed and refused to pay rent or any other charges relating to its post-petition use and operation of the Leased Containers,[4] and failed to return the Leased Container to the Container Lessors or fulfill its other obligations under the terms of the Lease Agreements.  Indeed, none of the Container Lessors has received any remuneration or other payments from Hanjin relating to the latter's post-petition use of such Leased Containers and their respective "common benefit" claims arising therefrom.  In fact, upon information and belief, no common benefit claims have been paid to any container lessor or even allowed by the Hanjin custodian or its Foreign Representative.[5]

7.      Unlike many other suppliers and service providers, such as stevedores, fuel suppliers, port agents and tug companies, the Container Lessors could not refuse or withhold the delivery of the Leased Containers to Hanjin in the weeks and months following the

---

[3] As an example, according to manifests provided by Hanjin, the HANJIN BALTIMORE transited the Panama Canal in October 2016 carrying 101 Leased Containers belonging to Triton, each loaded with revenue-producing cargo for delivery by Hanjin on the U.S. East Coast.
[4] For example, on September 28, 2016, counsel for TAL and Triton sent a demand letter to the Foreign Representative, which the Foreign Representative never acted upon.  A copy of this letter is attached hereto as **Exhibit A**.
[5] Mr. Tai-Soo Suk serves as the court-appointed custodian (receiver) of Hanjin and also the Foreign Representative of Hanjin for purposes of this Chapter 15 case.

Commencement Date.  Hanjin was already in possession, custody and control of the Leased

Containers and, rather than returning them to the Container Lessors, Hanjin continued using and

operating them for revenue generating purposes[6] until such time as it abandoned the Leased

Containers.[7]

## OBJECTIONS

### A.    Recent Procedural History

8.      On December 14, 2016, this Court entered its Final Order Granting Recognition

of Foreign Main Proceeding and Certain Related Relief Pursuant to Sections 362, 365(e), 1517,

1520, 1521 and 105(a) of the Bankruptcy Code [Docket No. 486] (the "**Recognition Order**").

In accordance with section 1521(b) of the Bankruptcy Code (the "**Code**"), Paragraph 8 of the

Recognition Order provides that the Foreign Representative "is entrusted with the administration

or realization of all or part of Hanjin's assets within the territorial jurisdiction of the United

States and, after notice and hearing, entrusted with the distribution of all or part of the Debtor's

assets located in the United States to the Foreign Representative in accordance with, and subject

to, section 1521(b) of the Bankruptcy Code." *See Recognition Order ¶ 8.*  Paragraph 8 thus

incorporates the proviso in section 1521(b) which conditions such entrustment on the court being

"satisfied" that "the interests of creditors in the United States are **sufficiently protected**."  11

U.S.C. § 1521(b) (emphasis added).

9.      On December 14, 2106, following entry of the Recognition Order, this Court

entered an *Order Directing Foreign Representative to Disclose Information* [Docket No. 488]

---

[6] It is safe to assume that some portion of the millions of dollars in ocean freights collected by Hanjin in
the United States and repatriated to Korea since the Commencement Date was generated by its post-
petition use of the Leased Containers.
[7] Hanjin abandoned the Leased Containers in a multitude of countries and locations around the world
where the Leased Containers were and many still are being held by third parties unless and until the
Container Lessors make large ransom payments for their release.

(the "**Disclosure Order**").  The Disclosure Order required the Foreign Representative to provide information concerning its financial affairs no later than December 23, 2016, including information relevant to the "value of the unencumbered assets of Hanjin worldwide" available for the payment of common benefit claims, together with an estimate of the total common benefit claims in Hanjin's insolvency proceedings and "a description of the process for liquidating and satisfying these claims in the Korean proceeding." *See Disclosure Order ¶ 2.*

10.     On December 22, 2016, the Foreign Representative filed its Sale Motion, which provided for a hearing date of January 12, 2017, and an objections date of January 5, 2017, and a *Motion of Foreign Representative Pursuant to 11 U.S.C. § 105(a) for Entry of Order Extending Time to Comply with Order Directing Foreign Representative to Disclose Information* [Docket No. 497] (the "**Extension Motion**").  Incredibly, the Extension Motion intentionally sought to delay compliance with the Disclosure Order until January 6, 2017 – the day **after** objections to the sale motion were due.  On December 23, 2016, in an *Order Granting Application to Shorten Time* [Docket No. 499], this Court set a hearing date on the Extension Motion for December 28th and directed compliance with the Disclosure Order by such date.

