UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
Caption in Compliance with D.N.J. LBR 9004-2(c)

John M. Marmora
One Newark Center, Tenth Floor
Newark, New Jersey 07102
Phone: (973) 848-4000
Fax: (973) 848-4001
Email: john.marmora@klgates.com

Michael J. Gearin
925 Fourth Avenue, Suite 2900
Seattle, Washington 98104
Phone: (206) 623-7580
Fax: (206) 623-7022
Email: michael.gearin@klgates.com
Admitted in Washington

*Counsel to Northwest Seaport Alliance*

| | |
|---|---|
| In Re: | Case No.: 16-27041 (JKS) |
| **HANJIN SHIPPING CO., LTD.,** [1] | Judge: John K. Sherwood |
| Debtor in a Foreign Proceeding | Hearing Date: January 12, 2017<br>Hearing Time: 1 p.m. |
| | **Oral Argument Requested** |

**OBJECTION OF THE NORTHWEST SEAPORT ALLIANCE TO MOTION
OF FOREIGN REPRESENTATIVE, PURSUANT TO SECTIONS 105(a), 363, 365,
1501, 1514, 1520 AND 1521 OF THE BANKRUPTCY CODE, AND BANKRUPTCY
RULES 2002, 6004, 6006 AND 9014, FOR ENTRY OF AN ORDER
(I) RECOGNIZING AND ENFORCING THE KOREAN SALE ORDER, (II)
APPROVING THE SALE OF THE DEBTOR'S INTERESTS IN TTI AND HTEC,
(III) ENTRUSTING DISTRIBUTION OF THE SALE PROCEEDS TO THE
<u>FOREIGN REPRESENTATIVE AND (IV) GRANTING RELATED RELIEF</u>**

---

[1]  The last four digits of Hanjin Shipping Co., Ltd.'s Business Registration Number are 1835. The Debtor's main corporate and mailing address is Hanjin Shipping Bldg., 25 Gukjegeumyung-Ro 2-Gil, Yeongdeungpo-Gu, Seoul 07327, Korea.

The Northwest Seaport Alliance ("NWSA"), as the agent acting on behalf of the Port of Seattle (the "Port"), a lessor of real property to the Debtor and TTI under a written lease (the "Lease"), by and through its attorneys, K&L Gates, LLP, hereby submits the following Objection to the Motion of Tai-Soo Suk, the foreign representative for Hanjin Shipping Co., Ltd. (the "Foreign Representative") Pursuant to Sections 105(a), 363, 365, 1501, 1514, 1520 and 1521 of the Bankruptcy Code, and Bankruptcy Rules 2002, 6004, 6006 and 9014, for the Entry of an Order (I) Recognizing and Enforcing the Korean Sale Order, (II) Approving the Sale of the Debtor's Interests in TTI and HTEC, (III) Entrusting Distribution of the Sale Proceeds to the Foreign Representative and (IV) Granting Related Relief (the "Motion"),[2] and respectfully states as follows:

**PRELIMINARY STATEMENT**

1. The Motion is deficient and fails to satisfy statutory predicates for the requested relief. The Motion relies on Section 1521(b) of the Bankruptcy Code as the basis for relief, and in doing so ignores controlling law under the Bankruptcy Code and prior decisions in this case. Before availing himself of any relief under Section 1521 of the Bankruptcy Code, the Foreign Representative must make a showing under Section 1522(a) of the Bankruptcy Code that the requested relief sufficiently protects the interests of *all interested entities*, including the NWSA. The Foreign Representative has failed to make such a showing, and the Motion should be denied.

2. The Motion seeks approval of a sale (the "Sale") of the Debtor's interest in Total Terminals International LLC, a Delaware LLC ("TTI"). Under the terms of the Sale, the Debtor seeks to *de facto* assign its controlling interest in the Lease to TIL and HMM (the "Purchasers") through the sale of its 54% interest in TTI, which assignment is prohibited under the terms of the

---

[2] Defined terms used herein but not otherwise defined shall have the meaning ascribed to such terms in the Motion.

