<table>
<tr><td>

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

(Caption in Compliance with D.N.J. LBR 9004-1(b)

**MONTGOMERY MCCRACKEN WALKER &**
**RHOADS, LLP**

(A Limited Liability Partnership Formed in
Pennsylvania)
Liberty View, Suite 600
457 Haddonfield Road
Cherry Hill, NJ 08002
Davis Lee Wright (NJ # 016762003)
dwright@mmwr.com
Tel:  (856) 488-7700
Fax:  (215) 731-3715

*Attorneys for Jin Han Kim, the Liquidating Trustee of*
*Hanjin Shipping and the Foreign Representative of*
*Hanjin Shipping Co. Ltd.*

</td></tr>
</table>

| | |
|---|---|
| In re:<br><br>HANJIN SHIPPING CO., LTD.,[1]<br><br>    Debtor in a Foreign Proceeding. | **HEARING DATE AND TIME:**<br>**March 13, 2018 at 10:00 a.m.**<br><br>Chapter 15<br><br>Case No. 16-27041 (JKS)<br><br>**ORAL ARGUMENT REQUESTED** |

**MOTION OF FOREIGN REPRESENTATIVE, PURSUANT TO**
**SECTIONS 105(a), 363, 365, 1501, 1514, 1520 AND 1521 OF THE BANKRUPTCY CODE,**
**AND BANKRUPTCY RULES 2002, 6004, 6006 AND 9014, FOR ENTRY OF**
**AN ORDER (I) RECOGNIZING AND ENFORCING THE KOREAN SALE ORDER, (II)**
**APPROVING THE SALE OF THE DEBTOR'S REAL PROPERTY IN ALPHARETTA,**
**GEORGIA, (III) ENTRUSTING DISTRIBUTION OF THE SALE PROCEEDS TO THE**
**FOREIGN REPRESENTATIVE AND (IV) GRANTING RELATED RELIEF**

TO THE HONORABLE JOHN K. SHERWOOD:

    Jin Han Kim, the Liquidating Trustee of Hanjin Shipping and the Foreign Representative

of Hanjin Shipping Co. Ltd., the duly appointed foreign representative (the "Foreign

---

[1] The last four digits of Hanjin Shipping Co., Ltd.'s Business Registration Number are 1835.  The Debtor's main corporate and mailing address is Hanjin Shipping Bldg., 25 Gukjegeumyung-Ro 2-Gil, Yeongdeungpo-Gu, Seoul 07327, Korea.

Representative") of Hanjin Shipping Co., Ltd. ("Hanjin" or the "Debtor") in connection with the pending proceeding (the "Korean Proceeding") filed by Hanjin under the Debtor Rehabilitation and Bankruptcy Act in the Bankruptcy Division of the Seoul Central District Court[2] (the "Korean Court") in Seoul, Republic of Korea, hereby moves (the "Motion") this Court for the entry of an order, substantially in the form annexed hereto as Exhibit A (the "Proposed Order"), pursuant to sections 105(a), 363(b), (f), (m), and (n), 365, 1501, 1514, 1520 and 1521 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 6004, 6006 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 6004-1 of the Local Rules of the United States Bankruptcy Court for the District of New Jersey (the "Local Rules"): (i) recognizing and enforcing in the United States the order of the Korean Court (the "Korean Sale Order"), a copy of which is annexed hereto as Exhibit B, pursuant to which the Korean Court authorized the sale (the "Sale") of the Debtor's rights, title, and interest in and to certain of the Debtor's Real Property, Personal Property, Security Deposits, and Intangible Property described more specifically in the PSA (collectively, the "Purchased Assets"), to LG Electronics U.S.A., Inc. ("LG USA" or the "Purchaser") pursuant to that certain Purchase and Sale Agreement (the "PSA"), dated December 21, 2017, a copy of which is annexed hereto as Exhibit C; (ii) approving, pursuant to section 363 of the Bankruptcy Code, the Sale of the Debtor's right, title, and interest in and to Purchased Assets to Purchaser, free and clear of all liens, claims, encumbrances and other interests, except for Permitted Exceptions; (iii) entrusting distribution of the proceeds of the Sale (the "Sale Proceeds") to the Foreign Representative to be disbursed in accordance with the Closing Statement approved by the Foreign Representative and the

---

[2] Effective March 1, 2017, the Seoul Bankruptcy Court was established and replaced the Bankruptcy Division of the Seoul Central District Court. For the purposes of this Motion, both the Seoul Bankruptcy Court and its predecessor, the Bankruptcy Division of the Seoul Central District Court, will be referred to as the "Korean Court".

Purchaser; and (iv) granting related relief. The Foreign Representative will file and serve a declaration (the "Foreign Representative Declaration"), by no later than February 28, 2018, in support of the Motion. In further support of this Motion, the Foreign Representative respectfully states as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(N) and (P). Venue for this proceeding is proper in this Court and in this District pursuant to 28 U.S.C. § 1410. The statutory predicates for the relief requested herein are sections 105(a), 363, 365, 1501, 1514, 1520 and 1521 of the Bankruptcy Code.

## BACKGROUND

2. Hanjin filed an application for commencement of the Korean Proceeding under the DRBA on August 31, 2016. On the same day, the Korean Court entered a provisional order granting a general injunction and preservation of the disposition of the Debtor's assets. On September 1, 2016 the Korean Court entered an order commencing the Korean Proceeding and appointed Tai-Soo Suk as the initial foreign representative and to act as the Debtor's custodian in the Korean Proceeding.

