UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

Montgomery McCracken Walker & Rhoads LLP
David M. Banker, Esq.
Liberty View
457 Haddonfield Road
Suite 600
Cherry Hill, NJ 08002

-and-

437 Madison Avenue
24th Floor
New York, NY 10022
P: 212-867-9500
F: 212-599-5085
Email: dbanker@mmwr.com
***Attorneys for Hanjin Shipping Co., Ltd.***

| | |
|---|---|
| In re:<br><br>HANJIN SHIPPING CO., LTD.,[1]<br><br>Debtor in a Foreign Proceeding | Case No.:    16-27041 (JKS)<br><br>Chapter:    15<br><br>Judge:    Hon. John K. Sherwood<br><br>**Hearing Date and Time:**<br>**July 20, 2021 at 10:00 a.m. ET**<br><br>**Reply Date: July 16, 2021** |

**HANJIN SHIPPING CO., LTD'S (A) OBJECTION TO MOTION OF GEODIS USA, LLC FOR RELIEF FROM PARAGRAPH 5(e) OF THE FINAL RECOGNITION ORDER TO PERMIT DECLARATORY JUDGMENT ACTION AGAINST THE DEBTOR IN FEDERAL DISTRICT COURT AND (B) CROSS-MOTION TO COMPEL GEODIS USA, LLC TO ARBITRATE**

Debtor in a Foreign Proceeding, Hanjin Shipping Co. Ltd. ("Hanjin" or "Debtor"), by its

undersigned counsel, hereby files this objection ("Objection with Cross Motion to Compel

---

[1] The last four digits of Hanjin Shipping Co., Ltd.'s Business Registration Number are 1835. The Debtor's main corporate and mailing address is 659 Gonghang-daero Gangseo-gu, Seoul 07557, Korea.

Arbitration" and/or "Objection") to Geodis USA, LLC's ("Geodis") *Motion for Relief from Paragraph 5(e) of the Final Recognition Order to Permit Declaratory Judgment Action against the Debtor in Federal District Court* (the "Motion") as well as its *Cross-Motion to Compel Geodis to Arbitrate*. In support of its Objection with Cross Motion to Compel Arbitration, Hanjin submits the Certifications of Hyunwook Park and Wook Chung. Hanjin respectfully represents as follows:

## PRELIMINARY STATEMENT

1. Geodis seeks the extraordinary relief of lifting the automatic stay to file a Declaratory Judgment action against the Debtor in the United States District Court for the Southern District of New York for the purposes of having that court decide whether (1) Geodis is bound by the arbitration clause contained in the Service Contract entered into between the Debtor and Geodis' predecessor-in-interest, Barthco International Inc. d/b/a OHL- International ("Barthco"), and (2) Debtor's claim against Geodis, as Bartcho successor in interest, is time-barred by the doctrine of laches. Geodis' requested relief is unsupported and nothing more than an attempt to avoid this Court and avoid addressing the Debtor's claim in the contractually agreed upon arbitral forum.

2. Since the beginning of the Debtor Korean Insolvency Proceeding and this related Chapter 15 proceeding, the Debtor has worked relentlessly and diligently towards collecting the Debtor's outstanding receivables. To date, hundreds of claims for ocean freight and shipping expenses of the same nature as the Debtor's claim against Geodis have been settled by the Debtor for to the benefit of the estate and its creditors **without** any Court intervention. In short, the Debtor continues to make good use of the breathing room afforded by the automatic stay, for the benefit of all creditors, and has avoided expending the valuable time and resources of the court.

3. Should the relief requested by Geodis be granted, the Debtor would not only be forced to divert attention and resources to a litigation in Federal Court to the detriment of all creditors in this particular case but could face a chain of similar requests for relief from other contractual counterparties attempting to avoid their contractual obligations.

4. The Motion should be denied, and Geodis should be compelled to arbitrate the claim with the Debtor as contractually agreed.