11.     On December 27, 2016, the Foreign Representative filed with the Court a self-styled Report of Foreign Representative Regarding Order Directing Foreign Representative to Disclose Information and Pursuant to Section 1518 of the Bankruptcy Code [Docket No. 503] (the "**Report**").  The Report was provided in **partial** response to the Disclosure Order with no indication or suggestion when complete disclosure would be forthcoming.  At a telephonic hearing subsequently held on December 29, 2016, this Court found the Report to be "incomplete" and admonished the Foreign Representative as follows:

> "The report, the topics to be addressed in the report were topics
> that were of concern to me.  And to the extent that the foreign

representative does not think it needs to respond to my concerns, it is welcome to take that approach, but it should also be aware that if a complete response to my questions is not provided, that I reserve the right not to approve the sale, or maybe approve the sale, but keep all the proceeds here in the US.  And if that's a problem with the Korean order, then so be it."[8]

12.     The Foreign Representative has not supplemented the Report as of the date and time of these Objections.

13.     In accordance with permission granted by this Court at the December 29th hearing, the Container Lessors served targeted discovery upon the Foreign Representative on December 30th.  The Foreign Representative emailed retaliatory discovery demands and Rule 30(b)(6) subpoenas to the undersigned counsel on New Year's Day.

**B.      De Novo Scrutiny of the Proposed Sale**

14.     Section 1520(a)(2) of the Code states that, upon recognition of a foreign proceeding that is a foreign main proceeding, section 363 of the Code applies "to a transfer of an interest of the debtor in property that is within the territorial jurisdiction of the United States to the same extent that [such section] would apply to property of an estate."   11 U.S.C. § 1520(a)(2).   In Chapter 15 cases, the bankruptcy court may not defer its judgment, under established principles of comity, to the judgment of the foreign bankruptcy court that originally approved the transfer.  Accordingly, whenever a foreign debtor seeks to transfer an interest in property within the territorial jurisdiction of the United States, the bankruptcy court is **required** to conduct a section 363 review.  *See Krys v. Farnum Place, LLC (In re Fairfield Sentry Ltd.), 768 F.3d 239, 246 (2d Cir. 2014).*[9]

---

[8] *See Transcript of Telephonic Order to Show Cause before the Honorable John K. Sherwood dated December 29, 2016, at 37.*
[9] The bankruptcy court must review the sale motion "*de novo* as it relates to assets in the United States and, in so doing, must apply the well-settled standard governing a sale of assets under section 363 of the

15.     Under the standards of section 363, the Sale Motion leaves many questions unanswered with respect to the sales process and the sufficiency of the Sale Proceeds in relation to the undisclosed valuation of the Purchased Assets.  For example, it is unclear from the Sale Motion why an offer from Hahn & Company in the range of $115,000,000 to $145,000,000 was rejected.[10]  *See Sale Motion, Exhibit C, ¶2.*  In addition, the Sale Motion fails to explain how  the sale of Hanjin's 54% stake in TTI, a major marine terminal operator holding valuable concession and leasehold rights in two major West Coast ports,[11] is assigned a value of $1.00.[12]  Nor does it explain how the stock of HTEC, a wholly owned subsidiary of Hanjin which is said to provide equipment in terminals operated by TTI, could be sold for a mere $2,750,000.00 when Pier T and Terminal 46 are said to operate on a combined basis approximately 75 top handlers, 27 transfer cranes, and 210 yard tractors (not to mention the gantry cranes at each location).[13]

### C.     Protection of Container Lessors' Interests as Common Interest Claimants

16.     Regardless of the ultimate purchase price, the principal focus of these Objections is the planned disposition of Sale Proceeds following the closing of the purchase and sale transaction.  The Container Lessors approach this issue from the standpoint of their status as U.S. creditors and common benefit claimants, a term with which this Court is now familiar. "Common benefit" or so-called "public interest" claims are recognized in Article 179 of the Korean Debtor Rehabilitation and Bankruptcy Act (the "**DRBA**").  According to uncontroverted

---

Bankruptcy Code."  *See In re Elpida Memory, Inc.*, 2012 Bankr. LEXIS 5367, at *30 (Bankr. D. Del. Nov. 16, 2012).