Lease absent the NWSA's consent. The NWSA and the Purchasers have been engaged in negotiations regarding adequate assurance of TTI's future performance under the Lease and plans for the Premises (as defined in the Lease), as would be required under Section 365 of the Bankruptcy Code, in the form of financial information to fully vet the proposed assignees and security to protect the NWSA's interest in the Lease. While the NWSA is willing to consent to the proposed assignment of the Debtor's interest in the Lease if it receives the requested information and security, TIL has refused the NWSA's reasonable requests, and thus the NWSA does not consent to the Sale. In order to protect its interest in the Lease, the NWSA submits this objection respectfully requesting that the Court deny the Motion or, in the alternative, amend the proposed order to sufficiently protect the NWSA's interest by requiring as conditions to the consummation of the Sale (i) the NWSA's consent and (ii) that the Purchasers provide the NWSA with security to protect the NWSA's interest in the Lease in a form and amount acceptable to the NWSA.

**BACKGROUND**

3. The Port of Seattle and the Port of Tacoma created the NWSA in August 2015. The background below references the Port as the landlord prior to August 2015. The NWSA, which both ports designated as the agent to act on behalf of the two ports' marine cargo facilities, is referred as the landlord after August 2015.

4. The Port and the Debtor entered into that certain Terminal 46 Lease and Agreement, dated as of March 26, 1991 (as amended, restated, supplemented or otherwise modified from time to time, the "Lease"), whereby the Debtor leased the approximately [40] acres of land referred to as Terminal 46 the Port of Seattle. Section 20 of the Lease provides, in pertinent part:

> Lessee shall not assign or transfer this Lease and Agreement or any interest therein…nor shall this lease or any interest thereunder be assignable or transferrable by operation of law or by any process or proceeding of any court, or otherwise without the written consent of the Port first had an obtained.[3]

5. In December 2003, as a concession to permit the Debtor to monetize a portion of its interest in the Lease to TIL, the Port consented to the Debtor's transfer of its direct interest in the Lease to a newly formed joint venture, TTI, which was documented in that certain Assignment and Assumption of Lease and Consent of Port of Seattle (the "Consent"). In the Consent, TTI acknowledged that it "assume[d] and agree[d] to perform all the terms, conditions, covenants and agreements of the Lease…as if [TTI] had originally executed the Lease",[4] and that "[n]o further assignment or sublease of the Lease shall be made without the Port's written consent, and the Port specifically reserves all of its rights under the Lease except as expressly set forth herein."[5] Hanjin, as assignor of the Lease to TTI agreed to remain fully liable for the performance and observance of the covenants and conditions in the Lease notwithstanding the assignment.[6]

6. The Lease contains a requirement that the Lessee file with the NWSA good and sufficient security to secure the full performance of the Lease.[7] The form and nature of the security are subject to the approval of the NWSA. Until the filing of Hanjin's rehabilitation proceeding, the Port had accepted Hanjin's unconditional guaranty of the Lease obligations as security for the Lease, but the NWSA has made demand upon TTI to post a bond as security given the obvious inadequacy of the Hanjin guaranty. Any successor in interest to the Lease

---

[3] Lease § 20.
[4] Consent § 2.
[5] Consent § 5.
[6] Consent § 3.
[7] Lease 13th Amendment at § 7.

must fulfill the requirement for posting adequate security in order to adequately protect the NWSA's interest in the Lease.

## OBJECTION

7.  The Foreign Representative seeks the relief requested in the Motion on the basis of, among other things, Section 1521 of the Bankruptcy Code.[8] Relying on Section 1521 of the Bankruptcy Code, the Foreign Representative argues in the Motion that the interests of the Debtor and all creditors are protected if the Sale Proceeds are entrusted to the Foreign Representative for distribution in accordance with the DBRA.[9] But the Foreign Representative's showing is inadequate to meet his burden of proof for the relief requested in the Motion.