3. On September 2, 2016, the Debtor commenced this chapter 15 case by filing the (i) *Chapter 15 Petition for Recognition of Foreign Proceeding* [Dkt. No. 1] and (ii) *Motion of Foreign Representative for Entry of Provisional and Final Orders Granting Recognition of Foreign Main Proceeding and Certain Related Relief Pursuant to Sections 362, 365, 1517, 1519, 1520, 1521, and 105(a) of the Bankruptcy Code* [Dkt. No. 5]. On December 14, 2016, this Court entered its *Final Order Granting Recognition of Foreign Main Proceeding and Certain Related Relief Pursuant to Sections 362, 365(e), 1517, 1520, 1521, and 105(a) of the Bankruptcy Code*

-3-

(the "Recognition Order") [Dkt. No. 486]. The Recognition Order, among other things, recognized the Korean Proceeding as a foreign main proceeding pursuant to section 1517 of the Bankruptcy Code and entrusted the administration and realization of the Debtor's assets located within the territorial jurisdiction of the United States to the Foreign Representative. Recognition Order at ¶¶ 2, 8.

4. On February 17, 2017, the Korean Court declared Hanjin bankrupt and appointed Jin-Han Kim as the bankruptcy trustee to oversee the administration and liquidation of the Hanjin estate. Mr. Kim succeeded Mr. Suk as the Foreign Representative.

**A.  Hanjin's Interests in the Purchased Assets**

5. Hanjin owns 100% of the interests in the purchased assets described in the PSA, including the Real Estate described in Exhibit A to the PSA, and all Debtor's Personal Property, Security Deposits, and Intangible Property related thereto and as described more specifically in the PSA.

**B.  The Sale Process in the Korean Proceeding**

6. Pursuant to the authority provided by the Korean Court in its Liquidation Order, the Foreign Representative has been engaged in liquidating Hanjin's globally located assets, including the Purchased Assets. In connection with a sale of the Purchased Assets, the Foreign Representative obtained approval from the Korean Court to retain Montgomery McCracken Walker & Rhoads LLP ("Montgomery McCracken") to assist with any proposed sale, including filing the necessary pleadings seeking approval for the Sale.

7. Beginning on June 7, 2017, the Foreign Representative directed Montgomery McCracken to issue invitations to approximately nineteen (19) different individuals and entities requesting bids for the Purchased Assets. The invitations were directed to a variety of entities, including, but not limited to, reputable brokerage companies, buyer's agents, corporations,

individuals, and other entities that had previously contacted Montgomery McCracken, the Foreign Representative, and former employees of, or other professionals previously retained by, Hanjin.  The invitations to bid included relevant financial information regarding the Purchased Assets and identified the bid requirements.  Specifically, potential bidders were informed that a good faith deposit totaling 5% of the bid price would be required if the Foreign Representative accepted the propose bid.

8.      In response to the invitations to bid, the Foreign Representative received five (5) by the bid deadline.  LG USA provided the high bid of $7.3 million[3] and, upon acceptance by the Foreign Representative, provided the required good-faith deposit.  Thereafter, the Korean Court granted the Foreign Representative the authority to select LG USA's bid and to continue negotiating a definitive agreement with LG USA for the Purchased Assets.

9.      In connection with its due diligence, LG USA retained certain third-party consultants to evaluate the Purchased Assets.  These consultants determined that several issues existed with respect to the Purchased Assets, including necessary repairs to the roof, asphalt, and HVAC plant.  Following receipt of an itemized list of the necessary repairs, the Foreign Representative and LG USA reopened negotiations over how the repairs would impact LG USA's high bid amount.  The Foreign Representative and LG USA agreed to a final sale price of $7.0 million.

10.      On December 21, 2017, a final form of the PSA was agreed upon between the Foreign Representative and LG USA.  The PSA was then submitted to the Korean Bankruptcy

---

[3] The Korean Sale Order, attached hereto as Exhibit B, provides additional details on each of the five bids received by the Foreign Representative.

Court.  On January 10, 2018, the Korean Court entered the Korean Sale Order.[4]  The Korean

Sale Order authorizing the sale of the Purchased Assets is expressly conditioned on the Sale

Proceeds being deposited in escrow and then, with this Court's cooperation, transmitted to the

Korean Proceeding.[5]

11.     The Foreign Representative sought Korean Court approval, and now seeks

Bankruptcy Court approval, of the Sale because the Sale represents the best opportunity for the

Debtor to maximize the value of the Purchased Assets.  Accordingly, it is imperative to the Sale

being able to close that the Korean Sale Order be recognized and enforced in the United States in

all aspects, as the Foreign Representative requests herein.

## SUMMARY OF THE PSA AND LOCAL RULE 6004-1 REQUIREMENTS

12.     Pursuant to Local Rule 6004-1(a)(1)-(2), and as noted herein, the PSA is attached

hereto as Exhibit B and the Proposed Order is attached hereto as Exhibit A.  Further, the Foreign

Representative does not believe that the appointment of a consumer privacy ombudsman is

necessary in this instance because the Sale does not implicate consumer privacy issues.  *See*

Local Rule 6004-1(a)(4).  In accordance with Local Rule 6004-1(a)(3), the material terms of the

Sale are as follows:[6]

- Description of the Property to be Sold.  The Purchased Assets include without
  limitation (i) the certain Real Property located in Alpharetta, Georgia,
  including any and all easements benefiting the Real Property and any rights
  and appurtenances pertaining to the Land, (ii) the rights in and to Debtor's

---

[4] *See* Exhibit B.

[5] Korean Sale Order §III(1) ("The cash, converted through the transaction, shall be deposited to the account of the
Bankruptcy Foundation only after the US Bankruptcy Court permits the disposal and approves of the payment
remittance pursuant to Chapter 15 of the US Bankruptcy Act.").

[6] These summaries are provided for informational purposes only, and to the extent there is a discrepancy between
any summary and the terms of the PSA, the PSA shall control.  Capitalized terms used but not otherwise defined
herein shall have the meanings assigned to them in the PSA.

Leases and any unapplied Security Deposits, (iii) all Personal Property, and (iv) all Intangible Property.

- Purchase price. $7,000,000.00. This includes the $1,050,000.00 currently being held in an escrow account, as conditioned by the PSA.

- Conditions to the Sale. Conditions to closing include, among other things:

    (1) An order approving the Sale from the Korean Court and this Court.