## BACKGROUND

5. On August 15, 2015 the Debtor entered into a service contract with Cargo Container Line Limited ("Service Contract"). (See Certification of Wook Chung ("Chung Cert."), ¶6 and Exhibit A). A service contract is a long-term agreement that the Debtor would enter into with a contractual counter party under which the Debtor would offer to its contractual counterparty reduced freight rates for cargo shipped on board of the Debtor's vessels in exchange for an agreed upon minimum quantity of cargo. Service contracts and the rates agreed upon under a service contract are filed with, regulated and overseen by the Federal Maritime Commission. *See* 46 CFR Sec. 530.8

6. Under Term 9 of the subject Service Contract, the parties to the contract included not only Cargo Container Line Limited, but also a number of "Identified Affiliates" who as shippers and consignees were to have the advantage of the reduced ocean freight rates in exchange for being bound by the terms of the Service Contract. (See Chung Cert., ¶¶6, 7 and 8 and Exhibit A). This list of additional Identified Affiliate parties included Bartcho International Inc. d/b/a OHL-International ("Barthco"). (See Chung Cert., ¶8 and Exhibit A).

7. Term 11 of the Service Contract made the contract binding upon the "successors and permitted assigns" of the respective parties. (See Chung Cert., ¶9 and Exhibit A).

8. The Service Contract provided at Term 17.1 for the applicability of the U.S. Shipping Act of 1984, as amended by the Ocean Shipping Reform Act of 1998, and of the laws of the State of New York. (See Chung Cert., ¶10 and Exhibit A).

9. Furthermore, Term 17.3 of the Service Contract provided in relevant parts that disputes between the parties be submitted to arbitration before the Society of Maritime Arbitrators ("SMA"):

> In the event of a dispute under this Contract, the parties to the dispute shall attempt to resolve it amicably by direct good faith negotiations between a senior executive of each such party. **If there is no resolution by such negotiations within thirty (30) days, the dispute shall be resolved by arbitration in New York, New York under the Commercial Rules of the Society of Maritime Arbitrators (SMA).** The arbitration shall be before a single arbitrator appointed by the parties to the dispute or, failing such agreement, upon the application of any such party to the SMA. There shall be no restrictions on the nationality of the arbitrator.

(See Chung Cert., ¶11 and Exhibit A) (**emphasis added**).

10. The Society of Maritime Arbitrators is a unique arbitration forum in the United States which has existed for more than 50 years and provides comprehensive rules for arbitration as well as a rooster of qualified arbitrators with maritime experience. (See www.SMANY.org.)

11. The service contracts that Hanjin entered with its customers all have nearly identical terms and conditions including the SMA arbitration clause. (See Chung Cert., ¶¶14 and 16).

12. On August 31, 2016, the Debtor commenced an insolvency proceeding in Korea under the Debtor Rehabilitation and Bankruptcy Act (the "<u>Insolvency Proceeding</u>").

13. On September 2, 2016, the Debtor commenced this Chapter 15 proceeding.

14. As part of the Korean Insolvency Proceeding, the Debtor reviewed its records and determined that Barthco owed the Debtor outstanding ocean freight, detention and demurrage

(storage) charges in the amount of $485,908.00 originating from worldwide ocean shipping services that the Debtor provided to Bartcho under the Service Contact in the months preceding the Insolvency Proceeding. The agreed amounts of the ocean freights, detention and demurrage charges, as well as the terms of payment, were based on the Service Contract (See Chung Cert., ¶¶12, 13 and Exhibit A). Each of the individual shipments that Bartcho did not pay to the Debtor was also memorialized at the time of service in bills of lading that were issued to the relevant entities. (See Chung Cert., ¶13 and Exhibit B).

***Demands for Payment***

15.     The Debtor attempted several times to collect the outstanding Debt from Bartcho. Each communication was either ignored or met with a request for additional information.

16.     The Debtor sent its first demand letter to Bartcho on March 9, 2018. (See Chung Cert., ¶17 and Exhibit C). A copy of the letter was sent not only by courier but also via email to the attention of Mr. Ryan Dugan at RDugan@ohl.com, the last email address that the Debtor had for Barthco. (See Chung Cert., ¶17 and Exhibit D). The email communication prompted an automatic response that provided a new email address for Mr. Dugan, ryan.dugan@geodis.com, to which Mr. Chung immediately forwarded the same communication. (See Chung Cert., ¶¶18 and 19 and Exhibits E and F).

17.     Mr. Dougan responded to Debtor's counsel communication on March 26, 2018 requesting an excel file showing the amounts outstanding for all the shipments Hanjin was seeking payment, and copies of the related bills of lading receipts. (See Chung Cert., ¶20 and Exhibit G). The information was provided to Barthco two days later on March 28, 2019. (See Chung Cert., ¶21 and Exhibit G). Neither Mr. Dougan, nor anyone else from Barthco, ever responded to the communication. (See Chung Cert., ¶22).