[10] Reference in the Korean Sale Order to some "priority purchase right" in favor of TIL is presumably something that could have been addressed and possibly overcome in the anti-assignment context under section 363 of the Code.

[11] According to information publicly available, TTI operates Pier T in Long Beach pursuant to a Preferential Assignment Agreement with the Port of Long Beach and Terminal 46 in Seattle pursuant to lease with the Port of Seattle.

[12] *See Sale Motion, Exhibit C, ¶ 1.A.*

[13] Information as per TTI website. *See http://www.totalterminals.com/.*

evidence previously given to this Court, common benefit claims are to be paid by a Korean

debtor to a common benefit creditor on a current, business-as-usual basis outside of rehabilitation

proceedings and "without any discount, set-off, or write-off by the rehabilitation debtor or the

estate." *See Affidavit of Dr. Hyun Kim Confirming that Common Benefit Claims May Be*

*Pursued in United States Courts dated November 15, 2016, ¶ 10* [Docket No. 431] ("**First Hyun**

**Affidavit**").  In this regard, common benefit claims are distinct from rehabilitation claims which

are paid, if at all, pursuant to a debtor's  rehabilitation plan.  As stated in the First Hyun

Affidavit, "[a] common benefit claim is paid as it becomes due, without regard to the

rehabilitation proceedings or plan." *See First Hyun Affidavit ¶ 11.*  Moreover, as further stated

by Dr. Hyun:

> "A rehabilitation debtor that rejects a lease for the use of
> equipment (i.e. containers or chassis) is obligated to return the
> equipment to the lessor in accordance with the terms of the lease
> agreement.  When a rehabilitation debtor continues to use and/or
> possess equipment after the rehabilitation date, even if the debtor
> has otherwise rejected underlying the lease [sic], the rental
> amounts accruing from such are to be treated as common benefit
> claims."[14]

17.    A sworn declaration by Wan Shik Lee, submitted by the Foreign Representative

in direct response to the First Hyun Affidavit, does not contradict or dispute any of the foregoing

points.  *See Declaration of Wan Shik Lee* [Docket No. 480] (the "**Lee Declaration**") dated

December 8, 2016.  To the contrary, Mr. Lee confirms that the DRBA establishes the concept of

common benefit claims and further states that Articles 180(1) and (2) of the DRBA "provide that

common benefit claims 'shall be reimbursed in preference to any rehabilitation claims and

rehabilitation security rights' and are to be 'reimbursed at any time without undergoing

rehabilitation procedures.'" *See Lee Declaration ¶ 6; see also Further Affidavit of Dr. Hyun Kim*

---

[14] *See First Hyun Affidavit ¶¶ 12-13.*

*Confirming that Common Benefit Claims May be Pursued in United States Courts* [Docket No.
483] ("**Second Hyun Affidavit**") dated December 12, 2016.

18.    To the extent that there has been any substantive disagreement between Dr. Hyun

and Mr. Lee concerning common benefit claims, it is solely with respect to the venue for

commencing actions to enforce common benefit claims, with Dr. Hyun stating that such actions

can be commenced in a court of competent jurisdiction anywhere in the world and Mr. Lee

merely stating that the DRBA is "silent" on the point.  *Compare Lee Declaration at ¶ 6 with*

*First Hyun Affidavit at ¶¶ 14-15.*  Recognizing this particular issue, the Final Recognition Order

contains a complete reservation of rights with respect to common benefit claims, stating that

nothing contained therein constitutes a determination as to the merits of common interest claims,

the ability or standing to prosecute such claims, or the "appropriate jurisdiction or forum" for

prosecuting such claims.