8.  The Motion mentions only in passing Section 1522(a) of the Bankruptcy Code, which provides that the Court may grant relief under Section 1521 "*only* if the interests of the creditors *and other interested entities*, including the debtor, are sufficiently protected." 11 U.S.C. § 1522(a) (emphasis added); *see Jaffé v. Samsung Electronics Co. (In re Quimonda)*, 737 F.3d 14 (4th Cir. 2013) (applying Section 1522(a) in the context of relief under Section 1521 of the Bankruptcy Code); *accord In re Hanjin Shipping Co.*, 2016 Bankr. LEXIS 3986, *18 (Bankr. D. N.J. 2016) (holding that Section 1522(a) applies in the context of relief under Section 1519, the Bankruptcy Code section specifically referenced in Section 1522(a) along with Section 1521). The Foreign Representative (as acknowledged in the Motion)[10] has the burden of proving that such interests are protected, yet the Foreign Representative provides no analysis as to the effects on other "interested entities" affected by the Sale - only the effect that distribution of Sale Proceeds under the DBRA would have on creditors. But there are other consequences to the Sale, and other interested entities that will be affected by the proposed sale such as the NWSA,

---

[8]  Motion at ¶¶ "Jurisdiction and Venue", 15, 31.
[9]  Motion at ¶¶ 31-37.
[10] Motion at ¶ 30 (citing *In re Lee*, 472 B.R. 156, 182 (Bankr. D. Mass. 2012)).

who as a lessor of real property is effectively having its Lease assigned to a new and unvetted counterparty.

9.  Likewise, the Motion makes no showing that the requested relief (in particular the Foreign Representative's requests for a sale free and clear of liens, claims and encumbrances under Section 363(f) of the Bankruptcy Code and for good faith purchaser protections under Section 363(m) of the Bankruptcy Code) falls within the scope of similar relief under the DBRA and rulings by the Korean Court.[11] To the extent that the DBRA and the rulings by the Korean Court do not provide for free and clear sales of assets or make good faith purchaser rulings, granting those protections in the United States with respect to United States assets and United States creditors would unfairly disadvantage those creditors as compared to their Korean and other foreign counterparts not subject to the Court's jurisdiction. At a minimum, the Foreign Representative must make a showing that all of the requested relief, including the protections of Section 363(f) and 363(m) of the Bankruptcy Code, are within the ambit of the proceedings before the Korean Court and otherwise not prejudicial to the interests of United States creditors.

10. The Foreign Representative fails to acknowledge these effects and make these required showings, and thus fails to satisfy the statutory predicate for relief under Section 1522(a).

11. Beyond the Foreign Representative's failure to make the required showings under Section 1522(a) of the Bankruptcy Code, for the reasons set forth below, the form of order proposed by the Foreign Representative does not sufficiently protect the NWSA's interests as lessor under the Lease.

---

[11] The translated version of the Korean Court's order approving the sale filed with the Motion does not contain sale free and clear or good faith purchaser provisions.

### A. The NWSA is an Interested Entity

12. The NWSA has a vested interest in the identity of the ownership of TTI, the nominal lessee under the Lease, and is an interested entity within the meaning of Section 1522(a). The term "interested entity" should be construed broadly, and includes any parties potentially affected by the requested relief. *See In re Zheijang Topoint Photovoltaic Co.*, 2015 Bankr. LEXIS 1636, *8-17 (Bankr. D. N.J. 2015) (holding that a non-creditor one level removed from privity with the Debtor was an interested entity for purposes of Section 1522) (quoting *In re Cozumel Caribe, S.A. de C.V.*, 482 B.R. 96, 108 (Bankr. S.D.N.Y. 2012); *see also* UNCITRAL MODEL LAW ON CROSS-BORDER INSOLVENCY WITH GUIDE TO ENACTMENT AND INTERPRETATION 90 at ¶ 196 (https://www.uncitral.org/pdf/english/texts/insolven/1997-Model-Law-Insol-2013-Guide-Enactment-e.pdf) ("there should be a balance between relief that may be granted to the foreign representative and the interests of *the persons that may be affected by such relief*" in applying Article 22 of UNCITRAL's Model Law on Cross-Border Insolvency, which is the basis for Section 1522 of the Bankruptcy Code (*see* 11 U.S.C. § 1501(a)) (emphasis added). Consummation of the Sale would have a profound effect on the NWSA's interests in the Lease by effectively substituting a new lessee into the Lease, and the NWSA would face an entirely new credit profile based on the new controlling and minority holders.[12] As such, the NWSA is an interested party entitled to sufficient protection of its interests under Section 1522(a).