    (2) Specific approval by the Bankruptcy Court of the Closing Agent's establishment of an escrow for the purpose of withholding such portion of the Purchase Price from the Debtor to satisfy the withholding requirements found in section 1445 of the Internal Revenue Code, 26 U.S.C. §1 *et seq.* (the "Withheld Funds"). Pursuant to section 3.3.2 of the PSA, the Closing Agent will pay the Withheld Funds over to the Debtor if the Closing Agent receives either (i) the FIRTPA (as defined in the PSA), or (ii) a withholding certificate from the Internal Revenue Service. The Bankruptcy Court is being asked to direct the Closing Agent to maintain the Withheld Funds in escrow and refrain from making any tax payment related to the Withheld Funds to the Internal Revenue Service for a period of six (6) months (the "Escrow Period"). Upon conclusion of the Escrow Period, the Closing Agent may make any tax payment related to the Withheld Funds to the Internal Revenue Service or may extend the Escrow Period to allow additional time for the Debtor to provide the documentation required by the PSA. The Escrow Agent shall not incur any liability related to the Withheld Funds, and any written statement or warning by an authority of competent jurisdiction that the Escrow Agent will incur such liability shall constitute justifiable cause for the Escrow Agent to release the Withheld Funds to the appropriate authority at any time without penalty under this Order or the PSA.

    (3) Specific approval from the Bankruptcy Court that the Purchased Assets are sold free and clear of the following:

        - that certain Execution, *The State of Georgia and Fulton County vs. Hanjin Shipping America LLC*, dated April 10, 2017, entered of record April 18, 2017 at 9:00 a.m., recorded in Lien Book 3905, Page 632, Records of Fulton County, Georgia, in the amount of $19.76, plus penalty and interest, if any (2016 Personal Property Taxes under Account No. P20100000252);

        - that certain Execution, *Georgia Department of Labor vs. Hanjin Shipping America LLC*, dated August 22, 2017, entered of record September 13, 2017 at 11:00 a.m., recorded in Lien Book 4003, Page 3, Records of Fulton County, Georgia, in the amount of $123.15, plus penalty and interest, if any;

-7-

- UCC-1 Financing Statement No. 0602016-07424, naming Hanjin Shipping Co., Ltd. as Debtor and Canadian National Railway Company as Secured Party, entered of record on September 6, 2016 at 8:44 am., filed with the Clerk of Superior Court, Fulton County, Georgia;

- Claims by the State of Georgia and Fulton County for personal property taxes for the year 206 in the amount of $20.57, plus penalty and interest, if any, under Account No. P20100000252 (Hanjin Shipping America LLC);

- Claims by the State of Georgia and Fulton County for personal property taxes for the year 2017 in the amount of $1,322.85, plus penalty and interest, if any, under Account No. P20100000252 (Hanjin Shipping America LLC); and by the City of Alpharetta Personal Property taxes for the year 2017 in the amount of $260.70, plus penalty and interest, if any, under Account No. P20100000252 (Hanjin Shipping America LLC).

- Claims by the City of Alpharetta for personal property taxes for the year 2016 in the amount of $.43, plus penalty and interest, if any, under Account No. P00006022348 (One Call Medical, Inc.);

- Claims by the State of Georgia and Fulton County for personal property taxes for the year 2017 in the amount of $241.29, plus penalty and interest, if any, under Account No. P00006022348 (One Call Medical, Inc.); any by the City of Alpharetta for personal property taxes for the year 2017 in the amount of $47.55, plus penalty and interest, if any, under Account No. P00006022348 (One Call Medical, Inc.).

- <u>Deadline for the approval or closing of the sale</u>.  The Sale must close not later than March 30, 2018 (as defined by Section 3.2 the PSA).

- <u>Deposit Requirement and Conditions for Deposit Forfeit</u>.  Purchaser has already provided a deposit of $1,050,000 which has been escrowed pending the issuance of Approval Orders from the Korean Court and this Court.  If the Purchaser defaults under the PSA and fails to cure the default within seven (7) business days of receipt of written notice from Debtor of the default, then the Deposit is forfeit.  The specific conditions for return of the Deposit to the Purchaser are enumerated in Section 2.1.2(c) of the PSA.

- <u>Assumed and Assigned Unexpired Leases and Executory Contracts</u>.  Pursuant to the PSA, the Debtor will assume and assign the "Lease Agreement dated October 7, 2008, by and between Hanjin Shipping Co., Ltd., a Republic of Korea corporation, and Image Properties, L.L.C., a South Carolina limited liability company, as amended and otherwise modified from time to time."

4572658v2

- Broker.  There is no commercial real estate broker that has represented the Debtor, Purchaser or Foreign Representative with regard to the management, sale, purchase, lease, option or other conveyance of any interest in the Purchased Assets under the PSA, and no notice of lien for any such alleged services has been received by the Debtor, Purchaser or Foreign Representative or filed in this Case;

In accordance with Local Rule 6004-1(b), certain special provisions of the PSA are described below:

- Releases.  As set forth herein, the Debtor seeks to sell the Purchased Assets free and clear of liens, claims, encumbrances and other interests except as set forth in the PSA and the Proposed Order.  Proposed Order ¶ 9.

- Release of Sale Proceeds after Closing without further court order.  "Pursuant to section 1521(b) of the Bankruptcy Code, the distribution of the Sale Proceeds is entrusted to the Foreign Representative; provided, however, that the Sale Proceeds are hereby subjected to the jurisdiction and administration of the Korean Court in the pending Korean Proceeding and that this Order shall not have any res judicata or collateral estoppel effect on claims that may be subsequently asserted in Korea."  Proposed Order ¶ 4.

- Relief from Bankruptcy Rules 6004(h) and 6006(d).  Hanjin is seeking relief from the fourteen (14) day stay imposed by Bankruptcy Rules 6004(h) and 6006(d).  Proposed Order ¶ 7.