18. On August 8, 2019, Mr. Chung sent a new letter to Barthco seeking collection of the outstanding amount. Mindful of the Barthco failure to respond to the previous communication, Debtor's counsel also formally demanded that the claim be arbitrated according to the Terms of the Service Contract. (See Chung Cert., ¶¶22 and 23 and Exhibit H). Bartcho ignored this communication. (See Chung Cert., ¶24).

19. On February 3, 2021, Mr. Chung sent a third demand for payment to Barthco and renewed the Debtor's formal demand that the claim be arbitrated. (See Chung Cert., ¶25 and Exhibit I). In response, Debtor received a communication from Geodis' Vice President (Ben Bodzy) on February 11, 2021 requesting better copies of the documentation attached to the February 3, 2021 letter of Mr. Chung – which Debtor's counsel promptly provided – in order to investigate the matter. (See Chung Cert., ¶27, and Exhibit J). Geodis' Vice President also acknowledged in his communication that it was possible that Geodis was Barthco successor-in-interest. (See Chung Cert., ¶26 and Exhibit J). Mr. Chung provided all the information requested by Mr. Bodzy that same day. (See Chung Cert., ¶28 and Exhibit J).

20. On April 5, 2021, Geodis further responded to the February 3rd letter through their counsel who stated that since Barthco was a predecessor entity that had been acquired by Geodis, they were not able to locate the documentation related to Hanjin's claim because the records for year 2016 were not readily available to Geodis. In the same letter, Geodis argued that Hanjin's claim was barred by the by the doctrine of laches. Geodis' counsel alleged that the Interstate Commerce Commission Termination Act of 1995, 49 U.S.C.A. § 14705, ("ICCT Act"), was applicable to Hanjin's claim and that Act only provided for an 18-month time-bar in respect to any claim filed by Hanjin against Barthco. Geodis also asserted that it was not bound by the arbitration clause since it was not a party to the Service Contract. (See Chung Cert., ¶¶29-30 and Exhibit K).

21. On June 7, 2021, the Debtor had no other choice but to enforce Term 17.3 of the Service Contract. Hanjin's counsel wrote to the President of the SMA via email – copying Geodis' Counsel – and requested that in accordance with the arbitration provisions of the Service Contract that a single arbitrator be appointed by the SMA. (See Chung Cert., ¶31 and Exhibit L). In acknowledgment of Geodis laches argument, Debtor requested the SMA nominate an arbitrator that had legal experience so that the time bar issue raised by Geodis could be properly considered. (See Chung Cert., ¶18 and Exhibit 10).

22. On June 11, 2021 Geodis filed the Motion.

## ARGUMENT

**A.  Geodis Has Failed to Establish a Cause for the Relief from the Stay**

23. Section 362(d)(1) of the Bankruptcy Code provides that "[o]n request of a party in interest and after notice and a hearing, the court shall grant relief from the stay . . . such as by terminating, annulling, modifying, or conditioning such stay—(1) for cause . . . ." 11 U.S.C. § 362(d)(1). Courts have noted that the automatic stay is "one of the fundamental debtor protections provided by the bankruptcy laws." *See, e.g., Midlantic Nat'l Bank v. New Jersey Dep't of Envtl. Protection*, 474 U.S. 494, 502 (1986).

24. From a relief from stay perspective, 11 U.S.C. § 362(d)(1) permits a bankruptcy court to lift or annul the stay for "cause" shown. As the word "cause" is undefined, it is the Court's discretion as to whether the circumstances warrant the vacatur of the stay. *See In re BG Petroleum, LLC*, 525 B.R. 260, 278 (Bankr. W.D. Pa. 2015)

25. The overall "test" that most courts apply in this situation may best be characterized as a "balancing of the harms," and courts require the demonstration of some "special circumstances" before stay relief will be granted. *In re Chatkin*, 465 B.R. 54, 60 (Bankr. W.D. Pa.