19.    It is undisputed that Hanjin continued using and operating the Leased Containers

in a revenue generating capacity for weeks and months following the Commencement Date,

despite its rejection of Lease Agreements as of September 1, 2016.  The Container Lessors never

consented to Hanjin's post-petition use of the Leased Containers and never received common

benefit payments from Hanjin.  Therefore, under Korean law, it is beyond cavil that the

Container Lessors hold common benefit claims within the meaning of the DRBA.[15]

20.    Although Hanjin has failed and refused to pay the common benefit claims of the

Container Lessors, both common sense and the documented history of this Chapter 15 case show

that Hanjin has paid suppliers and service providers who were in a position to withhold goods

and services during the rehabilitation period in the absence of cash payments in advance.

---

[15] There is no question that Hanjin maintains in the ordinary course of business information and internal
data showing when, where and how it used and operated the Leased Containers during the rehabilitation
period.

Indeed, according to its own court filings in this case, Hanjin paid pre-petition amounts owed to select U.S. vendors (allegedly in in accordance with Article 132(2) of the DRBA) in order to obtain post-petition services. Such payments are described in the *Foreign Representative's Status Report for September 23, 2016 Status Conference* (the "**Status Report**") and attached *Expenditure Order* (the "**Expenditure Order**") [Docket No. 243].[16] These documents clearly show that Hanjin paid (with Korean court approval) over $18.6 million in port charges, unloading fees and bunkering costs in order to facilitate the post-petition docking, stevedoring and handling of five Hanjin ships calling in U.S. ports – all of which inevitably carried cargo-laden Leased Containers belonging to the Container Lessors and generating revenues for Hanjin. Common sense dictates that Hanjin make many similar payments to obtain post-petition goods and services throughout the world.

21.    The Container Lessors are U.S. domestic corporations[17] and, therefore, "creditors in the United States" for purposes of section 1521(b) of the Code. As a result, their respective interests must be considered and protected by this Court before the Sale Proceeds may be turned over to the Foreign Representative for distribution in Korea. *See SNP Boat Service S.A. v. Hotel Le St. James,* 483 B.R. 776, 783 (Bankr. S.D. Fla. 2012).

22.    In addition to Section 1521(b) of the Code, section 1522(a) of the Code permits the Court to grant, modify or terminate relief under section 1519 or 1521 "only if the interests of creditors and other interested entities, including the debtor, are sufficiently protected." 11 U.S.C. § 1522(a). Under section 1522(b), the court may subject relief to "conditions it considers appropriate" in the circumstances. 11 U.S.C. § 1522(b). Sections 1521(b) and 1522(a), when read together, "were intended to give courts 'broad latitude to mold relief to meet specific

---

[16] Copies of the Status Report and Expenditure Order are attached hereto as **Exhibit B**.
[17] TAL and Gold are both Delaware corporations; Triton is a California corporation.

circumstances.'" *In re Sivec Srl,* 2011 Bankr. LEXIS 3206, at *8-9 (Bankr. E.D. Okla Aug. 18, 2011) (quoting *In re International Banking Corp. B.S.C.*, 439 B.R. 614, 627-28 (Bankr. S.D.N.Y. 2010).

23.    The circumstances in which the Container Lessors now find themselves require tailored relief which protects their individual and collective interests.  Hanjin has used and operated the Leased Containers without the permission of or compensation to the Container Lessors since September 1, 2016, and has done so for the purpose of conducting it shipping business and generating much-needed revenues for the benefit of its estate and general creditor body.

24.    The Container Lessors possess common benefit claims under Korean law[18] which, by the admission of the Foreign Representative's own foreign law expert, must be reimbursed "in preference to any rehabilitation claims and rehabilitation security rights."    *See Lee Declaration ¶ 6.*   Despite this, and despite the established fact that many other post-petition suppliers, vendors and service providers have been paid, the Foreign Representative continues to ignore its statutory payment obligations to the Container Lessors and other similarly situated container lessors.