### B. The NWSA's Interests are Not Sufficiently Protected

13. As noted above, Section 1522(a) requires that the interests of creditors and other parties in interest, including the debtor, are sufficiently protected before a court can grant relief

---

[12] The Motion suggests that TIL is acquiring some portion of the ownership of TTI as an agent for HMM. The Motion does not detail the proposed ownership split between TIL and HMM, but given TIL's current 44% ownership interest in TTI, the NWSA assumes that TIL would be the controlling holder and HMM would be a minority holder.

under Section 1521 of the Bankruptcy Code. 11 U.S.C. § 1522(a). In determining whether such interests are sufficiently protected, courts generally apply a balancing test in order to provide tailored relief without unduly favoring one group over another. *See Hanjin*, 2016 Bankr. LEXIS 3986 at *23 ("The language of §1522(a) makes clear that courts must weigh the interests of all parties…in providing discretionary relief."). Moreover, there is an expectation that each entity must receive some protection. *Quimonda*, 737 F.3d at 28 ("The provision thus requires that the relief a foreign representative requests under § 1521 does not impinge excessively on any one entity's interests, implying that each entity must receive at least some protection."). Section 1522(b) of the Bankruptcy Code permits the Court to subject the requested relief to conditions it considers appropriate, including the giving of security. 11 U.S.C. § 1522(b).

14. Through the Sale, the Debtor proposes to effectively assign the Lease by selling its controlling interest in TTI to two new parties without providing information to vet these parties nor providing security to support the tenant's obligations under the Lease.

15. The Lease is important to the operation of the NWSA. Given the current distress in the global shipping market, it is vitally important that the NWSA, for the benefit of its constituents, is able to fully vet potential lease counterparties and protect itself from the very real risks attendant with long term leases for significant acreage with shipping businesses. While the Purchasers have allegedly demonstrated wherewithal to deliver the purchase price for the Purchased Assets, no information has been provided to the NWSA regarding the Purchasers' intentions with respect to the Lease or the Premises, nor their continued capability and intention to fund TTI's operations at the Premises; all information that would be typically provided to a landlord in a case under the Bankruptcy Code.

16.     The NWSA was not made aware of the application to approve the Sale nor that agreement had been reached on the terms of the Sale until the filing of the Motion in this Court. The NWSA received no notice of the application of the Foreign Representative to the Korean Court for approval of the Sale.

17.     The NWSA is not seeking to derail a potentially beneficial transaction for the parties to this rehabilitation proceeding, it is merely seeking to protect its property interests in a commercially reasonable manner.  As a condition to the approval of the Sale, the parties to the proposed Sale should be required to sufficiently protect the NWSA's interest in the Lease by providing disclosures of financial information and security as required by the terms of the Lease.

## RESERVATION OF RIGHTS

18.     The NWSA hereby reserves the right to amend, revise, update and/or supplement this Objection at any time and in any manner.  Neither the filing of this Objection nor anything contained herein shall be deemed a waiver of any of the NWSA's rights and remedies under the Lease, any of the documents executed in connection therewith, in connection with the Debtor's cases under the Bankruptcy Code or the DBRA, at law or in equity and the NWSA expressly reserves all its rights and claims against Hanjin as a Debtor in this case and the Korean Proceeding.

WHEREFORE, the NWSA respectfully requests that the Court (i) deny the Motion, or, in the alternative, (ii) amend the proposed order to require as conditions to consummation of the Sale (a) the NWSA's consent and (b) that the Purchaser provide the NWSA with security to protect its interest in the Lease.

Dated: Newark, New Jersey
January 6, 2017

    K&L GATES LLP

    By: /s/ JOHN M. MARMORA
        John M. Marmora
        One Newark Center, Tenth Floor
        Newark, New Jersey 07102
        Phone: (973) 848-4000
        Fax: (973) 848-4001
        Email: john.marmora@klgates.com

        Michael J. Gearin
        925 Fourth Avenue, Suite 2900
        Seattle, Washington 98104
        Phone: (206) 623-7580
        Fax: (206) 623-7022
        Email: michael.gearin@klgates.com
        Admitted in Washington

        *Attorneys for the Northwest Seaport Alliance*