**RELIEF REQUESTED**

13.     By this Motion, the Foreign Representative seeks the entry of an order, substantially in the form of the Proposed Order, pursuant to sections 105(a), 363(b), (f), (m), and (n), 365, 1501, 1514, 1520 and 1521 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006 and 9014, and Local Rule 6004-1:  (i) recognizing and enforcing in the United States the Korean Sale Order, pursuant to which the Korean Court authorized the Sale of the Debtor's rights, title, and interest in and to the Purchased Assets, to LG USA pursuant to the PSA; (ii) approving, pursuant to section 363 of the Bankruptcy Code, the Sale of the Debtor's right, title, and interest in and to Purchased Assets to Purchaser, free and clear of all liens, claims, encumbrances and other interests, except for Permitted Exceptions; (iii) entrusting distribution

the Sale Proceeds to the Foreign Representative to be disbursed in accordance with the Closing Statement approved by the Foreign Representative and the Purchaser; and (iv) granting related relief.

## BASES FOR RELIEF REQUESTED

**A.  The Court Should Recognize and Enforce the Korean Sale Order and Approve the Sale Pursuant to Section 363 of the Bankruptcy Code.**

14.     Based on the favorable terms of the PSA, the Foreign Representative believes that the Sale of the Purchased Assets in accordance with the terms and conditions of the PSA represents the best realization of value for the Debtor's creditors and other stakeholders under the circumstances.  Pursuant to Sections 3.2 and 8.1 of the PSA, entry of the Proposed Order, substantially in the form attached hereto, is a condition precedent to consummation of the Sale. This Court's recognition and enforcement of the Korean Sale Order, and approval of the Sale under section 363 of the Bankruptcy Code, will permit the Foreign Representative to sell the Purchased Assets without disruption and in a timely and efficient manner.  Absent the relief requested herein, the Debtor and its creditors will potentially suffer significant, if not irreparable, harm due to an inability to close the Sale.

**1.  Section 363 of the Bankruptcy Code is Applicable upon Recognition Pursuant to Section 1520(a) of the Bankruptcy Code.**

15.     Section 1520(a)(2) of the Bankruptcy Code provides, in relevant part, that "[u]pon recognition of a foreign proceeding that is a foreign main proceeding … section[] 363 appl[ies] to a transfer of an interest of the debtor in property that is within the territorial jurisdiction of the United States to the same extent that the section[] would apply to property of an estate."  11 U.S.C. § 1520(a)(2).  Moreover, section 1520(a)(3) provides that upon recognition of a foreign main proceeding "unless the court orders otherwise, the foreign representative may operate the debtor's business and may exercise the rights and powers of a trustee under and to the extent

-10-

provided by section[] 363." 11 U.S.C. § 1520(a)(3); s*ee also In re Elpida Memory, Inc.*, No. 12-10947 (CSS), 2012 WL 6090194, at *5 (Bankr. D. Del. Nov. 20, 2012) (holding that section 363 of the Bankruptcy Code applies to transfers of assets located within the United States outside of the ordinary course of business in connection with cases commenced under chapter 15 of the Bankruptcy Code); *In re Fairfield Sentry Ltd.*, 768 F.3d 239, 244 (2d Cir. 2014) (same).  Section 363(b) provides, in pertinent part, that "the trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).

      **2.**      **Entry into the PSA is Warranted under Section 363(b) of the Bankruptcy Code.**

16.      Although section 363 of the Bankruptcy Code does not specify a standard for determining when it is appropriate for a court to authorize the use, sale, or lease of property of the estate outside the ordinary course of business, courts in this Circuit and elsewhere have found that a debtor's sale or use of assets outside the ordinary course of business should be approved if the debtor can demonstrate a sound business justification for the proposed transaction.  *See e.g. In re Martin*, 91 F.3d 389, 395 (3d Cir. 1996); *In re Abbotts Dairies of Penn., Inc.*, 788 F.2d 143 (3d Cir. 1986); *In re Grand Prix Assocs.*, No. 09-16545, 2009 WL 1850966 (Bankr. D.N.J. Jun. 26, 2009); *In re Summit Global Logistics, Inc.*, No. 08-11566, 2008 WL 819934 (Bankr. D.N.J. Mar. 26, 2008).  Once the Foreign Representative, on behalf of the Debtor, articulates a valid business justification, "[t]he business judgment rule is a presumption that in making the business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action was in the best interests of the company."  *In re S.N.A. Nut Co.*, 186 B.R. 98, 102 (Bankr. N.D. Ill. 1995) (internal quotations omitted); *In re Johns- Manville Corp.*, 60

B.R. 612, 615-16 (Bankr. S.D.N.Y. 1986) ("a presumption of reasonableness attaches to a debtor's management decisions").

17.      The "sound business judgment" test requires a proponent of a sale to establish four elements in order to justify the sale or lease of property outside the ordinary course of business. These factors are (a) that a "sound business purpose" justifies the sale of assets outside the ordinary course of business, (b) that adequate and reasonable notice has been provided to interested persons, (c) that the trustee or debtor in possession has obtained a fair and reasonable price, and (d) that the purchaser has acted in good faith. *In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143 (3d Cir. 1986); *In re Exaeris Inc.*, 380 B.R. 741, 744 (Bankr. D. Del. 2008); *Titusville Country Club v. Pennbank (In re Titusville Country Club)*, 128 B.R. 396, 399 (Bankr. W.D. Pa. 1991); *In re Sovereign Estates, Ltd.*, 104 B.R. 702, 704 (Bankr. E.D. Pa. 1989).[7]

18.      The Foreign Representative submits that ample business justification exists to sell the Purchased Assets to the Purchasers under the terms of the PSA. The Sale satisfies all four conditions set forth in *Abbotts Dairies*. First, sound business purposes justify the Sale. The Foreign Representative believes that the Sale presents the best opportunity for the Debtor to maximize the value of the Purchased Assets. Second, the Foreign Representative believes that the PSA establishes a fair and reasonable price for the Purchased Assets and that the purchase price is the best offer received in view of the current value of the Purchased Assets,[8] LG USA's willingness to pay the Deposit, and LG USA's ability to close on the Purchased Assets pursuant

---

[7] Additionally, section 105(a) of the Bankruptcy Code provides a bankruptcy court with broad powers in the administration of a case. Section 105(a) states that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a). Provided that a bankruptcy court employs its equitable powers to achieve a result consistent with the Bankruptcy Code, the exercise of its section 105(a) power is proper. *In re Fesco Plastics Corp.*, 996 F.2d 152, 154 (7th Cir. 1993); *Pincus v. Graduate Loan Ctr. (In re Pincus)*, 280 B.R. 303, 312 (Bankr. S.D.N.Y. 2002).