2012). This special circumstance requirement helps insure that stay relief "does not become routine, thereby hindering the policy behind the automatic stay of giving the debtor a respite from the time and expense of responding to litigation." *Id.* at 60. While the decision whether to grant stay relief is discretionary, courts proceed with caution in making such determination. *Id.*

26. In the first instance, the burden is on the moving party to make an initial *prima facie* showing of "cause" sufficient to support relief from stay. If the moving party meets such burden, the burden then shifts to the non-moving party to show a lack of cause to grant stay relief. *Id.*

27. Geodis has failed to make a *prima facie* showing of cause sufficient to justify relief from the automatic stay. All Geodis has asserted is that it believes it is not bound by the arbitration clause in the Service Contract and thus should be given relief from the automatic stay to commence an action against the Debtor, in the United States District Court for the Southern District of New York, to prove its claim. Notably, Geodis provides no on-point case support for its stay relief.

**B.    Geodis' Requested Declaratory Judgment Is Not A Permitted Defensive Action**

28. Geodis attempts to dress up its proposed declaratory judgment as an allowable defensive action in order to circumvent the automatic stay. The case law relied upon by Geodis does not support Geodis position as those cases involved actions in which creditors raised defenses to actions brought by the debtors outside of the bankruptcy proceeding *before* to the automatic stay had been set into place.

29. In particular, Geodis' heavy reliance on *In re Northwood Flavors*, Inc., 202 B.R. 63, 66-67 (Bankr. W.D. Pa 1996) is misplaced. In *Northwood Flavors*, the bankruptcy court addressed a party seeking stay relief so as to defend itself in an action initiated by a debtor *prior* to the debtor filing for bankruptcy. This is the opposite of what Geodis is trying to do here. Here, there is no pre-petition action initiated by the Debtor that Geodis is seeking to defend. The Debtor

here is not using, or attempting to use, the automatic stay to prevent Geodis from asserting any defenses it has. Instead, Geodis is the party seeking to initiate an action, outside of this Court, against the Debtor, in direct violation of the automatic stay.

30. Geodis citation to *In re Rexene Product Co.*, 141 B.R. 574 (Bankr. D. Del. 1992) fairs no better. While the court in *Rexene* correctly noted that the stay could be lifted to " permit an action to proceed…in another tribunal" or where there is "lack of any connection or interference with the pending bankruptcy case," that court was facing a request to lift the stay in permit the continuation of a pre-petition litigation in which discovery had been completed. Once again, this bears absolutely no similarity to the facts at hand as there is no pending action that Geodis seeks to continue. The court in *Rexene* stated clearly:

> The legislative history to section 362(d)(1) emphasizes the section's applicability to proceedings in another tribunal. '[I]t will often be more appropriate to permit **proceedings to continue in their place of origin, when no great prejudice to the bankruptcy estate would result, in order to leave the parties to their chosen forum and to relieve the bankruptcy court from any duties that may be handled elsewhere**.'

*In re Rexene Prod. Co.*, 141 B.R. at 576 (**emphasis added**).

31. Certainly, Geodis has not shown any special circumstances warranting a lift of the stay. On the other hand, should the stay be lifted, the Debtor would be forced to waste resources in litigating the declaratory judgment action that Geodis is seeking to pursue. Furthermore, granting such a motion might also open the door to other similar actions by Debtor's other customers in an effort to frustrate the Debtors' collection efforts and to circumvent their contractual obligation and liabilities, including the economic and commercially prudent practice of arbitration. Geodis' action is to the detriment of the Debtor's estate and all its creditors. This is the kind of litigation that the automatic stay was designed to prevent.

C. **Geodis' Laches Argument Has No Basis**

32.  While not a specific basis for stay relief, Geodis' argument that the Debtors claim is barred by laches under the provisions of the Interstate Commerce Commission Termination Act of 1995, and in particular of 49 U.S.C.A. § 14705 ("<u>ICCT Act</u>") is misleading to say the least.

33.  The ICCT Act applies only to interstate motor and railroad carriage and inland water carriage but not to foreign ocean carriage. *See* 49 U.S.C.A § 13501.  As the unpaid services provided under the subject Service Contract relate to foreign ocean carriage, and not interstate motor and railroad carriage or inland water carriage, the ICCT Act is not applicable.