25.    The Container Lessors have suffered massive financial losses and have legitimate payment priority interests which deserve and require protection from this Court.  Hanjin is running out of money and is quickly heading down the road to liquidation and dissolution.  If past is prologue, the Hanjin receiver has no intention of paying the common benefit claims of the Container Lessors.  Indeed, given the "black-box" claims treatment which they have experienced

---

[18] It was revealed during the court hearing held on January 5, 2017, that Hanjin has in fact admitted the common benefit claims status of certain container lessors.  If this is correct, it cannot take a contrary position against other container lessors (including the Container Lessors) providing similar post-petition services.

so far in Korea, the only way that the Container Lessors will be paid on their post-petition common benefit claims is from the Sale Proceeds, and the only way that those Sale Proceeds will be available to the Container Lessors is if this Court fashions appropriate relief to ensure that these United States creditors are protected and paid therefrom.

26.     The Sale Motion makes no mention of common benefit claims, and gives no suggestion or indication as to how the Sale Proceeds will be used to pay common benefit claims if they are repatriated to Korea and distributed there.  In an affidavit submitted by the Foreign Representative's foreign law expert in support of the Sale Motion, Mr. Wan Shik Lee states that Article 217 of the DRBA will govern the "scheme of priority for distribution" in Korea. *Declaration of Wan Shik Lee ¶ 6 dated December 22, 2016* [Docket No. 495] (the "**Second Lee Declaration**").  The priority scheme cited in the Second Lee Declaration makes no mention of common benefit claims or the payment thereof.

27.     In order to protect the legitimate interests of the Lessors, this Court must maintain possession, control and supervision of the Sale Proceeds until Hanjin provides the information and data necessary to fix the amount of their common benefit claims based upon Hanjin's post-petition use and operation of the Leased Containers.  If Hanjin then pays such claims in accordance with their priority status, the Sale Proceeds can be released.  If Hanjin fails or refuses to pay such claims, the Court should use the Sale Proceeds to effect such payments.  Such relief is fair and measured and entirely consistent with the authority and discretion conferred on this Court under Chapter 15 of the Code.

28.     Lastly, the relief sought by the Container Lessors is **not** prohibited or restricted by the Korean Sale Order.  Indeed, the Sale Motion makes **no** mention of **any** time restrictions or constraints on the repatriation of the Sale Proceeds to Korea.  *See Sale Motion ¶ 13 and footnote*

*30.*  Moreover, according to its express terms, the effectiveness of the Korean Sale Order is **not** conditioned upon the repatriation of the Sale Proceeds within a specified period of time.  This Court should not read restrictions or conditions into the Korean Sale Order which are not expressly set forth therein.

## CONCLUSION

29.    In view of the foregoing, the Container Lessors hereby request that (a) the Sale Motion be denied or delayed until the Foreign Representative demonstrates that it has maximized its recovery; (b) if the Sale Motion is approved, that the Sale Proceeds be held in an escrow account under the Court's supervision until such time as the Container Lessors, individually and collectively, have been paid on their respective common benefit claims; and (c) this Court shall grant such other and further relief as is just and reasonable in the circumstances.

## RESERVATION OF RIGHTS

30.    The Container Lessors hereby reserve the right to supplement these Objections in accordance with this Court's prior rulings and instructions.

Dated: New York, New York
      January 6, 2017

**VEDDER PRICE P.C.**

By:  /s/ John E. Bradley
1633 Broadway, 31st Floor
New York, New York 10019
John E. Bradley
jbradley@vedderprice.com
Michael J. Edelman
mjedelman@vedderprice.com
Michael L. Schein
mschein@vedderprice.com
T:  +1 212 407 7700
F:  +1 212 407 7799

*Attorneys for TAL International*
*Container Corporation, Triton Container*
*International Incorporated of North America*
*and Gold Container Corporation*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 6, 2017, I caused a copy of the *Objections of TAL International Container Corporation, Triton Container International Corporation of North America and Gold Container Corporation to Motion of Foreign Representative for Entry of an Order (I) Recognizing and Enforcing the Korean Sale Order, (II) Approving the Sale of the Debtor's Interests in TTI and HTEC, (III) Entrusting Distribution of the Sale Proceeds to the Foreign Representative and (IV) Granting Related Relief* to be served upon all parties who have appeared in this action via ECF.

/s/ John E. Bradley
John E. Bradley
Michael J. Edelman

*Attorneys for TAL International
Container Corporation, Triton Container
International Corporation of North America
and Gold Container Corporation*