[8] *See* Ex. B at 4, n.1.

to the PSA. Third, fair and reasonable notice has been provided to parties interested in the Sale. Pursuant to the terms of the Korean Sale Process, the Debtor and its advisors solicited offers for a number of potential buyers, ultimately evaluating four bids and selecting LG USA's bid as the highest and best offer for the Purchased Assets. Moreover, all known creditors, stakeholders, and parties in interest are being served with a copy of this Motion in accordance with this Court's prior orders and section 1514 of the Bankruptcy Code. Fourth, as discussed more fully below, the negotiation process undertaken in the Korean Sale Process with respect to the PSA satisfies the good faith requirement. The PSA is the product of good faith and arm's-length negotiations among the parties.

19. Moreover, Courts in this Circuit—including this Court earlier in this case—have granted relief similar to the relief requested in this Motion and approved the sale of assets in ancillary proceedings pursuant to sale processes conducted in foreign proceedings. *See e.g.* Order . . . (I) Recognizing and Enforcing the Korean Sale Order, (II)Approving the Sale of the Debtor's Interests in TTI And HTEC, (III)Entrusting Distribution of the Sale Proceeds to the Foreign Representative and (IV) Granting Related Relief [Docket No. 599], *In re Hanjin Shipping Co. Ltd.* (Bankr. D.N.J. Jan. 23, 2017); *see also In re Elpida Memory, Inc.*, Case No. 12-10947 (CSS) (Bankr. D. Del. Jan. 16, 2013) (approving sale of debtor's U.S. assets under section 363 pursuant to sale process in Japan); *In re Xchange Technology Group LLC,* Case No. 13-12809 (KG) (Bankr. D. Del. November 25, 2013) (recognizing and enforcing sale order entered by Canadian court and separately authorizing and approving sale free and clear of any and all liens, claims, encumbrances and other interests under section 363*); Arctic Glacier International Inc.*, Case No. 12-10605 (KG) (Bankr. D. Del. July 17, 2012) (same); *In re EarthRenew IP Holdings LLC*, Case No. 10-13363 (CSS) (Bankr. D. Del. February 18, 2011)

-13-

(same); *In re Grant Forest Products,* Case No. 10-11132 (PJW) (Bankr. D. Del. April 26, 2010) (same); *In re Destinator Technologies Inc.*, Case No. 08-11003 (CSS) (Bankr. D. Del. July 8, 2008) (same).

20.     This Court's recognition and enforcement of the Korean Sale Order and approval of the PSA under section 363 is not only warranted but is critical to achieving the anticipated results of the Sale, as it will permit the Foreign Representative to sell the Purchased Assets without disruption and provide further certainty to the Sale and to the Purchaser.  Pursuant to Sections 3.2 and 8.1 of the PSA, entry of the Proposed Order, substantially in the form attached hereto as Exhibit A, is a condition precedent to closing the Sale.  Absent the relief requested herein, the Debtor will likely suffer substantial, if not irreparable, harm from the inability to sell the Purchased Assets without interference and in a manner that will allow the Debtor to maximize recoveries for all creditors and other stakeholders.

21.     For all of the foregoing reasons, the Foreign Representative respectfully submits that there is more than ample justification for this Court to enter the Proposed Order, thereby recognizing and enforcing the Korean Sale Order in the United States and authorizing the Sale pursuant to section 363 of the Bankruptcy Code.

**3.      The Court Should Approve the Sale Free and Clear of Liens, Claims, Encumbrances and Other Interests pursuant to Section 363(f) of the Bankruptcy Code.**

22.     The Foreign Representative also respectfully requests that this Court authorize the Sale free and clear of liens, claims, encumbrances, and other interests except as set forth in the PSA.  For the avoidance of doubt, the PSA provides for the transfer of the Purchased Assets (subject to "Permitted Exceptions" as defined in the PSA) free and clear of all other liens, claims, and encumbrances, which specifically include the following:

-14-

(a)     that certain Execution, *The State of Georgia and Fulton County vs. Hanjin Shipping America LLC*, dated April 10, 2017, entered of record April 18, 2017 at 9:00 a.m., recorded in Lien Book 3905, Page 632, Records of Fulton County, Georgia, in the amount of $19.76, plus penalty and interest, if any (2016 Personal Property Taxes under Account No. P20100000252);

(b)     that certain Execution, *Georgia Department of Labor vs. Hanjin Shipping America LLC*, dated August 22, 2017, entered of record September 13, 2017 at 11:00 a.m., recorded in Lien Book 4003, Page 3, Records of Fulton County, Georgia, in the amount of $123.15, plus penalty and interest, if any;

(c)     UCC-1 Financing Statement No. 0602016-07424, naming Hanjin Shipping Co., Ltd. as Debtor and Canadian National Railway Company as Secured Party, entered of record on September 6, 2016 at 8:44 am., filed with the Clerk of Superior Court, Fulton County, Georgia;

(d)     Claims by the State of Georgia and Fulton County for personal property taxes for the year 206 in the amount of $20.57, plus penalty and interest, if any, under Account No. P20100000252 (Hanjin Shipping America LLC);

(e)     Claims by the State of Georgia and Fulton County for personal property taxes for the year 2017 in the amount of $1,322.85, plus penalty and interest, if any, under Account No. P20100000252 (Hanjin Shipping America LLC); and by the City of Alpharetta Personal Property taxes for the year 2017 in the amount of $260.70, plus penalty and interest, if any, under Account No. P20100000252 (Hanjin Shipping America LLC);

(f)     Claims by the City of Alpharetta for personal property taxes for the year 2016 in the amount of $.43, plus penalty and interest, if any, under Account No. P00006022348 (One Call Medical, Inc.); and

(g)     Claims by the State of Georgia and Fulton County for personal property taxes for the year 2017 in the amount of $241.29, plus penalty and interest, if any, under Account No. P00006022348 (One Call Medical, Inc.); any by the City of Alpharetta for personal property taxes for the year 2017 in the amount of $47.55, plus penalty and interest, if any, under Account No. P00006022348 (One Call Medical, Inc.).