34.  Furthermore, the Service Contract is specifically subject to the U.S. Shipping Act of 1984, as amended by the Ocean Shipping Reform Act of 1998, 46 CFR Sec. 530.8, and the laws of the State of New York.  (See Chung Cert., ¶10 and Exhibit A–Service Contract Term 17.1). The U.S. Shipping Act of 1984 does not contain a statute of limitation provision which is instead regulated under New York State law.  The Debtor's claim is timely under New York State law (see N.Y. C.P.L.R. 213(2) (6 year statute of limitations)).

**D.   This Court Should Grant the Cross-Motion and Compel Geodis to Arbitrate the Claim.**

35.  In an effort to streamline the proceeding and save resources, the Debtor cross-moves for an order enforcing Term 17.3 of the Service Contract and compelling Geodis to arbitrate.

36.  This Court has jurisdiction to grant the Debtor's petition under the provision of the Federal Arbitration Act, 9 U.S. Code § 4.  *See, e.g., In re Mintze*, 434 F.3d 222, 229 (3d Cir. 2006) (holding bankruptcy court cannot deny enforcement of an arbitration clause "unless the party opposing arbitration can establish congressional intent, under the McMahon standard" that enforcement of the arbitration clause conflicts with an underlying purpose of the Bankruptcy Code); *Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 885 F.2d 1149, 1161 (3d Cir.

1989) (bankruptcy courts should "enforce [arbitration clauses] unless that effect would seriously jeopardize the objectives of the Code").

37. Geodis's allegation that it is not bound by the arbitration clause in the Service Contract has no legal or factual support. The Service Contact Terms unequivocally bind successors-in-interest. (See Chung Cert., ¶9 Exhibit A-Service Contract, Term 11). Geodis has conceded in its own Motion that it absorbed the "predecessor" company Barthco and that "OHL International was a trade name used by Barthco." Motion, ¶5. At the outset of its communications with Hanjin, in its letter of February 11, 2021, Geodis's Vice President admitted that Geodis may be a successor-in-interest to Barthco. (See Chung Cert., ¶26 and Exhibit J). Since then, neither Geodis nor its counsel have provided any evidence in support of a position that Geodis is not a successor to Barthco and is not bound by the terms of the Service Contract. Instead, Geodis hides behind the excuse of the lack of availability of the records of a company that they have acquired. One must assume that Geodis acquired Barthco after some level of due diligence in reviewing the predecessor company's records. Geodis should be able to provide evidence of whether or not as part of the Barthco's acquisition they have assumed Bartcho's contracts. They have not.

38. Furthermore, Geodis has never disputed the validity of the Service Contract as to the original signatories of the contract - the Debtor and Barthco. The Service Contract by its very terms is a maritime contract because it governs the terms and ocean freight charges for carriage of cargo in international trade. As a maritime contract, the arbitration provision in the Service Contract is presumptively valid. *See* 9 U.S Code § 2 ("a written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction ... shall be valid, irrevocable, and

- 11 -

enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract").

39. The filing and service of this petition contemporaneously to the Debtors' opposition to Geodis' Motion 7 days before Geodis proposed Hearing date constitutes appropriate notice under 9 U.S. Code § 4.

## WAIVER OF MEMORANDUM OF LAW

40. In compliance with D.N.J. LBR 9012-1(a)(3) Debtor submits that no novel issues of law requiring additional briefing are presented in this Objection and Cross Motion. Debtor respectfully request that the Court waive any requirement for a separate memorandum un support of this Objection and Cross Motion.

## CONCLUSION

For the foregoing reasons, Hanjin respectfully submits that Geodis has not established that cause exists for relief from paragraph 5(e) of the Final Recognition Order and the Motion should be denied. Hanjin further respectfully request that this Court enter an order granting Hanjin's cross-motion compelling Geodis to arbitrate and granting such other relief as the Courts deems appropriate.

Dated: July 13, 2021

                                      **MONTGOMERY MCCRACKEN
WALKER & RHOADS LLP**

                                      By:    */s/David M. Banker*
                                                David M. Banker, Esq.
                                                LibertyView
                                                457 Haddonfield Road
                                                Suite 600
                                                Cherry Hill, NJ 08002

                                                -and-

- 13 -

          437 Madison Avenue
          24th Floor
          New York, NY 10022
          P: 212-867-9500
          F: 212-599-5085
          Email: dbanker@mmwr.com

***Attorneys for Hanjin Shipping Co., Ltd.***