23.     Under section 363(f) of the Bankruptcy Code, a trustee or a debtor in possession

may sell all or any part of a debtor's property free and clear of any and all liens, claims,

encumbrances, and other interests in such property if (i) such a sale is permitted under applicable

non-bankruptcy law, (ii) the party asserting such a lien, claim, or interest consents to such sale,

-15-

(iii) the interest is a lien and the purchase price for the property is greater than the aggregate amount of all liens on the property, (iv) the interest is the subject of a bona fide dispute, or (v) the party asserting the lien, claim or interest could be compelled, in a legal or equitable proceeding, to accept a money satisfaction for such interest. 11 U.S.C. § 363(f); *Citicorp Homeowners Serv., Inc. v. Elliot (In re Elliot)*, 94 B.R. 343, 345 (E.D. Pa. 1988) (noting that section 363(f) of the Bankruptcy Code is written in the disjunctive; therefore, a court may approve a sale "free and clear" provided at least one of the subsections is met). In addition, a court may authorize the sale of a debtor's assets free and clear of any liens, claims, encumbrances, and other interests under section 105 of the Bankruptcy Code. *See Volvo White Truck Corp. v. Chambersburg Beverage, Inc. (In re White Motor Credit Corp.)*, 75 B.R. 944, 948 (Bankr. N.D. Ohio 1987) ("Authority to conduct such sales [free and clear of liens] is within the court's equitable powers when necessary to carry out the provisions of Title 11.").

24.    The Foreign Representative respectfully submits that a sale of the Purchased Assets other than one free and clear of all liens, claims, encumbrances, and other interests, except as otherwise provided in the PSA and the Proposed Order, would yield substantially less value for the Debtor and its creditors than the Sale will, and that the Sale free and clear of all liens, claims, encumbrances, and other interests to the extent provided in the PSA and the Proposed Order is in the best interests of the Debtor, its creditors, and other parties in interest. Moreover, the Purchasers would not have entered into the PSA and would not consummate the Sale contemplated thereby, thus affecting the Debtor, its creditors, and other parties in interest, if the Sale of the Purchased Assets to the Purchasers was not free and clear of all liens, claims, encumbrances, and other interests except as otherwise provided in the PSA. With respect to any and all creditors that may assert an interest in the Purchased Assets, the Foreign Representative

submits that at least one of the subsections of 363(f) applies to such creditors and, in most cases, more than one of the subsections of 363(f) is satisfied. Accordingly, the Foreign Representative submits that the sale of the Purchased Assets free and clear of all liens, claims, encumbrances and other interests, except as otherwise provided in the PSA and the Proposed Order, satisfies the statutory prerequisites of section 363(f) of the Bankruptcy Code.

25.     Additionally, the Foreign Representative requests that the UCC-1 Financing Statement (No. 0602016-07424) filed by Canadian National Railway Company as Secured Party, entered of record on September 6, 2016 at 8:44 am., with the Clerk of Superior Court, Fulton County, Georgia (the "Georgia Court Clerk"), naming Hanjin Shipping Co., Ltd. as Debtor, be declared void as it was filed in violation of the Court's *Interim Provisional Order Granting Recognition of Foreign Main Proceeding and Certain Related Relief Pursuant to Sections 362, 365, 1517, 1519, 1520, 1521, and 105(a) of Bankruptcy Code* [Docket No. 22] (entered September 6, 2016) and continues to remain pending with the Georgia Court Clerk in violation of paragraph 5(c) of the *Final Order Granting Recognition of Foreign Main Proceeding and Certain Related Relief Pursuant to Sections 362, 365(e), 1517, 1520, 1521, and 105(a) of the Bankruptcy Code* [Docket No. 486] (entered December 14, 2016).

**4.     The Court Should Afford the Purchasers All Protections under Sections 363(m) and (n) of the Bankruptcy Code as Good Faith Purchasers.**

26.     In addition to the relief requested above, the Foreign Representative requests that the Purchasers receive the protections set forth in sections 363(m) and (n) of the Bankruptcy Code. Specifically, section 363(m) of the Bankruptcy Code provides:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the

-17-

> appeal, unless such authorization and such sale or lease were
> stayed pending appeal.

11 U.S.C. § 363(m). While the Bankruptcy Code does not define "good faith," courts have stated that "the phrase encompasses one who purchases in good faith and for value." *In re Abbots Dairies of Pa.*, 788 F.2d at 147 (internal quotations omitted). Courts have held that in order to demonstrate a lack of good faith, a party would have to show "fraud or collusion between the purchaser and [seller] or an attempt to take grossly unfair advantage [of other potential purchasers.]" *Id.*

27. The PSA was negotiated without fraud or collusion, in good faith, and from an arm's-length bargaining position, and it was not entered into for the purpose of hindering, delaying, or defrauding present or future creditors of the Debtor under the Bankruptcy Code or under the laws of the United States, any state, territory, possession thereof, the District of Columbia, or Korea. To the Foreign Representative's knowledge, no party has engaged in any conduct that would cause or permit the Sale to be set aside under section 363(n) of the Bankruptcy Code. Accordingly, the Foreign Representative seeks a finding that the Purchasers are good faith purchasers under section 363(m) of the Bankruptcy Code and has not violated section 363(n) of the Bankruptcy Code.

**B.     The Court Should Entrust Distribution of the Sale Proceeds to the Foreign Representative**

28. The Korean Sale Order authorizing the sale of the Purchased Assets is expressly conditioned on the Sale Proceeds being deposited in escrow and then, with this Court's cooperation, transmitted to the Korean Proceeding. Consistent with the purposes of chapter 15 set forth in section 1501(a)(1) of the Bankruptcy Code, this Court should lend assistance to the Korean Court to administer claims collectively in the Korean Proceeding pursuant to the DRBA.

4572658v2

1.    **The Relief Requested is Supported by the Bankruptcy Code and Applicable Law**

29.    The Recognition Order entrusts the administration and realization of the Debtor's assets located within the territorial jurisdiction of the United States to the Foreign Representative pursuant to section 1521(a)(5) of the Bankruptcy Code. *See* Recognition Order at ¶ 8. Distribution of funds to a debtor's creditors, however, is governed by section 1521(b) of the Bankruptcy Code. *See* 11 U.S.C. § 1521(b). That section provides that a court may "entrust the distribution of all or part of the debtor's assets located in the United States to the foreign representative or another person, including an examiner, authorized by the court, provided that the court is satisfied that the interests of creditors in the United States are sufficiently protected." 11 U.S.C. § 1521(b).

30.    Although relief under section 1521(b) is discretionary, "[o]nce a case is recognized as a foreign main proceeding, chapter 15 specifically contemplates that the court will exercise its discretion consistent with principles of comity." *In re Atlas Shipping A/S*, 404 B.R. 726, 738 (Bankr. S.D.N.Y. 2009); *see also In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*, 389 B.R. 325, 333 (S.D.N.Y. 2008) (stating same). A foreign representative bears the initial burden of establishing that he or she is entitled to relief under section 1521(b) of the Bankruptcy Code, including that creditors are sufficiently protected. *In re Lee*, 472 B.R. 156, 182 (Bankr. D. Mass. 2012). However, "the ultimate burden of establishing the absence of sufficient protection rests on the objecting parties." *Id.* The Foreign Representative submits that entrusting him with the distribution of the Sale Proceeds is appropriate and that the Korean Proceeding is an appropriate forum for such distribution. *See Atlas*, 404 B.R. at 738 ("Deference to foreign insolvency proceedings will often facilitate the distribution of the debtor's assets in an equitable, orderly, efficient, and systematic manner,

rather than in a haphazard, erratic, or piecemeal fashion") (quoting *In re Artimm, S.r.L.*, 335 B.R. 149, 161 (Bankr. C.D. Cal. 2005)); *see also In re Hwang*, 309 B.R. 842, 846 (Bankr. S.D.N.Y. 2004) ("The record confirms that Korean bankruptcy law … is substantially similar to United States law, does not discriminate against non-Korean creditors, and comports with American notions of fairness and due process. The Korean Proceeding provides many of the same procedural safeguards as would apply in a Chapter 11 case in the United States. The distribution of proceeds … is substantially in accordance with United States law. Therefore, affording comity to the Foreign Proceeding is warranted and appropriate").

### 2. The Interests of All Creditors are Protected

31. By its own terms, section 1521(b) of the Bankruptcy Code limits the relief thereunder to situations where the interests of creditors located in the United States are "sufficiently protected." The Bankruptcy Code does not define the term "sufficiently protected." Courts have found that United States creditors are sufficiently protected where the foreign proceeding assures: (i) the just treatment of all holders of claims against a bankruptcy estate; (ii) the protection of United States creditors against prejudice and inconvenience in the processing of claims in the foreign proceeding; and (iii) proceeds are distributed by the foreign estate in a manner that is substantially in accordance with the order prescribed by United States law. *Artimm*, 335 B.R. at 160 (stating that sufficient protection encompasses "the just treatment of all holders of claims against the bankruptcy estate, the protection of U.S. claimants against prejudice and inconvenience in the processing of claims in the [foreign] proceeding, and the distribution of proceeds of the [foreign] estate substantially in accordance with the order prescribed by U.S. law"); *see also Atlas*, 404 B.R. at 740 (reciting same).

32. Additionally, section 1522(a) of the Bankruptcy Code provides that relief under section 1521 may be granted "if the interests of the creditors and other interested entities,

-20-

including the debtor, are sufficiently protected."  11 U.S.C. § 1522(a).  "Standards that inform

the analysis of § 1522 protective measures in connection with discretionary relief emphasize the

need to tailor relief and conditions so as to balance the relief granted to the foreign representative

and the interests of those affected by such relief, without unduly favoring one group of creditors

over another."  *In re Tri-Cont'l Exch.*, 349 B.R. 627, 637 (Bankr. E.D. Cal. 2006).

33.     Here, as described below, all U.S. creditors are sufficiently protected within the

meaning of Section 1521(b) and guidance provided by the court in *Artimm*.

### i.     All Parties Will Receive Just Treatment

34.     The DRBA, which governs the Korean Proceeding, sets forth a comprehensive

liquidation scheme that is fair and equitable to all creditors.  *See* Docket No. 495 at ¶¶ 4-5.

Specifically, no foreign party will be prejudiced due to the fact that such party is not a Korean

entity.  Indeed, U.S. courts have found that foreign creditors are afforded just and equal

treatment in Korean insolvency proceedings.  *See, e.g.*, *In re Daebo Int'l Shipping Co.*, 543 B.R.

47, 54 (Bankr. S.D.N.Y. 2015) (explaining that creditors were sufficiently protected where "[t]he

United States creditors [could] file claims in the Korean proceeding and [were] entitled to equal

treatment with other unsecured creditors"); *In re Hwang*, 309 B.R. at 846.

### ii.     United States Creditors Will Not Be Prejudiced or Inconvenienced

35.     According to the statutory framework of the DRBA, U.S. creditors are protected

against prejudice or inconvenience in the processing of their claims in the Korean Court.  *See*

Docket No. 495 at ¶¶ 4-5; *see also Daebo*, 543 B.R. at 54 ("Article 2 of the DRBA states

generally that in the application of the DRBA 'foreigners and foreign corporations shall have the

same status as that of people of the Republic of Korea or corporations of the Republic of Korea'"

(citing to the DRBA)).

36.     Furthermore, U.S. creditors have a full and fair opportunity to assert any interest they think they might have in the Sale Proceeds before the Korean Court. The Foreign Representative respectfully submits that U.S. creditors' ability to pursue such rights in Korea provides those creditors with sufficient protection. *See In re Atlas Shipping*, 404 B.R. at 742 (noting that 1521(b) relief was appropriate because the foreign representative had acknowledged on the record that such relief was "without prejudice to creditors' rights, if any, to assert in the Danish bankruptcy court their rights to the [assets]" and noting that the "funds [were] subject to administration by the bankruptcy court in Denmark"); *In re Milovanovic*, 357 B.R. 250, 257 (Bankr. S.D.N.Y. 2006) (ordering funds transmitted abroad over objection of an attaching creditor where creditor was "free to pursue all of its rights and claims in the Serbian court").

### iii.     Distribution of the Sale Proceeds in the Korean Proceeding will be Substantially in Accordance with the Bankruptcy Code's Distribution Scheme

37.     Lastly, under the DRBA, similarly situated creditors are treated equally and in accordance with a distribution scheme substantially similar to that of the Bankruptcy Code. *See* Docket No. 495, ¶¶ 4-6; 11 U.S.C. §§ 507, 1129; *see also Hwang*, 309 B.R. at 846 (stating same with respect to an earlier version of the DRBA). Accordingly, this factor is satisfied by the DRBA and the Korean Proceeding.

## C.     Approval of FIRTPA Escrow

38.     Section 105(a) allows the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code. In connection with approval of the PSA, the Debtor seeks specific approval of an escrow arrangement pursuant to which the Closing Agent will withhold such portion of the Purchase Price from the Debtor to satisfy the withholding requirements found in section 1445 of the Internal Revenue Code, 26 U.S.C. §1 *et seq.* (the "Withheld Funds"). Section 3.3.2 of the PSA would allow the Closing

Agent to pay the Withheld Funds to the Debtor that the Pursuant to of the PSA, the Closing

Agent will pay the Withheld Funds over to the Debtor if the Closing Agent receives either (i) an

appropriate statement executed pursuant to the requirements of 26 U.S.C. § 1445, or (ii) a

withholding certificate from the Internal Revenue Service. Here, the Debtor is requesting that

the Court direct the Closing Agent to refrain from making any tax payment related to the

Withheld Funds to the Internal Revenue Service for a period of six (6) months (the "Escrow

Period") in order to provide the Debtor with a sufficient period of time to provide the necessary

supporting documentation. Allowing for sufficient time to provide the requested documentation

to the Closing Agent will benefit the Debtor because the release of the Withheld Funds will

permit the Debtor to distribute more of the Sale's proceeds to the Debtor's creditors.

### D. Waiver of Bankruptcy Rules 6004(h) and 6006(d)

39. Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or

lease of property … is stayed until the expiration of 14 days after entry of the order, unless the

court orders otherwise." Fed. R. Bankr. P. 6004. Similarly, Bankruptcy Rule 6006(d) provides

that an "order authorizing the trustee to assign an executory contract or unexpired lease under §

365(f) is stayed until the expiration of 14 days after the entry of the order, unless the court orders

otherwise." Fed. R. Bankr. P. 6006. The Foreign Representative requests that the Proposed

Order, once entered, be effective immediately by providing that, to the extent applicable, the

fourteen-day stay under Bankruptcy Rules 6004(h) and 6006(d) is waived. Time is of the

essence with respect to the Proposed Order. The Purchaser has made clear to the Foreign

Representative that closing the Sale on an expedited basis is a key consideration in entering into

the PSA and has requested a closing date of no later than March 30, 2018. In order for Hanjin to

sell the Purchased Assets to the Purchasers in an expedient manner, the fourteen-day stay set

forth in Bankruptcy Rules 6004(h) and 6006(d) should be waived. Such a waiver will benefit

Hanjin, its estate and creditors by assuring it of prompt realization of a significant asset and no party in interest will be prejudiced thereby.

**NOTICE**

40.     Notice of this Motion has been provided to:  (i) all persons or bodies authorized to administer foreign proceedings of the Debtor; (ii) all known creditors of the Debtor and holders of interests; (iii) all parties to litigation pending in the United States in which the Debtor was a party as of the petition date; (iv) the Office of the United States Trustee for the District of New Jersey; (v) the Federal Maritime Commission; (vi) the United States Attorney's Office for the District of New Jersey; (vii) the Internal Revenue Service; (viii) counsel for the Purchasers; (ix) all persons or entities known to have liens, claims, encumbrances or other interests in, to, against or on the Purchased Assets; and (x) all other persons to whom notice is required pursuant to this Court's *Order (I) Approving Form and Manner of Service of Notice Pursuant to Sections 1514, 1515 and 105(a) of the Bankruptcy Code and Bankruptcy Rules 2002 and 9007, (II) Scheduling Recognition Hearing and (III) Granting Other Related Relief* [Docket No. 402] and section 1514 of the Bankruptcy Code.  In light of the nature of the relief requested, the Foreign Representative submits that no other or further notice is required.  The Foreign Representative submits that Local Rule 6004-1(c) is satisfied by the form of notice attached hereto as <u>Exhibit D</u>.

**NO PRIOR REQUEST**

41.     No prior request for the relief sought in this Motion has been made to this or any other court.

**CONCLUSION**

**WHEREFORE**, the Foreign Representative respectfully requests that the Court enter the Proposed Order, substantially in the form attached hereto as <u>Exhibit A</u>, granting (i) the relief requested herein, and (ii) such other and further relief as the Court may deem proper.

Respectfully submitted,

**MONTGOMERY MCCRACKEN WALKER & RHOADS, LLP**


By: _ /s/ Davis Lee Wright_
     Davis Lee Wright

*Attorney for Jin Han Kim, the Liquidating Trustee of Hanjin Shipping and the Foreign Representative of Hanjin Shipping Co. Ltd., Debtor in a Foreign Proceeding*

Dated: February 20, 2018